Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile:  (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

Jeff P. Prostok –  State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen –  State Bar No. 00798518
Matthias Kleinsasser – State Bar No. 24071357
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mkleinsasser@forsheyprostok.com

**COUNSEL FOR
THE CHAPTER 11 TRUSTEE**

**SPECIAL COUNSEL FOR
ROBIN PHELAN, CHAPTER 11 TRUSTEE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 18-30264-SGJ-11** |
| | § | **Case No. 18-30265-SGJ-11** |
| **ACIS CAPITAL MANAGEMENT, L.P.,** | § | |
| **ACIS CAPITAL MANAGEMENT GP,** | § | **(Jointly Administered Under Case** |
| **LLC,** | § | **No. 18-30264-SGJ-11)** |
| | § | |
| **DEBTORS.** | § | **Chapter 11** |

---

| | | |
|---|---|---|
| **HIGHLAND CAPITAL MANAGEMENT,** | § | |
| **L.P. AND** | § | |
| **HIGHLAND CLO FUNDING LTD,** | § | |
| | § | |
| **Plaintiffs.** | § | **Adversary No. 18-03078-sgj** |
| | § | |
| **v.** | § | |
| | § | |
| **ROBIN PHELAN, CHAPTER 11** | § | |
| **TRUSTEE,** | § | |
| | | |
| **Defendant.** | | |

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD PARTY CLAIMS**

**Page 1 of 37**

| | |
|---|---|
| **ROBIN PHELAN, CHAPTER 11 TRUSTEE,** | § <br> § <br> § |
| **THIRD PARTY PLAINTIFF.** | § <br> § |
| **V.** | § |
| **HIGHLAND HCF ADVISOR, LTD. AND HIGHLAND CLO MANAGEMENT, LTD.** | § <br> § <br> § <br> § |
| **THIRD PARTY DEFENDANTS.** | |

## DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD PARTY CLAIMS

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, Defendant, Robin Phelan, Chapter 11 Trustee (the "Trustee") files his Answer, Affirmative Defenses, Counterclaims, and Third Party Claims to *Plaintiffs Highland Capital Management, L.P. and Highland CLO Funding LTD's Original Complaint and Request for Preliminary Injunction* [Adversary No. 18-03078, Docket No. 1] ("Complaint"), and respectfully shows the Court:

## RESPONSES TO FACTUAL ALLEGATIONS IN THE COMPLAINT

## I.
## INTRODUCTION

1.      The Trustee admits that Acis Capital Management, L.P. ("Acis LP") and its general partner Acis Capital Management GP, LLC ("Acis GP," together with Acis LP, the "Debtors") were put into an involuntary bankruptcy by creditor Joshua Terry ("Mr. Terry"). The Trustee denies the remaining factual allegations asserted in Paragraph 1 of the Complaint.

2.      The Trustee admits that the purported instruction was issued on April 30, 2018, with a redemption date of June 14, 2018. The Trustee admits that the structured funds' assets are

not in the possession of the Debtors. The Trustee denies the remaining factual allegations asserted in Paragraph 2 of the Complaint.

## II.
## PARTIES

3.     No response is required for the facts asserted in Paragraph 3 of the Complaint. To the extent a response is required for the facts asserted in Paragraph 3 of the Complaint, the remaining allegations asserted in Paragraph 3 of the Complaint are denied.

4.     No response is required for the facts asserted in Paragraph 4 of the Complaint. To the extent a response is required for the facts asserted in Paragraph 4 of the Complaint, the remaining allegations asserted in Paragraph 4 of the Complaint are denied.

5.     The Trustee admits the factual allegations asserted in Paragraph 5 of the Complaint. To the extent a response is required for the facts asserted in Paragraph 5 of the Complaint, the remaining allegations asserted in Paragraph 5 of the Complaint are denied.

6.     No response is required for the facts asserted in Paragraph 6 of the Complaint. To the extent a response is required for the facts asserted in Paragraph 6 of the Complaint, the remaining allegations asserted in Paragraph 6 of the Complaint are denied.

7.     No response is required for the facts asserted in Paragraph 7 of the Complaint. To the extent a response is required for the facts asserted in Paragraph 7 of the Complaint, the remaining allegations asserted in Paragraph 7 of the Complaint are denied.

8.     No response is required for the facts asserted in Paragraph 8 of the Complaint. To the extent a response is required for the facts asserted in Paragraph 8 of the Complaint, the remaining allegations asserted in Paragraph 8 of the Complaint are denied.

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD PARTY CLAIMS**

9.    No response is required for the facts asserted in Paragraph 9 of the Complaint. To the extent a response is required for the facts asserted in Paragraph 9 of the Complaint, the remaining allegations asserted in Paragraph 9 of the Complaint are denied.

10.    No response is required for the facts asserted in Paragraph 10 of the Complaint. To the extent a response is required for the facts asserted in Paragraph 10 of the Complaint, the remaining allegations asserted in Paragraph 10 of the Complaint are denied.

11.    No response is required for the facts asserted in Paragraph 11 of the Complaint. To the extent a response is required for the facts asserted in Paragraph 11 of the Complaint, the remaining allegations asserted in Paragraph 11 of the Complaint are denied.

## III.
## JURISDICTION AND VENUE

12.    The Trustee admits that jurisdiction is proper pursuant to 28 U.S.C. § 1334. The Trustee denies that 28 U.S.C. § 157(d) and Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 7001(2) and 7001(9) relate to jurisdiction. The Trustee denies the remaining allegations asserted in Paragraph 12 of the Complaint.

13.    The Trustee denies the allegations asserted in Paragraph 13 of the Complaint because this matter is a core proceeding.

14.    The Trustee admits the allegations asserted in Paragraph 14 of the Complaint.

15.    The Trustee admits that the predicate for the relief sought by the Complaint are Bankruptcy Rules 3007(b), 7001(2), 7001(9), 7003, and 7008. The Trustee denies the remaining allegations asserted in Paragraph 15 of the Complaint.

16.    The Trustee admits the allegations asserted in Paragraph 16 of the Complaint.

**IV.**
**FACTS**

17.     To the extent Paragraph 17 contains any factual allegations requiring a response by the Trustee, the Trustee lacks sufficient information and knowledge to form a belief as to the truth of the factual allegations in Paragraph 17 of the Complaint; therefore, those allegations are denied.

18.     To the extent Paragraph 18 contains any factual allegations requiring a response by the Trustee, the Trustee lacks sufficient information and knowledge to form a belief as to the truth of the factual allegations in Paragraph 18 of the Complaint; therefore those allegations are denied.

19.     To the extent Paragraph 19 contains any factual allegations requiring a response by the Trustee, the Trustee lacks sufficient information and knowledge to form a belief as to the truth of the factual allegations in Paragraph 19 of the Complaint; therefore those allegations are denied.

