Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile: (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

Jeff P. Prostok – State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen – State Bar No. 00798518
Matthias Kleinsasser – State Bar No. 24071357
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mkleinsasser@forsheyprostok.com

**SPECIAL COUNSEL FOR**
**ROBIN PHELAN, CHAPTER 11 TRUSTEE**

**COUNSEL FOR**
**THE CHAPTER 11 TRUSTEE**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | **Case No. 18-30264-SGJ-11** |
| | § | **Case No. 18-30265-SGJ-11** |
| **ACIS CAPITAL MANAGEMENT, L.P.,** | § | |
| **ACIS CAPITAL MANAGEMENT GP,** | § | **(Jointly Administered Under Case** |
| **LLC,** | § | **No. 18-30264-SGJ-11)** |
| | § | |
| DEBTORS. | § | **Chapter 11** |

| | | |
|---|---|---|
| **HIGHLAND CAPITAL MANAGEMENT,** | § | |
| **L.P. AND** | § | |
| **HIGHLAND CLO FUNDING LTD,** | § | |
| | § | |
| Plaintiffs. | § | **Adversary No. 18-03078-sgj** |
| | § | |
| v. | § | |
| | § | |
| **ROBIN PHELAN, CHAPTER 11** | § | |
| **TRUSTEE,** | § | |
| | | |
| Defendant. | | |

## DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO WITHDRAW THE REFERENCE

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

SUMMARY ...................................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 3

A.    Highland and the Highland Affiliates Role in these Cases ................................... 4

B.    Other Factual Background .................................................................................... 5

    1.    The CLOs, the PMAs, and the Indentures ................................................ 5

    2.    The First Optional Redemption ................................................................ 6

    3.    Shared Services and Sub-Advisory Agreement ........................................ 7

    4.    Letters to US Bank ................................................................................... 8

    5.    Sua Sponte TRO ...................................................................................... 8

    6.    Second Optional Redemption ................................................................... 8

    7.    Second TRO........................................................**Error! Bookmark not defined.**

TRUSTEE'S FIDUICARY DUTIES ................................................................................ 10

ARGUMENTS AND AUTHORITIES ............................................................................. 12

A.    Jurisdiction and Standard of Review .................................................................. 12

B.    Mandatory Withdrawal is Inapplicable Because No "Substantial and Material" Interpretation of Non-Bankruptcy Law is Required. ........................................... 13

C.    Permissive Withdrawal Factors Heavily Favor Denying the Highland Plaintiffs' Request to Withdraw the Reference. ................................................................... 18

CONCLUSION ................................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re CM Holdings*,
   221 B.R. 715 (D. Del. 1998) ................................................................................................16

*In re Hargis*,
   No. 3-91-1380-R, 1992 U.S. Dist. LEXIS 22672 (N.D. Tex. Feb. 20, 1992) .............18, 22, 23

*Holland Am. Ins. Co. v. Succession of Roy*,
   777 F.2d 992 (5th Cir. 1985) .......................................................................................2, 17, 18

*In re Johns-Manville Corp.*,
   63 B.R. 600 (S.D.N.Y. 1986).............................................................................................17

*In re Kiefer*,
   276 B.R. 196 (E.D. Mich. 2009).........................................................................................16

*Lifemark Hosps. Of La., Inc. v. Lifjeberg Enters., Inc.*,
   161 B.R. 21 (E.D. La. 1993) .............................................................................................17

*In re Lincoln*,
   No. 04-20392-RLJ-13, Adv. No. 05-2006, 2005 Bankr. LEXIS 1152 (Bankr.
   N.D. Tex. June 17, 2005).................................................................................................15

*Living Bens. Asset Mngmt., LLC v. Kestral Aircraft Co.*,
   No. 4:17-cv-00486-O, 2018 U.S. Dist. LEXIS 48824 (N.D. Tex. Mar. 26,
   2018) .............................................................................................................................16

*In re Mirant Corp.*,
   303 B.R. 319 (Bankr. N.D. Tex. 2003)................................................................................19

*In re Mirant Corp.*,
   No. 03-46590-DML-11, Adv. No. 05-04099, 2005 Bankr. LEXIS 1620
   (Bankr. N.D. Tex. Aug. 31, 2005) .....................................................................................20

*Mirant Corp. v. S. Co.*,
   337 B.R. 107 (N.D. Tex. 2006)..........................................................................................18

*In re Nat'l Gypsum*,
   134 B.R. 188 (N.D. Tex. 1991).....................................................................................15, 16

*In re Nat'l Gypsum Co.*,
    145 B.R. ......................................................................................................................17

*Panda Energy Int'l Inc. v. Factory Mut. Ins.*,
    No. 3:11-CV-003-K, 2011 U.S. Dist. LEXIS 17396 (N.D. Tex. Feb. 14, 2011) ........20, 21, 22

*In re Performance Nutrition, Inc.*,
    239 B.R. 93 (Bankr. N.D. Tex. 1999)....................................................................................16

*Randall v. Am. Solar King Corp.*,
    92 B.R. 207 (W.D. Tex. 1988)...............................................................................................16

*Sibarium v. NCNB Tex. Nat'l Bank*,
    107 B.R. 108 (Bankr. N.D. Tex. 1989).......................................................................... *passim*

*Stern v. Marshall*,
    564 U.S. 462 ..........................................................................................................................18

*Tex. United Housing Program v. Wolverine Mortg. Partner*,
    3:17-cv-977-L, 2017 U.S. Dist. LEXIS 140992 (N.D. Tex. July 18, 2017)....................17, 19

*Transam. Morg. Advisors (tama) v. Lewis*,
    444 U.S. 11 (1979)................................................................................................................14

*U.S. Brass Corp. v. Travelers Ins. Grp., Inc. (In re United States Brass Corp.)*,
    301 F.3d 296 (5th Cir. 2002) ................................................................................................12

*In re White Motor Corp.*,
    42 B.R. 693 (N.D. Ohio 1984)..............................................................................................13

## Statutes

11 U.S.C. § 541(a) ......................................................................................................................19

15 U.S.C. § 80b-6 ..........................................................................................................1, 14, 15, 16

28 U.S.C. § 157(a) .......................................................................................................................12

28 U.S.C. § 157(b)(2) ...............................................................................................................2, 12

28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(C), 157(b)(2)(H), 157(b)(2)(K),
    157(b)(2)(L) & 157(b)(2)(O)...............................................................................................19

28 U.S.C. §§ 157(b)(2)(A) & 157(b)(2)(O) ...............................................................................19

28 U.S.C. §§ 157(b)(2)(L) & 157(b)(2)(O) ................................................................................19

28 U.S.C. § 157(d) ...........................................................................................................1, 13, 16, 17

28 U.S.C. § 1334...........................................................................................................................12

28 U.S.C. § 1334(b).......................................................................................................................12

Bankruptcy Code Section 362(b).....................................................................................................19

