Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile:  (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

Jeff P. Prostok –  State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen –  State Bar No. 00798518
Matthias Kleinsasser – State Bar No. 24071357
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mkleinsasser@forsheyprostok.com

**COUNSEL FOR THE CHAPTER 11 TRUSTEE**

**SPECIAL COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 18-30264-SGJ-11 |
| | § | Case No. 18-30265-SGJ-11 |
| ACIS CAPITAL MANAGEMENT, L.P., | § | |
| ACIS CAPITAL MANAGEMENT GP, LLC, | § | **(Jointly Administered Under Case No. 18-30264-SGJ-11)** |
| | § | |
| Debtors. | § | **Chapter 11** |
| | § | |

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P. and | § | |
| | § | |
| HIGHLAND CLO FUNDING, LTD., | § | |
| Plaintiff, | § | **Adversary No. 18-03078-SGJ** |
| | § | |
| vs. | § | |
| | § | |
| ROBIN PHELAN, CHAPTER 11 TRUSTEE, | § | |
| | § | |
| Defendant. | § | |

**BRIEF IN SUPPORT OF CHAPTER 11 TRUSTEE'S
<u>RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION</u>**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   RELEVANT BACKGROUND ............................................................................ 2

      A.    Procedural Background................................................................................ 2

      B.    Factual Background .................................................................................... 3

            1.    The CLOs, the PMAs, and the Indentures ................................. 3

            2.    Highland and the Highland Affiliates' Role in these Cases ...... 4

            3.    The ALF PMA Transfer............................................................... 4

            4.    The First Optional Redemption Notices .................................... 6

      C.    The Second Optional Redemption Notices................................................ 8

      D.    The Adversary Proceeding........................................................................ 8

III.  RESPONSE........................................................................................................ 9

      A.    HCLOF Is Not Likely to Succeed on the Merits. .................................... 9

            1.    The Trustee May Fund the Plan Through the Oaktree Transaction.......... 10

                  a.    HCLOF Has Asserted its Claim as a Creditor of Acis................. 11

                  b.    The PMAs and Indentures Should be Construed as One
                        Contract to Which Acis LP is a Party. ......................... 12

                  c.    Under the Doctrine of Equitable Subrogation, the Trustee is
                        Subrogated to the Position of HCLOF......................... 13

                  d.    Additionally, the PMAs and Indentures May Be Modified, as
                        Necessary, Pursuant to 11 U.S.C. §§ 1123(a)(5)(F). .......... 14

            2.    HCLOF's Actions to Effectuate the Optional Redemption Violate the
                  Stay. ............................................................................................. 15

            3.    Section 555 of the Bankruptcy Code Does Not Apply to HCLOF........... 18

            4.    The Optional Redemption is Outside the Ordinary Course of the
                  Debtors' Business. ....................................................................... 20

            5.    The Optional Redemption Notices are Defective and Ineffective
                  under the PMAs and the Indentures. ........................................... 21

            6.    The Trustee Has Not Violated the Investment Advisers Act, the
                  Securities Act of 1933, the Bankruptcy Code, or Any Other
                  Applicable Law, or any Fiduciary Duties Thereunder, by Declining
                  to Carry Out the Optional Redemption......................................... 22

      B.    Substantial Threat of Irreparable Harm .................................................. 23

      C.    Balancing of Harms ................................................................................ 24

      D.    Public Interest ......................................................................................... 24

      E.    Unclean Hands ........................................................................................ 25

IV.    PRAYER ....................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 48th Street Steakhouse,*
   835 F.2d 427 (2d Cir. 1987).................................................................................16

*Alcatel USA, Inc. v. DGI Techs., Inc.,*
   166 F.3d 772 (5th Cir. 1999) ............................................................................25

*In re Amcor Funding Corp.,*
   117 B.R. 549 (Bankr. D. Ariz. 1990)............................................................18, 19

*Answer, Affirmative Defenses, Counterclaims, and Third Party Claims*
   [Adv. Docket No. 23].........................................................................................9

*Asarco LLC v. Ams. Mining Corp.,*
   396 B.R. 278 (S.D. Tex. 2008) ........................................................................25

*Atlas Partners, LLC v. STMicroelectronics, Int'l N.V.,*
   2015 U.S. Dist. LEXIS 105597, 2015 WL 4940126 (S.D.N.Y. 2015)...................12

*Brown v. Chesnut (In re Chesnut),*
   422 F.3d 298 (5th Cir. 2005) ............................................................................15

*Burns v. Home Zone Sales & Lease Purchase, LLC,*
   503 B.R. 666 (Bankr. S.D. Miss. 2013)..............................................................15

*Cadle Co. v. Mims (In re Moore),*
   608 F.3d 253 (5th Cir. 2010) ............................................................................20

*In re Canon,*
   130 B.R. 748 (Bankr. N.D. Tex. 1991)...............................................................17

*Chapman v. Bituminous Ins. Co. (In re Coho Res., Inc.),*
   345 F.3d 338 (5th Cir. 2003) ............................................................................15

*Clark v. Pritchard,*
   812 F.2d 991 (5th Cir. 1987) .............................................................................9

*In re Congoleum Corp.,*
   2008 Bankr. LEXIS 2375, 2008 WL 4186899 (Bankr. D.N.J. September 2,
   2008) ...............................................................................................................14

*Cox v. Cox (In re Cox),*
   292 B.R. 141 (Bankr. E.D. Tex. 2003) ..............................................................11

*In re Davis*,
  3 F.3d 113 (5th Cir. 1993) ..................................................................................11

*Elixir Indus. V. City Bank & Trust Co. (In re Ahern Enters.)*,
  507 F.3d 817 (5th Cir. 2007) .............................................................................14

*In re Enron Corp.*,
  306 B.R. 465 (Bankr. S.D.N.Y. 2004) ...............................................................18

*In re FCX, Inc.*,
  853 F.2d 1149 (4th Cir. 1988) ...........................................................................14

*Gil Ramirez Grp. V. Houston Indep. Sch. Dist.*,
  786 F.3d 400 (5th Cir. 2015) .............................................................................11

*Hamlet at Willow Cr. Dev. Co., LLC v. Northeast Land Dev. Corp.*,
  64 A.D.3d 85 (N.Y. App. Div. 2d Dep't April 21, 2009) ...................................13

*In re Harlow Props., Inc.*,
  56 B.R. 794 (B.A.P. 9th Cir. 1985)....................................................................15

*Irving Tanning Co. v. Maine Superintendent of Ins.*,
  496 B.R. 644 (B.A.P. 1st Cir. 2013) ..................................................................14

*In re Liao*,
  553 B.R. 584 (Bankr. S.D. Tex. 2016) ..............................................................11

*Miranda v. Wells Fargo Bank, N.A.*,
  2013 U.S. Dist. LEXIS 90632 (N.D. Tex. June 27, 2013) ...................................9

*In re Mirant Corp.*,
  303 B.R. 319 (Bankr. N.D. Tex. 2003)...............................................................16

*Neiman-Marcus Grp. v. Dworkin*,
  919 F.2d 368 (5th Cir. 1990) .............................................................................11

*Office & Prof'l Emples. Int'l Union, AFL-CIO v. PHI, Inc.*,
  2012 U.S. Dist. LEXIS 138542 (W.D. La. 2012).................................................25

*Official Unsecured Creditors' Comm. of Erie Hilton Joint Venture v. Siskind (In re Erie Hilton Joint Venture)*,
  137 B.R. 165 (Bankr. W.D. Pa. 1992) ...............................................................15

*Padilla v. Wells Fargo Home Mortg., Inc. (In re Padilla)*,
  379 B.R. 643 (Bankr. S.D. Tex. 2007) ..............................................................17

*Prod. Res. Group v. Martin Prof'l*,
  907 F. Supp. 2d 401 (S.D.N.Y. 2012)................................................................12

*In re Prudential Lines,*
    928 F.2d 565 (2d Cir. 1991).......................................................................................16

