Mark M. Maloney (GA 468104) (admitted *pro hac vice*)
W. Austin Jowers (GA 405482) (admitted *pro hac vice*)
Paul R. Bessette (TX 02263050)
KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, GA 30309
Tel: 404.572.4600
Fax: 404.572.5100
mmaloney@kslaw.com

COUNSEL FOR HIGHLAND CLO FUNDING LTD.

Holland N. O'Neil (TX 14864700)
Jason B. Binford (TX 24045499)
Melina N. Bales (TX 24106851)
FOLEY GARDERE
FOLEY & LARDNER LLP
2021 McKinney Avenue, Ste. 1600
Dallas, Texas 75201
Tel: 214.999.3000
Fax: 214.999.4667
honeil@foley.com

Michael K. Hurst (TX 10316310)
Ben A. Barnes (TX 24092085)
LYNN PINKER COX & HURST, LLP
2100 Ross Avenue, Ste. 2700
Dallas, Texas 75201
Tel: 214.981.3800
Fax: 214.981.3839
mhurst@lynnllp.com

COUNSEL FOR HIGHLAND CAPITAL MANAGEMENT LP

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 18-30264-SGJ-11 |
| ACIS CAPITAL MANAGEMENT, LP, and | § | Case No. 18-30265-SGJ-11 |
| ACIS CAPITAL MANAGEMENT GP, LLC, | § | (Jointly administered under Case No. 18-30264-SGJ-11) |
| Debtors. | § | Chapter 11 |

4813-1980-2477.1

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT LP, et al., | § § § | |
| vs. | § § | Adv. No. 18-03078-SGJ |
| ROBIN PHELAN, Chapter 11 Trustee. | § § | |

| | | |
|---|---|---|
| ROBIN PHELAN, Chapter 11 Trustee. | § § | |
| vs. | § § | Adv. No. 18-03212-SGJ |
| HIGHLAND CAPITAL MANAGEMENT LP, et al., | § § § | |

_____

# NOTICE OF APPEAL

_____

**1.  The appellants—**

The appellants for all appeals are:

- Highland CLO Funding, Ltd. (third party owner of non-debtor property)

- Highland Capital Management, LP (third-party management company)

**2.  Subject of the appeal—**

The orders these appellants appeal are:

- **Doc. 390 – No. 18-30264**: Order Granting Emergency Motion to Approve Break-Up Fee, Expense Reimbursement, and Replacement Sub-Advisory and Shares Services Provider, Oaktree Capital Management LP (entered July 10, 2018) (Appendix A).

- **Doc. 31 – No. 18-03078**: Order Denying Motion for Preliminary Injunctive Relief (entered July 10, 2018) (Appendix B).

- **Doc. 21 – No. 18-03212**: Preliminary Injunction Order (entered July 10, 2018) (Appendix C).

**3.      Appellees—**

| **Chapter 11 Trustee:** | **Counsel:** |
|---|---|
| Robin Phelan, Chapter 11 Trustee | Jeff P. Prostok |
| | J. Robert Forshey |
| | Suzanne K. Rosen |
| | Matthias Kleinsasser |
| | Forshey & Prostok LLP |
| | 777 Main St., Suite 1290 |
| | Fort Worth, Texas 76102 |
| | Telephone: (817) 877-8855 |
| | jprostok@forsheyprostok.com |
| | bforshey@forsheyprostok.com |
| | srosen@forsheyprostok.com |
| | mkleinsasser@forsheyprostok.com |
| | |
| | Rakhee V. Patel |
| | Phillip Lamberson |
| | Winstead PC |
| | 500 Winstead Building |
| | 2728 N. Harwood Street |
| | Dallas, Texas 75201 |
| | Telephone: (214) 745-5400 |
| | rpatel@winstead.com |
| | plamberson@winstead.com |

| Third party: | Counsel: |
|---|---|
| Oaktree Capital Management, L.P. | Louis R. Strubeck Jr. |
| | louis.strubeck@nortonrosefulbright.com |
| | John N. Schwartz |
| | john.schwartz@nortonrosefulbright.com |
| | Norton Rose Fulbright US LLP |
| | 2200 Ross Avenue, Suite 3600 |
| | Dallas, Texas 75201-7932 |
| | Telephone: 214.855.8000 |
| | |
| | Dennis F. Dunne |
| | ddunne@milbank.com |
| | Brian Kinne |
| | bkinney@milbank.com |
| | Milbank Tweed Hadley & McCloy LLP |
| | 28 Liberty Street |
| | New York, NY 10005 |
| | Telephone: 212.530.5770 |
| | |
| | Robert J. Liubicic |
| | rliubicic@milbank.com |
| | Eric Reimer |
| | ereimer@milbank.com |
| | Milbank Tweed Hadley & McCloy LLP |
| | 2029 Century Park East, 33rd Floor |
| | Los Angeles, CA 90067 |
| | Telephone: 424.386.4525 |

**4.**     **Election—**

There is no Bankruptcy Appellate Panel, so the appellants elect review by the U.S.

District Court.

Respectfully submitted,

/s/ Mark M. Maloney
Mark M. Maloney
Georgia Bar No. 468104 (*pro hac vice*)
W. Austin Jowers
Georgia Bar No. 405482 (*pro hac vice*)
King & Spalding LLP
1180 Peachtree Street NE
Atlanta, Georgia 30309
Tel: 404.572.4600
Fax: 404.572.5100
mmaloney@kslaw.com
ajowers@kslaw.com

Paul R. Bessette
Texas Bar No. 02263050
500 West 2nd St., Suite 1800
Austin, Texas 78701-4684
Tel: 512.457.2000
Fax: 512.457.2100
pbessette@kslaw.com

**Counsel for:**
**Highland CLO Funding Ltd.**

/s/ Holland N. O'Neil
Holland N. O'Neil
Texas Bar No. 14864700
Jason B. Binford
Texas Bar No. 24045499
Melina N. Bales
Texas Bar No. 24106851
Foley Gardere
Foley & Lardner LLP
2021 McKinney, Suite 1600
Dallas, Texas 75201
Tel: 214.999.3000
Fax: 214.999.4667
honeil@foley.com

Michael K. Hurst
Texas Bar No. 10316310
Ben A. Barnes
Texas Bar No. 24092085
Lynn Pinker Cox & Hurst LLP
2100 Ross Avenue, Ste. 2700
Dallas, Texas 75201
Tel: 214.981.3800
Fax: 214.981.3839
mhurst@lynnllp.com

**Counsel for:**
**Highland Capital Management LP**

**Appendix A**



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 10, 2018**

United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 18-30264-SGJ-11 |
| | § | Case No. 18-30265-SGJ-11 |
| ACIS CAPITAL MANAGEMENT, L.P., | § | |
| ACIS CAPITAL MANAGEMENT GP, | § | (Jointly Administered Under Case |
| LLC, | § | No. 18-30264-SGJ-11) |
| | § | |
| DEBTORS. | § | Chapter 11 |

### ORDER GRANTING EMERGENCY MOTION TO APPROVE BREAK-UP FEE, EXPENSE REIMBURSEMENT, AND REPLACEMENT SUB-ADVISORY AND SHARED SERVICES PROVIDER, OAKTREE CAPITAL MANAGEMENT, L.P.

