Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile:  (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR
ROBIN PHELAN, CHAPTER 11 TRUSTEE**

Jeff P. Prostok – State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen – State Bar No. 00798518
Matthias Kleinsasser – State Bar No. 24071357
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, Texas 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mkleinsasser@forsheyprostok.com

**COUNSEL FOR
THE CHAPTER 11 TRUSTEE**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 18-30264-SGJ-11** |
| | § | **Case No. 18-30265-SGJ-11** |
| **ACIS CAPITAL MANAGEMENT, L.P., ACIS CAPITAL MANAGEMENT GP, LLC,** | §§§§§ | **(Jointly Administered Under Case No. 18-30264-SGJ-11)** |
| Debtors. | §§ | **Chapter 11** |
| **HIGHLAND CAPITAL MANAGEMENT, L.P. and** | §§§§ | |
| **HIGHLAND CLO FUNDING, LTD.,** | §§§ | **Adversary No. 18-03078-SGJ** |
| Plaintiffs, | §§ | |
| vs. | §§ | |
| **ROBIN PHELAN, CHAPTER 11 TRUSTEE,** | §§§ | |
| Defendant. | § | |

**TRUSTEE'S RESPONSE IN OPPOSITION TO HIGHLAND CAPITAL
MANAGEMENT, L.P.'S MOTION TO DISMISS OR, ALTERNATIVELY, FOR A
MORE DEFINITE STATEMENT**

---

Robin Phelan (the "Trustee"), the Chapter 11 Trustee of Acis Capital Management, L.P. ("Acis LP") and Acis Capital Management GP, LLC ("Acis GP," together with Acis LP, the "Debtors" or "Acis"), the Debtors in the above-styled and numbered bankruptcy cases (the "Bankruptcy Cases"), files this *Response* (the "Response") to Counter-Defendant Highland Capital Management, L.P.'s ("Highland" or "Counter-Defendant") *Motion to Dismiss or, Alternatively, For A More Definite Statement* [Docket No. 42] (the "Motion to Dismiss"), and in support thereof, respectfully shows the Court:

## I.    INTRODUCTION[1]

1.    Following the attempts of the Debtors, controlled by Highland and Mr. Dondero, to evade the payment of an $8 million judgment held by judgment creditor Joshua Terry ("Mr. Terry"), Mr. Terry filed involuntary petitions against the Debtors. At all times prior to April 13, 2018, the date this Court entered the Order for Relief, the Debtors were controlled by Highland.[2]

---

[1] All capitalized term(s) not defined herein have the meaning(s) ascribed to such term(s) by the Defendant's Answer, Affirmative Defenses, Counterclaims, and Third Party Claims [Docket No. 23] (the "Answer and Counterclaims").

[2] *See* Findings of Fact and Conclusions of Law [Bankruptcy Case No. 18-30264, Docket No. 118] (the "Opinion") ¶¶ 29-30. ("The evidence reflected that at all times Mr. Dondero [the President of Highland] has been the President of both of the Alleged Debtors, and there have been, at all times, very few, if any, other officers. It appears that the only other officer of Acis GP/LLC that ever existed was Frank Waterhouse, Treasurer. It also appears that the only other officer of Acis LP that ever existed was Frank Waterhouse, Treasurer, Mr. Terry as Portfolio Manager, and someone named Patrick Boyce as Secretary at one time Mr. Dondero testified that he has decision making authority for the Alleged Debtors but usually delegates that authority to Highland's in-house lawyers, Scott Ellington (General Counsel, Chief Legal Officer, and Partner of Highland) and Isaac Leventon (Assistant General Counsel of Highland) and is rarely involved in 'nitty gritty negotiations.' Sometimes instructions will come to him from the compliance group headed up by Chief Compliance Officer Thomas Surgent. Additionally, he testified that he signs hundreds of documents per week, and much of what he signs is on advice of counsel and he sometimes even delegates to his assistant the authority to sign his name. As set forth above, Mr. Ellington (who did not testify at the Trial) and Mr. Leventon (who did testify at the Trial) are not officers, directors, or employees of the Alleged Debtors. Mr. Leventon is designated to be the representative for the Alleged Debtors (and testified as a Rule 30(b)(6) witness during pre-Trial discovery)—he explained that this representative-authority derives from the Shared Services Agreement. Mr. Leventon testified that he takes his instructions generally through his direct supervisor, Mr. Ellington, although Highland partners can ask him to perform legal services for any of Highland's 2,000 entities.") (internal footnotes omitted).

