Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile:  (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

Jeff P. Prostok –  State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen –  State Bar No. 00798518
Matthias Kleinsasser – State Bar No. 24071357
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Fort Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mkleinsasser@forsheyprostok.com

**COUNSEL FOR THE CHAPTER 11 TRUSTEE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 18-30264-SGJ-11 |
| | § | Case No. 18-30265-SGJ-11 |
| **ACIS CAPITAL MANAGEMENT, L.P.,** | § | |
| **ACIS CAPITAL MANAGEMENT GP,** | § | **(Jointly Administered Under Case** |
| **LLC,** | § | **No. 18-30264-SGJ-11)** |
| | § | |
| Debtors. | § | **Chapter 11** |

| | | |
|---|---|---|
| **HIGHLAND CAPITAL MANAGEMENT,** | § | |
| **L.P. and HIGHLAND CLO FUNDING** | § | |
| **LTD,** | § | |
| | § | |
| **Plaintiffs and Counter Defendants,** | § | |
| | § | **Adversary No. 18-03078-SGJ** |
| **vs.** | § | |
| | § | |
| **ROBIN PHELAN, Chapter 11 Trustee,** | § | |
| | § | |
| **Defendant, Counter Plaintiff, and** | § | |
| **Third-Party Plaintiff,** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **HIGHLAND HCF ADVISOR, LTD.,** | § | |
| **HIGHLAND CLO MANAGEMENT, LTD.,** | § | |
| **and HIGHLAND CLO HOLDINGS, LTD.,** | § | |
| | § | |
| **Third-Party Defendants.** | § | |

## BRIEF IN SUPPORT OF TRUSTEE'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I.    SUMMARY .................................................................................................. 1

II.   EVIDENCE IN SUPPORT OF SUMMARY JUDGMENT ................................ 3

III.  SUMMARY JUDGMENT FACTS ................................................................ 4

    A.   The Debtors' Business ..............................................................................4
    B.   Section 3.10(a) of the LPA .......................................................................6
    C.   State Court Litigation and Arbitration ........................................................7
    D.   The Arbitration Award ..............................................................................8

IV.   ARGUMENTS & AUTHORITIES ............................................................... 10

    A.   Standard for Summary Judgment..............................................................10
    B.   Standard for Collateral Estoppel ..............................................................11
    C.   Collateral Estoppel Applies to Issues Determined in Arbitration................14
    D.   The Findings and Conclusions of the Arbitration Award are Binding Upon
        Highland Capital ....................................................................................15
    E.   The Expense Overpayments to Highland Capital were Ultra Vires Acts by
        Acis LP in Violation of the LPA (Count 1) ...............................................17
    F.   Under 11 U.S.C. § 542(a), Highland Capital Must Return the Expense
        Overpayments to the Trustee (Count 2).....................................................18
    G.   Highland Capital is Liable to the Trustee for Money Had and Received
        (Count 3) ...............................................................................................19
    H.   Highland Capital is Liable to the Trustee for Conversion (Count 4)...........20
    I.    Highland Capital's Claims Should be Disallowed Pursuant to Section 502(d)
        of the Bankruptcy Code ..........................................................................21

VI.   CONCLUSION ........................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amoco Prod. Co. v. Smith,*
  946 S.W.2d 162 (Tex. App.—El Paso 1997, no pet.) ............................................................19

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ............................................................................................................10

*Antonio Leonard TNT Prods., LLC v. Goosen-Tutor Promotions, LLC,*
  47 F. Supp. 3d 500 (S.D. Tex. 2014) ..................................................................................14

*Apple Computer, Inc. v. Exponential Tech., Inc.,*
  C.A. No. 16315, 1999 WL 39547, 1999 Del. Ch. LEXIS 9 (Del. Ch. Jan. 21,
  1999) ...................................................................................................................................17

*Automek, Inc. v. Orandy,*
  105 S.W.3d 60 (Tex. App.—Houston [1st. Dist.] 2003, no pet.) ...........................................20

*Banco Popular, N. Am. v. Kanning,*
  638 Fed. App'x 328 (5th Cir. 2016) ....................................................................................20

*Benson & Ford, Inc. v. Wanda Petrol. Co.,*
  833 F.2d 1172 (5th Cir. 1987) ......................................................................................13, 14

*Blanks v. Ford Motor Credit,*
  No. 3:04-CV-0331-B, 2005 WL 991241, 2005 U.S. Dist. LEXIS 33977 (N.D.
  Tex. Apr. 20, 2005), *aff'd*, 202 Fed. App'x 664 (5th Cir. 2006) ...........................................11

*Bradbury v. Jefferson Cty.,*
  732, F.3d 540, 549 (5th Cir. 2013) .......................................................................................1

*Calbillo v. Cavender Oldsmobile, Inc.,*
  288 F.3d 721 (5th Cir. 2002) ..............................................................................................11

*Cardwell v. Gurley,*
  No. 4-10-CV-706, 2011 WL 6338813, 2011 U.S. Dist. LEXIS 145358 (E.D.
  Tex. Dec. 19, 2011), *aff'd sub nom. Cardwell v. Gurley (In re Cardwell)*, 487
  Fed. App'x 183 (5th Cir. 2012) ...........................................................................................12

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ............................................................................................................10

*City of San Antonio v. Cortes,*
  468 S.W.3d 580 (Tex. App.—San Antonio 2015, pet. denied) .........................................12, 13

*Eagle Properties, Ltd. v. Scharbauer*,
   807 S.W.2d 714 (Tex. 1991)...................................................................12, 13

*Edmunds v. Sanders*,
   2 S.W.3d 697 (Tex. App.—El Paso 1999, pet. denied) ............................20

*Freeman v. Lester Coggins Trucking, Inc.*,
   771 F.2d 860 (5th Cir. 1985) ...................................................................12

*Green Int'l v. Solis*,
   951 S.W.2d 384 (Tex. 1997)....................................................................20

*Grimes v. BNSF Ry. Co.*,
   746 F.3d 184 (5th Cir. 2014) ...................................................................14

*In re Heritage Org., L.L.*
   C., 375 B.R. 230 (Bankr. N.D. Tex. 2007) ..............................................21

*Johnson & Higgins v. Kenneco Energy*,
   962 S.W.2d 507 (Tex. 1998).....................................................................12