20.     To the extent Paragraph 20 contains any factual allegations requiring a response by the Trustee, the Trustee lacks sufficient information and knowledge to form a belief as to the truth of the factual allegations in Paragraph 20 of the Complaint; therefore those allegations are denied.

21.     To the extent Paragraph 21 contains any factual allegations requiring a response by the Trustee, the Trustee lacks sufficient information and knowledge to form a belief as to the truth of the factual allegations in Paragraph 21 of the Complaint; therefore those allegations are denied.

22. To the extent Paragraph 22 contains any factual allegations requiring a response by the Trustee, the Trustee lacks sufficient information and knowledge to form a belief as to the truth of the factual allegations in Paragraph 22 of the Complaint; therefore those allegations are denied.

23. The Trustee denies the factual allegations in Paragraph 23 of the Complaint.

24. To the extent Paragraph 24 contains any factual allegations requiring a response by the Trustee, the Trustee lacks sufficient information and knowledge to form a belief as to the truth of the factual allegations in Paragraph 24 of the Complaint; therefore those allegations are denied.

25. To the extent Paragraph 25 contains any factual allegations requiring a response by the Trustee, the Trustee lacks sufficient information and knowledge to form a belief as to the truth of the factual allegations in Paragraph 25 of the Complaint; therefore those allegations are denied.

26. To the extent Paragraph 26 contains any factual allegations requiring a response by the Trustee, the Trustee lacks sufficient information and knowledge to form a belief as to the truth of the factual allegations in Paragraph 26 of the Complaint; therefore those allegations are denied.

27. To the extent Paragraph 27 contains any factual allegations requiring a response by the Trustee, the Trustee lacks sufficient information and knowledge to form a belief as to the truth of the factual allegations in Paragraph 27 of the Complaint; therefore those allegations are denied.

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD PARTY CLAIMS**

28.     To the extent Paragraph 28 contains any factual allegations requiring a response by the Trustee, the Trustee lacks sufficient information and knowledge to form a belief as to the truth of the factual allegations in Paragraph 28 of the Complaint; therefore those allegations are denied.

29.     To the extent Paragraph 29 contains any factual allegations requiring a response by the Trustee, the Trustee lacks sufficient information and knowledge to form a belief as to the truth of the factual allegations in Paragraph 29 of the Complaint; therefore those allegations are denied.

30.     The Trustee denies the factual allegations in Paragraph 30 of the Complaint.

31.     The Trustee denies the factual allegations in Paragraph 31 of the Complaint.

32.     To the extent Paragraph 32 contains any factual allegations requiring a response by the Trustee, the Trustee lacks sufficient information and knowledge to form a belief as to the truth of the factual allegations in Paragraph 32 of the Complaint; therefore those allegations are denied.

33.     To the extent Paragraph 33 contains any factual allegations requiring a response by the Trustee, the Trustee lacks sufficient information and knowledge to form a belief as to the truth of the factual allegations in Paragraph 33 of the Complaint; therefore those allegations are denied.

34.     To the extent Paragraph 34 contains any factual allegations requiring a response by the Trustee, the Trustee lacks sufficient information and knowledge to form a belief as to the truth of the factual allegations in Paragraph 34 of the Complaint; therefore those allegations are denied.

35. To the extent Paragraph 35 contains any factual allegations requiring a response by the Trustee, the Trustee lacks sufficient information and knowledge to form a belief as to the truth of the factual allegations in Paragraph 35 of the Complaint; therefore those allegations are denied.

36. To the extent Paragraph 36 contains any factual allegations requiring a response by the Trustee, the Trustee lacks sufficient information and knowledge to form a belief as to the truth of the factual allegations in Paragraph 36 of the Complaint; therefore those allegations are denied.

37. The Trustee admits that Mr. Terry filed involuntary bankruptcy petitions against Acis LP and Acis GP on January 30, 2018 at approximately 12:00 a.m. Otherwise, the Trustee lacks sufficient information and knowledge to form a belief as to the truth of the factual allegations in Paragraph 37 of the Complaint; therefore those allegations are denied.

38. The Trustee admits the factual allegations in Paragraph 38 of the Complaint.

39. The Trustee admits the factual allegations in Paragraph 39 of the Complaint.

40. The Trustee admits the factual allegations in Paragraph 40 of the Complaint. However, the trial referenced by paragraph 40 was also on the Involuntary Petitions (as defined by the Complaint).

41. The Trustee admits the factual allegations in Paragraph 41 of the Complaint.

42. The Trustee admits the factual allegations in Paragraph 42 of the Complaint.

43. The Trustee admits the factual allegations in Paragraph 43 of the Complaint.

44. The Trustee admits that the Bankruptcy Court held a hearing on April 23, 2018 on the Operating Motion, and on May 6, 2018, the Bankruptcy Court granted the Operating Motion

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD PARTY CLAIMS**

[Dkt. No. 178], and that the Chapter 7 Trustee thereafter proceeded to operate the Debtors in the ordinary course of business. The Trustee denies the remaining factual allegations in Paragraph 44 of the Complaint.

45.     The Trustee admits the factual allegations in Paragraph 45 of the Complaint.

46.     The Trustee admits the factual allegations in Paragraph 46 of the Complaint.

47.     The Trustee admits the factual allegations in Paragraph 47 of the Complaint.

48.     The Trustee admits the factual allegations in Paragraph 48 of the Complaint.

49.     The Trustee admits the factual allegations in Paragraph 49 of the Complaint.

50.     To the extent Paragraph 50 contains any factual allegations requiring a response by the Trustee, the Trustee lacks sufficient information and knowledge to form a belief as to the truth of the factual allegations in Paragraph 50 of the Complaint; therefore those allegations are denied.

51.     The Trustee denies the factual allegations in Paragraph 51 of the Complaint.

52.     The Trustee denies the factual allegations in Paragraph 52 of the Complaint.

53.     The Trustee denies the factual allegations in Paragraph 53of the Complaint.

54.     The Trustee admits that on April 30, 2018 Highland CLO Funding LTD f/k/a Acis Loan Funding, Ltd. ("HCLOF")[1] purported to and attempted to direct each CLO (as defined by the Complaint), the Indenture Trustee (as defined by the Complaint), and Acis LP to affect an

---

[1] On October 30, 2017, Acis Loan Funding, Ltd. changed its name to Highland CLO Funding, Ltd. The defined term "ALF" used herein denotes Highland CLO Funding, Ltd. f/k/a Acis Loan Funding, Ltd. prior to October 30, 2017 and the defined term "HCLOF" used herein denotes Highland CLO Funding, Ltd. f/k/a Acis Loan Funding, Ltd. on and after October 30, 2017.