Bankruptcy Code section 362(d) .......................................................................................................8

Bankruptcy Code section 363(b) ......................................................................................................8

Investment Advisers Act...................................................................................................................1

**Other Authorities**

Rule 30(b)(6)...................................................................................................................................4

**TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:**

Robin Phelan (the "Trustee"), the Chapter 11 Trustee of Acis Capital Management, L.P. ("Acis LP") and Acis Capital Management GP, LLC ("Acis GP," together with Acis LP, the "Debtors" or "Acis"), the debtors in the above-styled and numbered bankruptcy cases (the "Bankruptcy Cases"), and the defendant in the above-styled and numbered adversary proceeding, files his Response (the "Response") to Plaintiffs' Motion to Withdraw the Reference [Case No. 18-03078, Docket No. 2](the "Motion"), and respectfully states the following:

## SUMMARY[1]

1.     Highland Capital Management, L.P.'s ("Highland") and Highland CLO Funding Ltd.'s ("Highland CLOF," together with Highland, the "Highland Plaintiffs") Motion to Withdraw the Reference is simply a procedural ploy to avoid the Bankruptcy Court's clear instructions prohibiting the Highland Plaintiffs from effectuating the First Optional Redemption or otherwise liquidating the CLOs in violation of the PMAs, the Indentures, the automatic stay, and the Bankruptcy Court's temporary restraining order.  To start, both mandatory and permissive withdrawal under 28 U.S.C. § 157(d) are inapplicable here based on allegedly "dueling fiduciary duties" between the Trustee's duties under bankruptcy law and his duties under the Investment Advisers Act (the "IAA") because the Highland Plaintiffs do not have standing to enforce the IAA.  The Trustee is not violating his fiduciary duties under the IAA.  Regardless, only the Securities & Exchange Commission (the "SEC") can enforce the fiduciary standard under 15 U.S.C. § 80b-6.  There is no enforcement action by the SEC, thus, Highland's

---

[1] Capitalized term(s) not defined in the Summary have the meaning(s) ascribed to such term(s) later in the Motion.

**DEFENDANT'S RESPONSE TO MOTION TO WITHDRAW THE REFERENCE** **Page 1**

alleged claims under the IAA are unfounded or, at the very least, premature and entirely speculative.

2.      Moreover, if the Bankruptcy Court finds that the alleged "dual fiduciary duty" issue is properly before the Bankruptcy Court, mandatory withdrawal is unwarranted because resolution does not require "substantial and material" interpretation of the Bankruptcy Code and the IAA.  The fiduciary duties of a Chapter 11 trustee are well known and do not require material and substantial interpretation.  The IAA's plain language clearly states that fiduciary duties are owed by an investment advisor to its clients—the Trustee should refrain from self-dealing and not engage in fraud.  It is a straightforward application of the statute to compare the IAA fiduciary duties to the Trustee's bankruptcy fiduciary duties, and such application shows that the duties are not in conflict, but are complementary.  Finally, the Highland Plaintiffs' generic allegations that the Trustee is allegedly violating other federal securities laws are wholly conclusory and fail to identify which laws the Highland Plaintiffs claim are in dispute. Therefore, the Highland Plaintiffs failed to meet their burden to show mandatory withdrawal of the reference is warranted.

3.      Likewise, the Highland Plaintiffs have not shown cause to allow permissive withdrawal in this matter.  Applying the *Holland* factors, recognized by the Fifth Circuit and district courts in this circuit, favor retaining this dispute in the Bankruptcy Court:  (1) the claims and counterclaims are core proceedings under Section 157(b)(2); (2) there is no jury demand; (3) maintaining this matter in the Bankruptcy Court prevents the Highland Plaintiffs from forum shopping to avoid the Bankruptcy Court's orders and reduces confusion; (4) denying withdrawal promotes uniformity by avoiding inconsistent rulings relating to the Second Optional

Redemption and the PMAs; (5) denying withdrawal fosters the economic use of the Debtors' and creditors' resources by having a judge who is already familiar with the facts of the case; (6) allowing the Bankruptcy Court to hear this dispute and issue a final order on the core proceedings will prevent delay in the bankruptcy process; and (7) judicial economy supports retaining the case in Bankruptcy Court because the Bankruptcy Court is familiar with the complex underlying facts, parties, and remaining issues, and clearly has the resident experience to resolve the issues in an efficient and timely manner. Thus, to streamline disposition of this case and the Bankruptcy Cases, the Highland Plaintiffs' Motion should be denied.

## **FACTUAL BACKGROUND**

4.      On January 30, 2018 (the "Petition Date"), Joshua N. Terry ("Mr. Terry"), as petitioning creditor, filed the Acis LP Petition[2] and the Acis GP Petition.[3]  On April 13, 2018, after six (6) days of testimony and argument, the Bankruptcy Court entered the Opinion and the Order for Relief.[4]  On May 4, 2018, Diane Reed (the "Chapter 7 Trustee") filed the Conversion Motion.[5]  On May 11, 2018, the Bankruptcy Court entered the Conversion Order.[6]  Robin Phelan is now the duly-appointed Chapter 11 Trustee.

---

[2] *Involuntary Petition Against a Non-Individual* [Case No. 18-30264, Docket No. 1] (the "Acis LP Petition").

[3] *Involuntary Petition Against a Non-Individual* [Case No. 18-30265, Docket No. 1] (the "Acis GP Petition," together with the Acis LP Petition, the "Involuntary Petitions").

[4] *Order for Relief in an Involuntary Case* [Case No. 18-30264, Docket No. 119 & Case No. 18-30265, Docket No. 114] (the "Order for Relief").

[5] *Trustee's Expedited Motion to Convert Cases to Chapter 11* [Docket No. 171] (the "Conversion Motion").

[6] *Order Granting Trustee's Expedited Motion to Convert Cases to Chapter 11* [Docket No. 205] (the "Conversion Order").

**A.      Highland and the Highland Affiliates' Role in These Cases**

5.      Although Highland did not appear in these Bankruptcy Cases until after the entry

of the Order for Relief, Highland employees directed Acis's actions at all times before the Order

for Relief.  *See* Opinion ¶ 30.

> Mr. Dondero [the Chief Executive of Highland] testified that he has decision making
> authority for the Alleged Debtors but usually delegates that authority to Highland's in-
> house lawyers, Scott Ellington (General Counsel, Chief Legal Officer, and Partner of
> Highland) and Isaac Leventon (Assistant General Counsel of Highland)…Mr. Leventon
> is designated to be the representative for the Alleged Debtors (and testified as a
> Rule 30(b)(6) witness during pre-Trial discovery)—he explained that this representative-
> authority derives from the Shared Services Agreement.  Mr. Leventon testified that he
> takes his instructions generally through his direct supervisor, Mr. Ellington.