*Reed v. City of Arlington,*
    650 F.3d 571 (5th Cir. 2011) ....................................................................................11

*In re RNI Wind Down Corp.,*
    2007 Bankr. LEXIS 982 (Bankr. D. Del. 2007) ......................................................14

*In re Salov,*
    510 B.R. 720 (Bankr. S.D.N.Y. 2014)......................................................................17

*In re Sears Methodist Ret. Sys.,*
    2015 Bankr. LEXIS 709 (Bankr. N.D. Tex. 2015) ..................................................13

*Segovia v. Equities First Holdings, LLC,*
    2008 Del. Super. LEXIS 197 (Del. Super. Ct. May 30, 2008) ................................12

*Templeton v. O'Cheskey (In re Am. Hous. Found.),*
    785 F.3d 143 (5th Cir. 2015) ....................................................................................19

*Tronox Inc. v. Kerr McGee Corp. (In re Tronox Inc.),*
    503 B.R. 239 (Bankr. S.D.N.Y. 2013)......................................................................19

*U.S. Brass Corp. v. Travelers Ins. Group (In re U.S. Brass Corp.),*
    301 F.3d 296 (5th Cir. 2002) ....................................................................................15

**Statutes**

11 U.S.C. § 101(22A) ......................................................................................................19, 20

11 U.S.C. § 101(41) ...............................................................................................................19

11 U.S.C. § 101 *et seq.*...........................................................................................................3

11 U.S.C. § 362(a)(3)...................................................................................................15, 16, 17

11 U.S.C. §§ 1123(a)(5)(F)....................................................................................................14

11 U.S.C. § 1142(a) ................................................................................................................15

Bankruptcy Code Chapter 11 ....................................................................................3, 7, 23, 25

Bankruptcy Code section 101(2)(C) ......................................................................................19

Bankruptcy Code section 101(5) ...........................................................................................11

Bankruptcy Code sections 105(a) and 1142(b)......................................................................15

Bankruptcy Code sections 362 and 363 ........................................................................1, 2, 23

Bankruptcy Code section 363(b) ...................................................................................20

Bankruptcy Code section 541 .......................................................................................17

Bankruptcy Code Section 555 ...........................................................................2, 18, 19, 20

Bankruptcy Code section 560 .......................................................................................18

Investment Advisers Act ..............................................................................................23

Securities Act of 1933 .................................................................................................23

Trustee Has Not Violated the Investment Advisers Act, the Securities Act of 1933 ...................22

**Other Authorities**

Adv. Docket No. 1 .........................................................................................................8

Adv. Docket Nos. 18-19 .................................................................................................9

3 COLLIER ON BANKRUPTCY ¶ 363.03[1][a] ..................................................................20

3 COLLIER ON BANKRUPTCY ¶ 365.08[1] ......................................................................18

*Motion for Preliminary Injunctive Relief* (the "Motion") ...................................................9

S. REP. No. 95-989 (1978) .............................................................................................17

# I.    INTRODUCTION[1]

1.       Despite the pendency of these Bankruptcy Cases, Highland Capital Management, L.P. ("Highland") and its affiliates, including Highland CLO Funding LTD f/k/a Acis Loan Funding, Ltd. ("HCLOF"), in contravention of the Bankruptcy Code, have continued in their efforts to systematically dismantle and strip away Acis's assets, with the larger goal of leaving effectively nothing for its creditors. These efforts began in earnest following Mr. Terry's arbitration award in October 2017, and since then, Highland and its affiliates have demonstrated their commitment to this objective, even when such efforts defy rational economic sense.

2.       Since the bankruptcy filing, using rights fraudulently transferred prepetition, HCLOF has now twice attempted to force the Trustee to effectuate an optional redemption under the PMAs (each an "Optional Redemption"), which would cause the liquidation of the CLO assets and effectively extinguish the PMAs.  By such actions, HCLOF (directed by Highland) has attempted to exert control over Acis's property, the PMAs, in violation of the automatic stay and outside the ordinary course of Acis's business. Further, the Trustee, in accordance with his duties under the PMAs, raised issues with HCLOF regarding various defects in the Notices of Optional Redemption as well as his concerns that such actions violated sections 362 and 363 of the Bankruptcy Code.  Notwithstanding the Trustee's concerns, Highland and HCLOF filed this Adversary Proceeding to force the Trustee to carry out the Optional Redemption.

3.       Now, while under the Court's second temporary restraining order to halt the actions of Highland and its affiliates in furtherance of the Optional Redemption, HCLOF has filed its Motion to (i) prevent the Trustee from effectuating the Oaktree Transaction, and (ii) force the Trustee to effectuate the Optional Redemption.

---

[1] Any capitalized terms not defined in the Introduction have the meaning ascribed to such terms later in this Brief.

4.  Contrary to HCLOF's assertions, the Oaktree Transaction is not a sale of HCLOF's property—rather, Oaktree is providing funds to implement the Debtor's plan of reorganization, in accordance with the Bankruptcy Code and other applicable law. The Trustee will treat HCLOF's *claim* in the plan, by way of the Oaktree Transaction, which will result in HCLOF receiving at least as much as it would receive in an Optional Redemption, as it has demanded.

5.  Further, HCLOF's actions in attempting to force the Trustee to effectuate the Optional Redemption violate sections 362 and 363 of the Bankruptcy Code. Such actions are not exempted from the stay under section 555 or any other section of the Bankruptcy Code. And despite HCLOF's contention, since his appointment, the Trustee has complied with his fiduciary duties under the Bankruptcy Code, securities law, and other applicable law.

6.  As discussed below, the Court should deny HCLOF's Motion because (i) HCLOF is not likely to succeed on the merits; (ii) the bankruptcy estates, not HCLOF, will suffer irreparable harm if the Court grants injunctive relief; (iii) balancing the equities does not weigh in favor of HCLOF; and (iv) the public interest will not be served by granting injunctive relief to HCLOF. Additionally, by its actions, HCLOF has demonstrated unclean hands and is therefore not entitled to an injunction or any other form of equitable relief.

## II.     RELEVANT BACKGROUND

### A.     Procedural Background

7.  On January 30, 2018 (the "Petition Date"), Joshua N. Terry ("Mr. Terry"), as petitioning creditor, filed involuntary petitions against both Acis Capital Management, L.P. ("Acis LP") and Acis Capital Management GP, LLC ("Acis GP," and together with Acis LP, "Acis"), initiating the above styled and jointly administered bankruptcy cases (the "Bankruptcy Cases"). *See* Case No. 18-30264, Docket No. 1 & Case No. 18-30265, Docket No. 1.

8. On April 13, 2018, this Court entered its *Findings of Fact and Conclusions of Law in Support of Orders for Relief Issued After Trial on Involuntary Bankruptcy Petition* [Case No. 18-30264, Docket No. 118 & Case No. 18-30265, Docket No. 113] (the "Opinion") and *Order for Relief in an Involuntary Case* [Case No. 18-30264, Docket No. 119 & Case No. 18-30265, Docket No. 114] (the "Order for Relief").

9. Following entry of the Order for Relief, Diane Reed (the "Chapter 7 Trustee") was appointed the interim Chapter 7 trustee, and on May 4, 2018, the Chapter 7 Trustee filed her *Expedited Motion to Convert Cases to Chapter 11. See* Docket No. 171.[2]

10. On May 11, 2018, the Court converted the Bankruptcy Cases to cases under Chapter 11 of the Bankruptcy Code.[3] Following conversion, Robin Phelan was appointed Chapter 11 Trustee of the Debtors.

**B.     Factual Background**

      **1.     The CLOs, the PMAs, and the Indentures**

11. Acis LP is the portfolio manager of funds for: (i) Acis CLO 2013-1 Ltd. ("CLO-1"), (ii) Acis CLO 2014-3 Ltd. ("CLO-3")", (iii) Acis CLO 2014-4 Ltd. ("CLO-4"), (iv) Acis CLO 2014-5 Ltd. ("CLO-5"), and (v) Acis CLO 2015-6 Ltd. ("CLO-6," and collectively with CLO-1, CLO-3, CLO-4, CLO-5, the "CLOs"). *See* Opinion ¶ 24.