On July 6, 2018, the Court held a hearing (the "Hearing") to consider the *Emergency Motion to Approve Break-Up Fee, Expense Reimbursement, and Replacement Sub-Advisory and Shared Services Provider, Oaktree Capital Management, L.P.* [Docket No. 263] (the "Motion""),[1]

filed by Robin Phelan (the "Trustee"), the Chapter 11 Trustee of Acis Capital Management, L.P.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Oaktree Motion.

("Acis LP") and Acis Capital Management GP, LLC ("Acis GP," together with Acis LP, the "Debtors" or "Acis"), as supplemented by the *Chapter 11 Trustee's Supplemental Motion to Break-Up Fee Motion Seeking Court Approval of Procedures to Confirm Plan Funder* [Docket No. 334] (the "Supplement"), and further supplemented by *Oaktree Capital Management, L.P.'s Notice of Amended Commitment Letter* [Docket No. 385] (the "Post-Hearing Amended Commitment Letter," and collectively with the Motion and the Supplement, the "Oaktree Motion"), and the responses and objections thereto filed by Highland Capital Management, L.P. [Docket No. 366], Highland CLO Funding, Ltd. [Docket No. 364], and the Issuers and Co-Issuers[2] [Docket No. 363].

The Court finds that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, and the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court further finds that good and sufficient notice of the Motion has been provided and that no other or further notice is necessary.

Based on a full day of evidence presented at the Hearing, including five witnesses and numerous documents, and the entire record of the proceedings held before the Court in the above-referenced bankruptcy case, for the reasons set forth below, the Court finds that the relief requested in the Oaktree Motion is in the best interests of the Debtors, their estates and their creditors, and that good and sufficient cause exists to grant the relief requested in the Oaktree Motion as modified herein.

## Replacement of Sub-Advisory and Shared Services Provider

The Court finds and concludes that it is within the Trustee's reasonable business judgment to replace Highland as the provider of the sub-advisory services and shared services and there is a

---

[2] The identities of the various Issuers and Co-Issuers are set forth in footnote no. 1 of their Limited Objection.

**ORDER GRANTING EMERGENCY MOTION TO APPROVE BREAK-UP FEE**　　　　　**Page 2 of 9**

sound business justification for it. Not only has there been great friction and conflict between Highland and Acis LP with regard to the portfolio management agreements and almost all things related thereto, both pre-petition in recent months, and subsequent to the appointment of the Trustee post-petition, but the evidence submitted in connection with the Oaktree Motion reflected that Oaktree is highly qualified to replace Highland and will perform the same services heretofore provided by Highland under the Sub-Advisory Agreement and Shared Services Agreement at substantial savings to Acis LP.  The cost to Acis LP for these services will be reduced from approximately 35 basis points to 20 approximately basis points for the CLOs and 30 basis points for the Luxembourg Separate Account.  The Court was presented with no compelling argument that the Investment Advisor Act or any other "applicable law" prohibits the transfer of sub-advisory and other services in connection with the PMAs over to Oaktree.  Any contractual provisions in the PMAs or other documents that purport to prohibit Acis LP from assigning its responsibilities under the PMAs without the written consent of each relevant CLO, at least a majority of the Equity Notes of each CLO, at least a majority of the Controlling Class (as defined in the indentures), and satisfaction of the Global Rating Agency Condition are ***superseded*** by Section 365 of the Bankruptcy Code.  Therefore, the Trustee is granted authority, pursuant to Sections 363, 365, 105, and all other applicable authority to terminate the Shared Services Agreement and Sub-Advisory Agreement, by their own terms, and engage Oaktree to provide these services.

### Expense Reimbursement

The Court finds and concludes that the proposed payment of the Expense Reimbursement with regard to Oaktree is within the Trustee's reasonable business judgment and there is a sound and compelling business justification for same.  *See ASARCO, Inc. v. Elliott Mgmt. (In re Asarco,*

*L.L.C.),* 650 F.3d 593, 602 (5th Cir. 2011) (affirming the approval of expense reimbursement pursuant to Section 363(b)'s business judgment standard rather than Section 503(b)(1)(A)). The Trustee is granted authority to pay the actual, reasonable transaction costs of Oaktree, including reasonable and documented out-of-pocket due diligence, legal (limited to one primary transaction counsel, together with any local, tax or regulatory counsel deemed reasonably necessary) and transportation fees and expenses. In light of the contentious nature of these Cases, the Court concludes that the Trustee has established, in his business judgment, that the Expense Reimbursement is necessary here.

**Break-Up Fee**

The Court finds and concludes that the Break-Up Fee is an actual and necessary cost that will benefit the estate and its creditors and is a reasonable amount that is commensurate with similar transactions. Pursuant to 11 U.S.C. § 503(b)(1)(A), a claim qualifies for allowance as an administrative expense if it is an "actual, necessary cost and expense" of preserving the debtor's bankruptcy estate. "In order to qualify as an 'actual and necessary cost' under section 503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions taken by the trustee that benefitted the estate." *Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.)*, 258 F.3d 385, 387 (5th Cir. 2001). The proponent of the administrative expense has the burden to establish a prima facie case that such administrative claim is (i) actual and necessary; and (ii) benefits the estate and its creditors. *See In re Transamerican Nat. Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992). The Break-Up Fee is an actual and necessary cost that benefits the estate and its creditors. The Break-Up fee will be approximately 2.3% of the Purchase Price. The Trustee has established that this amount is commensurate with similar transactions and to the real and substantial benefits conferred upon the Debtors' estates by

Oaktree's entry into the Commitment Letter, and reasonable and appropriate in light of the size and nature of the proposed Transaction and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by Oaktree.