2. The Motion to Dismiss requests dismissal of the Trustee's counterclaims for actual and constructive fraudulent transfers pursuant to 11 U.S.C. § 548 and the Texas Uniform Fraudulent Transfer Act ("TUFTA"), a counterclaim for the fraudulent transfer liability pursuant to Section 550 of the Bankruptcy Code,[3] and a counterclaim for civil conspiracy, for failure to state a claim for relief as to Highland. The Trustee has adequately plead sufficient facts to give Highland fair notice of his claims. Motions to dismiss are disfavored and are only granted *on rare occasions*. This is not such an occasion. As detailed below, the Trustee more than adequately pleads sufficient facts to give Highland fair notice of his claims. Accordingly, the Motion to Dismiss should be denied in all respects.

## II.    RELEVANT FACTUAL BACKGROUND

3. On May 30, 2018, Highland and Highland CLO Funding, Ltd. ("Highland CLO Funding") initiated this adversary proceeding alleging breach of contract and seeking declaratory relief against the Trustee. In response, the Trustee filed his Answer and Counterclaims and also asserted counterclaims against Highland and Highland CLO Funding and other third-party defendants (collectively, with Highland and Highland CLO Funding, the "Counter-Defendants"). For the sake of brevity, the Trustee incorporates herein by reference paragraphs 130 to 162 of his Answer and Counterclaims.

4. On July 23, 2018, Highland filed the Motion to Dismiss.

5. Highland, as party moving for dismissal must overcome a high burden to demonstrate that the plaintiff has failed to provide defendant with fair notice of plaintiff's claim. Highland fails to meet this burden and the Motion to Dismiss should be denied. In the alternative, should the Court determine that the Trustee has failed to sufficiently assert the

---

[3] 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

Fraudulent Transfer Claims and claim for civil conspiracy (and the Trustee's statements for relief for attorney's fees and that all conditions precedent have occurred) against Highland, the Trustee should be granted leave to amend his Answer and Counterclaims.

### III.    ARGUMENT AND AUTHORITIES

**A.    Legal Standard**

6. Motions to dismiss under Rule 12(b)(6) of the Federal Rule of Civil Procedure (the "Rules"), as incorporated by the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), are disfavored and are granted only in *rare circumstances*.[4] This is because under Rule 8(a), incorporated by Bankruptcy Rule 7008, a pleading needs only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[5] Thus, a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[6] Furthermore, the law is clear that when considering a motion to dismiss, the court must accept as true all well-pleaded facts and view those facts in the light most favorable to the plaintiff.[7] Therefore, determining whether a complaint states a plausible claim for relief is a context-specific task which requires the reviewing court to draw on its judicial experience and common sense.[8] Importantly, in considering a motion to dismiss, the issue is not whether the plaintiff will

---

[4] *See Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).
[5] Fed. R. Civ. P. 8(a).
[6] *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).
[7] *See Iqbal*, 556 U.S. at 678; *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).
[8] *Iqbal*, 556 U.S. at 679.

ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims.[9] It is the moving party's, here Highland's, burden to show that dismissal is proper.[10]

**B.**   **The Trustee Sufficiently Pleads Fraudulent Transfer Claims Pursuant to 11 U.S.C. § 548 and TUFTA- Violations of 11 U.S.C. § 548 and Right to Relief (ALF PMA Transfer, ALF Share Transfer, and Note Transfer)**

7.   Highland asserts in the Motion to Dismiss that the Trustee's Fraudulent Transfer Claims should be dismissed because such claims do no implicate Highland in any way either directly or indirectly. However, as shown below, the Trustee has sufficiently pled causes of action against Highland for Fraudulent Transfer.

   1)  <u>Actual Fraudulent Transfer Under 11 U.S.C. § 548 and TUFTA</u>

8.   Pursuant to 11 U.S.C. § 548, a trustee is authorized to recover transfers made within two years of the filing of a bankruptcy petition if the debtor: "made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted."[11]   Section 548(a)(1)(A) is referred to as an "actual fraudulent transfer" and Section 548(a)(1)(B) is referred to as a "constructive fraudulent transfer".[12]

9.   To determine whether there has been actual fraud, courts consider the following "badges of fraud":  (1) lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of

---

[9] *See Johnson v. Dallas Indep. Sch. Dist.*, 38 F. 3d 198 (5th Cir. 1994).
[10] *Servicios Azucareros De Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012) (as the burden under Rule 12(b)(6) is on the moving party, "Rule 12 does not by its terms require an opposition; failure to oppose a 12(b)(6) motion is not in itself grounds for granting the motion").
[11] 11 U.S.C. § 548(a)(1)(A).
[12] *O'Cheskey v. Herring Nat'l Bank (In re Am. Hous. Found.),* 520 B.R. 208, 223 (Bankr. N.D. Tex. 2014) ("11 U.S.C. § 548(a)(1)(A) (actual fraud) and (a)(1)(B) (constructive fraud)").

transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of events and transactions under inquiry.[13] "Actual intent … may [also] be established by circumstantial evidence or by inferences drawn from a course of conduct."[14] Additionally, transfers to affiliates have the presumption of actual fraudulent intent.[15]

10. Similarly, Section 24.005(a)(1) of TUFTA (the actual fraud section of TUFTA) permits the recovery of actual fraudulent transfers and involves analysis of the factors below in determining whether actual intent to defraud creditors occurred.[16] The TUFTA factors include the badges of fraud used to assess actual fraudulent transfers under 11 U.S.C. § 548, as well as whether: (1) the transfer/obligation was concealed; (2) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (3) the transfer was substantially all the debtor's assets; (4) the debtor absconded; (5) the debtor removed or concealed assets; (6) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; and (7) the transfer occurred shortly before or after a substantial debt was incurred.[17]

11. Here, the Trustee seeks to avoid transfers made *less than* two years from filing of the petition for bankruptcy. Specifically, in relation to the transfers identified below, the Trustee alleges the following:

> **ALF PMA Transfer:**     The ALF Share Transfer occurred on or about October 27, 2017, just seven days after Mr. Terry was awarded a $7,949,749.15 final judgment award

---

[13] *See Sherman v. FSC Realty LLC (In re Brentwood Lexford Partners, LLC)*, 292 B.R. 255, 263 (Bankr. N.D. Tex. 2003); *Wiggains v. Reed (In re Wiggains),* Nos. 13-33757-SGJ-7, 14-03064-SGJ, 2015 Bankr. LEXIS 1460, 68-69 (Bankr. N.D. Tex. April 27, 2015) (citing *In re Chastant,* 873 F.2d 89, 91 (5th Cir. 1989)).
[14] *FDIC v. Sullivan (In re Sullivan)*, 204 B.R. 919, 940 (Bankr. N.D. Tex. 1995) (citing *In re Chastant,* 873 F.2d 89, 91 (5th Cir. 1989)).
[15] *Id.* at 941. (finding a presumption of fraudulent intent when transfers are made to affiliates).
[16] TEX. BUS. & COM. CODE §§ 24.005(a)(1) and 24.005(b).
[17] *Id.*