*In re Mesa Ltd. P'ship Preferred Unitholders Litig.*,
   Civil Action No. 12,243, 1991 Del. Ch. LEXIS 214 (Dec. 10, 1991).....17

*Montana v. United States*,
   440 U.S. 147 (1979)..................................................................................11

*Nevada v. United States DOL*,
   321 F. Supp. 3d 709 (E.D. Tex. 2018)......................................................13

*Reed v. City of Arlington*,
   650 F.3d 571 (5th Cir. 2011) ....................................................................16

*Robbins Hose Co. No. 1, Inc. v. Baker*,
   No. 2247-VCP, 2007 WL 3317598, 2007 Del. Ch. LEXIS 151 (Del. Ch. Oct.
   31, 2007) ...................................................................................................17

*Roehrs v. Conesys, Inc.*,
   No. 3:05-CV-829-M, 2007 WL 2125654, 2007 U.S. Dist. LEXIS 53712 (N.D.
   Tex. July 25, 2007), *aff'd* 332 Fed. App'x 184 (5th Cir. 2009)...............14

*Schiro v. Farley*,
   510 U.S. 222 (1994)..................................................................................11

*Solomon v. Armstrong*,
   747 A.2d 1098 (1999) ..........................................................................17, 18

*Stewart v. Murphy*,
   174 F.3d 530 (5th Cir. 1999), *cert. denied*, 528 U.S. 906 (1999)...........10

*Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*,
    105 S.W.3d 244 (Tex. App.—Houston [14th Dist.] 2003) (pet. denied)............................3, 15

*Taylor v. Sturgell*,
    553 U.S. 880 (2008)........................................................................................................13, 15

*Tex. Dept. of Public Safety v. Petta*,
    44 S.W.3d 575 (Tex. 2001)...................................................................................................12

*Thomas v. Pickens (In re Pickens)*,
    Adv. No. 16-4063, 2017 Bankr. LEXIS 312 (Bankr. E.D. Tex. Feb. 3, 2017) ......................11

*Universal Am. Barge Corp. v. J-Chem, Inc.*,
    946 F.2d 1131 (5th Cir. 1991) ..............................................................................................15

*Warren v. Mortg. Elec. Registration Sys., Inc.*,
    616 Fed. App'x 735 (5th Cir. 2015) ......................................................................................13

## Statutes

11 U.S.C. § 502(d) ......................................................................................................1, 2, 21

11 U.S.C. § 541(a) ............................................................................................................18

11 U.S.C. § 542..............................................................................................................2, 21

11 U.S.C. § 542(a) ....................................................................................................18, 19, 21

## Other Authorities

Federal Rule of Civil Procedure 56(c) ........................................................................................10

Robin Phelan (the "Trustee" or "Defendant"), the chapter 11 trustee of Acis Capital Management, L.P. ("Acis LP") and Acis Capital Management GP, LLC ("Acis GP" together with Acis LP, the "Debtors" or "Acis") in the above-styled and jointly administered bankruptcy cases (the "Bankruptcy Cases"), and Defendant in the above-styled adversary proceeding (the "Adversary Proceeding"), files this brief in support (this "Brief") of the *Trustee's Motion for Partial Summary Judgment* (the "Motion for Partial Summary Judgment"), and respectfully states as follows:[1]

## I.  SUMMARY

1.      The Trustee contends that the findings and conclusions from the Arbitration Award are binding upon Highland Capital under the doctrine of collateral estoppel.  The issue of whether to apply collateral estoppel is a question of law.  *See Bradbury v. Jefferson Cty.*, 732, F.3d 540, 549 (5th Cir. 2013).  Under the Arbitration Award, during the years of 2013, 2014, 2015, and from January until May 2016, Acis LP overpaid Highland Capital for expenses under the Sub-Advisory Agreement and Shared Services Agreement, in violation of Section 3.10(a) of the LPA. The arbitration panel found that 25% of the Expense Overpayments to Highland Capital during this timeframe totaled $1,755,482.00.  Accordingly, 100% of the Expense Overpayments to Highland Capital during this timeframe totals $7,021,924.00.  The Trustee seeks immediate recovery of this total amount of Expense Overpayments, which are property of the estate and which Highland Capital continues to improperly retain, even following execution of the Arbitration Award over a year ago.

2.      By his Motion for Partial Summary Judgment, the Trustee seeks summary judgment on Counts 1, 2, 3, and 4 of the Amended Answer and that the Highland Claims should be disallowed pursuant to section 502(d) of the Bankruptcy Code

---

[1] Any capitalized term not otherwise defined herein shall have the meaning ascribed to it in the *Defendant's Amended Answer, Counterclaims (Including Claim Objections) and Third-Party Claims* [Docket No. 84] (the "Amended Answer").

3.      Under Count 1, in order to show the Expense Overpayments, and any agreements supporting such overpayments, are *ultra vires* and void, the Trustee must show that Acis LP had no implicit or explicit authority under the LPA to undertake such actions or that such acts were not performed in the interest of the corporation.

4.      Under Count 2, in order to show that the Trustee is entitled to turnover of the Expense Overpayments, the Trustee must show that Highland Capital has possession, custody, or control of the Expense Overpayments, the Expense Overpayments are property of the estate, and the value of such property is not of inconsequential value or benefit to the estate.

5.      Under Count 3, in order to show that Highland Capital is liable for money had and received, the Trustee must show that Highland Capital obtained the Expense Overpayments, which in equity and good conscience belongs to Acis LP.

6.      Under Count 4, in order to show Highland Capital is liable for conversion of the Expense Overpayments, the Trustee must show that: (1) Acis LP owned, had legal possession, or was entitled to possession of the Expense Overpayments, (2) Highland Capital assumed and exercised dominion and control over the Expense Overpayments in an unlawful and unauthorized manner, to the exclusion of and inconsistent with Acis LP's rights, and (3) Highland Capital refused Acis LP's demand for return of the property *or* Highland Capital's acts manifest a clear repudiation of Acis LP's rights.

7.      The Trustee believes that the summary judgment evidence set forth below proves each of the elements to each of the Counts above. Further, because the Trustee is entitled to turnover of the Expense Overpayments pursuant to section 542 of the Bankruptcy Code, and such amount exceeds the amount of the Highland Claims, the Highland Claims should be disallowed in their entirety pursuant to section 502(d) of the Bankruptcy Code.