"Optional Redemption of all Secured Notes and the Subordinated Notes in full on June 14, 2018." The Trustee denies all other factual allegations in Paragraph 54.

55. The Trustee admits that Highland Capital Management, L.P. ("Highland") emailed the Trustee stating that the Trustee should begin selling the CLOs' assets pursuant to HCLOF's redemption instructions. The Trustee lacks sufficient information and knowledge to form a belief as to the truth of the remaining factual allegations in Paragraph 55 of the Complaint; therefore those allegations are denied.

56. The Trustee admits that he sent a response to the Redemption Notices Letter dated May 22, 2018 stating that, *inter alia*, "[i]t does not appear that the Redemption Notice[s were] sent by properly authorized parties," and that "[t]he Redemption Notice[s themselves] fail[] to comply with the Indenture[s]." The Trustee denies the remaining factual allegations in Paragraph 56 of the Complaint.

57. The Trustee admits that he received the Notices of Redemption on May 24, 2018. The Trustee denies the remaining factual allegations in Paragraph 57 of the Complaint.

58. The Trustee admits the factual allegations in Paragraph 58 of the Complaint.

59. The Trustee admits that on May 27, 2018 he sent correspondence stating that the May 24, 2018 Issuer Orders "do not comply with the relevant Indentures and Portfolio Management Agreements" and the Issuer Orders are therefore ineffective. The Trustee denies the remaining factual allegations in Paragraph 59 of the Complaint.

60. The Trustee lacks sufficient information and knowledge to form a belief as to the truth of the factual allegations in Paragraph 60 of the Complaint; therefore those allegations are denied.

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD PARTY CLAIMS**

61.     The Trustee admits the factual allegations in Paragraph 61 of the Complaint.

62.     The Trustee denies the factual allegations in Paragraph 62.

63.     The Trustee denies the factual allegations in Paragraph 63.

64.     The Trustee denies the factual allegations in Paragraph 64.

65.     The Trustee denies the factual allegations in Paragraph 65.

66.     The Trustee denies the allegations in Paragraph 66.

## V.
## CLAIMS FOR RELIEF

67.     The Trustee admits the allegations in Paragraph 67.

68.     The Trustee admits that under the PMA (as defined by the Complaint) Acis provides investment advisory services to the CLOs (as defined by the Complaint).  The Trustee denies the remaining factual allegations in Paragraph 68 of the Complaint.

69.     The Trustee denies the allegations in Paragraph 69.

70.     The Trustee denies the allegations in Paragraph 70.

71.     The Trustee denies the allegations in Paragraph 71.

72.     The Trustee denies the allegations in Paragraph 72.

73.     The Trustee denies the allegations in Paragraph 73.

74.     The Trustee admits the allegations in Paragraph 74.

75.     The Trustee admits that under the PMA (as defined by the Complaint) Acis provides investment advisory services to the CLO (as defined by the Complaint). The Trustee denies the remaining factual allegations in Paragraph 75 of the Complaint.

76.     The Trustee denies the allegations in Paragraph 76.

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD PARTY CLAIMS**

77. The Trustee denies the allegations in Paragraph 77.

78. The Trustee denies the allegations in Paragraph 78.

79. The Trustee denies the allegations in Paragraph 79.

80. The Trustee denies the allegations in Paragraph 80.

81. The Trustee admits the allegations in Paragraph 81.

82. The Trustee admits that under the PMA (as defined by the Complaint) Acis provides investment advisory services to the CLO (as defined by the Complaint). The Trustee denies the remaining factual allegations in Paragraph 82 of the Complaint.

83. The Trustee denies the allegations in Paragraph 83.

84. The Trustee denies the allegations in Paragraph 84.

85. The Trustee denies the allegations in Paragraph 85.

86. The Trustee denies the allegations in Paragraph 86.

87. The Trustee denies the allegations in Paragraph 87.

88. The Trustee admits the allegations in Paragraph 88.

89. The Trustee admits that under the PMA (as defined by the Complaint) Acis provides investment advisory services to the CLO (as defined by the Complaint). The Trustee denies the remaining factual allegations in Paragraph 89 of the Complaint.

90. The Trustee denies the allegations in Paragraph 90.

91. The Trustee denies the allegations in Paragraph 91.

92. The Trustee denies the allegations in Paragraph 92.

93. The Trustee denies the allegations in Paragraph 93.

94. The Trustee denies the allegations in Paragraph 94.

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD PARTY CLAIMS**

95.     The Trustee admits the allegations in Paragraph 95.

96.     The Trustee admits that under the PMA (as defined by the Complaint) Acis provides investment advisory services to the CLO (as defined by the Complaint). The Trustee denies the remaining factual allegations in Paragraph 96 of the Complaint.

97.     The Trustee denies the allegations in Paragraph 97.

98.     The Trustee denies the allegations in Paragraph 98.

99.     The Trustee denies the allegations in Paragraph 99.

100.    The Trustee denies the allegations in Paragraph 100.

101.    The Trustee denies the allegations in Paragraph 101.

102.    Paragraph 102 is a legal conclusion that does not require an answer. To the extent a response is required for the allegations asserted in Paragraph 102 of the Complaint, the remaining allegations asserted in Paragraph 102 of the Complaint are denied.

103.    The Trustee denies the allegations in Paragraph 103.

104.    The Trustee denies the allegations in Paragraph 104.

105.    The Trustee denies the allegations in Paragraph 105.

106.    The Trustee denies the allegations in Paragraph 106.

107.    The Trustee denies the allegations in Paragraph 107.

108.    The Trustee denies the factual allegations in Paragraph 108.

109.    No response is required for the facts asserted in Paragraph 109 of the Complaint. To the extent a response is required for the facts asserted in Paragraph 109 of the Complaint, the remaining allegations asserted in Paragraph 109 of the Complaint are denied

110.    The Trustee denies the allegations in Paragraph 110.

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD PARTY CLAIMS**

111.    The Trustee denies the allegations in Paragraph 111.

112.    The Trustee denies the factual allegations in Paragraph 112 of the Complaint.

113.    The Trustee denies the allegations in Paragraph 113.

114.    The allegations contained in paragraph 114 are not sufficiently specific for the Trustee to admit or deny. To the extent a response is required for the facts asserted in Paragraph 114 of the Complaint, the remaining allegations asserted in Paragraph 114 of the Complaint are denied

115.    The Trustee denies the allegations in Paragraph 115.

116.    The Trustee denies the allegations in Paragraph 116.

117.    The Trustee denies the factual allegations in Paragraph 117.

118.    The Trustee denies the allegations in Paragraph 118.

119.    The Trustee denies the allegations in Paragraph 119.

120.    The Trustee denies the allegations in Paragraph 120.

121.    The Trustee denies the allegations in Paragraph 121.

122.    The Trustee denies the allegations in Paragraph 122.

123.    No response is required to Paragraph 123. To the extent a response is required for the facts asserted in Paragraph 123 of the Complaint, the remaining allegations asserted in Paragraph 123 of the Complaint are denied

124.    The Trustee denies the allegations in Plaintiffs' prayer for relief and further denies that Highland and HCLOF (the "Plaintiffs") are entitled to the relief sought.