6.      Additionally, the two indirect owners of Highland, James Dondero and Mark

Okada, testified at the Involuntary Trial.[7]

7.      As the Court is aware, Highland and its network of affiliates have numerous other

connections to this case.  Highland CLO Funding, Ltd. f/k/a Acis Loan Funding, Ltd. ("New

ALF" or "Highland CLOF"), CLO Holdco, Ltd. ("Holdco") and Neutra, Ltd. ("Neutra")

attempted to intervene in the trial on the Involuntary Petitions.  New ALF, Holdco, and Neutra

are collectively referred to herein as the "Highland Affiliates."  New ALF is the:

> holder of subordinated notes issued by the CLOs (i.e., the bottom traunche of notes on
> which the CLO special purpose entity is obligated), and has voting rights and is itself a
> capital provider, but it takes the most risk and receives the very last cash flow from the
> CLOs.  It, in certain ways, controls the CLO vehicle—for example, by virtue of having
> the ability to make a redemption call after a certain 'no-call' period—which would force a
> liquidation of the basket of loans in the CLO, with the proceeds paying down the
> traunches of notes, starting at the top with the Triple A's).  Note that, until recently, a
> separate entity known as Acis Loan Funding, Ltd. ("ALF"), which was incorporated
> under the laws of the island nation of Guernsey, was the CLO equity holder.  To be clear,

---

[7] Opinion at p. 3, n. 4 ("Mr. Dondero testified at the Trial that, three years ago, Messrs. Dondero and [O]kada sold
their interests in Highland to a charitable remainder trust in exchange for a 15 year note receivable").

ALF was essentially the equity owner in the CLO special purpose entities—not the equity owner of Acis LP. Acis LP was a party to a separate portfolio management agreement with ALF (hereinafter, the "ALF Portfolio Management Agreement"—not to be confused with the CLO Collateral Management Agreements that Acis LP separately has with the special purpose CLOs). No fees were paid from ALF to Acis LP pursuant to the ALF Portfolio Management Agreement (rather, fees are only paid to Acis LP on the CLO Collateral Management Agreements).

Opinion at p. 12 (footnotes omitted).

Until recently (i.e., until October 24, 2017—four days after the Arbitration Award), Acis LP itself, as [then] required for a CLO manager, had a 15% indirect ownership in ALF, in order to be regulatory compliant. The parties sometimes refer to ALF (and the web of ownership between it and Acis LP) as the 'risk retention structure.'

ALF was the entity that held equity (i.e., the subordinated notes) in the CLO special purpose vehicles, and held voting rights and was a capital provider to the overall risk retention structure supporting the CLOs. And Acis LP, in turn, held a 15% indirect interest in ALF. On October 24, 2017 (four days after the Arbitration Award), Acis, LP entered into an agreement with ALF whereby ALF acquired back the shares that Acis LP indirectly held in ALF (966,679 shares) for the sum of $991,180.13. No credible business justification was offered for this transaction, other than mostly uncorroborated (and self-serving) statements from Highland witnesses that Acis LP was "toxic" in the market place (due to the litigation with Mr. Terry) and this was a step in the process of extricating Acis LP from the CLO business.

On October 27, 2017 (seven days after the Arbitration Award), ALF—having purchased back the ownership interest that Acis LP had in it, just three days earlier—decided that it would no longer use Acis LP as its portfolio manager and entered into a new portfolio management agreement to supersede and replace the ALF Portfolio Management Agreement. Specifically, on October 27, 2017, ALF entered into a new Portfolio Management Agreement with a Cayman Island entity called Highland HCF Advisor, Ltd., replacing Acis LP in its role with ALF. This agreement appears to have been further solidified in a second portfolio management agreement dated November 15, 2017.

Opinion at p. 17-19 (footnotes omitted).

## B.   Other Factual Background

### 1.   The CLOs, the PMAs, and the Indentures

8.   Acis LP is the portfolio manager for certain collateralized loan obligations ("CLOs") including: (i) Acis CLO 2013-1 LTD. ("CLO-1"), (ii) Acis CLO 2014-3 ("CLO-3"), (iii) Acis CLO 2014-4 LTD. ("CLO-4"), (iv) Acis CLO 2014-5 LTD. ("CLO-5"), and (v) Acis

CLO 2015-6 LTD. ("CLO-6").[8] Acis LP manages the Acis CLOs through the PMAs.[9] Acis LP generates revenue primarily through the management of the Acis CLOs via the PMAs. *See* Opinion ¶13. Each of the Acis CLOs is governed by an indenture.[10]

### 2. The First Optional Redemption

9. On April 30, 2018, Highland CLOF purportedly sent five notices requesting Optional Redemption pursuant to the Section 9.2 of each of the Indentures (the "First Optional Redemption Notices").[11] The First Optional Redemption Notices direct Acis LP to affect an Optional Redemption (as defined by each Indenture) (the "First Optional Redemption"). Under Section 9.2(b) of each Indenture, upon the receipt of a notice of redemption, Acis, in its discretion, is to direct the sale of the Collateral Obligations (as defined by each Indenture) and

---

[8] CLO-1, CLO-3, CLO-4, CLO-5, and CLO-6 are collectively referred to herein as the "Acis CLOs."

[9] The PMAs include: (i) that certain Portfolio Management Agreement by and between Acis LP and CLO-1, dated March 18, 2013 (the "CLO-1 PMA"); (ii) that certain Portfolio Management Agreement by and between Acis LP and CLO-3, dated February 25, 2014 (the "CLO-3 PMA"); (iii) that certain Portfolio Management Agreement by and between Acis LP and CLO-4, dated June 5, 2014 (the "CLO-4 PMA"); (iv) that certain Portfolio Management Agreement by and between Acis LP and CLO-5, dated November 18, 2014 (the "CLO-5 PMA"); and that certain Portfolio Management Agreement by and between Acis LP and CLO-6, dated April 16, 2015 (the "CLO-6 PMA"). The CLO-1 PMA, CLO-3 PMA, CLO-4 PMA, CLO-5 PMA, and CLO-6 PMA are collectively referred to herein as the "PMAs."

[10] The Indentures include: (i) that certain Indenture, dated as of March 18, 2013, issued by CLO-1, as issuer, Acis CLO 2013-1 LLC ("CLO-1 Co-Issuer"), as co-Issuer and U.S. Bank National Association ("US Bank"), as Trustee (the "CLO-1 Indenture"); (ii) that certain Indenture, dated as of February 25, 2014, issued by CLO-3, as issuer, Acis CLO 2014-3 LLC ("CLO-3 Co-Issuer"), as co-Issuer and US Bank, as Trustee (the "CLO-3 Indenture"); (iii) that certain Indenture, dated as of June 5, 2014, issued by CLO-4, as issuer, Acis CLO 2014-4 LLC ("CLO-4 Co-Issuer"), as co-Issuer and US Bank, as Trustee (the "CLO-4 Indenture"); (iv) that certain Indenture, dated as of November 18, 2014, issued by CLO-5, as issuer, Acis CLO 2014-5 LLC ("CLO-5 Co-Issuer"), as co-Issuer and US Bank, as Trustee (the "CLO-5 Indenture"); and (v) that certain Indenture, dated as of April 16, 2015, issued by CLO-6, as issuer, Acis CLO 2015-6 LLC ("CLO-6 Co-Issuer"), as co-Issuer and US Bank, as Trustee (the "CLO-6 Indenture"). CLO-1 Indenture, CLO-3 Indenture, CLO-4 Indenture, CLO-5 Indenture, and CLO-6 Indenture are collectively referred to herein as the "Indentures." CLO-1 Co-Issuer, CLO-3 Co-Issuer, CLO-4 Co-Issuer, CLO-5 Co-Issuer, and CLO-6 Co-Issuer are collectively referred to herein the "Co-Issuers."