12. Acis LP manages the CLOs through five portfolio management agreements (the "PMAs").[4] Acis LP generates revenue primarily through the management of the CLOs via the PMAs. *See* Opinion ¶ 13. Each of the CLOs is governed by its respective Indenture.[5]

---

[2] Unless otherwise indicated, all docket citations are to Bankruptcy Case No. 18-30264.
[3] References herein to the "Bankruptcy Code" shall mean 11 U.S.C. § 101 *et seq.*
[4] The PMAs include:  (i) the PMA by between Acis LP and CLO-1, dated March 18, 2013; (ii) the PMA by and between Acis LP and CLO-3, dated February 25, 2014; (iii) the PMA by and between Acis LP and CLO-4, dated June 5, 2014; (iv) the PMA by and between Acis LP and CLO-5, dated November 18, 2014; and (v) the PMA by and between Acis LP and CLO-6, dated April 16, 2015.

13. Acis contracts out its operations to Highland pursuant to the Third Amended and Restated Sub-Advisory Agreement by and between Acis LP and Highland, dated March 17, 2017 (the "Sub-Advisory Agreement"), and the Fourth Amended and Restated Shared Services Agreement by and between Acis LP and Highland, dated March 17, 2017 (the "Shared Services Agreement"). These agreements are terminable by Acis on 30-days' notice, without cause.

### 2. Highland and the Highland Affiliates' Role in these Cases

14. As the Court is aware, Highland and its network of affiliates have numerous connections to this case. Although Highland did not appear in the Bankruptcy Cases until after the entry of the Order for Relief, Highland employees directed Acis's actions at all times before the Order for Relief.[6] *See* Opinion ¶ 30.

15. HCLOF holds the subordinated notes issued by the CLOs and receives the "very last cash flow from the CLOs." Opinion at pp. 12-13. "It, in certain ways, controls the CLO vehicle . . . [and] was essentially the equity owner in the CLO special purpose entities—not the equity owner of Acis LP." *Id.*

### 3. The ALF PMA Transfer

16. Prior to October 27, 2017, Acis LP—not ALF—had authority to direct and effectuate an optional redemption under the PMAs. Acis LP had this authority pursuant to that certain Portfolio Services Agreement by and between Acis LP and ALF, dated August 10, 2015 (the "First ALF PMA") and that certain Portfolio Management Agreement by and between Acis LP and ALF, dated December 22, 2016 (the "Second ALF PMA").

---

[5] The five respective Indentures (the "Indentures"), with U.S. Bank National Association as the trustee for each, include: (i) the Indenture dated March 18, 2013, with CLO-1 as issuer and Acis CLO 2013-1 LLC as co-issuer; (ii) the Indenture dated February 25, 2014, with CLO-3 as issuer and Acis CLO 2014-3 LLC as co-issuer; (iii) the Indenture dated June 5, 2014, with CLO-4, as issuer and Acis CLO 2014-4 LLC, as co-issuer; (iv) the Indenture dated November 18, 2014, with CLO-5 as issuer and Acis CLO 2014-5 LLC as co-issuer; and (v) the Indenture dated April 16, 2015, with CLO-6 as issuer and Acis CLO 2015-6 LLC as co-issuer.

[6] Highland's Chief Executive, James Dondero, had full decision-making authority for Acis, but often delegated authority to Highland's in-house lawyers, Scott Ellington and Isaac Leventon. *See* Opinion ¶ 30.

17.     The Second ALF PMA provided broad authority to Acis LP as the portfolio manager of ALF. Section 5 of the Second ALF PMA set out Acis LP's authority, which included authority for and in the name of ALF to:

> (i) invest, directly or indirectly . . . in all types of securities and other financial instruments . . . including without limitation . . . notes representing tranches of debt ('CLO Notes') issued by a special purpose vehicle which issues notes backed by a pool of collateral consisting primarily of loans (which may be represented by a debt or equity security) (a 'CLO') . . . (each of such items, 'Financial Instruments'), (ii) . . . direct the formulation of investment policies and strategies for [ALF] . . . (iii) cause [ALF] to engage in . . . agency, agency cross, related party principal transactions with affiliates of [Acis LP] . . . and (iv) **vote Financial Instruments, participate in arrangements with creditors, the institution and settlement or compromise of suits and administrative proceedings and other like or similar matters**.

ALF PMA § 5(a)-(q) (emphasis added).

18.     While ALF did not have authority to terminate the Second ALF PMA, Acis LP could terminate the Second ALF PMA without cause upon at least ninety (90) days' notice. *See* Second ALF PMA § 13(a)-(c). Still, the Second ALF PMA provided for the removal of Acis LP as portfolio manager "for cause." *See* ALF PMA § 14(a)-(e).

19.     On October 27, 2017, just seven days after Mr. Terry's arbitration award, Acis LP ostensibly terminated its own portfolio management rights under the Second ALF PMA and transferred its authority and those valuable portfolio management rights—for no value—to Highland HCF Advisor, Ltd. ("Highland HCF"), an affiliate of Highland.

20.     This transfer of Acis LP's rights to Highland HCF was accomplished by way of a new Portfolio Management Agreement entered into by ALF and Highland HCF on October 27, 2017 (the "October 2017 PMA"), which empowered Highland HCF with the same broad authority to direct the management of ALF as was previously held by Acis LP under the Second ALF PMA (the "ALF PMA Transfer"). *See* October 2017 PMA §§ 1 & 5(a)-(q).

21.     Under the Second ALF PMA, Acis LP's consent to the termination of the Second ALF PMA was required in order to effectuate the ALF PMA Transfer. So, (without expressing its business judgment to this transfer) Acis LP simply signed the October 2017 PMA, consenting and agreeing to its removal and replacement, and transferring all authority and management rights as portfolio manager of ALF to Highland HCF under the October 2017 PMA.

22.     Without this ALF PMA Transfer, which fraudulently transferred Acis LP's valuable rights under the Second ALF PMA to Highland HCF, HCLOF could not have attempted to direct an optional redemption, and deplete Acis's assets, as it is now attempting to do.

**4.      The First Optional Redemption Notices**

23.     On April 30, 2018, HCLOF sent five notices purportedly requesting optional redemption pursuant to the Section 9.2 of each of the Indentures (the "First Optional Redemption Notices").[7] The First Optional Redemption Notices directed Acis LP to effectuate an Optional Redemption (as defined under each Indenture).  Under Section 9.2 of each Indenture, upon the receipt of a notice of redemption, Acis, *in its discretion*, is to direct the sale of the Collateral Obligations (as defined by each Indenture) and other Assets. Consequently, the Optional Redemption directs Acis LP to liquidate assets of the CLOs over which Acis has certain property rights and, effectively, the PMAs.

24.     On May 4, 2018, HCLOF sent a letter (the "May 4 Letter") to the CLOs and the Chapter 7 Trustee, asserting economic damages, that it has a claim against the bankruptcy estates, and that it also has "an offset right against any fees otherwise payable to [Acis] prior to such fees being paid to [Acis]."  Accordingly, HCLOF effectively asserted that it is a secured creditor in these Bankruptcy Cases.

---

[7] Nexpoint Strategic Opportunities Fund (f/k/a NexPoint Credit Strategies Fund) ("Nexpoint") and Drexel Limited ("Drexel") joined in one of the Optional Redemption Notices.  Like HCLOF, Nexpoint is an affiliate of Highland.

25.     The Trustee analyzed the First Optional Redemption Notices and determined there were various defects which rendered them ineffective. Therefore, on May 22, 2018, the Trustee sent his responses to the five First Optional Redemption Notices (the "Redemption Responses"), which outlined such defects.