The Transaction that the Trustee is proposing with Oaktree, as part of a plan, is premised upon Oaktree being a plan funder and the Trustee prevailing on certain legal theories with regard to HCLOF ("New ALF"), such that **the Trustee ultimately receives New ALF's subordinated notes in the CLOs** (which he would thereafter convey to Oaktree). The legal theories are not at all clear cut and are likely to be hotly contested by New ALF and Highland. However, the Transaction, if viable and ultimately approved, will provide an alternative to the "dooms day" scenario contemplated by the Optional Redemptions that have been attempted, on-again-off-again, by New ALF—the latter of which would effectively destroy all value in the Acis PMAs. The Transaction, if viable and ultimately approved, would be preferable to a lengthy and expensive pursuit of avoidance actions and other estate causes of action. The Break-Up Fee, in furtherance of the Transaction, is necessary to preserve the estate. The Break-Up Fee constitutes an actual, necessary cost and expense of preserving these bankruptcy estates. The evidence established that the Break-Up Fee was negotiated in good faith and at arm's length between the Trustee and Oaktree. The Break-Up Fee and Expense Reimbursement are essential inducements and conditions relating to Oaktree's entry into, and continuing obligations under, the Commitment Letter. Oaktree has spent significant time and expense related to the Transaction. It is reasonable to anticipate that Oaktree will continue to incur additional significant time and expense related to the Transaction. If the Transaction fails to close under the circumstances identified in the Commitment Letter, Oaktree should be compensated via the Break-Up Fee and Expense Reimbursement. Unless it is assured that the Break-Up Fee and Expense Reimbursement will be

available, Oaktree has expressed, and the Court believes, it would be unwilling to remain obligated to consummate the Transaction or otherwise be bound under the Commitment Letter. Accordingly, the Break-Up Fee and Expense Reimbursement are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

Because the Break-Up Fee and Expense Reimbursement are essential to prevent immediate and irreparable harm to the Debtors' estates, and to preserve value for all of the Debtors' creditors and stakeholders, sufficient cause exists for a waiver of the stay imposed by Bankruptcy Rule 6004(h) to the extent applicable.

Accordingly, it is hereby **ORDERED** as follows:

1.      The Oaktree Motion is hereby **GRANTED** as set forth herein.

2.      All objections to the Oaktree Motion are overruled.

3.      The Trustee is authorized to engage Oaktree to perform the services previously provided by Highland under the Shared Services Agreement and Sub-Advisory Agreement, on the terms set forth in the Oaktree Motion. The Trustee is authorized to terminate the Shared Services Agreement and Sub-Advisory Agreement with Highland by their own terms.

4.      The Expense Reimbursement is hereby allowed and entitled to priority as an administrative expense under Section 363(b) of the Bankruptcy Code, to be paid as provided for by the Oaktree Motion.  The reimbursement of Oaktree for Expense Reimbursement shall be payable on the earlier of (a) 10 business days after receipt of an invoice in respect of any Expense Reimbursement after the date the Trustee decides not to consummate the Transaction and (b) the closing date of the Transaction.

5.      The Break-Up Fee is hereby allowed and entitled to priority as an administrative expense under Section 503(b) of the Bankruptcy Code, to be paid as provided for by the Oaktree

Motion. The Break-Up Fee will be payable to Oaktree if: (a) the transfer to Oaktree of the Assets is not approved by order of this Court, including through a confirmation order, on or before August 27, 2018 (or within such period, such assets are transferred to a third party not affiliated with Oaktree) or (b) upon entry of such order by the Bankruptcy Court approving the Transaction, such assets are not transferred to Oaktree or affiliates within 15 days thereof (which such 15-day period may be extended by Oaktree in its sole discretion).

6.      The Trustee is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Oaktree Motion.

7.      All parties-in-interest are directed and ordered to in all ways cooperate with the Trustee and Oaktree in connection with the transition of services.

8.      This Order shall be immediately enforceable by the Trustee. The stay imposed by Bankruptcy Rule 6004(h) shall not apply.

9.      The dates and deadlines set forth in the Supplement for the procedures pertaining to the submission of any other Qualified Proposals shall be extended by one week as follows:

(a)      The deadline for submission of Qualified Proposals (as defined in the Supplement) is **July 19, 2018 at 4:00 p.m. Central Time**;

(b)      The Trustee shall notify Oaktree of the details of such Qualified Proposal(s) by email no later than **July 20, 2018 at 4:00 p.m. Central Time**;

(c)      The Trustee shall notify Oaktree and any other party that submitted a Qualified Proposal by email no later than **July 23, 2018** of which Qualified Proposal the Trustee has determined to be the best proposal.

(d)      On **July 23, 2018**, shall file a Notice of Selection of Proposal with the Court identifying the party that submitted the successful proposal and summarizing the material terms thereof; and,

(e)      A final hearing to approve a designated plan funder shall be held as soon as possible after **July 23, 2018**, but no later than **July 27, 2018**.

10.      The Trustee shall serve a copy of this Order via first class United States mail, postage prepaid, to all known parties-in-interest in these bankruptcy cases.

11.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order, including any disputes about the reasonableness or necessity of any expenses reasonably questioned by the Trustee.

### ### END OF ORDER ###

Submitted by:

**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)

By:*/s/ Rakhee V. Patel*
Rakhee V. Patel
State Bar No. 00797213
Phillip Lamberson
State Bar No. 00794134
Joe Wielebinski
State Bar No. 21432400
Annmarie Chiarello
State Bar No. 24097496
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**PROPOSED SPECIAL COUNSEL FOR
ROBIN PHELAN, CHAPTER 11 TRUSTEE**

**ORDER GRANTING EMERGENCY MOTION TO APPROVE BREAK-UP FEE**      **Page 8 of 9**

-and-

Jeff P. Prostok
State Bar No. 16352500
J. Robert Forshey
State Bar No. 07264200
Suzanne K. Rosen
State Bar No. 00798518
Matthias Kleinsasser
State Bar No. 24071357
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mkleinsasser@forsheyprostok.com

**COUNSEL FOR THE CHAPTER 11 TRUSTEE**

**Appendix B**



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

Signed July 10, 2018

_____
United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 18-30264-SGJ-11 |
| | § | Case No. 18-30265-SGJ-11 |
| ACIS CAPITAL MANAGEMENT, L.P., | § | |
| ACIS CAPITAL MANAGEMENT GP, | § | **(Jointly Administered Under Case** |
| LLC, | § | **No. 18-30264-SGJ-11)** |
| | § | |
| Debtors. | § | Chapter 11 |
| | § | |

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, | § | |
| L.P., AND HIGHLAND CLO FUNDING, | § | |
| LTD. F/K/A ACIS LOAN FUNDING, LTD., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Adversary No. 18-03078-SGJ |
| vs. | § | |
| | § | |
| ROBIN PHELAN, Chapter 11 Trustee, | § | |
| | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