---

**RESPONSE TO HIGHLAND CAPITAL MANAGEMENT, L.P.'S**
**MOTION TO DISMISS COUNTERCLAIMS, OR ALTERNATIVELY,**
**FOR A MORE DEFINITE STATEMENT**                                                                                                  **Page 6 of 14**

against the Debtors.  Although Highland was not a contract party to the Second ALF PMA or the October 27, 2017 PMA, which removed and transferred all of Acis LP's authority and management rights as portfolio manager of ALF to Highland HCF, Highland, and in particular Mr. Dondero, the Chief Executive of Highland, at all times directed the Debtor's actions, including the execution of the October 2017 PMA by Acis LP.  Indeed, Acis LP's management rights were transferred to Highland HCF, an affiliate of Highland.  As alleged by the Trustee in paragraph 158 of the Answer and Counterclaims, Acis LP, the Second ALF PMA granted Acis LP broad control over ALF (now Highland CLO Funding) and enabled Acis LP to control the right to an optional redemption for the Acis CLOs.  Acis LP received no consideration for signing over control of its primary source of revenue which occurred just days after a judgment had been entered against it.  Accordingly, the Trustee has specifically plead an action for actual fraudulent transfer against the Counter-Defendants and in particular, Highland, the master-mind of the Highland Enterprise.

- **ALF Share Transfer:**     The ALF Share Transfer occurred on or about October 24, 2017, a mere four days **after** the date Mr. Terry was awarded an almost $8 million judgment against the Debtors, which are both special purpose entities of Highland.  On that day, Highland CLO Funding, the holder of subordinated notes issued by the CLOs, repurchased the Debtor's interest in Highland CLO Funding for insufficient consideration.  This repurchase as coordinated by Frank Waterhouse, an employee of Acis LP **and** Highland, and Grant Scott, on behalf of CLO Holdco, Ltd.  These allegations are more than sufficient to state a cause of action for actual fraudulent transfer against the Counter-Defendants and in particular, Highland.

- **Note Transfer:**     The Note Transfer occurred on November 3, 2017, less than a month after the judgment award.  Highland's assertion that the Trustee fails to allege a claim for actual fraudulent transfer in his Answer and Counterclaims as to Highland in relation to the Note Transfer is incredulous.  As alleged in paragraph 161, the Note Transfer involved the assignment and transfer of a $9.5 million promissory note by *Highland* in favor of Acis LP from Acis LP to Highland CLOM.  Acis LP in exchange received insufficient or no consideration for the Note Transfer.  There is no doubt whatsoever that the transfer of the note was between insiders.  Indeed, as evidenced by the Assignment and Transfer Agreement ("Agreement") attached as Exhibit G to the Answer and Counterclaims, Mr. Dondero signed the Agreement at least twice—once on behalf of Acis LP, the assignor, and once on behalf of Highland, the promisor of the note.

Accordingly, the Trustee has properly plead all the elements in his claim for actual fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(A) and is entitled to relief pursuant to 11 U.S.C. § 550.[18]  Furthermore, the Trustee also sufficiently pleads causes of action for actual

---

[18] 11 U.S.C. § 550(a).

---

**RESPONSE TO HIGHLAND CAPITAL MANAGEMENT, L.P.'S
MOTION TO DISMISS COUNTERCLAIMS, OR ALTERNATIVELY,
FOR A MORE DEFINITE STATEMENT**                                                           **Page 7 of 14**

fraudulent transfer pursuant to Tex. Bus. & Com. Code § 24.005 and 24.006 and is entitled to relief pursuant to Tex. Bus. & Com. Code § 24.008.

        2) <u>Constructive Fraudulent Transfer Under 11 U.S.C. § 548 and TUFTA</u>

12.     Under 11 U.S.C. § 548(a)(1)(B), a trustee may avoid a transfer that was made within two years before the date the bankruptcy petition was filed if the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation" and either "was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; was engaged in a business or a transaction, or was about to engage in a business or transaction, for which any property remaining with the debtor was an unreasonably small capital; intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business."[19] Section 24.005(a)(2) of the Texas Business and Commerce Code provides a similar right to recovery for constructive fraudulent transfers.