## II.   **EVIDENCE IN SUPPORT OF SUMMARY JUDGMENT**

8.      In support of the Motion for Partial Summary Judgment, the Trustee relies on and incorporates the following Appendix exhibits:

Exhibit A.      *Amended and Restated Agreement of Limited Partnership of Acis Capital Management, L.P.*, dated to be effective as of January 21, 2011.

Exhibit B.      *Sub-Advisory Agreement* by and between Acis LP and Highland Capital, dated to be effective as of January 1, 2011.

Exhibit C.      *Shared Services Agreement* by and between Acis LP and Highland Capital, dated to be effective as of January 1, 2011.

Exhibit D.      *Second Amended Shared Services Agreement* by and between Acis LP and Highland Capital, dated to be effective as of January 1, 2015.

Exhibit E.      *Second Amended and Restated Sub-Advisory Agreement* by and between Acis LP and Highland Capital, made July 29, 2016, to be effective January 1, 2016.

Exhibit F.      *Third Amended and Restated Shared Services Agreement* by and between Acis LP and Highland Capital, dated to be effective as of January 1, 2016.

Exhibit G.      *Third Amended and Restated Sub-Advisory Agreement* by and between Acis LP and Highland Capital, dated March 17, 2017.

Exhibit H.      *Fourth Amended and Restated Shared Services Agreement* by and between Acis LP and Highland Capital, dated March 17, 2017.

Exhibit I.      *Affidavit of Scott S. Hershman in Support of Highland's Request for Attorneys' Fees*, signed on October 13, 2017, in *Joshua N. Terry v. Highland Capital Management, L.P., et al.*, JAMS No. 1310022713.

Exhibit J.      *Final Award* executed on October 20, 2017, by the arbitration panel in *Joshua N. Terry v. Highland Capital Management, L.P., et al.*, JAMS No. 1310022713.

Exhibit K.      *Order Confirming Arbitration Award* entered on December 18, 2017, in Cause No. DC-17-15244, styled *Terry v. Acis Capital Management, L.P. and Acis Capital Management GP, LLC*, in the 44th Judicial District Court of Dallas County, Texas.

Exhibit L.      *Final Judgment* entered on December 18, 2017, in Cause No. DC-17-15244, styled *Terry v. Acis Capital Management, L.P. and Acis Capital Management GP, LLC*, in the 44th Judicial District Court of Dallas County, Texas.

| Exhibit M. | *Findings of Fact and Conclusions of Law in Support of Orders for Relief Issued After Trial on Contested Involuntary Bankruptcy Petitions*, entered on April 13, 2018 in Case No. 18-30264, Docket No. 118, and Case No. 18-30265, Docket No. 113. |
|---|---|
| Exhibit N. | *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy*, filed by Acis Capital Management GP, LLC on April 30, 2018, in Case No. 18-30265, Docket No. 152. |
| Exhibit O. | *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy*, filed by Acis Capital Management L.P. on April 30, 2018, in Case No. 18-30264, Docket No. 165. |
| Exhibit P. | Highland Capital Management, L.P., Form ADV Part 2A, filed March 29, 2018. |
| Exhibit Q. | Acis Capital Management, L.P., Form ADV Part 2A, filed June 29, 2018. |
| Exhibit R. | Proof of Claim No. 27, filed by Highland Capital on August 1, 2018, in the claims register for Case No. 18-30264. |
| Exhibit S. | Proof of Claim No. 13, filed by Highland Capital on August 1, 2018, in the claims register for Case No. 18-30265. |

## III.  SUMMARY JUDGMENT FACTS

**A.  The Debtors' Business**

9.     James Dondero ("Dondero"), Mark Okada ("Okada"), and Terry formed Acis LP in 2011 as a registered investment advisor to raise money from third-party investors to invest in certain collateralized loan obligation funds ("CLOs").[2] Acis LP is the portfolio manager for the CLOs and generates revenue primarily through the management of the CLOs via certain portfolio management agreements ("PMAs").[3] While Dondero made and approved the higher-level financial strategies and decisions of Acis, Terry was responsible for the day-to-day management of Acis.[4]

---

[2] *See* Ex. M at p. 9, ¶¶ 23-24.
[3] *See* Ex. M at pp. 9-15, ¶¶ 22-28.
[4] *See* Ex. M at pp. 3, 14-16, ¶¶ 6, 27, 30.

10. In order to form Acis LP, Acis GP, the general partner, and limited partners The Dugaboy Investment Trust[5] (the "Trust"), Okada, and Terry entered into that certain *Amended and Restated Agreement of Limited Partnership of Acis Capital Management, L.P.* (the "LPA"), dated to be effective as of January 21, 2011.[6] The LPA is governed by Delaware Law.[7] At all relevant times herein, the officers of Acis GP are Dondero, as President, and Frank Waterhouse ("Waterhouse")[8], as Treasurer.[9] Further, at least between October 14, 2015, and December 19, 2017, Dondero was the sole member of Acis GP.[10]

11. Acis LP contracted out certain of its administrative functions and portfolio management responsibilities to Highland Capital pursuant to that certain *Sub-Advisory Agreement,* originally dated to be effective as of January 1, 2011 (as amended, the "Sub-Advisory Agreement") and that certain *Shared Services Agreement*, originally dated to be effective as of January 1, 2011 (as amended, the "Shared Services Agreement").[11]

12. As the Court explained in its Opinion:

Acis LP and Acis GP/LLC have never had any employees. Rather, all employees that work for any of the Highland family of companies (including Mr. Terry) have, almost without exception, been employees of Highland itself. Highland has approximately 150 employees in the United States. Highland provides employees to entities in the organizational structure, such as Acis LP and Acis GP/LLC, through both the mechanism of: (a) a Shared Services Agreement (herein so called), which provides "back office'" personnel—such as human resources, accounting, legal and information technology to the Highland family of companies; and (b) a Sub-Advisory Agreement (herein so called), which provides "front office" personnel to entities—such as the managers of investments like Mr. Terry. The evidence indicated that this is typical in the CLO industry to have such agreements.[12]

---

[5] Dondero owned 100% of the Trust and was President of Acis GP.
[6] *See* Ex. A at pp 4, 31-34. The partnership interests of Acis LP were as follows: Acis GP owned .1%; the Trust owned 59.9%; Okada owned 15%; and Terry owned 25%.
[7] Ex A at p. 28, § 6.11.
[8] Waterhouse is a partner in Highland Capital and serves as Highland Capital's Chief Financial Officer.
[9] *See* Ex. N at p. 6.
[10] *See* Ex. N at p. 7.
[11] *See* Ex. B at pp. 1-8; Ex. C at pp. 1-10.
[12] Ex. M at p. 14 (footnotes omitted).