## VI.
## AFFIRMATIVE DEFENSES

125. Highland's claims are barred because Highland lacks standing to bring the claims and requests for relief asserted.

126. Plaintiffs' claims are barred, in whole or in part, for failure to perform a condition precedent.

127. Plaintiffs' claims are barred, in whole or in part, by estoppel.

128. Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' unclean hands.

## VII.
## PRAYER FOR RELIEF: HIGHLAND CAPITAL MANAGEMENT, L.P.'S AND HIGHLAND CLO FUNDING, LTD.'S COMPLAINT

129. The Trustee prays that Highland and HCLOF take nothing by virtue of its Complaint and that the Trustee have all such other and further relief, in either law or equity, as may be appropriate.

## COUNTERCLAIMS

130. The Trustee hereby asserts the following counterclaims against Highland and HCLOF as an offset to any claim Highland and HCLOF have against the Trustee or the Debtors and for the purposes of affirmative recovery against Highland and HCLOF.

## VIII.
## PARTIES

131. Highland is a limited partnership incorporated under the laws of the State of Delaware, with its principal place of business located at 300 Crescent Court, Suite 700, Dallas, Texas 75201.

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD PARTY CLAIMS**

132.    HCLOF is an exempted company incorporated with limited liability under the laws of Guernsey, with its registered office located at First Floor, Dorey Court, Admiral Park, St Peter Port, Guernsey GY1 6HJ, Channel Islands. Highland and HCLOF are collectively referred to herein as the "Counter Defendants."

133.    Highland HCF Advisor, Ltd. ("Highland HCF") is a company organized under the laws of the Cayman Islands, with its registered office located at Maples Corporate Services Limited, P.O. Box 309 Ugland House, South Church Street, George Town, Grand Cayman KY1-1004. Highland HCF Advisor, Ltd. may be served through its president, James Dondero at 300 Crescent Court, Suite 700 Dallas, TX 75201.

134.    Highland CLO Management Ltd. ("Highland CLOM") is a company organized under the laws of the Cayman Islands, with its registered office located at P.O. Box 309 Ugland House, South Church Street, George Town, Grand Cayman KY1-1004. Highland CLO Management Ltd. may be served through the President of its general partner, Strand Advisors, Inc., James Dondero at 300 Crescent Court, Suite 700 Dallas, TX 75201 and its general partner, Strand Advisors, Inc., at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. Highland HCF and Highland CLOM are collectively referred to herein as the "Third Party Defendants."

## IX.
## JURISDICTION AND VENUE

135.    The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD PARTY CLAIMS**

136. The Court has the power to adjudicate this adversary proceeding pursuant to 28 U.S.C. § 157(a)-(b) and the *Miscellaneous Order No. 33, Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* entered by the United States District Court for the Northern District of Texas.

137. This matter arises under the laws of the United States of America. This Adversary Proceeding constitutes a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2). The Trustee hereby consents to the Bankruptcy Court's entry of a final judgment resolving this Adversary Proceeding.

138. Venue of this Adversary Proceeding in this District is proper under 28 U.S.C. § 1409.

139. The predicate for relief requested here in is 11 U.S.C. §§ 544, 548, 550, 551, TEX. BUS. & COM. CODE 24.001 *et seq.* ("TUFTA") and Rule 7001(1) of the Federal Rules of Bankruptcy Procedure.

## X.
## INTRODUCTION

140. After the commencement of litigation with Mr. Terry and in earnest after Mr. Terry received the Final Award (as hereinafter defined) Highland, Highland CLOM, Highland HCF and HCLOF sought to fraudulently transfer the assets of Acis LP pursuant to a scheme comprised of a series of fraudulent transfers in an effort to denude Acis LP of value (Highland, Highland CLOM, Highland HCF and HCLOF collectively referred to herein as the "Highland Enterprise"). This fraudulent transfer scheme was accomplished through, *inter alia*, the Note Transfer, the ALF Share Transfer, and ALF PMA Transfer (as hereinafter defined), which

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD PARTY CLAIMS**

fraudulently transferred economic rights away from Acis LP to the Highland Enterprise. The Trustee seeks to recover the fraudulent transfers, as further described herein.

## XI.
## BACKGROUND FACTS

### A.    State Court Litigation And Final Award

141.    Highland commenced litigation against Mr. Terry on or about September 8, 2016 in the 162nd Judicial District Court of Texas (the "162nd Action").  Mr. Terry subsequently moved to compel arbitration, which request was granted.  Accordingly, the 162nd Action was stayed pending resolution of the arbitration on the merits.

142.    On October 20, 2017, a JAMS arbitration panel made up of former or retired judges (the "Arbitration") entered a Final Award (the "Final Award") in favor of Mr. Terry in the amount of $7,949,749.15[2] against the Debtors.

143.    On December 18, 2017, the Final Award was reduced to a final judgment by the 44th Judicial District Court of Dallas County, Texas, and the Final Judgment was entered in Cause No. DC-17-15244 (the "Judgment").

### B.    The Bankruptcy Cases

144.    On January 30, 2018 (the "Petition Date"), Mr. Terry as petitioning creditor, filed involuntary petitions (the "Involuntary Petitions") against both Acis LP and Acis GP, thereby initiating the Bankruptcy Cases. *See* Case No. 18-30264, Docket No. 1 & Case No. 18-30265, Docket No. 1.

---

[2] Pursuant to the Judgment, interest accrues on the Judgment from October 20, 2017 until such time as the Judgment is paid in full, at an interest rate of 5% per annum.  The total amount due to Mr. Terry, pursuant to the Judgment, as of the date of filing the involuntary bankruptcy, January 30, 2018, was at least $8,060,827.84.

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD PARTY CLAIMS**

145. On April 13, 2018, after six days of testimony and argument, this Court entered its *Findings of Fact and Conclusions of Law in Support of Orders for Relief Issued After Trial on Involuntary Bankruptcy Petition* [Case No. 18-30264, Docket No. 118 & Case No. 18-30265, Docket No. 113] (the "Opinion") and *Order for Relief in an Involuntary Case* [Case No. 18-30264, Docket No. 119 & Case No. 18-30265, Docket No. 114] (the "Order for Relief").

146. After the Order for Relief was entered these cases were converted to Chapter 7 cases. Robin Phelan was appointed Chapter 11 Trustee of the Debtors' the bankruptcy estates.