[11] Nexpoint Strategic Opportunities Fund (f/k/a NexPoint Credit Strategies Fund) ("Nexpoint") and Drexel Limited ("Drexel") joined in one of the First Optional Redemption Notices. Like New ALF, Nexpoint is an affiliate of Highland.

other Assets. *See* CLO-1 Indenture, § 9.2; CLO-3 Indenture, § 9.2; CLO-4 Indenture, § 9.2; CLO-5 Indenture, § 9.2; & CLO-6 Indenture, § 9.2. In the Indentures, "Assets" is defined to include the PMAs. *See* CLO-1 Indenture, p. 8; CLO-3 Indenture, p. 10; CLO-4 Indenture, p. 10; CLO-5 Indenture, p. 10; & CLO-6 Indenture p. 10. Therefore, the First Optional Redemption directs Acis LP to liquidate its most valuable asset, the PMAs.

10.     The Trustee analyzed the First Optional Redemption Notices and determined there were various defects and other problems and impediments with the notices and performing the Optional Redemption requested. Therefore, on May 22, 2018, the Trustee sent his responses to the five Optional Redemption Notices (the "Redemption Responses").

11.     Among other things, the Redemption Responses invoke section 8 of the PMAs in connection with the First Optional Redemption Notices, which mandate significant additional legal and indemnity protections to Acis LP.

### 3.     Shared Services and Sub-Advisory Agreement

12.     Acis contracts out its operations to Highland pursuant to the Third Amended and Restated Sub-Advisory Agreement by and between Acis LP and Highland, dated March 17, 2017 (the "Sub-Advisory Agreement"), and the Fourth Amended and Restated Shared Services Agreement by and between Acis LP and Highland, dated March 17, 2017 (the "Shared Services Agreement").

> "Acis LP and Acis GP/LLC have never had any employees. Rather, all employees that work for any of the Highland family of companies (including Mr. Terry) have, almost without exception, been employees of Highland itself. Highland has approximately 150 employees in the United States. Highland provides employees to entities in the organizational structure, such as Acis LP and Acis GP/LLC, through both the mechanism of: (a) a Shared Services Agreement (herein so called), which provides 'back office' personnel—such as human resources, accounting, legal and information technology to the Highland family of companies; and (b) a Sub-Advisory Agreement (herein so called), which provides 'front office' personnel to entities—such as the managers of investments

like Mr. Terry. The evidence indicated that this is typical in the CLO industry to have such agreements."

Opinion at p. 14 (footnotes omitted).

### 4. Letters to US Bank

13.     US Bank, as indenture trustee under the Indentures, is responsible for remitting funds payable to Acis LP pursuant to the Indentures.  On May 4, 2018, Highland CLOF sent notice to US Bank (the "US Bank Notice") alleging that Acis LP was in material breach of the PMAs.  Highland CLOF demanded US Bank withhold all amounts payable to Acis LP.  Upon information and belief, based on the alleged breaches, the amounts payable by US Bank to Acis under the Indentures and the PMAs is in excess of $4,000,000.00 (the "US Bank Funds").  New ALF's actions have caused US Bank to withhold significant funds from the Trustee.

### 5. *Sua Sponte* TRO

14.     On May 31, 2018, as an extraordinary measure, the Bankruptcy Court issued a temporary restraining order ("First TRO"), *sua sponte* preventing all Restrained Parties (as defined by the First TRO) from taking any action in furtherance of an First Optional Redemption for fourteen (14) days.  The First TRO ended on June 15, 2018 at 12:01 a.m.

### 6. Second Optional Redemption

15.     On June 14, 2018, Highland CLOF's counsel told the Bankruptcy Court that Highland CLOF had withdrawn the First Optional Redemption Notices but reserved the right to reissue the notices at some future date.[12]  On June 15, 2018, the next day after the hearing on the Motion to Extend the First TRO was to have taken place, and after the First TRO had expired, Highland CLOF—without requesting relief from the stay under section 362(d) of the Bankruptcy

---

[12] *See* Docket No. 298 at p. 7, ll. 15-22, Transcript of Hearing Held June 14, 2018.

**DEFENDANT'S RESPONSE TO MOTION TO WITHDRAW THE REFERENCE** **Page 8**

Code or requesting authority to take such action under section 363(b) of the Bankruptcy Code—again advised the Trustee that Highland CLOF had directed the Issuers to effectuate an Optional Redemption on July 30, 2018 (the "Second Optional Redemption").

16.     On June 20, 2018 at approximately 6:45 p.m. (CT), David Owens, a Highland employee, sent the Trustee two emails (the "Emails") requesting the Trustee to authorize hundreds of millions of dollars of trades in furtherance of the Second Optional Redemption. The Emails state:

In order to effectuate the Transaction and obtain best execution, Highland requests your consent by no later than 2pm tomorrow, Thursday June 21, 2018 (the "Deadline"). The Acis Accounts may incur losses as a result of your failure to respond by the Deadline.

Highland believes it has an independent fiduciary obligation to the CLOs. If you instruct Highland not to proceed to undertake the Optional Redemption, Highland reserves it rights to seek appropriate protection and redress at law or in equity.

**7.     Second TRO**

17.     As a result of the Second Optional Redemption and the Emails, on June 21, 2018, the Trustee filed the Phelan Complaint[13] against Highland, Highland CLOF, Holdco, the Acis CLOs, and the Co-Issuers. Also, on June 21, 2018, the Trustee also filed the Ex Parte TRO Motion[14] and based on the Ex Parte TRO Motion, the Bankruptcy Court issued, ex parte the Second TRO.[15]

---

[13] *Verified Original Complaint and Application for Temporary Restraining Order and Preliminary Injunction* [Case No. 18-03212, Docket No. 1] (the "Phelan Complaint").

[14] *Motion for an Ex Parte Temporary Restraining Order, or in the Alternative, an Emergency Hearing on the Application for Temporary Restraining Order* [Adversary No. 18-03212, Docket No. 2] (the "Ex Parte TRO Motion").

[15] *Ex Parte Temporary Restraining Order* [Case No. 18-30264, Docket No. 310 & Adversary No. 18-03212, Docket No. 3] (the "Second TRO").