26.     On June 8, 2018, the Trustee filed the Emergency Motion to Approve Break-Up Fee, Expense Reimbursement, and Replacement Sub-Advisory and Shared Services Provider, Oaktree Capital Management, L.P.   (the "Motion to Approve Break-Up Fee"). See Docket No. 263. As described in the Motion to Approve Break-Up Fee, the Trustee has executed a Commitment Letter (the "Commitment Letter") with Oaktree Capital Management, L.P. ("Oaktree") whereby Oaktree would:  (i) obtain the subordinated equity rights in CLO-3, CLO-4, CLO-5, and CLO-6 after payment in full to HCLOF of a premium above the value of those rights; (ii) obtain Acis LP's rights, title and interests in the respective PMAs for enough to pay the creditors of Acis in full; and (iii) replace Highland as provider of the services currently provided by Highland under the Sub-Advisory Agreement and the Shared Services Agreement, at a fraction of the cost currently being charged by Highland (the "Oaktree Transaction").

27.     The Oaktree Transaction, if consummated, would provide a return to all holders of the subordinated notes *in excess* of what they would receive in an optional redemption and pay all Acis's allowed creditors in full.[8]  The Trustee intends to effectuate the Oaktree Transaction via a Chapter 11 plan.

28.     Following the commencement of this Adversary Proceeding, on May 31, 2018, the Court held a status conference, in which it, *sua sponte*, issued a TRO, enjoining all parties from taking any action in furtherance of the Optional Redemption for fourteen (14) days, until 12:01 a.m. on June 15, 2018.

---

[8] Based upon current projected and known claims and also based on expeditious plan confirmation.

---

C.  **The Second Optional Redemption Notices**

29.     On June 13, 2018, the day before the Court was to hear the Trustee's *Motion to Extend the Temporary Restraining Order* [Docket No. 275] ("Motion to Extend the TRO"), HCLOF advised the Trustee that HCLOF would withdraw the First Optional Redemption Notices. The Trustee therefore advised the Court that he did not intend to go forward with the Motion to Extend the TRO.

30.     On June 14, 2018, counsel for HCLOF advised the Court that HCLOF had withdrawn the First Optional Redemption Notices.

31.     The very next day, on June 15, 2018, after the TRO expired, HCLOF gave notice to the Trustee that it was again requesting an Optional Redemption pursuant to the Section 9.2 of each of the Indentures (the "Second Optional Redemption Notices," and together with the First Optional Redemption Notices, the "Optional Redemption Notices").

32.     By the Second Optional Redemption Notices, HCLOF directed the Issuers:

>   to effect an Optional Redemption of all Secured Notes and the Subordinated
>   Notes in full on July 30, 2018 for the express purpose of placement of a portion of
>   the portfolio of assets held by the Co-Issuers into a warehouse arrangement or a
>   total return swap or other derivative arrangement with Highland Capital
>   Management, L.P. acting as the Sub-Advisor pursuant to a Sub-Advisory
>   Agreement.

33.     On June 20, 2018, Highland presented to the Trustee hundreds of millions of dollars of "proposed trades" pursuant to this second Optional Redemption, and demanded that the Trustee authorize such trades.

D.  **The Adversary Proceeding**

34.     On May 30, 2018, Highland and HCLOF initiated this Adversary Proceeding against the Trustee. *See* Adv. Docket No. 1 (the "Complaint"). In the Complaint, HCLOF alleges, among other things, that the Trustee breached the PMAs by failing to effectuate the

Optional Redemption pursuant to the First Optional Redemption Notices. As a remedy for such purported breach, HCLOF claims it is entitled to, among other things, specific performance from the Trustee under the PMAs.

35. On June 22, 2018, HCLOF filed its *Motion for Preliminary Injunctive Relief* (the "Motion") and brief in support of the same (the "Brief"). *See* Adv. Docket Nos. 18-19.

36. On July 2, 2018, the Trustee filed his *Answer, Affirmative Defenses, Counterclaims, and Third Party Claims* [Adv. Docket No. 23] (the "Answer") in this Adversary Proceeding. In the Answer, the Trustee asserts various counterclaims and third party claims, including that Highland and its affiliates fraudulently transferred assets of Acis LP, including its portfolio management rights and authority under the ALF PMA Transfer.

## III.   RESPONSE

37. To obtain a preliminary injunction, HCLOF must show that (1) it has a substantial likelihood of prevailing on the merits; (2) it will suffer irreparable injury without the injunction; (3) the threatened injury to the movant outweighs the damage the proposed injunction may cause to the parties opposing it; and (4) that the requested injunction would not be against the public interest.[9] Each of the factors weighs in favor of the Trustee. Moreover, Highland and HCLOF have acted with unclean hands and therefore are precluded from obtaining equitable relief.

### A.   HCLOF Is Not Likely to Succeed on the Merits.

38. As an initial matter, the purported authority and rights by which HCLOF claims to direct the Optional Redemption were obtained through a series of fraudulent transfers, as the Trustee asserts by counterclaims and third party claims in his Answer. Just seven days after Mr. Terry's arbitration award, Acis LP (with James Dondero acting on its behalf), effectively

---

[9] *Clark v. Pritchard,* 812 F.2d 991, 993 (5th Cir. 1987); *Miranda v. Wells Fargo Bank, N.A.,* 2013 U.S. Dist. LEXIS 90632 (N.D. Tex. June 27, 2013).

terminated its own rights under its prior PMA with ALF (now HCLOF) and transferred its authority and those valuable portfolio management rights—for no value—to Highland HCF Advisors.  But for this and other related fraudulent transfers, Acis LP—not HCLOF—would have the authority under the PMAs to direct and effectuate an optional redemption or effectuate the proposed Oaktree Transaction, which the Trustee anticipates will pay all creditors, including Highland and HCLOF, in full.

39.    Moreover, the Trustee, not HCLOF, would likely succeed on the merits because he can show that: (i) an effective plan of reorganization may be implemented by the Oaktree Transaction, which would satisfy HCLOF's claim pursuant to its demand for an Optional Redemption; (ii) HCLOF has violated the automatic stay by attempting to force the Optional Redemption, and it is not exempted from the stay under any section of the Bankruptcy Code; (iii) HCLOF has violated section 363 by failing to obtain Court approval to direct the Optional Redemption; and (iv) the Notices of Optional Redemption do not comply with the requirements under the Indentures, and are therefore defective and ineffective.  Further, the Trustee has complied with all of his fiduciary duties under the Bankruptcy Code, securities law, and other applicable law.

**1.    The Trustee May Fund the Plan Through the Oaktree Transaction.**

40.    With respect to the Oaktree Transaction, the crux of HCLOF's argument is that the Trustee cannot effectuate a "forced sale" of its subordinated notes to Oaktree without its consent.  First, this is not what the Trustee proposes. Second, this argument fails because of the actions HCLOF itself has taken, and is bound by, in the Bankruptcy Cases.  HCLOF became *a creditor* in these cases by asserting its claim against the estate in its Complaint, in which HCLOF demands an equitable remedy—specific performance by the Trustee to effectuate an Optional Redemption—the result of which would leave HCLOF with a certain amount of money.

HCLOF is estopped from claiming or demanding otherwise. The Trustee will treat HCLOF's claim in the Debtors' plan of reorganization, funded by the Oaktree Transaction, which will result in HCLOF receiving at least as much as it would receive in an Optional Redemption in satisfaction of its claim.