Upon the *Motion for Preliminary Injunctive Relief* [Adversary No. 18-03078, Docket No. 18] *(*the "PI Motion") filed by Highland CLO Funding, Ltd. ("HCLOF"), and the Court having jurisdiction over this matter pursuant 28 U.S.C. §§ 157 and 1334; and venue being proper in this district pursuant to 28 U.S.C. §§ 1409 and 1409; and HCLOF having consented to entry of an order on the PI Motion; and it appearing that there was good and sufficient notice of the PI Motion, and upon the record of the hearing on the PI Motion; and pursuant to Federal Rule of Civil Procedure 65, incorporated by Federal Rule of Bankruptcy Procedure 7065, the Court finds cause exists to deny the PI Motion and finds the following:

1. To obtain a preliminary injunction, the movant must show (a) it has a substantial likelihood of prevailing on the merits; (b) it will suffer irreparable injury without the injunction; (c) the threatened injury to the movant outweighs the damage the proposed injunction may cause to the parties opposing it; and (d) that the requested injunction would not be against the public interest. *Clark v. Pritchard*, 812 F.2d 991, 993 (5th Cir. 1987); *Planned Parenthood Gulf Coast, Inc. v. Kliebert,* 141 F.Supp. 3d 604, 635 (M.D. La. 2015); *Miranda v. Wells Fargo Bank, N.A.,* No. 3:13-CV-2217-L, 2013 U.S. Dist. LEXIS 90632 (N.D. Tex. June 27, 2013). The Court has determined that HCLOF did not meet its burden on these elements.

2. Through the PI Motion,[1] HCLOF requests the Court preliminarily enjoin the Trustee from "interfering with, or failing to follow instructions related to, the Pending Notices

---

[1] On June 21, 2018, Robin Phelan, the Chapter 11 Trustee (the "Trustee") for Acis Capital Management, L.P., ("Acis LP") and Acis Capital Management GP, LLC ("Acis GP," with Acis LP, "Debtors") filed the *Verified Original Complaint and Application for Temporary Restraining Order and Preliminary Injunction* [Adversary No. 18-03212, Docket No. 1] (the "Complaint"). The Court set the Trustee's Application for Preliminary Injunction (the "Trustee's Application") for hearing at the same time as HCLOF's PI Motion and the Break-Up Fee Motion (as hereinafter defined) (the "Hearings"). The Hearings were held on July 6, 2018. After the Hearings, by separate order, the Court granted the Trustee's Application (the "Trustee PI Order"). The PI Motion seeks the exact opposite relief granted by the Trustee PI Order and the relief granted by the Trustee PI Order precludes the relief requested by the PI Motion. Furthermore, the Court's reasoning in the Trustee PI Order supports and is incorporated by the denial of the PI

(as defined by the PI Motion) or any other valid instructions provided to Acis LP under the CLO Indentures (as defined by the PI Motion)" ("PI Request One"). *See* PI Motion ¶ 1. With respect to PI Request One, the Court finds that HCLOF failed to meet its burden that: (a) HCLOF has a substantial likelihood of prevailing on the merits; (b) HCLOF will suffer irreparable injury without the injunction; (c) the threatened injury to HCLOF outweighs the damage the proposed injunction may cause to the parties opposing it; and (d) that the requested injunction would not be against the public interest.

3.      Through the PI Motion,[2] HCLOF also requests the Court preliminarily enjoin the Trustee from "continuing his efforts to effect a transaction for the transfer of HCLOF's Equity Notes (as defined by the PI Motion) without HCLOF's consent" ("PI Request Two"). *See* PI Motion ¶ 1. With respect to PI Request Two, the Court finds that HCLOF failed to meet its burden that: (a) HCLOF has a substantial likelihood of prevailing on the merits; (b) HCLOF will suffer irreparable injury without the injunction; (c) the threatened injury to HCLOF outweighs the damage the proposed injunction may cause to the parties opposing it; and (d) that the requested injunction would not be against the public interest. In support of the Court's denial of PI Request Two the Court notes:

---

Motion. All term(s) not defined herein have the meaning(s) ascribed to such terms by the Trustee PI Order.  The Trustee PI Order enjoins HCLOF and others from: (a) proceeding with, effectuating, or otherwise taking any action in furtherance of any Optional Redemption, call, or other liquidation of the Acis CLOs,  previously or currently issued by the Defendants,  and any other attempt to liquidate the Acis CLOs, now or in the future by any means; (b) trading any Acis CLO collateral, whether in furtherance of the Optional Redemption, call, or other liquidation of the Acis CLOs or otherwise, without the express and explicit written authorization of the Trustee; and (c) sending, mailing, or otherwise distributing any notice to the holders of the Acis CLOs in connection with the effectuation of any Optional Redemption, call, or other liquidation of the Acis CLOs.

[2] On June 8, 2018, Robin Phelan, the Trustee filed the Emergency *Motion to Approve Break-Up Fee, Expense Reimbursement, and Replacement Sub-Advisory and Shared Services Provider, Oaktree Capital Management, L.P.*[Case No. 18-30034, Docket No. 263] (the "Break-Up Fee Motion"). After the Hearings, by separate order, the Court granted the relief requested in the Break-Up Fee Motion (the "Break-Up Fee Order") and the relief requested in the Trustee's Application. The PI Motion seeks the exact opposite relief granted by the Break-Up Fee Order and the Trustee PI Order. The Break-Up Fee Order and the Trustee PI Order preclude the relief requested by the PI Motion.

A.      The Trustee is not proposing in his plan that the HCLOF Equity Notes (as defined by the PI Motion) would be sold or transferred to Oaktree Capital Management, L.P. ("Oaktree") or any other third party without HCLOF's consent, *per se*.

B.      The Trustee is not proposing a sale of non-estate property.

C.      The Trustee is not proposing a violation of the special purpose entity structure of the CLOs.

D.      The Trustee has legal theories that he seeks to present that might establish:  (a) that HCLOF has made a demand for specific performance against the Acis LP bankruptcy estate, and sought other relief, that might make it a holder of a "claim" against the estate pursuant to section 101(5)(B) of the Bankruptcy Code; (b) the Trustee has options for treating such a "claim" by satisfying it with money damages; (c) if the Trustee prevails on theories (a) and (b), the Trustee believes the Trustee can be subrogated to the rights of HCLOF as to the Equity Notes (as defined by the PI Motion) and will be entitled to demand their transfer to him, to avert double-recovery as to HCLOF; and (d) once the Trustee has the Equity Notes (as defined by the PI Motion), the Trustee can transfer them to Oaktree or other third parties.

E.      The Trustee additionally believes that he has fraudulent transfer claims against HCLOF, in respect to rights transferred from Acis LP to HCLOF in the weeks before bankruptcy without fair consideration in return, and these claims may additionally provide an avenue for the Trustee to reach the Equity Notes (as defined by the PI Motion).

Accordingly, it is hereby **ORDERED** that the PI Motion is **DENIED**.