13.     Here, there is no doubt that the transfers were made within two years of the date the bankruptcy petition was filed. As alleged above (and in the Trustee's Answer and Counterclaims), the Debtors are under the control of Highland, which orchestrated the insider transfers between the Highland Enterprise, depriving the Debtors of its assets for little to no consideration, immediately following the Debtors' incurring of a nearly $8 million debt obligation to judgment creditor Mr. Terry, who filed the involuntary petitions which placed the

---

[19] 11 U.S.C. § 548(a)(1)(B); *In re Inspirations Imports, Inc.*, 2014 U.S. Dist. LEXIS 46276, at *2 (N.D. Tex. Apr. 3, 2014) (citing *In re GWI PCS 1 Inc.*, 230 F.3d 788, 805 (5th Cir. 2000)).

Debtors into bankruptcy.[20] As stated and summarized above, the Trustee adequately pleads a claim for constructive fraudulent transfer under 11 U.S.C. § 548 and TUFTA in relation to the ALF PMA Transfer, ALF Share Transfer and Note Transfer as to Highland.[21]

**C.    The Trustee Sufficiently Pleads A Claim For Civil Conspiracy**

14. Civil conspiracy involves two or more entities working together to orchestrate an unlawful act that damages one or more separate parties.[22] An action for civil conspiracy has five elements: (1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result.[23] Counter-Defendant seeks to dismiss the Trustee's claim for civil conspiracy against it alleging that the Trustee's allegations supporting his claim are "nothing more than rote recitation of the elements." Nothing could be further from the truth.

15. The fraudulent transfers of Debtors' assets are a result of a concerted effort between the Debtors and the Highland Enterprise to defraud creditors. At the head of the Highland Enterprise is Highland itself. As alleged in paragraph 147 of the Trustee's Answer and Counterclaims, the Highland employees directed the Debtors' actions at all times before the Order for Relief was entered into on April 13, 2018. On October 24, 2017, a special resolution

---

[20] *See Martinez v. Hutton (In re Harwell),* 628 F.3d 1312, 1316 (11th Cir. 2010) (reversing and remanding a motion to dismiss granted by a bankruptcy court, where the central issue was ' Are there theories in which a Chapter 7 Trustee [Martinez] can go after the lawyer for personal liability where the lawyer is the mastermind and facilitator of the fraudulent conveyances'?").
[21] *See In re 1701 Commerce, LLC*, 511 B.R. 812, 822 (Bankr. N.D. Tex. 2014); *see also Guffy v. Brown (In re Brown Medical Center, Inc.)*, 552 B.R. 165, 170 (S.D. Tex. 2016).
[22] *Lexxus Int'l., Inc. v. Loghry*, 512 F. Supp. 2d 647, 670 (N.D. Tex. 2007); *Turoff v. Deason (In re: Precept Bus. Servs., Inc.*, 2003 Bankr. LEXIS 1141, at *10-11 (Bankr. N.D. Tex. Sept. 5, 2003); *see also Civelli v. J.P. Morgan Chase Sec., LLC*, No. H-17-3739, 2018 U.S. Dist. LEXIS 106074, at *9 (S.D. Tex. June 26, 2018).
[23] *GPR Holdings, LLC v. Duke Energy Trading and Mktg. LLC, (In re GPR Holdings, LLC)*, 318 B.R. 384, 391 (Bankr. N.D. Tex. 2004); *Loghry*, 512 F. Supp. 2d at 670; *see also Airport Boulevard Apartments, Ltd. v. NE 40 Partners, Ltd. (In re NE 40 Partners, LTD.),* 411 B.R. 352, 365 (Bankr. S.D. Tex. 2009).