13. The *Sub-Advisory Agreement* and the *Shared Services Agreement* have each been amended multiple times.[13] All iterations of the Sub-Advisory Agreement were signed by Dondero on behalf of both Highland Capital and Acis LP.[14] Likewise, all iterations of the Shared Services Agreement were signed by Dondero on behalf of both Highland Capital and Acis LP.[15]

14. Prior to entry of the Order for Relief, Dondero directed, either himself or through Highland Capital employees, all actions taken by Acis.[16]

> Mr. Dondero [the Chief Executive of Highland] testified that he has decision making authority for the Alleged Debtors but usually delegates that authority to Highland's in-house lawyers, Scott Ellington (General Counsel, Chief Legal Officer, and Partner of Highland) and Isaac Leventon (Assistant General Counsel of Highland) . . . . Mr. Leventon is designated to be the representative for the Alleged Debtors (and testified as a Rule 30(b)(6) witness during pre-trial discovery)—he explained that this representative-authority derives from the Shared Services Agreement. Mr. Leventon testified that he takes his instructions generally through his direct supervisor, Mr. Ellington.[17]

Accordingly, at all times relevant herein, Dondero controlled, either directly or indirectly, the actions of both Highland Capital and Acis LP.[18]

## B. Section 3.10(a) of the LPA

15. Pursuant to the Shared Services Agreement and the Sub-Advisory Agreement, Highland Capital received compensation for providing services to Acis LP, but amounts of compensation were subject to certain terms of the LPA.[19] Section 3.10 of the LPA, which directs compensation and reimbursement of the General Partner, contains subpart (a), which limits compensation and reimbursement of expenses payable to the General Partner and any Affiliate of the General Partner without proper consent:

> <u>Compensation.</u>  The General Partner and any Affiliate of the General Partner shall receive no compensation from the Partnership for services rendered pursuant to

---

[13] *See* Ex.'s D, E, F, G, & H.
[14] Ex. M at pp. 14-15, ¶ 27.
[15] *Id.*
[16] Ex. M at pp. 15-16, 24, ¶¶ 30, 33.
[17] *Id.*
[18] Ex.P at p. 2; *see* Ex. M ¶ 30; Ex. Q at p. 1; *see* Ex.'s B, C, D, E, F, G, & H (where each agreement was signed by Dondero on behalf of both Highland Capital and Acis LP).
[19] *See* Ex. A at p. 12, § 3.10.

this Agreement or any other agreements unless approved by a Majority Interest; provided, however, that the aggregate annual expenses of the Partnership, inclusive of such compensation, ***may not exceed 20% of Revenues without the consent of all of the members of the Founding Partner Group***.[20]

16.    An Affiliate under the LPA is defined as:

[A]ny [entity] that directly or indirectly controls, is controlled by, or is under common control with the [entity] in question. As used in this definition, the term "*control*" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of [an entity], whether through ownership of voting Securities, by contract, or otherwise.[21]

17.    Because Highland Capital and Acis are under the common control of Dondero, Highland Capital is, and has been at all times relevant herein, an Affiliate of Acis GP and Acis LP.[22]

## C.    State Court Litigation and Arbitration

18.    In June 2016, Highland Capital advised Terry that he had been terminated.[23]

19.    In September 2016, Highland Capital sued Terry in the 162nd Judicial District Court of Dallas County, Texas (the "State Court") under a variety of legal theories and causes of action, including breach of fiduciary duty/self-dealing, disparagement, and breach of contract. Terry asserted his own claims against Highland Capital, as well as claims against the Debtors, Dondero, and others, and demanded arbitration.[24]

20.    On September 28, 2016, the State Court stayed the litigation and ordered the parties to arbitrate.[25] The parties then participated in a ten-day binding arbitration proceeding before JAMS, styled as *Terry v. Highland*, JAMS Arbitration No. 1310022713.[26]

---

[20] Ex. A at p. 12, § 3.10(a) (emphasis added).
[21] Ex. A p. 2, § 2.01.
[22] *See* Ex. A p. 2, § 2.01 and *supra* at n.18.
[23] Ex. J at p. 7.
[24] Ex. M at p. 4, ¶ 8.
[25] *Id.*
[26] Ex. J at p. 3.

21.     Highland Capital, Acis LP, and Acis GP were named respondents in the arbitration proceedings and were represented by Lackey Hershman in the arbitration proceedings.[27]

## D.     The Arbitration Award

22.     On October 20, 2017, Terry obtained an arbitration award (the "Arbitration Award"), jointly and severally against the Debtors in the amount of $7,949,749.15, plus post-award interest at the legal rate.[28] The Arbitration Award was based on theories of breach of contract and breach of fiduciary duties.[29]

23.     Under the Arbitration Award, the arbitration panel found that Terry's termination by Dondero/Highland Capital was wrongful and that, among other things, Acis breached the LPA and breached fiduciary duties owed to Terry as Acis's limited partner.[30] Importantly, the arbitration panel found that Highland Capital had been paid more than 20% of Revenues (as such term is understood under the LPA), without Terry's consent, in violation of Section 3.10(a) of the LPA:

> It is undisputed that ACIS habitually paid more than 20% of Revenues to Highland for providing ACIS with overhead and administration. Respondents' evidence and arguments that Terry waived or consented to ACIS's payment of excess expenses is not persuasive. At most, Terry accepted his ACIS distributions without regard to the expenses paid to Highland.   This is not consent contemplated by the ACIS LPA.
>
>         . . . .
>
> The evidence establishes that Terry did not consent to ACIS payments of expenses in excess of 20% of Revenue and Terry has not waived his right to claim damages directly resulting from ACIS' and ACIS GP's breach of contract and breach of fiduciary duty.  Clearly, ACIS and ACIS GP ignored Terry's contractual rights and ACIS GP as a general partner has a fiduciary duty not to benefit itself