## C. Highland and the Highland Enterprise's Role in these Cases

147. Although Highland did not appear in these cases until after the entry of the Order for Relief, Highland employees directed Acis's actions at all times before the Order for Relief. *See* Opinion ¶ 30.

> Mr. Dondero [the Chief Executive of Highland] testified that he has decision making authority for the Alleged Debtors but usually delegates that authority to Highland's in-house lawyers, Scott Ellington (General Counsel, Chief Legal Officer, and Partner of Highland) and Isaac Leventon (Assistant General Counsel of Highland) . . . . Mr. Leventon is designated to be the representative for the Alleged Debtors (and testified as a Rule 30(b)(6) witness during pre-trial discovery)—he explained that this representative-authority derives from the Shared Services Agreement. Mr. Leventon testified that he takes his instructions generally through his direct supervisor, Mr. Ellington.

*Id.*

148. Additionally, the two indirect owners of Highland, James Dondero and Mark Okada, testified at the trial on the Involuntary Petitions.[3]

---

[3] Opinion at p. 3, n. 4 ("Mr. Dondero testified at the Trial that, three years ago, Messrs. Dondero and [O]kada sold their interests in Highland to a charitable remainder trust in exchange for a 15 year note receivable").

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD PARTY CLAIMS**

149.     Highland and its network of affiliates have numerous other connections to this case.  HCLOF and other Highland affiliates attempted to intervene in the trial on the Involuntary Petitions.

> HCLOF is the
>
> holder of subordinated notes issued by the CLOs (*i.e.*, the bottom traunche of notes on which the CLO special purpose entity is obligated), and has voting rights and is itself a capital provider, but it takes the most risk and receives the very last cash flow from the CLOs. It, in certain ways, controls the CLO vehicle—for example, by virtue of having the ability to make a redemption call after a certain 'no-call' period—which would force a liquidation of the basket of loans in the CLO, with the proceeds paying down the traunches of notes, starting at the top with the Triple A's). Note that, until recently, a separate entity known as Acis Loan Funding, Ltd. ('ALF'), which was incorporated under the laws of the island nation of Guernsey, was the CLO equity holder. To be clear, ALF was essentially the equity owner in the CLO special purpose entities—not the equity owner of Acis LP. Acis LP was a party to a separate portfolio management agreement with ALF (hereinafter, the 'ALF Portfolio Management Agreement'— not to be confused with the CLO Collateral Management Agreements that Acis LP separately has with the special purpose CLOs). No fees were paid from ALF to Acis LP pursuant to the ALF Portfolio Management Agreement (rather, fees are only paid to Acis LP on the CLO Collateral Management Agreements).
>
> Opinion at pp. 12-13 (footnotes omitted).

## D.     The CLOs, the PMAs, and the Indentures

150.     Acis LP is the portfolio manager for funds of certain Collateralized Loan Obligations ("CLOs"): (i) Acis CLO 2013-1, Ltd. ("CLO-1"), (ii) Acis CLO 2014-3, Ltd ("CLO-3"), (iii) Acis CLO 2014-4, Ltd. ("CLO-4"), (iv) Acis CLO 2014-5, Ltd. ("CLO-5"), and (v) Acis CLO 2015-6 Ltd. ("CLO-6"). *See* Opinion ¶ 24. CLO-1, CLO-3, CLO-4, CLO-5 and CLO-6 are collectively referred to herein as the "Acis CLOs."

151.    As relevant herein, Acis LP manages the Acis CLOs through five PMAs.[4]  Acis

LP generates revenue primarily through the management of the Acis CLOs via the PMAs. *See*

Opinion ¶ 13.  True and correct copies of the PMAs are attached hereto as **Exhibit "A."** Each of

the Acis CLOs is governed by the Indentures.[5] True and correct copies of the Indentures are

attached hereto as **Exhibit "B."**

## XII. FRAUDLENT TRANSFERS

### A.    The ALF PMA Transfer

152.    Prior to October 27, 2017, Acis LP—not ALF—had authority to direct and

effectuate an optional redemption under the PMAs. Acis LP had this authority pursuant to that

certain Portfolio Services Agreement by and between Acis LP and ALF, dated August 10, 2015

(the "First ALF PMA") and that certain Portfolio Management Agreement by and between Acis

LP and ALF, dated December 22, 2016 (the "Second ALF PMA"). A true and correct copy of the

First ALF PMA is attached hereto as **Exhibit "C."**  A true and correct copy of the Second ALF

PMA is attached hereto as **Exhibit "D."**

---

[4] The PMAs include:  (i) that certain Portfolio Management Agreement by and between Acis LP and CLO-1, dated March 18, 2013 (the "CLO-1 PMA"); (ii) that certain Portfolio Management Agreement by and between Acis LP and CLO-3, dated February 25, 2014 (the "CLO-3 PMA"); (iii) that certain Portfolio Management Agreement by and between Acis LP and CLO-4, dated June 5, 2014 (the "CLO-4 PMA"); (iv) that certain Portfolio Management Agreement by and between Acis LP and CLO-5, dated November 18, 2014 (the "CLO-5 PMA"); and (v) that certain Portfolio Management Agreement by and between Acis LP and CLO-6, dated April 16, 2015 (the "CLO-6 PMA"). The CLO-1 PMA, CLO-3 PMA, CLO-4 PMA, CLO-5 PMA, and CLO-6 PMA are collectively referred to herein as the "PMAs."

[5] The Indentures include:  (i) that certain Indenture, dated as of March 18, 2013, issued by CLO-1, as issuer, Acis CLO 2013-1 LLC, as co-issuer, and U.S. Bank, as trustee (the "CLO-1 Indenture"); (ii) that certain Indenture, dated as of February 25, 2014, issued by CLO-3, as issuer, CLO-3 LLC, as co-issuer, and U.S. Bank, as trustee (the "CLO-3 Indenture"); (iii) that certain Indenture, dated as of June 5, 2014, issued by CLO-4, as issuer, CLO-4 LLC, as co-issuer, and U.S. Bank, as trustee (the "CLO-4 Indenture"); (iv) that certain Indenture, dated as of November 18, 2014, issued by CLO-5, as issuer, CLO-5 LLC, as co-issuer, and U.S. Bank, as trustee (the "CLO-5 Indenture"); and (v) that certain Indenture, dated as of April 16, 2015, issued by CLO-6, as issuer, CLO-6 LLC, as co-issuer and U.S. Bank, as trustee (the "CLO-6 Indenture").  The CLO-1 Indenture, CLO-3 Indenture, CLO-4 Indenture, CLO-5 Indenture, and CLO-6 Indenture are collectively referred to herein as the "Indentures."