## TRUSTEE'S FIDUICARY DUTIES[16]

18.    In the short time since the Trustee's appointment, the Trustee has attempted to understand the Acis CLOs, the PMAs, and the Debtors' complex business operations.   The Trustee has also retained bankruptcy counsel, special counsel (including securities counsel) and financial advisors.   In addition, the Trustee has identified a well-qualified party to replace Highland in connection with the Shared Services and Sub-Advisory Agreement and a Plan funder.   Indeed, on July 6, in just a few days, the Trustee is primed to present the Oaktree proposal, which proposes to make everyone whole in this matter.[17]

19.    The Oaktree proposal, as further described by the Break-Up Fee Motion[18] will be implemented by a plan, pursuant to which HCLOF will receive more than liquidation value of its positions Acis CLOs, precisely what HCLOF demands by the First Optional Redemption, Second Optional Redemption, and the Highland Complaint (as hereinafter defined).

20.    Highland, pursuant to the Shared Services and Sub-Advisory Agreement, has purported to advise the Trustee of all aspects of the business operations of Acis LP.   In doing so, Highland threatened that if the Trustee does not immediately liquidate the CLO's collateral, he will breach certain fiduciary duties owed to the CLOs.

---

[16] The Trustee incorporates by reference the following pleadings:  the Opinion, the Order for Relief, the Conversion Motion, the First TRO, the Phelan Complaint, the Ex Parte TRO Motion, the Second TRO, the Highland Complaint (as hereinafter defined), the Break-Up Fee Motion (as hereinafter defined) and all exhibits attached thereto.

[17] *See* Transcript of Case No. 18-30264-SGJ11: Motion for Expedited Hearing RE: Chapter 11 Trustee's Motion for Entry of Order Enforcing Executory Contracts Against Highland Capital Management, LP (302), Transcript of Adversary No. 18-03212-SGJ: Status Conference RE: TRO, Before Honorable Judge Stacey G. Jernigan (the "Hearing Transcript") at 16:20-17:2.

[18] Emergency Motion to Approve Break-Up Fee, Expense Reimbursement, and Replacement Sub-Advisory and Shared Services Provider, Oaktree Capital Management, L.P. [Case No. 18-30264, Docket No. 263](the "Break-Up Fee Motion").

21.     On May 30, 2018, with a status hearing just a few days away, the Highland Plaintiffs filed the Highland Complaint[19] in which the Highland Plaintiffs claim the Trustee committed an anticipatory breach of the PMAs by exercising his rights under the PMA related to the First Optional Redemption, that the Highland Plaintiffs are entitled to declaratory relief to effectuate the First Optional Redemption, and that the Trustee should be enjoined from otherwise attempting to negotiate a fair liquidation of the assets.  *See Highland Complaint.*  On the same day, the Highland Plaintiffs filed the Motion, claiming that mandatory and permissive withdrawal were appropriate because the Trustee allegedly had "dueling fiduciary" duty obligations under bankruptcy law and the IAA requiring "substantial and material interpretation" of the IAA, outside the expertise of the Bankruptcy Court.  *See Highland Complaint.*

22.     The Bankruptcy Court held a status conference hearing on May 31, 2018, for all the parties, and as a result of that hearing, the Bankruptcy Court issued *sua sponte* a temporary restraining order, the First TRO, on June 6, 2018 to prevent any party from effectuating the First Optional Redemption or otherwise liquidating the collateral of the Acis CLOs.

23.     On June 14, 2018, Highland HCLOF withdrew the First Optional Redemption Notice and almost immediately thereafter issued the Second Optional Redemption Notice.  As a result of the Emails and the Second Optional Redemption Notice, the Trustee filed the Ex Parte TRO Motion and the Court issued the Second TRO, *ex parte*.  The Bankruptcy Court found that the Optional Redemption threatened to violate the automatic stay in place and would cause substantial losses to the other creditors and third parties' financial interests related to the Second

---

[19] Original Complaint and Request for Preliminary Injunction Against Chapter 11 Trustee of Acis. See Highland Capital Management, L.P. and Highland CLO Funding LTD v. Robin Phelan, Chapter 11 Trustee, Adversary No. 18-03078-sgj; in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division [Docket No. 1] (the "Complaint").

Optional Redemption, call, or other liquidation of the Acis CLOs and the threatened liquidation of valuable property of the Debtors, the Debtors' rights, the Debtors' estates, and other assets in this matter. *See* Second TRO.

24.     Now, the Highland Plaintiffs seek to circumvent the Bankruptcy Court's decision by using this procedural mechanism to escape their obligations in the Bankruptcy Cases. However, as shown herein, the Highland Plaintiffs failed to meet their burden, and their Motion should be dismissed in its entirety.

<u>**ARGUMENTS AND AUTHORITIES**</u>

**A.     Jurisdiction and Standard of Review**

25.     Jurisdiction over bankruptcy cases and proceedings is conferred on federal district courts under 28 U.S.C. § 1334.  Section 1334(b) gives district courts "original but not exclusive jurisdiction" over "arising" and "related to" civil proceedings under Title 11.  28 U.S.C. § 1334(b).  Each district court may provide that "any and all cases under [T]itle 11," or "any and all proceedings arising in" or "related to" a case under Title 11 "shall be referred to the bankruptcy court.  28 U.S.C. § 157(a).  The United States District Court for the Northern District of Texas has indeed done this by the *Miscellaneous Order No. 33, Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* (the "<u>Reference</u>").

26.     Section 157(b)(1) gives bankruptcy courts "full judicial power over all cases under [T]itle 11 and all core proceedings arising under [T]itle 11, or arising in a case under [T]itle 11…referred under this section."  *U.S. Brass Corp. v. Travelers Ins. Grp., Inc. (In re United States Brass Corp.),* 301 F.3d 296, 303–04 (5th Cir. 2002).  Non-core proceedings that are "otherwise related to a case under [T]itle 11" may be heard by a bankruptcy judge, but any final order or judgment must be entered by the district court." *Id.* at 304.  Therefore, if a matter

within the "broad scope of § 1334(b) satisfies the more precise notion of a core proceeding," Section 157 empowers the bankruptcy court to decide the matter and enter a final judgment. *Id.* Although the statute does not define core proceedings, Section 157(b)(2) does provide a nonexclusive list of examples. 28 U.S.C. § 157(b)(2). The Fifth Circuit held that Section 157 "equates core proceedings with the categories of 'arising under' and 'arising in' proceedings; therefore, a 'proceeding is core under Section 157 if it invokes a substantive right provided by [T]itle 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.'" *Id.*

27. 28 U.S.C. § 157(d) provides a narrow mechanism for the Bankruptcy Court to withdraw from any case or proceeding assigned to the Bankruptcy Court under Section 157:

> The court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

Section 157(d) provides for both mandatory and permissive withdrawal, and the Highland Plaintiffs have moved for each. *Id.* As shown herein, the Highland Plaintiffs failed to satisfy their burden and their motion must be denied.