### a. HCLOF Has Asserted its Claim as a Creditor of Acis.

41. In its Complaint, HCLOF pleads that it is entitled to specific performance by the Trustee to effectuate the Optional Redemption, as well as "any such other relief [the Court] deems appropriate."[10]

42. If a debtor's contractual obligation to specifically perform can be satisfied by an alternative claim for money damages in case the debtor breaches, the obligation may be treated as a claim under section 101(5) of the Bankruptcy Code.[11]

43. Under the doctrines of judicial estoppel and quasi estoppel, HCLOF is estopped from claiming otherwise. "The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."[12] Judicial estoppel is also an equitable doctrine that courts may apply flexibly to achieve substantial justice.[13] Further, under the doctrine of quasi estoppel, HCLOF cannot now claim that it is entitled to a "reset," "warehouse arrangement," or any other benefit that is inconsistent with its claim in these Bankruptcy Cases and would disadvantage Acis.[14] "Such maneuvers are precisely those the [quasi-estoppel] doctrine aims at foreclosing."[15]

---

[10] Complaint ¶ 124.
[11] *See In re Davis*, 3 F.3d 113, 116 (5th Cir. 1993) (citing *Ohio v. Kovacs*, 469 U.S. 274, 279 (1985) ("[When] specific performance may be satisfied by an alternative right to payment in the event performance is refused . . . the creditor entitled to specific performance would have a 'claim' for purposes of a proceeding under title 11.")).
[12] *Reed v. City of Arlington*, 650 F.3d 571, 573-574 (5th Cir. 2011).
[13] *Id.* at 576.
[14] *See Neiman-Marcus Grp. v. Dworkin*, 919 F.2d 368, 371 (5th Cir. 1990); *Gil Ramirez Grp. V. Houston Indep. Sch. Dist.*, 786 F.3d 400, 414 (5th Cir. 2015); *In re Liao*, 553 B.R. 584, 610 (Bankr. S.D. Tex. 2016).
[15] *Cox v. Cox (In re Cox)*, 292 B.R. 141, 148 (Bankr. E.D. Tex. 2003).

> **b.**    **The PMAs and Indentures Should be Construed as One Contract to Which Acis LP is a Party.**

44.    In its Brief, HCLOF states, "Acis is not a party to the Indenture but must comply with certain aspects of the Indenture in its capacity as the Portfolio Manager of the CLOs."[16] The Trustee agrees that Acis has numerous obligations under the Indentures (and is also a beneficiary under the Indentures); however, because (i) each PMA, to which Acis is a signatory, and each corresponding Indenture were contemporaneously executed, (ii) each contract contemplates and requires the other to operate the CLOs, and (iii) Acis has obligations under both contracts, the Trustee contends that the each PMA and its corresponding Indenture should be construed as one contract.    Therefore, the Trustee contends that Acis is a party to the Indentures, just as it is a party to the PMAs.

45.    The PMAs and Indentures are governed by New York law. Under New York law, "[w]hen interpreting contracts, it is accepted that separate agreements executed contemporaneously and that are part of a single transaction are to be read together."[17] Also, "multiple documents must be read together as a single contract when the plain language of the agreements unambiguously requires them to be read together."[18]  As one court put it:

> When the parties have executed separate documents on the same day covering the same period of time and intend these documents to operate as two halves of the same business transaction, then the Court must treat them as one contract. This approach remains true even if the documents are executed by a single party or by two or more parties, and even when some of the documents are executed by parties who have no part in executing the others.[19]

46.    Accordingly, Acis is a party under both the Indentures and the PMAs.

---

[16] HCLOF's Brief ¶ 14.

[17] *Prod. Res. Group v. Martin Prof'l*, 907 F. Supp. 2d 401, 413 (S.D.N.Y. 2012) (citing *This Is Me, Inc. v. Taylor*, 157 F.3d 139, 143 (2d Cir. 1998)).

[18] *Atlas Partners, LLC v. STMicroelectronics, Int'l N.V.*, 2015 U.S. Dist. LEXIS 105597, *13, 2015 WL 4940126 (S.D.N.Y. 2015) (internal quotation marks omitted).

[19] *Segovia v. Equities First Holdings, LLC*, 2008 Del. Super. LEXIS 197, *31-32 (Del. Super. Ct. May 30, 2008) (explaining with respect to Delaware law, which is similar to New York Law).

### c.   Under the Doctrine of Equitable Subrogation, the Trustee is Subrogated to the Position of HCLOF.

47.     HCLOF cannot receive payment on its claim and also retain the subordinated notes—this would constitute a double recovery.[20] Once the Trustee pays HCLOF's claim under the Plan (which amount the CLO issuers would be obligated to pay pursuant to an Optional Redemption) under the doctrine of equitable subrogation, Acis would be subrogated to the position of HCLOF, with all rights HCLOF has in connection with the subordinated notes, including the ability to assign such notes.

48.     Under New York law:

> The doctrine of equitable subrogation is broad enough to include every instance in which one party pays a debt for which another is primarily answerable and which in equity and good conscience should have been discharged by the latter, so long as the payment was made either under compulsion or for the protection of some interest of the party making the payment, and in discharge of an existing liability.[21]

And, as "an equitable doctrine, subrogation is designed to promote justice, and thus, is dependent upon the particular relationship of the parties and the nature of the controversy in each case."[22]

49.     Under an Optional Redemption, Acis would direct the sale of the underlying CLO assets by the CLOs, and the proceeds of such sale would pay the secured notes and then the subordinated "equity" notes. Rather than the CLOs paying HCLOF under the Optional Redemption, the Trustee will pay HCLOF's claim through the plan, and the Trustee will then be subrogated to the rights of HCLOF. Upon payment of its claim, Acis, in the position of the HCLOF, could then assign the subordinated notes to Oaktree.

---

[20] *See In re Sears Methodist Ret. Sys.*, 2015 Bankr. LEXIS 709, *150 n.5 (Bankr. N.D. Tex. 2015) (noting that, under the "single satisfaction rule," a creditor may only recover once on its claim).
[21] *Hamlet at Willow Cr. Dev. Co., LLC v. Northeast Land Dev. Corp.*, 64 A.D.3d 85, 105-106 (N.Y. App. Div. 2d Dep't April 21, 2009) (internal citations omitted).
[22] *Id.* at 106.

### d. Additionally, the PMAs and Indentures May Be Modified, as Necessary, Pursuant to 11 U.S.C. §§ 1123(a)(5)(F).

50. Additionally, to the extent necessary to implement the plan, under section 1123(a)(5)(F) of the Bankruptcy Code, the plan may provide for the modification of "any indenture or similar instrument."[23] Courts have found that section 1123(a)(5) is an "empowering statute," and that "the plan may propose such actions notwithstanding nonbankruptcy law or agreements."[24] HCLOF may argue that the Trustee cannot modify its purported "property rights" in the subordinated notes because HCLOF is somehow a third party out of reach of this Court's jurisdiction.[25] This is not the case. HCLOF is a *creditor* of Acis, established by the claim asserted in its Complaint,[26] and the plan may treat its claim, as with other creditors' claims.

51. Further, the modification of creditors' property rights in bankruptcy is not unprecedented. For example, in the Fifth Circuit, when a secured creditor has participated in a bankruptcy case (by, e.g., filing a proof of claim), its lien rights may be stripped under a plan, and its claim may then be treated under the plan in accordance with the Bankruptcy Code.[27]

52. Acis is a party to the PMAs and the Indentures. HCLOF is a creditor of Acis. Accordingly, to the extent necessary to implement the plan, the Indentures and the PMAs may be modified to effectuate the Oaktree Transaction, which will fund the plan and pay creditors, including HCLOF and Highland, in full.

---

[23] *Cf. In re RNI Wind Down Corp.*, 2007 Bankr. LEXIS 982, *31-33 (Bankr. D. Del. 2007) (finding that because the indenture had not been modified under section 1123(a)(5)(F), the indenture trustee was not entitled to legal fees under the indenture as written).
[24] *In re FCX, Inc.*, 853 F.2d 1149, 1155 (4th Cir. 1988); *accord In re Congoleum Corp.*, 2008 Bankr. LEXIS 2375, *18-19, 2008 WL 4186899 (Bankr. D.N.J. September 2, 2008).
[25] *See, e.g., Irving Tanning Co. v. Maine Superintendent of Ins.*, 496 B.R. 644, 663-664 (B.A.P. 1st Cir. 2013) (noting that section 1123(a)(5) cannot preempt laws defining the rights of third parties).
[26] In the May 4 Letter, HCLOF also asserted that it is effectively a *secured creditor* because it has offset rights against the estate.
[27] *See, e.g., Elixir Indus. V. City Bank & Trust Co. (In re Ahern Enters.)*, 507 F.3d 817, 822-25 (5th Cir. 2007) (holding that when the secured creditor had participated in the bankruptcy case, and it did not object to confirmation, its lien could be stripped under the plan).