### ### END OF ORDER ###

Submitted by:

**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)


By:      */s/ Rakhee V. Patel*
Rakhee V. Patel
State Bar No. 00797213
rpatel@winstead.com
Phillip Lamberson
State Bar No. 00794134

**ORDER DENYING PRELIMINARY INJUNCTION**                                              **4**

plamberson@winstead.com
Joe Wielebinski
State Bar No. 21432400
jwielebinski@winstead.com
Annmarie Chiarello
State Bar No. 24097496
achiarello@winstead.com

**SPECIAL COUNSEL FOR**
**ROBIN PHELAN, CHAPTER 11 TRUSTEE**

-and-

Jeff P. Prostok
State Bar No. 16352500
J. Robert Forshey
State Bar No. 07264200
Suzanne K. Rosen
State Bar No. 00798518
Matthias Kleinsasser
State Bar No. 24071357
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mkleinsasser@forsheyprostok.com

COUNSEL FOR
THE CHAPTER 11 TRUSTEE

**Appendix C**



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

**Signed July 10, 2018**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 18-30264-SGJ-11 |
| | § | Case No. 18-30265-SGJ-11 |
| ACIS CAPITAL MANAGEMENT, L.P., | § | |
| ACIS CAPITAL MANAGEMENT GP, | § | (Jointly Administered Under Case |
| LLC, | § | No. 18-30264-SGJ-11) |
| | § | |
| Debtors. | § | Chapter 11 |
| | § | |

| | | |
|---|---|---|
| ROBIN PHELAN, Chapter 11 Trustee, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | Adversary No. 18-03212-SGJ |
| HIGHLAND CAPITAL MANAGEMENT, | § | |
| L.P.,  HIGHLAND CLO FUNDING, LTD. | § | |
| f/k/a ACIS LOAN FUNDING, LTD., CLO | § | |
| HOLDCO, LTD., NEUTRA, LTD.,  ACIS | § | |
| CLO 2014-3 LTD., ACIS CLO 2014-4 LTD., | § | |
| ACIS CLO 2014-5 LTD., ACIS CLO 2015-6 | § | |
| LTD., ACIS CLO 2014-3 LLC, ACIS CLO | § | |
| 2014-4 LLC, ACIS CLO 2014-5 LLC, and | § | |
| ACIS CLO 2015-6 LLC, | § | |
| | § | |
| Defendants. | § | |

# PRELIMINARY INJUNCTION ORDER

Upon the *Verified Original Complaint and Application for Temporary Restraining Order and Preliminary Injunction* [Adversary No. 18-03212, Docket No. 1] *(*the "Complaint")[1] filed by Robin Phelan, the Chapter 11 Trustee (the "Trustee") for Acis Capital Management, L.P. ("Acis LP") and Acis Capital Management GP, LLC ("Acis GP", with Acis LP, "Debtors"); and the Court having jurisdiction over this matter pursuant 28 U.S.C. §§ 157 and 1334; and venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and the Complaint constituting a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O); and the substantive law being 11 U.S.C. §§ 105, 362, and 363; and it appearing that there was good and sufficient notice of the Trustee's Application for Preliminary Injunction ("Application"); and upon the record of the July 6, 2018 hearing on the Application (the "Hearing"); and upon the Trustee's verification of the Complaint; and pursuant to Federal Rule of Civil Procedure 65, incorporated by Federal Rule of Bankruptcy Procedure 7065, the Court finds that there is compelling evidence that irreparable harm is imminent to the Debtors, the Debtors' estates, the Debtors' rights, the Debtors' creditors, and to interested third parties (collectively the "Parties"), and if the Court does not issue a preliminary injunction enjoining the actions described herein, the Parties will be irreparably injured. All objections to the Trustee's Application are hereby overruled. As the basis for this order, the Court states the following:

1.　　　The Chapter 11 Debtor, Acis LP—which is affiliated with the large investment advisor firm Highland Capital Management, L.P. ("Highland")—is a company that, for several years, has been engaged in the business of managing investments for special purpose entities that hold collateralized loan obligations ("CLOs"). Acis LP is currently the portfolio manager for,

---

[1] Capitalized term(s) not expressly defined herein shall have the same meaning(s) as such term(s) have in the Complaint.

*inter alia*, funds of the following CLOs: (i) Acis CLO 2013-1 Ltd. ("CLO-1"), (ii) Acis CLO 2014-3 Ltd. ("CLO-3"), (iii) Acis CLO 2014-4 Ltd. ("CLO-4"), (iv) Acis CLO 2014-5 Ltd. ("CLO-5"), and (v) Acis CLO 2015-6 Ltd. ("CLO-6" and together with CLO-1, CLO-3, CLO-4, and CLO-5, the "Issuers" or the "Acis CLOs"). As relevant herein, Acis LP manages the Acis CLOs through five portfolio management agreements ("PMAs").[2] Acis LP generates revenue primarily through the management of the Acis CLOs via the PMAs. True and correct copies of the PMAs were submitted into evidence at the Hearing (Trustee's Exhibits B-F). The Acis CLOs are subject to: (i) that certain Indenture, dated as of March 18, 2013, by among CLO-1, as Issuer, Acis CLO 2013-1 LLC, as Co-Issuer and U.S. Bank National Association ("US Bank"); (ii) that certain Indenture, dated as of February 25, 2014, by and among CLO-3, as Issuer, Acis CLO 2014-3 LLC, as Co-Issuer and U.S. Bank, as Indenture Trustee (the "CLO-3 Indenture"); (iii) that certain Indenture, dated as of June 5, 2014, by and among CLO-4, as Issuer, Acis CLO 2014-4 LLC, as Co-Issuer and US Bank, as Indenture Trustee (the "CLO-4 Indenture"); (iv) that certain Indenture, dated as of November 18, 2014, by and among CLO-5, as Issuer, Acis CLO 2014-5 LLC, as Co-Issuer and US Bank, as Indenture Trustee (the "CLO-5 Indenture"); and (v) that certain Indenture, dated as of April 16, 2015, by and among CLO-6, as Issuer, Acis CLO 2015-6 LLC, as Co-Issuer and US Bank, as Indenture Trustee (the "CLO-6 Indenture"). The CLO-1 Indenture, CLO-3 Indenture, CLO-4 Indenture, CLO-5 Indenture, and CLO-6 Indenture are collectively referred to herein as the "Indentures." True and correct copies of the Indentures were submitted into evidence (Trustee's Exhibits G-K).