was entered whereby Highland CLO Funding repurchased its own shares from Acis LP at the direction of Highland employees <u>and</u> representatives of Acis LP—Frank Waterhouse and Grant Scott (for CLO Holdco, Ltd.).[24] On October 27, 2017, Acis LP (at the direction of Highland) executed the October 27, 2017 Portfolio Management Agreement thereby transferring its authority and management rights as portfolio manager of ALF (now Highland CLO Funding) to Highland HCF.[25] Finally, on November 3, 2017, Highland, as the puppet master, orchestrated the transfer of a $9.5 million promissory note by Highland in favor of Acis LP from Acis LP to Highland CLO Management Ltd., an affiliate of Highland. Notably, Mr. Dondero, the Chief Executive Officer of Highland, signed the note on behalf of Highland **<u>and</u>** Acis LP.[26] Taking all factual allegations in the Trustee's Answer and Counterclaims as true, Highland's request for dismissal of the Trustee's claim for civil conspiracy against it must be denied.[27] The recitation of facts is clear and concise, supports a claim for civil conspiracy, and is not a "mere recitation of the elements" as Highland alleges.

### D.    Attorney's Fees and Conditions Precedent

16.    Highland also moves to dismiss the Trustee's pleadings and allegations as to the recovery of attorney's fees and that all conditions precedent have occurred or have been performed. Notably, Highland cites no case law that would support the dismissal of these standard and necessary elements to a pleading. Indeed, because attorney's fees are considered special damages, a request for attorney's fees generally must be specifically pleaded, although failure to do so will not necessarily preclude a party's ability to recover, so long as the opposing

---

[24] Answer and Counterclaims at ¶ 159-160.
[25] Answer and Counterclaims at ¶ 152-158.
[26] Answer and Counterclaims at ¶ 161-162.
[27] *See Iqbal*, 556 U.S. at 678; *see also Loghry*, 512 F. Supp. 2d at 670; *Campbell*, 43 F.3d at 975; *Civelli*, 2018 U.S. Dist. LEXIS 106074, at *9.

---

party is on notice that attorney's fees are being sought.[28] Furthermore, as discussed above, the provisions of TUFTA explicitly afford a prevailing claimant the right to recover the claimant's reasonable and necessary attorney's fees.[29] Given the fact that the Trustee has adequately pled claims for relief pursuant to TUFTA, as discussed above, dismissal of the Trustee's request for attorney's fees is inappropriate.  As to the statement of conditions precedent, it suffices for a plaintiff to allege generally that all conditions precedent have occurred or been performed. There is no requirement for the plaintiff to demonstrate such specifically.[30] Thus, the Trustee adequately meets the requirements.  Accordingly, Counter-Defendant's unsupported request seeking dismissal of the Trustee's request for attorney's fees and statement that all conditions precedents have occurred, should without a doubt, be denied.

E.      **The Trustee Has Provided Fair Notice; Alternatively, The Trustee Should Be Allowed to Amend**

17.     Motions for a more definite statement are disfavored and are granted *only* when the challenged complaint is so unintelligible that a responsive pleading cannot be framed.[31] This is particularly true in light of the fact that pleadings are to be construed liberally to do substantial justice.[32] As discussed above, the Trustee's Answer and Counterclaims more than adequately provide Counter-Defendant with fair notice of his claims and alleges sufficient facts to show a plausible basis for relief.[33]