---

[27] See Ex. J at pp. 1-2; see also Ex. I (requesting attorneys' fees for representing Highland Capital in the arbitration proceedings).
[28] See Ex. J at p. 24.
[29] See Ex. J at pp. 19-23.
[30] See Ex. J at pp. 21-23.

or another at the expense of its limited partner, as they ignore and breach the terms of the partnership agreement and diminish Terry's distributions.[31]

24. Additionally, in the analysis of Terry's damages, the arbitration panel stated:

The evidence establishes that ACIS and ACIS GP paid excess expenses to Highland during the years of 2013, 2014, 2015 and January through May 2016. These expenses paid exceeded the 20% of Revenues cap stated in Section 3.10(a) of the ACIS LPA. The payment of these excess expenses reduced Terry's ACIS partnership distributions during this period. Had excess expenses not been paid and only the contractually capped expenses had been paid, Terry would have received additional ACIS profits distributions of $1,755,481.00 for his 25% partnership interest in ACIS.[32]

25. Finally, in its findings and conclusions, the arbitration panel stated: "ACIS [LP] and ACIS GP paid Highland expenses in excess of the contractual limit imposed by Section 3.10(a) of the ACIS LPA."[33] The total in excess expenses paid to Highland Capital during the years of 2013, 2014, 2015, and January through May 2016 amounts to $7,021,924.00.[34]

26. On December 18, 2017, the 44th Judicial District Court of Dallas County, Texas, entered its *Order Confirming Arbitration Award* (the "Order Confirming Arbitration Award") and its *Final Judgment* confirming the Arbitration Award (the "Final Judgment").[35]

27. On August 1, 2018, Highland Capital filed Proof of Claim No. 27 in the claims register for Case No. 18-30264 (the "Highland Acis LP Claim"), in the amount of $4,672,140.38, with the basis of the claim listed as "Sub-Advisory Services and Shared Services."[36]

28. Also on August 1, 2018, Highland Capital filed Proof of Claim No. 13 in the claims register for Case No. 18-30265 (the "Highland Acis GP Claim," together with the

---

[31] Ex. J at pp. 15-16.
[32] Ex. J at p. 20.
[33] Ex. J at p. 22, ¶ 7.
[34] Ex. J. at p. 20 (and multiplying the amount for 25% of the Expense Overpayments by four).
[35] *See* Ex.'s K & L; *see also* Ex. M at p. 4, ¶ 10.
[36] *See* Ex. R at pp. 1-3.

Highland Acis LP Claim, the "Highland Claims"), in the amount of $4,672,140.38, with the basis of the claim listed as "Sub-Advisory Services and Shared Services."[37]

## IV.     ARGUMENTS & AUTHORITIES

### A.     Standard for Summary Judgment

29.     Summary judgment should be granted when, as here, the summary judgment record establishes that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Summary judgment is appropriate when "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson*, 477 U.S. at 248. Only disputes about material facts will preclude a summary judgment. *Anderson,* 477 U.S. at 248.

30.     The movant bears the initial burden of establishing that there is no genuine issue of material fact. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 256. After the movant meets its burden, the non-movant must set forth specific facts showing there is a genuine issue of fact for trial. *Anderson*, 477 U.S. at 248. The burden is on the non-movant to make a showing sufficient to establish an issue of fact for each element as to which that party will have the burden of proof at trial. *Celotex*, 477 U.S. at 322. A dispute as to a material fact is "genuine" under Federal Rule of Civil Procedure 56(c) only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient to preclude summary judgment. *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999), *cert. denied*, 528 U.S. 906 (1999). Neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary

---

[37] *See* Ex. S at pp. 1-3.

judgment burden. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002); *Blanks v. Ford Motor Credit*, No. 3:04-CV-0331-B, 2005 WL 991241, 2005 U.S. Dist. LEXIS 33977, at \*6-7 (N.D. Tex. Apr. 20, 2005), *aff'd*, 202 Fed. App'x 664 (5th Cir. 2006).

**B.     Standard for Collateral Estoppel**

31.     "Collateral Estoppel or, in modern usage, issue preclusion, means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Schiro v. Farley*, 510 U.S. 222, 232 (1994) (internal quotation marks omitted). Thus, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979)). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana*, 439 U.S. at 153-54.

32.     "In the context of issue preclusion, the terms 'issue' and 'fact' are interchangeable. The purpose of the reviewing court is to determine the specific facts brought that were already established through full and fair litigation." *Thomas v. Pickens (In re Pickens)*, Adv. No. 16-4063, 2017 Bankr. LEXIS 312, at \*11-12 (Bankr. E.D. Tex. Feb. 3, 2017) (citing *Fielder v. King (In re King),* 103 F.3d 17, 19 (5th Cir. 1997)).

33.     "[F]ederal courts look to the principles of issue preclusion utilized by the forum state in which the prior judgment was entered." *Pickens*, 2017 Bankr. LEXIS 312, at \*10-11 (citing *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 181 (5th Cir. 1997)). Accordingly, because the Order Confirming Arbitration Award and Final Judgment were entered by a Texas

state court, the Texas law of issue preclusion applies. *See Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1201 (5th Cir. 1996).[38] Further, even if a state court judgment is on appeal, the judgment is sufficiently final for purposes of collateral estoppel. *See Cardwell v. Gurley*, No. 4-10-CV-706, 2011 WL 6338813, 2011 U.S. Dist. LEXIS 145358, at 10-11 n.2 (E.D. Tex. Dec. 19, 2011), *aff'd sub nom. Cardwell v. Gurley (In re Cardwell)*, 487 Fed. App'x 183 (5th Cir. 2012).

34. Under Texas law, the doctrine of collateral estoppel "is designed to promote judicial efficiency and to prevent inconsistent judgments by preventing any relitigation of ultimate issues of fact." *Tex. Dept. of Public Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001). "Collateral estoppel may preclude relitigation of issues previously litigated even though the subsequent suit is based upon a different cause of action." *Johnson & Higgins v. Kenneco Energy*, 962 S.W.2d 507, 521 (Tex. 1998).