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD PARTY CLAIMS**

153. The Second ALF PMA provided broad authority to Acis LP as the portfolio manager of ALF. Section 5 of the Second ALF PMA set out Acis LP's authority, which included authority for and in the name of ALF to:

> (i) invest, directly or indirectly . . . in all types of securities and other financial instruments of United States and non-U.S. entities . . . including without limitation . . . notes representing tranches of debt ('CLO Notes') issued by a special purpose vehicle which issues notes backed by a pool of collateral consisting primarily of loans (which may be represented by a debt or equity security) (a 'CLO') . . . (each of such items, 'Financial Instruments'), (ii) provide credit and market research and analysis in connection with the investments and ongoing management of [ALF] and direct the formulation of investment policies and strategies for [ALF] . . . ; (iii) cause [ALF] to engage in . . . agency, agency cross, related party principal transactions with affiliates of [Acis LP] . . . ; and (iv) **vote Financial Instruments, participate in arrangements with creditors, the institution and settlement or compromise of suits and administrative proceedings and other like or similar matters**.

Second ALF PMA § 5(a)-(q) (emphasis added).

154. While ALF did not have authority to terminate the Second ALF PMA, Acis LP could terminate the Second ALF PMA without cause upon at least ninety (90) days' notice. *See* Second ALF PMA § 13(a)-(c). Still, the Second ALF PMA provided for the removal of Acis LP as portfolio manager "for cause." *See* ALF PMA § 14(a)-(e).

155. On October 27, 2017, just seven days after Mr. Terry's arbitration award, Acis LP ostensibly terminated its own portfolio management rights under the Second ALF PMA and transferred its authority and those valuable portfolio management rights—for no value—to Highland HCF Advisor, Ltd. ("Highland HCF"), an affiliate of Highland.

156. This transfer of Acis LP's portfolio management rights to Highland HCF was accomplished by way of a new Portfolio Management Agreement entered into by ALF and Highland HCF on October 27, 2017 (the "October 2017 PMA"), which empowered Highland

HCF with the same broad authority to direct the management of ALF as was previously held by Acis LP under the ALF PMA (the "ALF PMA Transfer"). *See* October 2017 PMA §§ 1 & 5(a)-(q). A true and correct of the October 2017 PMA is attached hereto as **Exhibit "E."**

> As the Court explained:
>
> On October 27, 2017 (seven days after the Arbitration Award), ALF—having purchased back the ownership interest that Acis LP had in it, just three days earlier—decided that it would no longer use Acis LP as its portfolio manager and entered into a new portfolio management agreement to supersede and replace the ALF Portfolio Management Agreement. Specifically, on October 27, 2017, ALF entered into a new Portfolio Management Agreement with a Cayman Island entity called Highland HCF Advisor, Ltd., replacing Acis LP in its role with ALF. This agreement appears to have been further solidified in a second portfolio management agreement dated November 15, 2017.

Opinion at p. 19 (footnotes omitted).

157.    Under the prior ALF PMA, Acis LP's consent to the termination of the ALF PMA was required in order to effectuate the ALF PMA Transfer. So, (without expressing its business judgment to this transfer) Acis LP simply signed the October 2017 PMA, consenting and agreeing to its removal and replacement, and transferring all authority and management rights as portfolio manager of ALF to Highland HCF under the October 2017 PMA.

158.    Without this ALF PMA Transfer, which transferred Acis LP's valuable rights under the ALF PMA to Highland HCF, HCLOF could not have attempted to direct and effectuate an optional redemption, and deplete Acis's assets, as it is now attempting to do.

**B.    ALF Share Transfer**

159.    On October 24, 2017, a mere four days after the Final Award was entered, an employee of Highland and representative of Acis LF, Frank Waterhouse and Grant Scott, for CLO Holdco. Ltd., entered into that certain special resolution whereby HCLOF, then known as

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD PARTY CLAIMS**

ALF acquired back Acis's interest in ALF (the "ALF Share Transfer"). A true and correct copy of the special resolution is attached hereto as **Exhibit "F."**

160. By the ALF Share Transfer, HCLOF paid Acis LP $999,1180.13 for its shares of ALF. HCLOF is an insider of Acis LP. By November 1, 2017, Acis LP had given up its shares of HCLOF and its control of HCLOF.

**C. Note Transfer**

161. On November 3, 2017, Acis LP, Highland, and Highland CLO Management Ltd., a Cayman entity ("Highland CLOM"), an affiliate of Highland, entered into the Agreement for Assignment and Transfer of Promissory Note (the "Assignment and Transfer Agreement"). A true and correct copy of the Assignment and Transfer Agreement is attached here to as **Exhibit "G."** The Assignment and Transfer Agreement, among other things, transferred the $9.5 million promissory note by Highland in favor of Acis LP (the "Note") from Acis LP to Highland CLOM (the "Note Transfer"). Acis LP received no or insufficient consideration for the Note Transfer.

> The Assignment and Transfer Agreement memorializing this transaction is signed by Mr. Dondero for Acis LP and Mr. Dondero for Highland and some undecipherable name for Highland CLO Management Ltd.
>
> The document recites that (i) Highland is no longer willing to continue providing support services to Acis LP, (ii) Acis LP, therefore, can no longer fulfill its duties as a collateral manager, and (iii) Highland CLO Management Ltd. agrees to step into the collateral manager role if Acis LP will assign to it the Acis LP Note Receivable from Highland. One more thing: since Acis LP was expected to potentially incur future legal and accounting/administrative fees, and might not have the ability to pay them when due, Highland CLO Management Ltd. agreed to reimburse Acis LP (or pays its vendors directly) up to $2 million of future legal expenses and up to $1 million of future accounting/administrative expenses

Opinion at p. 20.

162.     Additionally, the Assignment and Transfer Agreement also purports to initiate the transfer of the PMA between Acis and the CLOs to Highland CLOM. Again, Acis LP is to receive no consideration for transferring its most significant assets, the PMAs. Upon information and belief, Acis LP did not in fact transfer the PMAs pursuant to the Assignment and Transfer Agreement.

## XIII.
## CAUSES OF ACTION

163.     The Trustee complains of, and asserts the following claims and causes of action against Counter Defendants and Third Party Defendants:

## XIV.
## COUNT I
## VIOLATION OF FRAUDULENT TRANSFER STATUTE, 11 U.S.C. § 548
## (ALF Share Transfer)

164.     The Trustee incorporates by reference the foregoing paragraphs.

165.     On or about October 27, 2017, less than two years prior to the Petition Date, HCLOF, formerly known as ALF, received the ALF Share Transfer

166.     The ALF Share Transfer was made or incurred with actual intent to hinder, delay, or defraud any entity to which Acis LP was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

167.     Acis LP received less than a reasonably equivalent value in exchange for the ALF Share Transfer.

168.     Acis LP was insolvent at the time of the ALF Share Transfer or became insolvent as a result of the ALF Share Transfer.