**B.** **Mandatory Withdrawal is Inapplicable Because No "Substantial and Material" Interpretation of Non-Bankruptcy Law is Required.**

28. The District Court is only required to withdraw the reference "where resolution of the proceeding before the bankruptcy court requires consideration of both [T]itle 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). This provision is construed "narrowly" and requires the movant for withdrawal, by timely motion, to establish that: (1) the proceeding involves a "substantial and

material" question of both Title 11 and non-Bankruptcy Code federal law; and (2) that the "non-Code federal law has more than a *de minimus* effect on interstate commerce." *See Sibarium v. NCNB Tex. Nat'l Bank*, 107 B.R. 108, 111, 113 (Bankr. N.D. Tex. 1989).[20] Here, based on the Highland Plaintiffs' arguments, the Bankruptcy Court cannot make an "affirmative determination" that the "relevant non-Code legal issues will require *significant* interpretation." *Id.* at 111 (emphasis added).

29.     The only non-Code federal law at issue is the Highland Plaintiffs' allegation that the Trustee's exercise of his bankruptcy fiduciary duties purportedly violates the IAA; however, the alleged conflicting duties do not require "significant interpretation" by the Bankruptcy Court to justify mandatory withdrawal. *Id.* To start, the Trustee is not violating the IAA either by his current actions or through the transaction contemplated by the Oaktree proposal. Regardless, the Highland Plaintiffs do not have standing to challenge the Trustee's exercise of fiduciary duties under the IAA because there is no private cause of action for purported violations of Section 80b-6. The United States Supreme Court has held that there is a "limited private remedy" under the IAA to "void an investment advisers contract, but that the Act conferred no other private causes of action, legal or equitable." *Transam. Morg. Advisors (tama) v. Lewis*, 444 U.S. 11, 24 (1979). Only the SEC can enforce the fiduciary duties under Section 80b-6 of the IAA. Thus any alleged dispute the Highland Plaintiffs' claim exists regarding the Trustee's duties under the IAA is premature and entirely speculative. Withdrawal "should not be made

---

[20] One of the first, if not the first, case to interpret the then "new" Section 157(d) was *White Motor Corp*. *See In re White Motor Corp*., 42 B.R. 693 (N.D. Ohio 1984)(upon which the Court in *Sibarium* relies). *White Motor Corp*. provides a detailed analysis of the legislative history of Section 157(d) and ultimately concludes "[s]ection 157(d) must therefore be read to require withdrawal not simply whenever non-Code federal statutes will be considered, but rather only when such consideration is necessary for the **resolution of a case or proceeding**." *Id.* at 703(emphasis added).

based on speculation about…issues which may or may not be germane to resolution of the proceedings." *Sibarium*, 107 B.R. at 111 (internal quotations omitted). If the District Court were to allow withdrawal based on mere speculation, it would allow "an escape hatch through which most bankruptcy matters will be removed to the district court." *Id.* This escape-hatch mechanism is at odds with the intent of Congress, which intended that courts would withdraw the reference in "only a limited class of cases." *Id.* (citing to *In re Combustion Equip. Assocs.*, 67 B.R. 709, 711 (S.D.N.Y. 1986)).

30.     Still, assuming *arguendo* that the District Court determines the Highland Plaintiffs' claims regarding purported violations under the IAA are proper for consideration, the Highland Plaintiffs have not shown (and cannot show) that the dispute requires "substantial and material" interpretation of the IAA. *See Sibarium*, 107 B.R. at 113. This is not a matter of first impression requiring complex interpretation of a federal statute, despite the Highland Plaintiffs' contentions otherwise. The Bankruptcy Court is well versed in balancing competing duties of the Trustee, as the Trustee owes competing duties to the Debtors and the Debtors' creditors under bankruptcy law.

31.     Further, the issue of allegedly "dueling fiduciary duties" simply requires a "straightforward application of [the IAA] to [the] particular set of facts" to determine that there is no conflict. *In re Nat'l Gypsum*, 134 B.R. 188, 192 (N.D. Tex. 1991); *In re Lincoln*, No. 04-20392-RLJ-13, Adv. No. 05-2006, 2005 Bankr. LEXIS 1152, at *10 (Bankr. N.D. Tex. June 17, 2005) (the "mere application of other federal law does not require withdrawal of the reference"). The Bankruptcy Court only has to look to the plain language of the statute to see that the Trustee's duties under the IAA complement, and do not conflict with, the Trustee's

fiduciary duties under bankruptcy law.[21] Section 80b-6 contains the duties and obligations of an investment adviser under the IAA, and states that it is unlawful for an investment adviser, by use of interstate commerce, directly or indirectly: (1) to employ any device, scheme, or artifice **to defraud**…; (2) to engage in any transaction….which operates as a **fraud or deceit**…; (3) acting as a principal for his own account, knowingly to sell any security or purchase any security from a client, or acting as broker for a person other than such client, knowingly to effect any sale or purchase of any security for the account of such client, **without disclosing** to such client…; or (4) to engage in any act, practice, or course of business which is **fraudulent, deceptive, or manipulative**…. 15 U.S.C. § 80b-6 (emphasis added).

32.     The Trustee's duties to the estate and creditors under bankruptcy law are well settled and consistent with the IAA. *See In re Performance Nutrition, Inc.*, 239 B.R. 93, 112 (Bankr. N.D. Tex. 1999) ("[a] trustee in bankruptcy owes a duty of care and a duty of loyalty to [the estate]…[and] to the creditors of the [debtor]," which includes the obligation not to engage in self-dealing and to disclose personal interest). A "straight forward application" of the IAA shows these duties do not conflict with, and instead complement, each other. *In re Nat'l Gypsum*, 134 B.R. at 192; *see also Living Bens. Asset Mngmt., LLC v. Kestral Aircraft Co.*, No. 4:17-cv-00486-O, 2018 U.S. Dist. LEXIS 48824 (N.D. Tex. Mar. 26, 2018) (affirming the Judge Nelm's interpretations of the IAA, which shows that the Bankruptcy Court's application of

---

[21] The Highland Plaintiffs also make a preemption argument based on cases from the Ninth Circuit claiming the Act conflicts with the Trustee's bankruptcy duties, therefore preempting the Trustee's duties in bankruptcy law. *See* Motion ¶¶48-53. However, the Highland Plaintiffs' preemption argument is fatally flawed because (1) they do not have standing under the Act to enforce the fiduciary standard; and (2) there is *no conflict*. The Act requires the Trustee, to the extent the Trustee steps into the shoes of the Debtors under the Act, to avoid self-dealing and fraud. These duties are consistent with the Trustee's duties under bankruptcy law.

**DEFENDANT'S RESPONSE TO MOTION TO WITHDRAW THE REFERENCE**          **Page 16**

the plain language of the IAA is well within its wheelhouse).  Both prohibit the Trustee from engaging in self-dealing and fraud.