53.     Further, post-confirmation, under sections 105(a) and 1142(b) of the Bankruptcy Code, the Court retains jurisdiction to direct "the debtor *and any other necessary party* to . . . join in the execution of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act . . . that is necessary for the consummation of the plan." [28] Under section 1142(b), the Court may even order third parties to perform acts necessary to consummate the plan. [29]

### 2.     HCLOF's Actions to Effectuate the Optional Redemption Violate the Stay.

54.     Further, to show a substantial likelihood of success on the merits, HCLOF must demonstrate that the actions by HCLOF and others in forcing the Trustee to effectuate the Optional Redemption and liquidate the assets of the CLOs, which would also eviscerate the value of Acis LP's interest in the PMAs, do not violate the automatic stay.

55.     A bankruptcy petition operates as a stay, applicable to all entities of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." [30] The protection afforded to a debtor by the automatic stay has "broad scope" and is one of the most important benefits that a debtor and its creditors receive when filing for bankruptcy and has. [31] "This breadth suggests Congressional intent that, in the face of uncertainty or ambiguity, courts should presume protection of arguable property." [32] Actions in violation of the automatic stay are voidable. [33]

---

[28] 11 U.S.C. § 1142(a) (emphasis added); *see U.S. Brass Corp. v. Travelers Ins. Group (In re U.S. Brass Corp.)*, 301 F.3d 296, 303-06 (5th Cir. 2002);

[29] *See Official Unsecured Creditors' Comm. of Erie Hilton Joint Venture v. Siskind (In re Erie Hilton Joint Venture)*, 137 B.R. 165, 170 (Bankr. W.D. Pa. 1992) (directing an investor to advance funds necessary to consummate the plan from an entity committed to advance the funds); *In re Harlow Props., Inc.*, 56 B.R. 794, 797-98 (B.A.P. 9th Cir. 1985) (ordering the officers of a corporate debtor to execute documents necessary for sale of the corporate assets).

[30] 11 U.S.C. § 362(a)(3).

[31] *Burns v. Home Zone Sales & Lease Purchase, LLC*, 503 B.R. 666, 673 (Bankr. S.D. Miss. 2013).

[32] *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 302 (5th Cir. 2005).

[33] *Chapman v. Bituminous Ins. Co. (In re Coho Res., Inc.)*, 345 F.3d 338, 344 (5th Cir. 2003).

56.     The Debtors' rights under the PMAs, which are executory contracts, are property of the estate, and are therefore protected by the automatic stay.[34] If the Optional Redemption or other liquidation of the assets in the CLOs is permitted to go forward, it would render the PMAs valueless. Consequently, the Optional Redemption and any other attempt by HCLOF to liquidate the assets of the CLOs would violate section 362(a)(3) because such actions involve exercising control over property of the estate (the PMAs).

57.     In *Three Strokes Limited Partnership*, this Court held that a foreclosure sale was an attempt to exercise control over property of the estate under 11 U.S.C. § 362(a)(3) where the debtor held the second lien, but not the first lien on the property subject to foreclosure.[35]   The Court held that, even though the underlying asset (i.e., the real property subject to foreclosure) was not the debtor's property, the debtor's second lien interest was an interest "worthy of recognition and protection," and therefore section 362(a)(3) applied to the foreclosure.[36] The *Three Strokes* case is analogous to this one.   Here, Acis has a property interest in the PMAs "worthy of recognition and protection" that will be extinguished if the CLOs are liquidated. Consequently, any attempt to extinguish Acis LP's interest in the PMAs would be an exercise of control over property of the estate, and is therefore stayed by section 362(a)(3).

58.     The *Three Strokes* opinion is consistent with a long line of cases holding that where a non-debtor's actions would directly or indirectly interfere with or substantially diminish a debtor's (or trustee's) intangible property rights, such actions violate section 362(a)(3).[37] Thus,

---

[34] *In re Mirant Corp.,* 303 B.R. 319, 328 (Bankr. N.D. Tex. 2003) ("a debtor has rights under the contract which are property of the estate and so are protected by the automatic stay from actions of other parties").
[35] 397 B.R. 804, 807 (Bankr. N.D. Tex. 2008).
[36] *Id.*
[37] *See, e.g., In re 48th Street Steakhouse*, 835 F.2d 427, 430-31 (2d Cir. 1987) (finding landlord's termination as to the primary tenant would destroy the debtor's subtenancy violated the automatic stay and was therefore void because, where a non-debtor's interest is intertwined with that of a bankrupt debtor and an action would "inevitably have an adverse impact on property of the estate," such action is barred by the automatic stay); *In re Prudential Lines*, 928 F.2d 565, 573-574 (2d Cir. 1991) (affirming order of the bankruptcy court permanently enjoining parent

because the liquidation of the CLOs represents an "act to obtain possession of property of the estate," namely, Acis LP's intangible property rights in the PMAs, such actions constitute a violation of section 362(a)(3) of the Bankruptcy Code.

59. Moreover, apart from the fact that the Optional Redemption directs Acis LP to cancel the PMAs, the Optional Redemption also seeks to force the winding down of the CLOs. By Acis LP's own admission on the Acis LP SOFA, Acis LP has at least a possessory interest in the CLO assets, such that a transfer of CLO assets constitutes a transfer of property *from* the estate under section 362(a)(3) of the Bankruptcy Code. Property from the estate includes property that does not belong to debtor, but over which the debtor has possession or control. Indeed, many courts have found that a debtor's mere possessory interest in property is sufficient to make it property *of* the estate under section 541 of the Bankruptcy Code, and subject to the stay. [38] The legislative history of section 362(a)(3) makes this clear that the stay is violated by "any act to obtain possession of property of the estate [or] *from* the estate (*property over which the estate has control or possession*). The purpose of this provision is to prevent dismemberment of the estate." [39]

60. Finally, courts have uniformly held that property in the possession of a debtor (even if not property of the estate) is covered by the protections of section 362(a)(3). [40]

61. Accordingly, HCLOF cannot show a substantial likelihood of success on the merits that its actions did not violate the stay.

---

from taking a "worthless stock" deduction on its tax return where it would effectively eliminate the value of the debtor's net operating loss and have an adverse impact on its reorganization).

[38] *See In re Canon*, 130 B.R. 748, 750 (Bankr. N.D. Tex. 1991) (citing legislative history of Bankruptcy Code to show that a "possessory interest" is property of the estate); *In re Salov*, 510 B.R. 720, 729 (Bankr. S.D.N.Y. 2014) ("Courts in all ten circuits have found that the automatic stay protects a possessory interest in property.").

[39] S. REP. No. 95-989, at 50 (1978) (emphasis added).

[40] *See, e.g., Padilla v. Wells Fargo Home Mortg., Inc. (In re Padilla)*, 379 B.R. 643, 665 (Bankr. S.D. Tex. 2007) (calling section 362(a)(3) an "anti-grab-law statute" and noting that the "intent and purpose of (a)(3) is to prohibit physical taking of property).