---

[2] The PMAs include: (i) that certain Portfolio Management Agreement by and between Acis LP and CLO-1, dated March 18, 2013 (the "CLO-1 PMA"); (ii) that certain Portfolio Management Agreement by and between Acis LP and CLO-3, dated February 25, 2014 (the "CLO-3 PMA"); (iii) that certain Portfolio Management Agreement by and between Acis LP and CLO-4, dated June 5, 2014 (the "CLO-4 PMA"); (iv) that certain Portfolio Management Agreement by and between Acis LP and CLO-5, dated November 18, 2014 (the "CLO-5 PMA"); and (v) that certain Portfolio Management Agreement by and between Acis LP and CLO-6, dated April 16, 2015 (the "CLO-6 PMA"). The CLO-1 PMA, CLO-3 PMA, CLO-4 PMA, CLO-5 PMA, and CLO-6 PMA are collectively referred to herein as the "PMAs."

2.      Highland CLO Funding, Ltd. f/k/a/ Acis Loan Funding Ltd. ("HCLOF" or "ALF")
has had, in recent months, a significant role with regard to Acis LP, and the PMAs, and the
whole "CLO ecosystem"—as the parties in this bankruptcy case have been known to call the
structure of the Acis LP CLO business. ALF apparently was originally created, in large part, to
comply with certain risk-retention requirements of federal law relating to CLOs. ALF has been
the holder of the equity in the Acis CLOs (which "equity" is actually in the form of subordinated
notes, and is the bottom traunch of the capital structure of the Acis CLOs—i.e., the last investor
to get paid upon a liquidation of the Acis CLOs).  Notably, persons connected with Highland
began implementing transactions that changed the Acis LP "CLO ecosystem" and impaired Acis
LP's contractual rights, almost immediately after October 20, 2017—the date that an individual
named Joshua Terry obtained a multi-million arbitration award against Acis LP.  For example,
prior to October 24, 2017, Acis LP had a small ownership interest in ALF.  Acis LP (being
controlled at that time by the same persons that control Highland) decided to sell its interest in
ALF back to ALF on or around October 24, 2017

3.      Prior to October 27, 2017, Acis LP—not ALF—had authority to direct and
effectuate an optional redemption under the PMAs. Acis LP had this authority pursuant to
another Portfolio Management Agreement by and between Acis LP and ALF, dated December
22, 2016 (the "ALF PMA").  A true and correct copy of the ALF PMA was submitted into
evidence (Trustee's Exhibit L). The ALF PMA provided broad authority to Acis LP as the
portfolio manager of ALF. Section 5 of the ALF PMA set out Acis LP's authority, which
included authority for and in the name of ALF to:

> (i) invest, directly or indirectly . . . in all types of securities and other financial
> instruments of United States and non-U.S. entities . . . including without limitation . . .
> notes representing tranches of debt ('CLO Notes') issued by a special purpose vehicle
> which issues notes backed by a pool of collateral consisting primarily of loans (which

may be represented by a debt or equity security) (a 'CLO') . . . (each of such items, 'Financial Instruments'), (ii) provide credit and market research and analysis in connection with the investments and ongoing management of [ALF] and direct the formulation of investment policies and strategies for [ALF] . . . ; (iii) cause [ALF] to engage in . . . agency, agency cross, related party principal transactions with affiliates of [Acis LP] . . . ; and (iv) vote Financial Instruments, participate in arrangements with creditors, the institution and settlement or compromise of suits and administrative proceedings and other like or similar matters.

*See* ALF PMA § 5(a)-(q).

4.     While ALF did not have authority to terminate the ALF PMA, ***Acis LP*** could terminate the ALF PMA without cause upon at least ninety (90) days' notice. *See* ALF PMA § 13(a)-(c). Still, the ALF PMA provided for the removal of Acis LP as portfolio manager "for cause." *See* ALF PMA § 14(a)-(e).

5.     Significantly, on October 27, 2017, ***just seven days after Joshua Terry's arbitration award, Acis LP effectively terminated its own portfolio management rights under the ALF PMA and transferred its authority and those valuable portfolio management rights— for no apparent value—to Highland HCF Advisors, Ltd. ("<u>Highland HCF</u>").***

6.     This transfer of Acis LP's portfolio management rights to Highland HCF was accomplished by way of a new Portfolio Management Agreement entered into by ALF and Highland HCF on October 27, 2017 (the "<u>October 2017 PMA</u>"), which cancelled and terminated the ALF PMA and empowered Highland HCF with the same broad authority to direct the management of ALF as was previously held by Acis LP under the ALF PMA (the "<u>ALF PMA Transfer</u>"). *See* October 2017 PMA §§ 1 & 5(a)-(q).

7.     Under the prior ALF PMA, Acis LP's consent to the termination of the ALF PMA was required in order to effectuate the ALF PMA Transfer. Nevertheless, just days after the Joshua Terry multimillion dollar arbitration award was issued, the persons controlling Acis LP (and Highland), without expressing the basis for reasonable business judgment for this transfer,

simply directed Acis LP to sign the October 2017 PMA, consenting and agreeing to Acis LP's removal and replacement, and transferring all authority and management rights as portfolio manager of ALF to Highland HCF under the October 2017 PMA. *It appears to the Court that, without this ALF PMA Transfer, which transferred Acis LP's rights under the ALF PMA to Highland HCF, ALF—which changed its name in late October 2017 to Highland CLO Funding Ltd.—could not have attempted to direct and effectuate an optional redemption, which it is now attempting to do.*

8.      On April 30, 2018, HCLOF sent five notices purportedly requesting optional redemption pursuant to the Section 9.2 of each of the Indentures (the "First Optional Redemption Notices")—which essentially ordered a liquidation of the Acis CLOs, which among other things, would have rendered valueless the Acis PMA and Acis LP's value. Those notices were later withdrawn, after resistance from the Trustee and Court intervention.

9.      Later, on June 15, 2018, after HCLOF withdrew the First Optional Redemption Notices, HCLOF gave notice to the Trustee that it was again requesting an Optional Redemption pursuant to the Section 9.2 of each of the Indentures (the "Second Optional Redemption Notices"). Apparently, HCLOF has now withdrawn the Second Optional Redemption Notices. However, the Trustee seeks a preliminary injunction preventing further attempts by HCLOF at effectuating Optional Redemptions while the Trustee attempts to confirm a plan or otherwise resolve the Acis LP bankruptcy case in a way beneficial to creditors and interest holders. "Optional Redemption" is defined by and effectuated pursuant to Sections 9.2 of each of the Indentures. For the avoidance of doubt, Optional Redemption as used herein refers to an Optional Redemption previously or currently issued by HCLOF or any of the Defendants (as

hereinafter defined) or any other attempt to liquidate the Acis CLOs now or in the future by any means.