---

[28] *Weisbrod Matteis & Copley, PLLC v. Manley Toys, Ltd.*, 2015 U.S. Dist. LEXIS 162084, at *10-11 (N.D. Tex. Dec. 3, 2015) (citing cases); *see also Gjergjani v. Ware*, No.4:14-cv-00448-ALM , 2016 U.S. Dist. LEXIS 116461, *22 (E.D. Tex. Aug. 8, 2016) (citing *Crosby v. Old Republic Ins. Co.*, 978 F.2d 210, 211 (5th Cir. 1992)); *see also* FED. R. CIV. P. 9(g).
[29] TEX. BUS. & COM. CODE § 24.013.
[30] FED. R. CIV. P. 9(c).  Notably, while it suffices for a plaintiff to allege generally that all conditions precedent have occurred or been performed, a defendant denying such must do so with particularity.
[31] *See Old Time Enters. v. Int'l Coffee Corp.,* 862 F. 2d 1213, 1219 (5th Cir. 1989).
[32] *Id.*
[33] *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

---

18. However, in the alternative, if the Court is inclined to grant the Motion to Dismiss in any respect on any of the Trustee's counterclaims, the Trustee respectfully requests that he be granted leave to amend his Answer and Counterclaims to further set forth the basis of his claims with greater particularity.[34] As stated by Rule 15(a)(2), leave to amend should be freely given, especially when it is found that the plaintiff has failed to state a claim.[35] In general, there is a strong presumption in favor of allowing an amendment.[36] Here, where the Complaint has been on file for less than two months and where the Trustee's Answer and Counterclaims was filed just over one month ago, no delay or prejudice would result from granting leave to amend.[37] Therefore, should the Court find that the Trustee has failed to state a claim, the Trustee requests that he be granted leave to amend his Answer and Counterclaim pursuant to Rule 15(a)(2).

## IV. CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court: (i) deny Motion to Dismiss; and (ii) grant the Trustee such other and further relief as the Court deems just and proper.

**DATED: August 13, 2018.**

                                    Respectfully submitted,

                                    **WINSTEAD PC**
                                    500 Winstead Building
                                    2728 N. Harwood Street
                                    Dallas, Texas 75201
                                    (214) 745-5400 (Phone)
                                    (214) 745-5390 (Facsimile)

                                    By: */s/ Rakhee V. Patel*

---

[34] *See* FED. R. CIV. P. 15(a)(2).
[35] *See Kennard v. Indianapolis Life Ins. Co.*, 420 F. Supp. 2d 601, 608-09 (N.D. Tex. 2006).
[36] *See Financial Acquisition Partners, L.P. v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006); *Halbert v. City of Sherman*, 33 F.3d 526, 529 (5th Cir. 1994); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).
[37] *See In re Southmark Corp.*, 88 F.3d 311, 315-16 (5th Cir. 1996).

Rakhee V. Patel
State Bar No. 00797213
rpatel@winstead.com
Phillip Lamberson
State Bar No. 00794134
plamberson@winstead.com
Joe Wielebinski
State Bar No. 21432400
jwielebinski@winstead.com
Annmarie Chiarello
State Bar No. 24097496
achiarello@winstead.com

**SPECIAL COUNSEL FOR**
**ROBIN PHELAN, CHAPTER 11**
**TRUSTEE**

-and-

Jeff P. Prostok
State Bar No. 16352500
J. Robert Forshey
State Bar No. 07264200
Suzanne K. Rosen
State Bar No. 00798518
Matthias Kleinsasser
State Bar No. 24071357
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, Texas 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mkleinsasser@forsheyprostok.com

**COUNSEL FOR**
**THE CHAPTER 11 TRUSTEE**

___

**RESPONSE TO HIGHLAND CAPITAL MANAGEMENT, L.P.'S**
**MOTION TO DISMISS COUNTERCLAIMS, OR ALTERNATIVELY,**
**FOR A MORE DEFINITE STATEMENT** **Page 13 of 14**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 13, 2018, notice of this document will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District.

      */s/ Annmarie Chiarello*
      One of Counsel

**RESPONSE TO HIGHLAND CAPITAL MANAGEMENT, L.P.'S
MOTION TO DISMISS COUNTERCLAIMS, OR ALTERNATIVELY,
FOR A MORE DEFINITE STATEMENT**  **Page 14 of 14**

4842-5613-1696v.9