35. "Collateral estoppel applies when an issue decided in the first action is actually litigated, essential to the prior judgment, and identical to an issue in a pending action." *Id.* Invocation of collateral estoppel *does not*, however, require mutuality—"rather, it is only necessary that the party against whom the plea of collateral estoppel is being asserted be a party or in privity with a party in the prior litigation." *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1991); *accord Petta*, 44 S.W.3d at 579; *see also Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 864-66 (5th Cir. 1985) (explaining that even when a person is not a party in the prior action, but is in privity with the party in the prior action to which the final judgment applies, that person is bound by the judgment under the doctrine of collateral estoppel).

---

[38] Application of federal or state law would yield the same result. *See City of San Antonio v. Cortes*, 468 S.W.3d 580, 586 (Tex. App.—San Antonio 2015, pet. denied); *see also Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1991) (applying Texas law and noting that the same result would be reached under federal or state law and applying Texas law); *Johnson & Higgins v. Kenneco Energy*, 962 S.W.2d 507, 521 (Tex. 1998) ("The federal courts have applied the same test.").

---

> The rule [of collateral estoppel] is generally stated as binding a party and those in privity with him. . . . Due process requires that the rule of collateral estoppel operate only against persons who have had their day in court either as a party to the prior suit or as a privy, and, where not so, that, at the least, the presently asserted interest was actually and adequately represented in the prior trial.

*Eagle Properties*, 807 S.W.2d at 721 (quoting *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex. 1971). Accordingly,

> collateral estoppel applies when (1) the issue of fact or law sought to be litigated in the second action was fully and fairly litigated in the first action; (2) that issue of fact or law was essential to the judgment in the first action; and (3) the party against whom the doctrine is asserted was a party or was in privity with a party in the first action.

*City of San Antonio v. Cortes*, 468 S.W.3d 580, 586 (Tex. App.—San Antonio 2015, pet. denied).

36.     A nonparty is in privity with a party in a prior action when the nonparty's interests were adequately represented by a party in the original action. *Benson & Ford, Inc. v. Wanda Petrol. Co.*, 833 F.2d 1172, 1174-76 (5th Cir. 1987); *see also Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) (noting that a nonparty "may be bound by a judgment because [they were] adequately represented by someone with the same interests who [wa]s a party to the suit") (internal quotation marks omitted). Adequate representation "refers to the concept of virtual representation, by which the nonparty may be bound because the party to the first suit is so closely aligned with [the nonparty's] interests as to be his virtual representative." *Benson & Ford*, 833 F.2d at 1175 (internal quotation marks omitted). Thus, in this context, "[p]rivity has come to be seen as a descriptive term for designating those with a sufficiently close identity of interests to justify application of nonparty claim preclusion." *Nevada v. United States DOL*, 321 F. Supp. 3d 709, 721 (E.D. Tex. 2018) (internal quotation marks omitted). Further, the Fifth Circuit has found that pre-existing substantive legal relationships between the party in the first action and the nonparty are sufficient to apply nonparty claim preclusion. *Warren v. Mortg. Elec. Registration*

*Sys., Inc.*, 616 Fed. App'x 735, 737 (5th Cir. 2015) (finding privity and noting that "nonparty preclusion may be justified based on a variety of pre-existing substantive legal relationships between the person to be bound and the party to the judgment") (quoting *Taylor*, 553 U.S. at 894); *see also Benson & Ford*, 833 F.2d at 1175 (explaining that, with respect to virtual representation, there must be an "express or implied legal relationship in which the parties to the first suit are accountable to non-parties [in the] subsequent suit raising identical issues") (quoting *Pollard v. Cockrell*, 578 F.2d 1002, 1008 (5th Cir. 1978)).

**C.     Collateral Estoppel Applies to Issues Determined in Arbitration.**

37.     "Collateral estoppel applies to issues determined in arbitration." *Antonio Leonard TNT Prods., LLC v. Goosen-Tutor Promotions, LLC*, 47 F. Supp. 3d 500, 511 (S.D. Tex. 2014) (citing *Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1136 (5th Cir. 1991)); *see also Roehrs v. Conesys, Inc.*, No. 3:05-CV-829-M, 2007 WL 2125654, 2007 U.S. Dist. LEXIS 53712, at *11-13 (N.D. Tex. July 25, 2007), *aff'd* 332 Fed. App'x 184 (5th Cir. 2009) (applying collateral estoppel to arbitration findings when the identity of the parties in the litigation and the arbitration was different, but finding that privity applied). This includes application of offensive collateral estoppel based on findings and conclusions rendered in arbitration. *Id.*

38.     A federal court has broad discretion in deciding whether to apply the doctrine of collateral estoppel, "at least when the arbitral pleadings state issues clearly, and the arbitrators set out and explain their findings in a detailed written opinion." *Grimes v. BNSF Ry. Co.*, 746 F.3d 184, 188 (5th Cir. 2014) (internal quotation marks omitted). In deciding whether to apply collateral estoppel to an arbitration decision, the court must consider whether the procedural differences between the arbitration and court proceedings would prejudice the party challenging the use of collateral estoppel and "specifically must determine whether procedural opportunities

available to the party in the subsequent action might be likely to cause a different result." *Universal Am. Barge Corp.*, 946 F.2d at 1137-38 (internal quotation marks omitted).

39.     Moreover, for purposes of res judicata and collateral estoppel, state and federal courts have given preclusive effect to arbitration awards, "even though [an arbitration award] is not confirmed and a judgment is not entered." *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 270 (Tex. App.—Houston [14th Dist.] 2003) (pet. denied).

**D.     The Findings and Conclusions of the Arbitration Award are Binding Upon Highland Capital.**

40.     Although the arbitration panel awarded Terry damages against the Acis entities, and not Highland Capital, the arbitration panel's findings and conclusions should have preclusive effect upon Highland Capital under the doctrine of collateral estoppel because (notwithstanding the fact that Highland Capital was a named respondent and represented in the arbitration proceedings) Highland Capital was in privity with Acis and adequately represented in the arbitration proceedings.

41.     As an initial matter, Highland Capital, Acis LP, and Acis GP were respondents in the arbitration proceedings and were represented by the same counsel, Lackey Hershman, who vigorously litigated the issues determined by the arbitration panel, including those related to the LPA, on behalf of the Acis entities as well as Highland Capital, against Terry.  Accordingly, at the time of the arbitration, Acis's interests and Highland Capital's interests were aligned and argued in lockstep against Terry.