169.    Acis LP intended to incur, or believed that Acis LP would incur, debts that would be beyond Acis LP's ability to pay as such debts matured.

170.    The ALF Share Transfer was to or for the benefit of insiders, the Highland Enterprise, including HCLOF.

171.    The ALF Share Transfer constitutes a fraudulent transfer avoidable pursuant to section 548 of the Bankruptcy Code. The Trustee seeks a judgment avoiding the ALF Share Transfer pursuant to section 548 of the Bankruptcy Code.

172.    To the extent the ALF Share Transfer is avoided the Trustee seeks the appropriate remedy pursuant to section 550 of the Bankruptcy Code.

## COUNT II
## VIOLATION OF FRAUDULENT TRANSFER STATUTE, 11 U.S.C. § 548
## (ALF PMA Transfer)

173.    The Trustee incorporates by reference the foregoing paragraphs.

174.    On or about October 27, 2017, less than two years prior to the Petition Date, Highland HCF received the ALF PMA Transfer.

175.    The ALF PMA Transfer was made or incurred with actual intent to hinder, delay, or defraud any entity to which Acis LP was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

176.    Acis LP received less than a reasonably equivalent value in exchange for the ALF PMA Transfer.

177.    Acis LP was insolvent at the time of the ALF PMA Transfer or became insolvent as a result of the ALF PMA Transfer.

178.    Acis LP intended to incur, or believed that Acis LP would incur, debts that would be beyond Acis LP's ability to pay as such debts matured.

179.    The ALF PMA Transfer was to or for the benefit of insiders, the Highland Enterprise, including Highland HCF.

180.    The ALF PMA Transfer constitutes a fraudulent transfer avoidable pursuant to section 548 of the Bankruptcy Code. The Trustee seeks a judgment avoiding the ALF PMA Transfer pursuant to section 548 of the Bankruptcy Code.

181.    To the extent the ALF PMA Transfer is avoided the Trustee seeks the appropriate remedy pursuant to section 550 of the Bankruptcy Code.

## COUNT III
## <u>VIOLATION OF FRAUDULENT TRANSFER STATUTE, 11 U.S.C. § 548</u>
### (Note Transfer)

182.    The Trustee incorporates by reference the foregoing paragraphs.

183.    On or about November 2, 2017, less than two years prior to the Petition Date, Highland CLOM received the Note Transfer.

184.    The Note Transfer was made or incurred with actual intent to hinder, delay, or defraud any entity to which Acis LP was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

185.    Acis LP received less than a reasonably equivalent value in exchange for the Note Transfer.

186.    Acis LP was insolvent at the time of the Note Transfer or became insolvent as a result of the Note Transfer.

187. Acis LP intended to incur, or believed that Acis LP would incur, debts that would be beyond Acis LP's ability to pay as such debts matured.

188. The Note Transfer was to or for the benefit of an insider, Highland CLOM.

189. The Note Transfer constitutes a fraudulent transfer avoidable pursuant to section 548 of the Bankruptcy Code. The Trustee seeks a judgment avoiding the Note Transfer pursuant to section 548 of the Bankruptcy Code.

190. To the extent the Note Transfer is avoided the Trustee seeks the appropriate remedy pursuant to section 550 of the Bankruptcy Code.

**COUNT IV**
**11 U.S.C. § 550**

191. The Trustee incorporates by reference the foregoing paragraphs.

192. To the extent not otherwise asserted herein the Trustee seeks appropriate relief against the Highland Enterprise pursuant to section 550 of the Bankruptcy Code.

**COUNT V**
**FRAUDULENT TRANSFERS (TUFTA)**
**(ALF Share Transfer)**

193. The Trustee incorporates by reference the foregoing paragraphs.

194. Pursuant to section 544(b)(1) of the Bankruptcy Code, the Trustee is entitled to stand in the shoes of any of Acis LP's creditors to avoid any transfer or obligation avoidable under applicable law, including pursuant to TUFTA. One or more of such "triggering creditors" exist which may avoid transfers by, or obligations of, Acis LP pursuant to TUFTA.

195. The Trustee is entitled to a judgment avoiding the ALF Share Transfer to HCLOF as fraudulent transfers pursuant to TUFTA as follows:

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD PARTY CLAIMS**

a.  Pursuant to section 24.005(a)(1), as transfers made with actual intent to defraud, as to any such triggering creditor whose claim arose before, or whether a reasonable time after, the applicable transfer was made;

b.  Pursuant to section 24.005(a)(2) as a constructively fraudulent transfers for which Acis LP did not receive reasonably equivalent value, avoidable by any such triggering creditor whose claim arose before, or within a reasonable time after, the applicable transfer was made;

c.  Pursuant to section 24.006 as a constructively fraudulent transfers avoidable by any such triggering creditor whose claim arose before the applicable transfer was made; and

d.  Pursuant to section 24.006(b) as to any such triggering creditor whose claim arose before the applicable transfer was made.

196.  To the extent the ALF Share Transfer is avoided the Trustee seeks the appropriate remedy pursuant to section 24.008 of the Texas Business and Commerce Code.

## COUNT VI
## FRAUDULENT TRANSFERS (TUFTA)
### (ALF PMA Transfer)

197.  The Trustee incorporates by reference the foregoing paragraphs.

198.  Pursuant to section 544(b)(1) of the Bankruptcy Code, the Trustee is entitled to stand in the shoes of any of Acis LP's creditors to avoid any transfer or obligation avoidable under applicable law, including pursuant to TUFTA. One or more of such "triggering creditors" exist which may avoid transfers by, or obligations of, Acis LP pursuant to TUFTA.

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD PARTY CLAIMS**

199.    The Trustee is entitled to a judgment avoiding the ALF PMA Transfer to Highland HCF as fraudulent transfers pursuant to TUFTA as follows:

a.    Pursuant to section 24.005(a)(1), as transfers made with actual intent to defraud, as to any such triggering creditor whose claim arose before, or whether a reasonable time after, the applicable transfer was made;

b.    Pursuant to section 24.005(a)(2) as a constructively fraudulent transfers for which Acis LP did not receive reasonably equivalent value, avoidable by any such triggering creditor whose claim arose before, or within a reasonable time after, the applicable transfer was made;

c.    Pursuant to section 24.006 as a constructively fraudulent transfers avoidable by any such triggering creditor whose claim arose before the applicable transfer was made; and

d.    Pursuant to section 24.006(b) as to any such triggering creditor whose claim arose before the applicable transfer was made.

200.    To the extent the ALF PMA Transfer is avoided the Trustee seeks the appropriate remedy pursuant to section 24.008 of the Texas Business and Commerce Code.