33.    The Highland Plaintiffs cite to a litany of cases in support of their contention that at least "one" other non-bankruptcy federal statute requires mandatory withdrawal; however these cases are easily distinguishable from the facts here and are unpersuasive.  *See In re Kiefer*, 276 B.R. 196, 198 (E.D. Mich. 2009) (the court followed a broader application of section 157(d) that is inapposite with this circuit's narrow application); *In re CM Holdings*, 221 B.R. 715, 722 (D. Del. 1998) (this dispute required substantial interpretation of two issues under federal tax law beyond simple application of the statute.); *Randall v. Am. Solar King Corp.*, 92 B.R. 207, 210-11 (W.D. Tex. 1988) (the court found that the claim was a complicated private action under a different securities statute based on separate and distinguishable facts.); *Lifemark Hosps. Of La., Inc. v. Liffeberg Enters., Inc.*, 161 B.R. 21 (E.D. La. 1993) (this court found that more than straightforward application of the statute was needed); *In re Nat'l Gypsum Co.*, 145 B.R. at 542 (this matter involved complex patent law issues and not straightforward application of statute.); *In re Johns-Manville Corp.*, 63 B.R. 600, 603 (S.D.N.Y. 1986) (this dispute involved unclear provisions of CERCLA.).

34.    Finally, the Highland Plaintiffs' generic assertion that the dispute "implicates a wide range of other…federal securities laws and regulations" fails to identify a single other statute that Plaintiffs claim is in dispute.  Motion at ¶ 47.  The Highland Plaintiffs' burden requires them to identify "any unsettled questions of law that the Court would be forced to consider to evaluate this claim."  *See Tex. United Housing Program v. Wolverine Mortg. Partner*, 3:17-cv-977-L, 2017 U.S. Dist. LEXIS 140992, at *19 (N.D. Tex. July 18, 2017)

(issuing a report and recommendation in favor of granting a motion to refer a case to bankruptcy court after a 157(d) analysis. The report and recommendation was adopted and ordered by United States District Court Judge Sam A. Lindsay). The Highland Plaintiffs did not identify any other law in dispute except the IAA, which only requires a straightforward application of the statute. Therefore, the Highland Plaintiffs' request for mandatory withdrawal fails.

**C.     Permissive Withdrawal Factors Heavily Favor Denying the Highland Plaintiffs' Request to Withdraw the Reference.**

35.     "Cause" does not exist for permissive withdrawal from this matter because the *Holland* factors substantially weigh against withdrawal. Section 157(d) permits withdrawal of the reference for "cause shown." 28 U.S.C. § 157(d). In *Holland*, the Fifth Circuit held that the following factors should be considered to determine whether a movant has shown cause to permit withdrawal of the reference:   (1) whether the matter involves a core or non-core proceeding; (2) whether there has been a jury demand; (3) whether forum shopping and confusion will be reduced; (4) whether promotion of uniformity in bankruptcy administration will be achieved; (5) whether there will be economic use of the debtor's and creditor's resources; and (6) whether the withdrawal will expedite the bankruptcy process. *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985); *see also Mirant Corp. v. S. Co.*, 337 B.R. 107, 115 (N.D. Tex. 2006). Courts in this circuit also consider judicial economy as a factor. *See, e.g.*, *In re Hargis*, No. 3-91-1380-R, 1992 U.S. Dist. LEXIS 22672, at *8 (N.D. Tex. Feb. 20, 1992) (discussing judicial economy). The decision to withdraw the reference must be "based on a sound, articulated foundation" to avoid "the indiscriminate filing and granting of motions to withdraw the reference." *Sibarium*, 107 B.R. at 114 (internal citations omitted). A proper analysis using these factors shows permissive withdrawal is not warranted.

36.     **Factor 1: This matter is a core proceeding.**  The Highland Plaintiffs incorrectly claim that the Trustee's alleged obligations under the PMAs and duties under securities laws make the issue in dispute a non-core matter.  Motion ¶57.  However, the Highland Plaintiffs' claims and the counterclaims at issue are undeniably core matters.  Core matters include (1) "matters concerning the administration of the estate"; (2) "counterclaims by the estate against persons filing claims against the estate,"[22] (3) proceedings to recover "fraudulent conveyances"; (4) matters that "directly concern the 'restructuring of debtor-creditor relations'"; (5) "proceedings affecting the liquidation of the assets of the estate, (6) "determinations of the validity, extent, or priority of liens;" and (7) "confirmations of plans."  28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(C), 157(b)(2)(H), 157(b)(2)(K), 157(b)(2)(L) & 157(b)(2)(O).

37.     The Highland Plaintiffs' breach of contract claims under the PMAs and allegations that the Trustee's duties conflict under bankruptcy and non-bankruptcy law directly involve the liquidation of assets belonging to the bankruptcy estates and involve pre-confirmation activities.  *Wolverine Mortg. Partner Ret.*, 2017 U.S. Dist. LEXIS 140992, at *11 (finding that claims involving pre-confirmation activities are core proceedings).  Property of the estate includes all legal or equitable interests of the Debtors in the property as of the commencement of the Bankruptcy Cases. 11 U.S.C. § 541(a).  Debtors have contractual rights in the PMAs, and contrary to the Highland Plaintiffs' contentions, these contractual rights are assets of the bankruptcy estate.  *See In re Mirant Corp.*, 303 B.R. 319, 328 (Bankr. N.D. Tex. 2003) ("courts regularly treat debtors' contracts as property of the estate…."). The Highland Plaintiffs

---

[22] *Stern v. Marshall*, 564 U.S. 462, 503 holds "[h]e Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim" despite the fact that such claim clearly falls within 157(b)(2)(C) and was therefore, a "core" matter.  Here, we do not have a constitutional *Stern* issue.

brought their claims to arguably enforce the PMAs and force an Optional Redemption, which involves the "administration of the estate" and is a "proceeding affecting the liquidation of the assets of the estate." 28 U.S.C. §§ 157(b)(2)(A) & 157(b)(2)(O). Furthermore, the Trustee seeks to confirm a plan to resolve HCLOF's claims. A plan is certainly core. *See* 28 U.S.C. §§ 157(b)(2)(L) & 157(b)(2)(O).

38.     The Trustee believes the Highland Plaintiffs' request for specific performance to allow the Optional Redemption violates the automatic stay pursuant to Section 362(b) of the Bankruptcy Code. Proceedings that address violations of the automatic stay are core proceedings. *In re Mirant Corp.*, 303 B.R. at 328. The Highland Plaintiffs' intended actions would also directly concern the restructuring of the debtor-creditor relations because such actions would cause substantial losses to the other creditors and third parties' financial interests related to the Optional Redemption, call or other liquidation of the Acis CLOs and the threatened liquidation of valuable property of the Debtors, the Debtors' rights, the Debtors' estates, and other assets in this matter. *See* Second TRO.