**3.      Section 555 of the Bankruptcy Code Does Not Apply to HCLOF.**

62.      Section 365(e)(1) prohibits the operation of an *ipso facto* clause in an executory contract or unexpired lease due the filing of a bankruptcy case.[41] Section 555 provides a "safe harbor" from the automatic stay when a stockbroker, financial institution, financial participant, or securities clearing agency exercises its contractual right under an *ipso facto* clause to liquidate, terminate, or accelerate a securities contract for one of the conditions specified in section 365(e)(1)—that is, the insolvency or financial condition of the debtor, the commencement of a case under title 11, or the appointment of or taking possession by a trustee in a case under title 11.[42] Section 555 does not provide an unqualified right to liquidate, terminate, or accelerate a securities contract in violation of the automatic stay merely because the contract contains a broad termination provision.[43]

63.      Here, although HCLOF has asserted that it is protected under section 555, HCLOF is not exercising a "contractual right . . . [under a] securities contract . . . *because of a condition of the kind specified in section 365(e)(1) of [the Bankruptcy Code]*."[44] Specifically, HCLOF has not demonstrated that it is exercising a contractual right under a securities contract to liquidate, accelerate, or terminate due to an *ipso facto* clause in such contract.

64.      Further, to enjoy the protections of section 555, HCLOF must show that it is a "financial participant" by demonstrating that it has:

> agreements or transactions described in described in paragraph (1), (2), (3), (4), (5), or (6) of section 561(a) with the debtor or any other entity (other than an affiliate) of a total gross dollar value of not less than $1,000,000,000 in notional or actual principal amount outstanding (aggregated across counterparties) at such

---

[41] *See* 3 COLLIER ON BANKRUPTCY ¶ 365.08[1].

[42] *Cf. In re Enron Corp.*, 306 B.R. 465, 472-733 (Bankr. S.D.N.Y. 2004) (reaching the same result under analogous provision of section 560 of the Bankruptcy Code).

[43] *See In re Amcor Funding Corp.*, 117 B.R. 549, 551 (Bankr. D. Ariz. 1990) (finding contractual provision permitting liquidation of a securities contract for *any reason* did not bring contract within section 555's safe harbor provision where liquidation was not triggered by a condition of the kind specified in section 365(e)(1)).

[44] *See* HCLOF's Brief in Opposition to Extending the TRO, Docket No. 271, at 22-27 (emphasis added).

---

time or on any day during the 15-month period preceding the date of the filing of the petition, or has gross market-to-market positions of not less than $100,000,000 (aggregated across counterparties) in one or more such agreements or transactions with the debtor of any other entity (other than an affiliate) at such time or on any day during the 15-month period preceding the date of the filing of the petition.[45]

65.     HCLOF has not demonstrated that it is exercising purported contractual rights under securities contracts with the Debtors or non-affiliates, and therefore has not demonstrated that it is a "financial participant," as required under section 555. HCLOF argues that the "CLO Transaction" is a securities contract, pursuant to which it is exercising its contractual rights, but does not point to the specific contracts by which it meets the requirements under section 555.[46] On information and belief, any purported securities contracts to which HCLOF may be a party (or the vast majority of such contracts) are with affiliates.

66.     Under section 101(2)(C) of the Bankruptcy Code, an affiliate includes a "person whose business is operated under [an] operating agreement by the debtor, or person substantially all of whose property is operated under an operating agreement with the debtor." A "person" includes individuals, partnerships, and corporations.[47] The CLO issuers are limited corporations, and the CLO co-issuers are limited liability companies. Thus each is a "person" under the Bankruptcy Code. Under the PMAs and Indentures, the business of the CLOs is operated by Acis, or substantially all of the CLO property is operated under the PMAs and Indentures. Thus, the CLOs are affiliates of Acis. The Fifth Circuit interprets 101(2)(C) broadly.[48]

67.     Consequently, any contract between HCLOF and a CLO issuer or co-issuer is a contract with an affiliate, and such contract must be excluded in assessing whether HCLOF is a

---

[45] *See id.*; *see also* 11 U.S.C. § 101(22A) (defining "financial participant").
[46] *Cf. Tronox Inc. v. Kerr McGee Corp. (In re Tronox Inc.)*, 503 B.R. 239, 341-343 (Bankr. S.D.N.Y. 2013) (explaining that when a party was argued to be a "financial participant" protected under section 546(e), and the debtors did not identify the securities contract they sought to avoid, the court need not reach the issue).
[47] 11 U.S.C. § 101(41).
[48] *See Templeton v. O'Cheskey (In re Am. Hous. Found.)*, 785 F.3d 143, 155-57 (5th Cir. 2015) (finding affiliate even when the "agreement" is between non-debtors, but one of the non-debtors is effectively a shell entity, and the debtor can sufficiently control the other non-debtor).

financial participant. When excluding such affiliate contracts, HCLOF cannot demonstrate that it is a financial participant under section 101(22A). Simply, HCLOF has not identified its securities contracts with non-affiliates that would qualify it as a financial participant, with the protections provided by section 555.

68.     Accordingly, HCLOF has not shown that the safe harbor of section 555 of the Bankruptcy Code applies to its actions to effectuate the Optional Redemption.

### 4.     The Optional Redemption is Outside the Ordinary Course of the Debtors' Business.

69.     Under section 363(b) of the Bankruptcy Code, the "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." To determine whether a transaction is within the ordinary course of business, courts look to "whether the transaction is abnormal or unusual, in which case it is probably not in the ordinary course of business, or whether it is a reasonably common type of transaction."[49]

70.     The Optional Redemption is not a common event in the course of the Debtors' business. Indeed, the Optional Redemption is an extraordinary event, which would effectively cause the liquidation of the CLOs and the PMAs. This is not in the ordinary course of business.

71.     Further, any party that "deals with a bankruptcy trustee in a transaction that is not in the ordinary course of business is charged with the knowledge that the law may require court approval."[50]

72.     Actions taken by HCLOF in furtherance of the Optional Redemption were outside the ordinary course of the Acis's business and were taken without the Trustee's consent or authorization from the Court. Thus, such actions are ineffective pursuant to 11 U.S.C. § 363(b).

---

[49] 3 COLLIER ON BANKRUPTCY ¶ 363.03[1][a] (citing *In re Dant & Russell, Inc.*, 853 F.2d 700 (9th Cir. 1988) (applying the "horizontal test").
[50] *Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 266 (5th Cir. 2010).

**5.    The Optional Redemption Notices are Defective and Ineffective under the PMAs and the Indentures.**

73.    In addition to violating the Bankruptcy Code, the Optional Redemption Notices were also defective and ineffective on their face, under the PMAs and Indentures.

74.    First, the Optional Redemption Notices were not sent by properly authorized parties, pursuant to that certain PMA, dated November 15, 2017 (the "11-15-17 PMA"), between HCLOF and Highland HCF. Under Section 5(a)(xvii) of this 11-15-17 PMA, Highland HCF has the authority for and in the name of HCLOF to "vote Financial Instruments." The Subordinated Notes referenced in the Optional Redemption Notices are "Financial Instruments" covered by Section 5(a)(xvii). Further, Section 4 of the 11-15-17 PMA requires that State Street Custodial Services (Ireland) Limited ("State Street"), as custodian, "shall at all times be responsible for the . . . exercise of rights and tenders on the Financial Instruments after consultation with and as then directed by [HCLOF]." Yet, the Optional Redemption Notices were signed only by directors of HCLOF, not Highland HCF or State Street.

75.    Further, Section 9.4(a) of the Indenture[51] states that, with any redemption under Section 9.2, the Holders of the Subordinated Notes (currently, HCLOF) must provide written direction/notice of such redemption no later than 45 days prior to the Redemption Date, and Section 9.4(b) requires that all notices of redemption delivered pursuant to Section 9.4(a) state:

> (i) the applicable Redemption Date; (ii) the Redemption Prices of the Notes to be redeemed; (iii) that all of the Secured Notes are to be redeemed in full and that interest on such Secured Notes shall cease to accrue on the Redemption Date . . . (iv) the place or places where Notes are to be surrendered for payment of the Redemption Prices . . . and (v) if all Secured Notes are being redeemed, whether the Subordinated Notes are to be redeemed in full on such Redemption Date and, if so, the place or places where the Subordinated Notes . . . are to be surrendered for payment of the Redemption Prices.