10.     The Trustee has sustained his heavy burden of entitlement to a preliminary injunction in this Adversary Proceeding.  First, absent affirmative relief from the automatic stay, any action to effectuate an Optional Redemption by way of any Optional Redemption notices violates the automatic stay of the Acis LP bankruptcy case because it represents an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Further, any action taken by the Defendants to effectuate an Optional Redemption is outside the ordinary course of Acis LP's business, and therefore requires bankruptcy court approval.  Acis LP's rights under the PMAs are valuable, and if Acis LP were to lose such rights, immediate and irreparable harm would result to Acis LP's creditors and third parties with financial interests in the Acis LP's bankruptcy estates because confirmation of a plan of reorganization funded by Oaktree Capital Management, L.P. ("Oaktree") pursuant to the Oaktree Transaction (as defined and explained by the *Emergency Motion to Approve Break-Up Fee, Expense Reimbursement, and Replacement Sub-Advisory and Shared Services Provider, Oaktree Capital Management, L.P.* [Case No. 18-30264, Docket No. 263] (the "Break-Up Fee Motion")—or, perhaps, any other viable transaction—would be impossible. In addition to the Oaktree Transaction, the Trustee credibly testified that he has received expressions of interests from other qualified parties to fund alternative plans of reorganization for Acis LP, which may include a reset of the CLOs and continuance of Acis LP as the portfolio manager of the CLOs. Finally, HCLOF is using rights that appear to have been fraudulently transferred from Acis LP (i.e., rights under the ALF PMA) to attempt to effectuate the Optional Redemptions.

11.     To obtain a preliminary injunction, the movant must show that (a) it has a substantial likelihood of prevailing on the merits; (b) it will suffer irreparable injury without the injunction; (c) the threatened injury to the movant outweighs the damage the proposed injunction may cause to the parties opposing it; and (d) the requested injunction would not be against the public interest. *Clark v. Pritchard*, 812 F.2d 991, 993 (5th Cir. 1987); *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, 141 F.Supp. 3d 604, 635 (M.D. La. 2015); *Miranda v. Wells Fargo Bank, N.A.*, No. 3:13-CV-2217-L, 2013 U.S. Dist. LEXIS 90632 (N.D. Tex. June 27, 2013). The Court must necessarily make its decision by relying on an early and abbreviated proceeding and set of facts. *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975). Quick and abbreviated determinations are necessary to recognize the goal of injunctive relief, which is to maintain the status quo to permit the court the time necessary to make a decision on the merits after full development of the facts. *Kliebert*, 141 F. Supp. 3d at 635. Moreover, not all of the four (4) factors must be given equal weight. According to the Fifth Circuit Court of Appeals: "a sliding scale must be applied in considering the probability of plaintiffs' winning on the merits and plaintiffs' irreparable injury in the absence of interlocutory relief…." (*Siff v. State Democratic Executive Committee*, 500 F.2d 1307, 1309 (5th Cir. 1974)) and "…none of the four prerequisites has a fixed quantitative value. Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Texas v. Seatrain Int'l, S.*A., 518 F.2d 175, 179-180 (5th Cir. 1975). This means that as long as the court finds that there is some likelihood of ultimate success (i.e., not zero likelihood of success), the court can give greater weight to the severity and irreparability of the harm and the relative hardships to the movant and opponent of the injunctive relief. *Id.*

12.     The Trustee has shown that the elements warranting a preliminary injunction exist here: (1) the Trustee has a "substantial likelihood of success on the merits" of a claim regarding (i) violation of the automatic stay if injunction is not granted, (ii) utilizing rights transferred for no or insufficient value to attempt to effectuate an optional redemption, (iii) failing to obtain court authority under Section 363 to effectuate an optional redemption, and (iv) confirmation of an effective plan of reorganization; (2) creditors and interested third-parties face a substantial threat of imminent and irreparable injury to their interests in the Debtors' bankruptcy estates if an injunction is not issued since confirmation of a plan of reorganization funded by Oaktree or other competent party will be eliminated; (3) the threatened injury to interested parties "if the injunction is denied outweighs any harm that will result if the injunction is granted"; and (4) "public interest" favors letting the Trustee exercise his fiduciary duties and effectuate his process over costly litigation. *See Byrum v. Landreth,* 566 F.3d 442, 445 (5th Cir. 2009) (stating the elements of a preliminary injunction).

13.     As earlier noted, the Optional Redemption Notices essentially demand the liquidation of property currently under the control of Acis LP, as portfolio manager, and, in effect, the PMAs themselves, which are defined as Assets under the Indentures and are property of the Acis LP estate. Indeed, the main, if not sole, purpose of the redemptions appears to be to remove Acis LP as portfolio manager and terminate its primary asset, the PMAs. Accordingly, by extinguishing the PMAs, a purported Optional Redemption in this context should be deemed prohibited because it would represent an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" in violation of 11 U.S.C. § 362(a)(3). The Debtors' rights under the PMAs, which are executory contracts, are property of the estate. The Debtors' rights under the PMAs are therefore protected by the

automatic stay. *In re Mirant Corp.*, 303 B.R. 319, 328 (Bankr. N.D. Tex. 2003) ("a debtor has rights under the contract which are property of the estate and so are protected by the automatic stay from actions of other parties"). If the Optional Redemption or other liquidation of the assets in the Acis CLOs is permitted to go forward, it would render the PMAs valueless. Consequently, the Optional Redemption and any other attempt by HCLOF to liquidate the assets of the Acis CLOs would violate Section 362(a)(3) because such actions involve exercising control over property of the estate (the PMAs). Thus, because the liquidation of the CLOs represents an "act to obtain possession of property of the estate,"—namely, Acis LP's intangible property rights in the PMAs—such actions constitute a violation of Section 362(a)(3).

14. Injunctive relief is necessary here to prevent imminent and irreparable injury in the form of substantial losses to creditors and parties-in-interest, as well as to third parties' financial interests, related to the Optional Redemption, call, or other liquidation of the Acis CLOs. The losses that would result in the event an injunction is not issued cannot be presently measured by any certain pecuniary standard, are not reasonably quantifiable, and cannot be adequately compensated with monetary damages; thus, creditors and interested third parties otherwise would have no adequate remedy at law. The Optional Redemption would eliminate any chance of confirmation of a plan of reorganization based on the Oaktree Transaction, or a similar plan. HCLOF has not shown that the safe harbor of Section 555 of the Bankruptcy Code applies to its actions to effectuate the Optional Redemption.