42.     Even treating Highland as a nonparty to the finding that Acis overpaid Highland Capital, Highland Capital was in privity with Acis and Highland Capital's interests were "adequately represented." *See Taylor*, 553 U.S. at 894. At the time of the arbitration proceedings, various implied and express substantive legal relationships existed between Highland and Acis, evidenced at a minimum by the Sub-Advisory Agreement and Shared Services Agreement, under

which Acis LP and Highland Capital owed duties to each other, *and which are the basis for Expense Overpayments made to Highland Capital*. Further, Highland Capital is an affiliate and insider of Acis LP, and the actions of both Highland Capital and Acis LP were commonly controlled by Dondero. Accordingly, the substantive legal relationships that existed between Highland Capital and Acis at the time of the arbitration are more than sufficient to establish privity for purposes of applying collateral estoppel against Highland Capital.

43.     The elements to support collateral estoppel are also satisfied. First, the issues determined by the arbitration panel in connection with the Expense Overpayments were fully and fairly litigated in the arbitration proceedings and confirmed by final judgment in state court, including whether the Expense Overpayments to Highland Capital were in violation of the LPA, the amount of the Expense Overpayments, and whether Terry consented to the Expense Overpayments.  Second, these issues were necessary to support the Arbitration Award (and the Final Judgment) because the amount overcharged was necessary to determine Terry's total damage amount against Acis. Third, as set forth above, Highland Capital was a party or was in privity with Acis in the arbitration proceedings.[39]

44.     Accordingly, the arbitration panel's findings and conclusions set forth in the Arbitration Award are binding upon Highland Capital, including that Acis LP paid excess expenses to Highland Capital during the years of 2013, 2014, 2015, and January through May 2016, in violation of Section 3.10(a) of the LPA, and that 25% of the total of such excess expenses paid to Highland Capital during that time period amounts to $1,755,481.00.

---

[39] Additionally, on information and belief, at the hearing held on October 22, 2018, in Cause No. DC-16-11396, styled *Highland Capital Management, LP v. Terry*, in the 162nd Judicial District Court of Dallas County, Highland Capital's counsel affirmatively represented to the court that the Arbitration Award is binding upon Highland Capital. Under the doctrine of judicial estoppel, Highland Capital cannot now assert otherwise. *See Reed v. City of Arlington*, 650 F.3d 571, 573-574 (5th Cir. 2011) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.").

45.     If $1,755,481.00 represents 25% of the total of excess expenses paid to Highland Capital during the years of 2013, 2014, 2015 and January through May 2016, and this finding is binding upon Highland Capital, then 100% of the excess expenses paid during the same time period amounts to $7,021,924.00.

**E.      The Expense Overpayments to Highland Capital were Ultra Vires Acts by Acis LP in Violation of the LPA (Count 1).**

46.     *Ultra vires* acts include "acts specifically prohibited by the corporation's charter, *for which no implicit authority may be rationally surmised*, or those acts contrary to basic principles of fiduciary law." *Robbins Hose Co. No. 1, Inc. v. Baker*, No. 2247-VCP, 2007 WL 3317598, 2007 Del. Ch. LEXIS 151, at *26 n.49 (Del. Ch. Oct. 31, 2007) (emphasis in original) (quoting *Solomon v. Armstrong*, 747 A.2d 1098, 1114 (1999)) (internal quotation marks omitted). Delaware courts apply the doctrine of *ultra vires* to partnerships by analogy. *See, e.g., In re Mesa Ltd. P'ship Preferred Unitholders Litig.*, Civil Action No. 12,243 (Consolidated), 1991 Del. Ch. LEXIS 214, at *20 (Dec. 10, 1991).

47.     Under Delaware law, void acts of a corporation, which include *ultra vires* acts, "are those acts that the board, or more generally the corporation, has no implicit or explicit authority to undertake or those acts that are not performed in the interest of the corporation, irrespective of whether or not they are authorized by a corporation's certificate of incorporation." *Solomon*, 747 A.2d at 1114. Void acts "are legal nullities incapable of cure." *Apple Computer, Inc. v. Exponential Tech., Inc.*, C.A. No. 16315, 1999 WL 39547, 1999 Del. Ch. LEXIS 9, at 15 (Del. Ch. Jan. 21, 1999); *see also Robbins Hose Co. No. 1*, 2007 Del. Ch. LEXIS 151, at *26 ("Because the [] acts were *ultra vires*, and therefore void, it is as though those acts never happened.").

48.     The Expense Overpayments, and any agreements supporting such overpayments, were explicitly prohibited by Section 3.10(a) of the LPA, and no implicit authority to take such

actions may be rationally surmised because such actions by Acis LP were economically irrational and not in the interest of Acis LP. Therefore, the Expense Overpayments to Highland Capital in the amount of at least $7,021,924.00, and any agreements supporting the Expense Overpayments, were unauthorized *ultra vires* acts of the partnership in violation of the LPA and are void.

49.     Even if the Expense Overpayments were merely in the context of breaching the duty of care, and performed in Acis LP's interest, such actions are at least voidable. *See Solomon*, 747 A.2d at 1114 & n.45 (explaining when an unauthorized act is voidable and how *ultra vires* acts can be defined broad or narrowly). A voidable act may be ratified by the corporation's shareholders. *Id.* Here, as the arbitration panel found, Terry did not consent to the Expense Overpayments, and therefore such actions were not ratified by the Founding Partner Group and are at least voidable.

**F.     Under 11 U.S.C. § 542(a), Highland Capital Must Return the Expense Overpayments to the Trustee (Count 2).**

50.     Under section 542(a) of the Bankruptcy Code, "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a).

51.     Under section 541(a) of the Bankruptcy Code, property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.  § 541(a).  Further, the "estate is comprised of [such] property, wherever located and by whomever held." *Id.*

52.     Highland Capital wrongfully received at least $7,021,924.00 in excess of 20% of Revenues, in violation of the LPA and without the consent of all members of the Founding

Partner Group. Acis LP therefore had at least an equitable interest in such Expense Overpayments as of the commencement of the case. Thus, by definition, such Expense Overpayments are property of the estate.

53.     The property, or value of such property, from the overpayment of funds wrongfully transferred to Highland Capital totaling at least $7,021,924.00, in Highland Capital's possession, custody, or control is property of the estate, and the value of such property is not of inconsequential value or benefit to the estate.