## COUNT VII
## FRAUDULENT TRANSFERS (TUFTA)
### (Note Transfer)

201.    The Trustee incorporates by reference the foregoing paragraphs.

202.    Pursuant to section 544(b)(1) of the Bankruptcy Code, the Trustee is entitled to stand in the shoes of any of Acis LP's creditors to avoid any transfer or obligation avoidable

under applicable law, including pursuant to TUFTA. One or more of such "triggering creditors" exist which may avoid transfers by, or obligations of, Acis LP pursuant to TUFTA.

203. The Trustee is entitled to a judgment avoiding the Note Transfer to Highland CLOM as fraudulent transfers pursuant to TUFTA as follows:

  a.  Pursuant to section 24.005(a)(1), as transfers made with actual intent to defraud, as to any such triggering creditor whose claim arose before, or whether a reasonable time after, the applicable transfer was made;

  b.  Pursuant to section 24.005(a)(2) as a constructively fraudulent transfers for which Acis LP did not receive reasonably equivalent value, avoidable by any such triggering creditor whose claim arose before, or within a reasonable time after, the applicable transfer was made;

  c.  Pursuant to section 24.006 as a constructively fraudulent transfers avoidable by any such triggering creditor whose claim arose before the applicable transfer was made; and

  d.  Pursuant to section 24.006(b) as to any such triggering creditor whose claim arose before the applicable transfer was made.

204. To the extent the Note Transfer is avoided the Trustee seeks the appropriate remedy pursuant to section 24.008 of the Texas Business and Commerce Code.

**COUNT VIII**
**SECTION 24.008 OF THE TEXAS BUSINESS AND COMMERCE CODE**

205. The Trustee incorporates by reference the foregoing paragraphs.

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD PARTY CLAIMS**

206.     To the extent not otherwise asserted herein the Trustee seeks appropriate relief against the Highland Enterprise pursuant to section 24.008 of the Texas Business and Commerce Code

## COUNT IX
## 11 U.S.C. § 551

207.     The Trustee incorporates by reference the foregoing paragraphs.

208.     Pursuant to section 551 of the Bankruptcy Code, any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code is preserved for the benefit of the estate but only with respect to property of the estate.

## COUNT X
## CIVIL CONSPIRACY

209.     The Trustee incorporates by reference the foregoing paragraphs.

210.     The Highland Enterprise which is comprised of two or more business entities sought to engage in a series of fraudulent transfers including the ALF PMA Transfer, the ALF Share Transfer, and the Note Transfer.

211.      The Highland Enterprise which is comprised of two or more business entities had a meeting of the minds on the object or course of action related to the foregoing fraudulent transfers , including the ALF PMA Transfer, the ALF Share Transfer, and the Note Transfer.

212.     The fraudulent transfers (as further described below), including the ALF PMA Transfer, the ALF Share Transfer, and the Note Transfer constitute one or more unlawful, overt acts.

213.     The Debtors and the Debtors' estates suffered damages as a proximate result of the ALF PMA Transfer, the ALF Share Transfer, and the Note Transfer.

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD PARTY CLAIMS**

214. The Trustee seeks actual, joint and several and exemplary damages for the Highland Enterprise's conspiracy.

## COUNT XI
### CONDITIONS PRECEDENT

215. All conditions precedent to the Trustee's recovery on its counterclaims asserted in this action have occurred, have been performed, or have been waived.

## COUNT XII
### ATTORNEYS' FEES

216. The Trustee seeks an award of its reasonable and necessary attorneys' fees as provided for under Tex. Bus. & Com. Code 24.013.

## COUNT XIII
### ATTORNEYS' FEES

217. Accordingly, the Trustee prays that upon a final hearing that the Trustee has and recovers judgment against Highland, HCLOF, Highland CLOM and Highland HCF, as follows:

218. The Trustee's damages as set forth above;

219. The award of the Trustee's costs; and

220. For all such and further relief the Trustee may be justly entitled.

Respectfully submitted,

**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)


By:*/s/ Rakhee V. Patel*
Rakhee V. Patel
State Bar No. 00797213
rpatel@winstead.com
Phillip Lamberson
State Bar No. 00794134
plamberson@winstead.com
Joe Wielebinski
State Bar No. 21432400
jwielebinski@winstead.com
Annmarie Chiarello
State Bar No. 24097496
achiarello@winstead.com

**SPECIAL COUNSEL FOR
ROBIN PHELAN, CHAPTER 11
TRUSTEE**

-and-

Jeff P. Prostok
State Bar No. 16352500
J. Robert Forshey
State Bar No. 07264200
Suzanne K. Rosen
State Bar No. 00798518
Matthias Kleinsasser
State Bar No. 24071357
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD PARTY
CLAIMS**

bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mkleinsasser@forsheyprostok.com

**COUNSEL FOR**
**THE CHAPTER 11 TRUSTEE**

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2018, notice of this document will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District. I hereby certify that on July 3, 2018, notice of this document, will be sent via First-Class U.S. Mail to the parties below.[6]

/s/ Annmarie Chiarello
One of Counsel

Holland O'Neil
Jason Binford
Shiva D. Beck
Melina N. Bales
**Foley Gardere,**
**Foley & Lardner LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201

Michael K. Hurst
Benjamin Barnes
**Lynn Pinker Cox & Hurst LLP**
2100 Ross Avenue, Suite 2700
Dallas, TX 75201

Paul R. Bessette
**KING & SPALDING LLP**
500 West 2nd Street, Suite 1800
Austin, TX 78701-4684

Mark M. Maloney
W. Austin Jowers
**KING & SPALDING LLP**
1180 Peachtree Street, NE,
Suite 1600
Atlanta, GA 30309

---

[6] The attachments referenced herein not be sent via First-Class U.S. Mail unless parties request the undersigned to mail such attachments. Such request may be made to Annmarie Chiarello at achiarello@winstead.com.

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD PARTY CLAIMS**

## VERIFICATION

STATE OF TEXAS       §
                                   §

COUNTY OF DALLAS     §

      BEFORE ME, the undersigned notary public on this day personally appeared Robin Phelan, Chapter 11 Trustee, as authorized representative of Acis Capital Management, L.P. and Acis Capital Management GP, LLC, who, after being duly sworn stated under oath that he has read the foregoing Defendant's Answer, Affirmative Defenses, Counterclaims, and Third Party Claims, and that every statement contained therein is true and correct based on his personal knowledge or information obtained from other persons.

_____

      SWORN TO and SUBSCRIBED before me on this **2nd** day of July, 2018.



_____
Notary Public in and for the State of Texas

My Commission Expires:


_____

SHERYL PRECOPIA
Notary Public, State of Texas
Notary ID 1128990-0
My Commission Exp. 05-29-2021


**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD PARTY CLAIMS**

**Solo Page**