39.     Moreover, the Trustee has asserted several counterclaims in this matter that constitute core proceedings. The Trustee is seeking "recovery of transfers alleged to be fraudulent," which are "clearly core under" Sections 157(b)(2)(H) and 157(b)(2)(C). *In re Mirant Corp.*, No. 03-46590-DML-11, Adv. No. 05-04099, 2005 Bankr. LEXIS 1620, at *14 (Bankr. N.D. Tex. Aug. 31, 2005). These counterclaims directly concern the Bankruptcy Cases.

40.     Additionally, it is undisputed "the misconduct complained of occurred after the filing of the bankruptcy petitions and after the bankruptcy court had assumed an active role in the proceedings," which supports a finding that this is a core proceeding. *Sibarium*, 107 B.R. at 115.

**DEFENDANT'S RESPONSE TO MOTION TO WITHDRAW THE REFERENCE**          **Page 20**

Also, all of the alleged misconduct on the part of the Trustee and the Highland Plaintiffs' claims for recovery therefrom are "inextricably linked" to the bankruptcy estate as a core matter affecting the administration of the estate. *Id.* Thus, this factor disfavors withdrawal.

41. **Factor 2: The Highland Plaintiffs have not made a jury demand.** When no jury demand exists, this factor weighs in favor of the Bankruptcy Court keeping the case. *Panda Energy Int'l Inc. v. Factory Mut. Ins.*, No. 3:11-CV-003-K, 2011 U.S. Dist. LEXIS 17396, at *21 (N.D. Tex. Feb. 14, 2011) (denying motion to withdraw). Therefore, factor two weighs against withdrawal.

42. **Factor 3: Denying Plaintiffs' Motion to Withdraw the Reference will reduce forum shopping and confusion by maintaining the forum and judge where this dispute started**. The assets in dispute here are part of a complicated bankruptcy proceeding, and the relief the Highland Plaintiffs seek has already been temporarily enjoined by the Bankruptcy Court in the Bankruptcy Cases to prevent the Highland Plaintiffs from violating the automatic stay and to allow the Trustee to exercise his duties to maximize value of the estate for the creditors and interested third parties. Allowing the Highland Plaintiffs to withdraw the reference would create confusion, result in potentially inconsistent findings, and provide Highland Plaintiffs with a vehicle to circumvent the Bankruptcy Court's decision. This is evidenced by the fact that the First TRO and Second TRO have been issued in the main bankruptcy case (Case No. 18-30264) and the Second TRO was requested by the Phelan Complaint in Case No. 18-03212. Finally, this Motion was filed in a second adversary case, Case No. 18-03078. The Highland Complaint, Phelan Complaint, and both the First TRO and Second TRO primarily concern the Optional Redemption. Additionally, for the foreseeable future, the Bankruptcy

Court has set a weekly setting in Case Nos. 18-30264, 18-03212 & 18-03078 (the "Cases"), precisely because the parties have requested frequent hearings that concern issues that are the same or similar across the Cases.

43.    By maintaining the matter with the Bankruptcy Court where the dispute started, the Highland Plaintiffs will be prevented from forum shopping, creating confusion, and inconsistent findings in the Cases. *Panda Energy, Int'l*, 2011 U.S. Dist. LEXIS 17396, at *20 (finding that withdrawal was denied to prevent, *inter alia*, forum shopping). Therefore, factor three weighs against withdrawal.

44.    **Factor 4:   Withdrawing the reference will not promote uniformity in bankruptcy administration.**   As the Highland Complaint involves issues related to the automatic stay and other core issues, factor four weighs against withdrawal.

45.    **Factor 5:   Withdrawing the reference will not foster the economic use of debtor's and creditors' resources.**   If the Motion is granted, the Trustee would be forced to litigate substantially similar issues in two different forums.   This would be a drain on the Bankruptcy Court's, the District Court's, the Trustee's and creditor's resources.   Therefore, factor five weighs against withdrawal.

46.    **Factor 6:   Withdrawing the reference will not expedite the bankruptcy process.**   The Trustee is scheduled to present the Oaktree proposal and the Break-Up Fee Motion on July 6, which stands to "make everyone whole."   Hearing Transcript at 16:23-17:2.   The Trustee is also negotiating other transactions in the event that the Oaktree transaction does not receive the Bankruptcy Court's approval. *Id.*  The withdrawal of the reference will undoubtedly delay the plan process, which has been moving forward at a fast rate based on, among other

things, the Bankruptcy Court's ability to quickly set hearings. Therefore, factor six weighs against withdrawal.

47. **Factor 7: Withdrawing the reference will not support judicial economy.** The Bankruptcy Court is "intimately familiar with the underlying facts, the parties, and the remaining issues" and "clearly has the resident expertise to resolve this issue in an efficient and timely manner." *In re Hargis*, 1992 U.S. Dist. LEXIS 22672, at *9; *see also Panda Energy Int'l, Inc.*, 2011 U.S. Dist. LEXIS 17396, at *20 (finding that denying motion to withdraw the reference promoted uniformity and judicial economy). Withdrawal of the reference "at this point would further delay final resolution of the case." *In re Hargis*, 1992 U.S. Dist. LEXIS 22672, at *8 (discussing judicial economy). In fact, the Bankruptcy Court had hearings in the Bankruptcy Case on at least 14 different days, with many of the hearings lasting over seven hours. Therefore, keeping this case before the Bankruptcy Court "would streamline disposition of both this case" and the Bankruptcy Cases "by bringing all matters related to the [D]ebtors and [their] assets into a single forum." *Wolverine Mortg. Partner Ret.*, 2017 U.S. Dist. LEXIS at *26. Therefore, factor seven weighs against withdrawal.

<u>**CONCLUSION**</u>

For these reasons, Defendant, Robin Phelan, Chapter 11 Trustee, asks that the District Court and Bankruptcy Court deny the Highland Plaintiffs' Motion to Withdraw the Reference and grant the Trustee such further relief, at law or equity, that he may show himself entitled.

Respectfully submitted,

**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)


By: */s/ Rakhee V. Patel*
Rakhee V. Patel
State Bar No. 00797213
rpatel@winstead.com
Phillip Lamberson
State Bar No. 00794134
plamberson@winstead.com
Joe Wielebinski
State Bar No. 21432400
jwielebinski@winstead.com
Annmarie Chiarello
State Bar No. 24097496
achiarello@winstead.com

**SPECIAL COUNSEL FOR
ROBIN PHELAN, CHAPTER 11
TRUSTEE**

-and-

Jeff P. Prostok
State Bar No. 16352500
J. Robert Forshey
State Bar No. 07264200
Suzanne K. Rosen
State Bar No. 00798518
Matthias Kleinsasser
State Bar No. 24071357
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mkleinsasser@forsheyprostok.com

**COUNSEL FOR
THE CHAPTER 11 TRUSTEE**

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2018, notice of this document will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District.

*/s/ Annmarie Chiarello*
One of Counsel