---

[51] This references the Acis 2014-3 Indenture, which is substantially similar the each of the Indentures.

The Optional Redemption Notices fail to provide any such information other than the Redemption Date. Thus, the Optional Redemption Notices are defective on their face.

76. Also, as originally referenced the Trustee's May 22, 2018 Redemption Responses, and as adduced above, completion of the Optional Redemption as requested by the Optional Redemption Notices would, or could reasonably be expected to: (i) violate applicable law; and/or (ii) knowingly and willfully adversely affect the interests of the holders in the assets in any material respect that is not expressly permitted under the PMAs or the Indentures. Under such circumstances, Section 8 of the PMAs requires coordination with the Trustee in order to make indemnification arrangements and providing a legal opinion from outside counsel, which must meet the Trustee's approval. Defendants have not complied with Section 8 of the PMAs.

77. Finally, the Second Optional Redemption Notices make reference to placing "a portion of the portfolio of assets held by the Co-Issuers into a warehouse arrangement or a total return swap or other derivative arrangement with Highland Capital Management, L.P." The Indentures and PMAs do not provide for such an arrangement.

78. Thus, for the numerous deficiencies set forth above, the Optional Redemption Notices are defective and ineffective.

**6. The Trustee Has Not Violated the Investment Advisers Act, the Securities Act of 1933, the Bankruptcy Code, or Any Other Applicable Law, or any Fiduciary Duties Thereunder, by Declining to Carry Out the Optional Redemption.**

79. The Trustee is mindful of his fiduciary obligations under the PMAs and Indentures. At the same time, the Trustee believes any action taken to effectuate the Optional Redemption are in violation of the automatic stay, outside the ordinary course of Acis's business, and an attempt to destroy the primary vehicle by which Acis generates revenue.

80.     HCLOF's contention that the Trustee has breached purported fiduciary duties owed to the CLO's investors under the Investment Advisers Act (the "IAA") or the Securities Act of 1933 (the "33 Act") simply lacks merit.  First, the Trustee is not an "investment adviser" as that term is understood under the IAA.  The Trustee is the Chapter 11 trustee for the bankruptcy estates—he does not provide investment advice, and he does not hold himself out as an investment adviser.  Acis, not the Trustee, is the registered investment adviser for the CLOs. Second, the Trustee has not sold or issued any securities.[52] HCLOF's allegations that the Trustee has violated the IAA, the '33 Act, or any other securities laws are without foundation, lack any specificity, and, ultimately, meritless.

81.     As described above, the Trustee believes the Optional Redemption will violate sections 362 and 363 of the Bankruptcy Code and leave Acis without its most valuable assets, the PMAs. The Trustee has not breached his obligations under the PMAs by declining to carry out the Optional Redemption.  In fact, pursuant to his obligations under the PMAs, the Trustee has advised Highland and HCLOF of his concerns and obligations under the PMAs. Further, and importantly, the Trustee believes he has fulfilled his fiduciary duty to the estates by attempting to maximize value for the benefit of all creditors.  Notably, HCLOF makes no mention of this fiduciary duty in its Brief.

## B.     Substantial Threat of Irreparable Harm

82.     If the Court denies the Motion, HCLOF will not suffer irreparable harm. In fact, if the Trustee can proceed with the Oaktree Transaction, HCLOF will be paid through the plan the economic equivalent of what it would receive in an Optional Redemption.

---

[52] Even if there were a sale of securities (which there has not been), many exemptions exist under securities law that would apply to such a sale.

83.    HCLOF's claim that there is "uncontroverted evidence" before the Court that HCLOF and other CLO investors have been losing approximately $295,000.00 a week is unfounded.  If this is based on the testimony of Bill Scott, this contention lacks credence—he himself admitted that he did not calculate this number and he could not explain its calculation. The Trustee contends that such speculative damages are wholly illusory.  Still, to the extent HCLOF believes it has a claim against the estates, such claim may be treated under the plan.

C.    **Balancing of Harms**

84.    The balancing of the harms weighs in favor of denying HCLOF's Motion. If the Court grants HCLOF's Motion, Highland and its affiliates will strip away the Debtors' assets, as has been their goal since at least October 2017. In fact, imminent and irreparable injury in the form of substantial losses to creditors and parties-in-interest, as well as to third parties' financial interests, related to the Optional Redemption, call, or other liquidation of the CLOs will result. Additionally, The Optional Redemption would eliminate the confirmation of a plan of reorganization based on the Oaktree Transaction, or a similar plan. Thus, with an Optional Redemption, only HCLOF would be paid, while Acis's remaining creditors would likely receive nothing. On the other hand, under a plan, Highland and HCLOF will receive the same monetary benefit from the Oaktree Transaction, creditors will be paid in full, and economic stakeholders would reap a benefit.

85.    Further, like Mr. Scott's unfounded claim that HCLOF and other CLO investors have been losing approximately $295,000.00 a week, the claim that HCLOF's "investors stand to lose over $15 million on an annualized basis" is equally speculative and illusory.

D.    **Public Interest**

86.    Public policy supports allowing the Trustee to exercise his fiduciary duties to maximize the value of the estate for the benefit of creditors by allowing the Trustee to direct and

control the refinancing, sale, or other monetization of Debtors' property and other assets. Further, there is a public interest in allowing for a Chapter 11 process, rather than costly prolonged litigation. Contrary to HCLOF's suggestion, the Trustee has not "gone rogue." He is simply trying to maximize value for the estates and creditors in this Bankruptcy Case (which the Trustee concedes is replete with unique circumstances and challenges). In doing so, contrary to every allegation otherwise advanced by HCLOF, he has complied with the IAA, the '33 Act, the Bankruptcy Code, and common law.

## E.    Unclean Hands

87.    Finally, by their actions prepetition in fraudulently transferring Acis's assets and their continuing efforts to eviscerate Acis's remaining assets during the pendency of these Bankruptcy Cases, Highland and HCLOF have demonstrated that they have unclean hands. [53]

88.    "[O]ne who comes into equity must do so with clean hands." [54] Accordingly, under the doctrine of unclean hands, HCLOF is barred from seeking equitable relief because it itself as acted inequitably. [55] Under this basis alone, HCLOF's request should be denied.

## IV.    PRAYER

89.    For the foregoing reasons, the Trustee respectfully requests that the Court (i) deny HCLOF's Motion and (ii) grant the Trustee all such other and further relief he has shown or hereafter shows himself to be justly entitled in law or in equity.

   **DATED: July 5, 2018.**

---

[53] *See Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 796 (5th Cir. 1999).
[54] *Asarco LLC v. Ams. Mining Corp.*, 396 B.R. 278, 333 (S.D. Tex. 2008) (citing *Nakahara v. NS 1991 Am. Trust,* 739 A.2d 770, 791 (Del. Ch. 1998).
[55] *Asarco LLC*, 396 B.R. at 333; *see Office & Prof'l Emples. Int'l Union, AFL-CIO v. PHI, Inc.*, 2012 U.S. Dist. LEXIS 138542, *25-26 (W.D. La. 2012).

Respectfully submitted,

By:/s/ Rakhee Patel
Rakhee V. Patel
State Bar No. 00797213
Phillip Lamberson
State Bar No. 00794134
Joe Wielebinski
State Bar No. 21432400
Annmarie Chiarello
State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR ROBIN
PHELAN, CHAPTER 11 TRUSTEE**

**-and-**

Jeff P. Prostok
State Bar No. 16352500
J. Robert Forshey
State Bar No. 07264200
Suzanne K. Rosen
State Bar No. 00798518
Matthias Kleinsasser
State Bar No. 24071357
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mkleinsasser@forsheyprostok.com

**COUNSEL FOR THE CHAPTER 11
TRUSTEE**

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 5, 2018, a true and correct copy of the foregoing Response will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District and to the parties on the attached Service List via first class U.S. mail.


*/s/ Jason A. Enright*
One of Counsel