15. The balancing of the harms weighs in favor of issuing a preliminary injunction because any alleged harm to HCLOF, Highland, or any of the Highland Affiliates,[3] is substantially outweighed by the damage that would be caused to all parties-in-interest if the

---

[3] The Highland Affiliates include: HCLOF, CLO Holdco, Ltd. ("Holdco"), and Neutra, Ltd. ("Neutra," and together with HCLOF, and Holdco, the "Highland Affiliates"),

**PRELIMINARY INJUNCTION ORDER**                                                                    **10**

Court does not enjoin the Optional Redemption, call, or other liquidation of the Acis CLOs, and return more to all affected parties than would be received by the Optional Redemption. Any alleged harm to Defendants is illusory and specious because, among other things, the Defendants have options available that immediately mitigate any purported damage. Namely, Defendants could (1) authorize a "refinance" or "reset" transaction or (2) sell their equity to a third party in an amount that exceeds what they would receive in an Optional Redemption. There seems to the Court to be a highly meaningful chance that HCLOF, Highland and the Highland Affiliates will receive the same or more monetary benefit from the Oaktree Transaction than they would from an Optional Redemption, and creditors will likely be paid in full. HCLOF's claimed harm is exaggerated.

16.    Public policy supports restraining the actions described herein to allow the Trustee to exercise his fiduciary duties to maximize the value of the estate for the benefit of creditors by allowing the Trustee to direct and control the refinancing, sale, or other monetization of Debtors' property and other assets. Further, there is a public interest in allowing for a Chapter 11 process, rather than costly prolonged litigation.

17.    Accordingly, the Court issues this preliminary injunction preventing the Defendants from taking any action in furtherance of any Optional Redemption. Any notices of optional redemption sent by HCOLF would be an attempt to obtain a property right (the right to control trading of the loans in the CLOs) from Acis LP as well as an attempt to exercise control over contractual property rights of Acis LP, all in violation of Section 362(a)(3) of the Bankruptcy Code.

18.    The Parties will suffer immediate and irreparable harm in the form of substantial losses to the Parties and third parties' financial interests if the Trustee, Highland, CLO-1, CLO-3,

CLO-4, CLO-5, CLO-6, Acis CLO 2013-1 LLC ("CLO-1 LLC"), Acis CLO 2014-3 LLC ("CLO-3 LLC"), Acis CLO 2014-4 LLC ("CLO-4 LLC"), Acis CLO 2014-5 LLC ("CLO-5 LLC"), and Acis CLO 2015-6 LLC ("CLO-6 LLC," and together with CLO-1 LLC, CLO-3 LLC, CLO-4 LLC, CLO-5 LLC, the "Co-Issuers"), and other parties (the Trustee, Highland, HCLOF, the Issuers, and the Co-Issuers are referred to herein as the "Defendants") are not immediately restrained and enjoined from effectuating the Optional Redemption, call, or other liquidation of the Acis CLOs. The Optional Redemption, call, or other liquidation of the Acis CLOs threatens to liquidate or harm valuable property of the Debtors, the Debtors' rights, the Debtors' estates, and other assets in this matter, to the detriment of the Parties.

19.     Injunctive relief is necessary to prevent imminent and irreparable injury to the Parties in the form of substantial losses to the Parties and third parties' financial interests related to the Optional Redemption, call, or other liquidation of the Acis CLOs and the threatened liquidation of valuable property of the Debtors, the Debtors' rights, the Debtors' estates, and other assets in this matter. The losses that would result in the event a preliminary injunction order is not issued cannot be presently measured by any certain pecuniary standard, are not reasonably quantifiable, and cannot be adequately compensated with monetary damages; thus, the Parties and interested third parties otherwise have no adequate remedy at law.

20.     The Trustee has a "substantial likelihood of success on the merits" of a claim regarding: (i) violation of the automatic stay if this temporary restraining order is not issued, (ii) failing to obtain court authority under Section 363 to effectuate an optional redemption, and (iii) confirmation of an effective plan of reorganization.

21.     The balancing of the harms weighs in favor of issuing the temporary injunction because any harm to Highland, or any of the Highland Affiliates, is substantially outweighed by

the damage that would be caused to Parties if the Optional Redemption, call, or other liquidation of the Acis CLOs is not enjoined.

22.     Public policy supports restraining the actions described herein and allowing the Trustee to exercise his fiduciary duties to maximize the value of the estate for the benefit of the Parties by allowing the Trustee to direct and control the refinancing, sale, or other monetization of Debtors' property, the Debtors' rights, the Debtors' estates, and other assets in this matter.

**IT IS THEREFORE ORDERED** that for the reasons stated herein and pursuant to Federal Rule of Civil Procedure 65, made applicable herein by Federal Rule of Bankruptcy Procedure Rule 7065 and pursuant to Federal Rule of Bankruptcy Procedure Rule 7001(7) the Court finds the Trustee is entitled to a preliminary injunction, that all Defendants and their officers, agents, servants, employees, attorneys, and any other person or entity acting on the Defendants' behalf are enjoined from:

a.      proceeding with, effectuating, or otherwise taking any action in furtherance of any Optional Redemption, call, or other liquidation of the Acis CLOs previously or currently issued by the Defendants and any other attempt to liquidate the Acis CLOs now or in the future by any means;

b.      trading any Acis CLO collateral, whether in furtherance of the Optional Redemption, call, or other liquidation of the Acis CLOs or otherwise, without the express and explicit written authorization of the Trustee; and

c.      sending, mailing, or otherwise distributing any notice to the holders of the Acis CLOs in connection with the effectuation of any Optional Redemption, call, or other liquidation of the Acis CLOs.

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Bankruptcy Procedure 7065, the Trustee is not required to provide security or bond in connection with this Order.

**IT IS FURTHER ORDERED** for the avoidance of doubt, that U.S. Bank, as Indenture Trustee, may perform its ministerial functions in respect of sale trades executed at the initiation of the Issuers or Highland Affiliates prior to July 9, 2018.

**IT IS FURTHER ORDERED** that this Order expires upon confirmation of any plan of reorganization or conversion of the Bankruptcy Cases unless further extended by the Court or by the agreement of the parties, or until such time as the Defendants seek Court approval to dissolve this Order or until such time as the Defendants seek and are granted relief from the automatic stay pursuant Section 362 of the Bankruptcy Code.

### ### END OF ORDER ###

Submitted by:

**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)

By:/s/ Rakhee V. Patel
Rakhee V. Patel
State Bar No. 00797213
rpatel@winstead.com
Phillip Lamberson
State Bar No. 00794134
plamberson@winstead.com
Joe Wielebinski
State Bar No. 21432400
jwielebinski@winstead.com
Annmarie Chiarello
State Bar No. 24097496
achiarello@winstead.com

**SPECIAL COUNSEL FOR**
**ROBIN PHELAN, CHAPTER 11 TRUSTEE**

-and-

Jeff P. Prostok
State Bar No. 16352500
J. Robert Forshey
State Bar No. 07264200
Suzanne K. Rosen
State Bar No. 00798518
Matthias Kleinsasser
State Bar No. 24071357
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mkleinsasser@forsheyprostok.com
**COUNSEL FOR**
**THE CHAPTER 11 TRUSTEE**