54.     Pursuant to section 542(a) of the Bankruptcy Code, Highland Capital must deliver to the Trustee the property or value of such property, totaling at least $7,021,924.00, wrongfully transferred to Highland Capital.

**G.     Highland Capital is Liable to the Trustee for Money Had and Received (Count 3).**

55.     "An action for money had and received arises when the defendant obtains money which in equity and good conscience belongs to the plaintiff. This action  . . . looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another." *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no pet.) (internal citations omitted).

56.     Highland Capital invoiced Acis for, and received payment for, at least $7,021,924.00 in excess of 20% of Revenues without the consent of all members of the Founding Partner Group in violation of the LPA.  Highland Capital accepted such funds in violation of Section 3.10(a) of the LPA.  Highland Capital was therefore unjustly enriched in the amount of at least $7,021,924.00.

57.     Highland Capital invoiced Acis and accepted such payment from Acis despite Highland Capital's knowledge of the LPA. This money rightfully belongs to Acis, and the overpayment creates a debt in favor of Acis. Therefore, Highland Capital is liable to Acis LP for

money had and received, and the Trustee is entitled to damages against Highland Capital on behalf of Acis, in the amount of at least $7,021,924.00.

**H.      Highland Capital is Liable to the Trustee for Conversion (Count 4).**

58.     "Conversion is defined as the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights." *Green Int'l v. Solis*, 951 S.W.2d 384, 391 (Tex. 1997). To prevail on a conversion claim, a plaintiff must show: "(1) [it] owned, had legal possession, or was entitled to possession of the property, (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights, and (3) the defendant refused the plaintiff's demand for return of the property." *Automek, Inc. v. Orandy*, 105 S.W.3d 60, 63 (Tex. App.—Houston [1st. Dist.] 2003, no pet.); *accord Banco Popular, N. Am. v. Kanning*, 638 Fed. App'x 328, 340 (5th Cir. 2016).  Under the third element, "[d]emand and refusal are not necessary, however, when the possessor's acts manifest a clear repudiation of the plaintiff's rights." *Edmunds v. Sanders*, 2 S.W.3d 697, 703 (Tex. App.—El Paso 1999, pet. denied); *accord Banco Popular*, 638 Fed. App'x at 340.

59.     Highland Capital wrongfully exercised (and continues to wrongfully exercise) dominion and control over the Expense Overpayments, in the amount of at least $7,021,924.00, in violation of the LPA, and such dominion and control over the Expense Overpayments by Highland Capital is in denial of or inconsistent with Acis's rights to such funds. The elements of conversion set forth above are met because, as set forth in the Arbitration Award: (i) the Expense Overpayments made to Highland Capital were made in violation of the LPA, and Acis LP is entitled to possession of such funds paid to Highland Capital; (2) the receipt and retention of the Expenses Overpayments by Highland Capital were unauthorized under the LPA, and to the exclusion of and inconsistent with Acis LP's rights to retain such funds; and (3) Highland

Capital's actions to retain the Expense Overpayments, especially after the Arbitration Award, manifest a clear repudiation of Acis LP's rights.

60.     Highland Capital, through the common control of Dondero, was aware that it was restricted from receiving payment in excess of 20% of Revenues without the consent of all members of the Founding Partner Group. Highland Capital also had actual notice of the Arbitration Award and that Highland Capital was wrongfully in possession of such money. Despite Highland Capital's actual knowledge that the money does not rightfully belong to Highland Capital, Highland Capital continues to improperly retain the overpaid funds. Therefore, Highland Capital is liable to Acis LP for conversion, and the Trustee is entitled to damages on behalf of Acis LP, in the amount of at least $7,021,924.00.

## I.     Highland Capital's Claims Should be Disallowed Pursuant to Section 502(d) of the Bankruptcy Code.

61.     As set out above, under section 542(a) of the Bankruptcy Code, Highland Capital must return to the Trustee the total amount of the Expense Overpayments for the years 2013, 2014, 2015, and January through May 2016, which are property of the estate and total $7,021,924.00.

62.     Under section 502(d), "the court shall disallow any claim of any entity from which property is recoverable under section 542 . . . unless such entity . . . has paid the amount, or turned over any such property, for which such entity . . . is liable[.]" 11 U.S.C. § 502(d). The total amount of the Highland Claims is $4,672,140.38, and following setoff of at least $7,021,924.00, from the Expense Overpayments, the Highland Claims are below zero and effectively eliminated. Therefore, pursuant to section 502(d) of the Bankruptcy Code, the Court should disallow the Highland Claims in full. The Court may do so even before adjudicating the causes of action set forth herein. *See In re Heritage Org., L.L.*C., 375 B.R. 230, 288-89 (Bankr.

N.D. Tex. 2007) (finding a court order avoiding a transfer is not a prerequisite to disallowance of a claim).

## VI.    <u>CONCLUSION</u>

Fort the reasons set forth herein, the Trustee respectfully requests that the Court: (i) confirm that, under the doctrine of collateral estoppel, the findings and conclusions of the Arbitration Award are binding upon Highland Capital; (ii) grant summary judgment in the Trustee's favor with respect to Counts 1, 2, 3, and 4 of the Amended Answer; (iii) disallow the Highland Claims under section 502(d) of the Bankruptcy Code; and (iv) grant any other such relief that the Trustee may show himself to be justly entitled in law or in equity.

**DATED: November 27, 2018.**

Respectfully submitted,

By:*/s/ Phillip Lamberson*
Rakhee V. Patel
State Bar No. 00797213
Phillip Lamberson
State Bar No. 00794134
Joe Wielebinski
State Bar No. 21432400
Annmarie Chiarello
State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR ROBIN
PHELAN, CHAPTER 11 TRUSTEE**

**-and-**

Jeff P. Prostok
State Bar No. 16352500
J. Robert Forshey
State Bar No. 07264200
Suzanne K. Rosen
State Bar No. 00798518
Matthias Kleinsasser
State Bar No. 24071357
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mkleinsasser@forsheyprostok.com

**COUNSEL FOR THE CHAPTER 11
TRUSTEE**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on November 27, 2018, a true and correct copy of the foregoing Brief in support of the Motion for Partial Summary Judgment will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District and to the parties on the attached Service List via first class U.S. mail.

*/s/ Jason A. Enright*
One of Counsel