Holland N. O'Neil (TX 14864700)
Jason B. Binford (TX 24045499)
Shiva D. Beck (TX 24086882)
Melina N. Bales (TX 24106851)
**FOLEY GARDERE**
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Ste. 1600
Dallas, Texas 75201
Telephone: (214) 999.3000
Facsimile: (214) 999.4667
honeil@foley.com

Michael K. Hurst (TX 10316310)
Ben A. Barnes (TX 24092085)
**LYNN PINKER COX & HURST, LLP**
2100 Ross Avenue, Ste. 2700
Dallas, Texas 75201
Telephone: (214) 981.3800
Facsimile: (214) 981.3839
mhurst@lynnllp.com

**COUNSEL FOR HIGHLAND CAPITAL
MANAGEMENT, L.P.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 18-30264-SGJ-11 |
| | § | Case No. 18-30265-SGJ-11 |
| ACIS CAPITAL MANAGEMENT, L.P., | § | |
| ACIS CAPITAL MANAGEMENT GP, LLC, | § | (Jointly Administered Under |
| | § | Case No. 18-30264-SGJ-11) |
| DEBTORS | § | |
| | § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, | § | |
| L.P. AND HIGHLAND CLO FUNDING LTD., | § | |
| | § | |
| PLAINTIFFS | § | Adversary No. 18-03078-sgj |
| | § | |
| v. | § | |
| | § | |
| ROBIN PHELAN, CHAPTER 11 TRUSTEE, | § | |
| | § | |
| DEFENDANT | § | |
| | § | |
| | § | |
| ROBIN PHELAN, CHAPTER 11 TRUSTEE, | § | |
| | § | |
| THIRD PARTY PLAINTIFF, | § | |
| | § | |
| v. | § | |
| | § | |
| HIGHLAND HCF ADVISOR, LTD., | § | |
| HIGHLAND CLO MANAGEMENT, LTD., | § | |
| AND HIGHLANC CLO HOLDINGS, LTD., | § | |
| | § | |
| THIRD PARTY DEFENDANTS. | § | |
| | § | |

**HIGHLAND CAPITAL MANAGEMENT, L.P.'S MOTION TO DISMISS CERTAIN OF THE TRUSTEE'S
COUNTERCLAIMS AND THIRD-PARTY CLAIMS** **PAGE 1**

### HIGHLAND CAPITAL MANAGEMENT, L.P.'S MOTION TO DISMISS CERTAIN OF THE TRUSTEE'S COUNTERCLAIMS AND THIRD- PARTY CLAIMS

Highland Capital Management, L.P. ("**Highland**") hereby files this *Motion to Dismiss Certain of the Trustee's Counterclaims and Third-Party Claims* (the "**Motion**"). In support of the Motion, Highland respectfully states as follows:

## I.
## PRELIMINARY STATEMENT

1.      By his *Amended Answer, Counterclaims (Including Claim Objections) and Third-Party Claims* [Doc. No. 84] (the "**Amended Answer**"), the Chapter 11 Trustee (the "**Trustee**") has filed a "kitchen sink" pleading that accuses Highland of committing various types of wrongdoing, and engaging in various schemes. By this Motion, Highland seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6) of the overwhelming majority of the Trustee's claims.[1] While the claims are subject to dismissal as a matter of law, the unifying theme is that the Trustee has completely failed to tie his "evildoer" accusations to causes of action that actually entitle the Trustee to relief from Highland. Rather, the Amended Answer is simply a narrative whereby the Trustee complains that Highland, or other entities with "Highland" in their names, engaged in certain practices that the Trustee generally finds commercially objectionable. But, legal redress is not premised on the parties' opinions of each other's business practices. Instead, legal redress requires a plaintiff to allege facts that fit within legally supportable causes of action. Because the Trustee has failed to do that, the deficient counterclaims that purport to fill the kitchen sink should be dismissed.

---

[1] In fact, there is only one count – Count 30 (whereby the Trustee alleges Highland breached the Sub-Advisory Agreement) – that Highland is not seeking herein to dismiss. Highland, of course, disputes the Trustee's allegations related to Count 30.

2.     Highland sets forth herein the legal bases for dismissal of certain of the Trustee's claims.  Highland has prepared the following table identifying the claims that should be dismissed and very briefly summarizing the bases for such dismissal:

| Counts | Claim | Basis for Dismissal |
|---|---|---|
| 1-4 | Acis Limited Partnership Agreement Alleged Overpayments | Highland is not a party to the LPA |
| 5-8 | Sub-Advisory Agreement Modifications – Fraudulent | Contract modification does not constitute a transfer |
| 9-12 | ALF PMA Transfer – Fraudulent Transfer | Highland was not a party to the transfer |
| 13-16 | ALF Share Transfer – Fraudulent Transfer | Highland was not a party to the transfer |
| 17-20 | Note Transfer – Fraudulent Transfer | Highland was not a party to the transfer |
| 21-26 | Acis CLO 2017-7 Agreement and Acis CLO 2017-7 Equity Transfers – Fraudulent Transfers | Highland was not a party to the transfer |
| 27 | Civil Conspiracy to Commit Fraud, Including Fraudulent Transfers | Highland did not receive a fraudulent transfer.  Further, there is no legal basis to assert civil conspiracy to commit a fraudulent transfer. |
| 28 | Civil Conspiracy to Breach Fiduciary Duties Related to the Sub-Advisory Agreement | While fiduciary duties are referenced, the Trustee's claim is premised on fraudulent transfers – see Count 27 above.  The Trustee has failed to plead facts to support this claim. |
| 29-A[2] | Aiding and Abetting Breach Fiduciary Duties Related to the Sub-Advisory Agreement | While fiduciary duties are referenced, the Trustee's claim is premised on fraudulent transfers – see count 27 above. The Trustee has failed to plead facts to support this claim. |

---

[2] The Amended Answer skips over count 34, but there are two count 29s.  As such, the two count 29s are identified herein as "Count 29-A" and "Count 29-B."

**HIGHLAND CAPITAL MANAGEMENT, L.P.'S MOTION TO DISMISS CERTAIN OF THE TRUSTEE'S**
**COUNTERCLAIMS AND THIRD-PARTY CLAIMS                                    PAGE 3**

| Counts | Claim | Basis for Dismissal |
|--------|-------|---------------------|
| 29-B | Tortious Interference with BVK Agreement | No cause of action related to the at-will agreement is permitted by virtue of the "competitor's rule;" waiver and estoppel because the contract waived conflicts of interest. |
| 31 | Breach of Fiduciary Duties | Failure to plead with particularity |
| 32 | Punitive Damages | No legal basis |
| 33 | Alter Ego/Collapsing Doctrine/Unjust Enrichment | Failure to plead with particularity, failure to plead a viable cause of action |
| 35 | Attorneys' Fees and Costs | No legal basis |

3.     The table listed above does not include Count 30 (breach of contract) or the Trustee's objection to Highland's claim. While such matters are not addressed in this Motion, Highland vigorously disputes all of the Trustees' allegations, including Count 30 and the claim objection. Following adjudication of this Motion, Highland will file answers to Count 30 and the claim objection, as well as answers to any remaining claims. *See* Fed. R. Civ. P. 12(a)(4); *see also McZeal v. Ocwen Fin. Corp.*, 252 F.3d 1355, 1355 (5th Cir. 2001) (holding that it was not required for a party to file an answer until its Rule 12(b)(6) motion was adjudicated).

## II.
## RELEVANT BACKGROUND

### A.     Pre-Petition

4.     Acis LP was formed in 2011 pursuant to the *Amended and Restated Agreement of Limited Partnership of Acis Capital Management, L.P.* (the "**LPA**"). At its inception, the general partner of Acis LP was Acis GP and the limited partners were comprised of The Dugaboy Investment Trust, Mark Okada, and Joshua Terry ("**Terry**").

5.     Terry was terminated in June 2016. Terry thereafter initiated an arbitration (the "**Arbitration**") against Acis LP, Acis GP, and certain other parties, including Highland, alleging

breach of contract and numerous related claims, and seeking over $200 million in damages. On October 20, 2017, Terry secured an arbitration award of $7,949,749.15 million (the "**Award**"), but only against Acis LP and Acis GP and based solely on the findings of the arbitration panel.

6.     On December 18, 2017, the 44th Judicial District Court of Dallas County, Texas (the "**44th District Court**"), confirmed the Award and entered a "final and appealable judgment" against Acis LP and Acis GP for this amount (the "**Final Judgment**").

**B.     The Bankruptcy Cases**

7.     On January 30, 2018 (the "**Petition Date**"), Terry filed involuntary petitions (the "**Involuntary Petitions**") for relief under Chapter 7, Title 11 of the United States Code (the "**Bankruptcy Code**") against the Debtors.

8.     On April 13 and 15, 2018, after a five-day trial on the Involuntary Petitions, the Court entered orders for relief (the "**Orders for Relief**")[3] and a Chapter 7 trustee was appointed. The bankruptcy cases subsequently converted to Chapter 11 and the United States Trustee appointed the Trustee as Chapter 11 trustee.

9.     On August 1, 2018, Highland filed a proof of claim (Claim No. 27, the "**Highland Claim**") asserting a general unsecured claim in the amount of $4,672,140.38. The bases for the Highland Claim are amounts arising prior to the Petition Date owing by the Debtors to Highland for services Highland provided the Debtors pursuant to the Third Amended and Restated Sub-Advisory Agreement (the "**Sub-Advisory Agreement**") and the Fourth Amended and Restated Shared Services Agreement (the "**Shared Services Agreement**").[4]

---

[3] The Orders for Relief are subject to a pending appeal. *See* District Court Case No. 3:18-cv-01056-D.

[4] Highland also asserts an administrative expense claim pursuant to Bankruptcy Code section 503(b)(1) for amounts accruing under the Sub-Advisory Agreement and Shared Services Agreement following the entry of Orders of Relief. *See Highland Capital Management, L.P.'s Application for Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)* [Doc. No. 772]. Such administrative expenses are not the subject of the Trustee's Counterclaims and Third-Party Claims and Highland reserves all rights related to same.

C.    **The Adversary Proceeding**

10.    On May 30, 2018, Highland and Highland CLO Funding, Ltd. ("**HCLOF**")
initiated this adversary proceeding by filing the *Original Complaint and Request for Preliminary
Injunction of Highland CLO Funding, Ltd and Highland Capital Management, L.P. Against
Chapter 11 Trustee of Acis Capital Management, L.P. and Acis Capital Management GP, LLC*
[Doc. No. 1] (the "**Complaint**").  By the Complaint, Highland and HCLOF sought a preliminary
injunction seeking to enjoin the Trustee from interfering with a redemption issued by HCLOF on
April 30, 2018, with a redemption date of June 14, 2018 (the "**Optional Redemption**").[5]

11.    On July 2, 2018, the Trustee filed his *Answer, Affirmative Defenses,
Counterclaims and Third Party Claims* [Doc. No. 23] (the "**Original Answer**").

12.    On July 10, 2018, the Court entered an order denying the injunctive relief sought
by HCLOF [Doc. No. 31].

13.    On July 23, 2018, Highland filed its *Motion to Dismiss Counterclaims or,
Alternatively, for a More Definitive Statement* [Doc. No. 42] (the "**First Highland Motion to
Dismiss**").  HCLOF filed a motion to dismiss on the same day [Doc. No. 43] (the "**First
HCLOF Motion to Dismiss**").

14.    On October 9, 2018, the Court held a hearing on the First Highland Motion to
Dismiss and the First HCLOF Motion to Dismiss.  At the hearing, the Trustee advised the Court
that due to changed circumstances since the filing of the Original Answer, the Trustee intended
to re-plead his counterclaims.  The parties thereafter presented agreed orders to the Court and on
November 1, 2018, the Court entered such orders [Doc. Nos. 78 and 80], which recognized that
the Trustee intended to amend and/or re-file his Original Answer and that therefore the First

---

[5] The Optional Redemption was subsequently withdrawn by HCLOF.

Highland Motion to Dismiss and the First HCLOF Motion to Dismiss were deemed withdrawn, without prejudice.

15.     On November 13, 2018, the Trustee filed his *Amended Answer, Counterclaims (Including Claim Objections) and Third-Party Claims* [Doc. No. 84] (the "**Amended Answer**"). The Amended Answer asserts thirty-five (35) counts[6] against Highland, among other parties (collectively, the "**Counterclaims and Third-Party Claims**").

16.     The Counterclaims and Third-Party Claims broadly fall within the following eight categories (the "**Categories**"):

**(1)     LPA Payments.**  The Trustee alleges that because the arbitration panel found there was overcharging under the LPA that Highland is liable for such overcharges.  **Counts 1-4**.

**(2)     Sub-Advisory Agreement Modifications**.  The Trustee alleges Highland made certain modifications to the Sub-Advisory Agreement and that such modifications constituted actual and constructive fraudulent transfers. **Counts 5-8**.  The Trustee also asserts claims against Highland of breach of contract and civil conspiracy to breach fiduciary duties related to the Sub-Advisory Agreement, as well as aiding and abetting breach of fiduciary duties.[7]  **Counts 28-30**.

**(3)     ALF PMA Transfer.**  The Trustee alleges that Acis LP transferred its rights under a portfolio management agreement between Acis LP and HCLOF's predecessor-in-interest, Acis Loan Funding, Ltd. ("**ALF**"), to counter-defendant Highland HCF Advisor, Ltd. ("**HCF**").  The Trustee alleges that HCF provided no value to Acis for the "valuable rights"[8] under the portfolio management agreement.  **Counts 9-12**.

**(4)     ALF Share Transfer.**  The Trustee alleges that Acis LP allowed ALF to repurchase Acis's equity position in ALF.  The Trustee contends that the transaction constituted an actual and constructive fraudulent transfer. **Counts 13-16**.

**(5)     Note Transfer.**  The Trustee alleges that Acis LP transferred a $9.5 million promissory note (the "**Note**") to counter-defendant Highland CLO

---

[6] The Amended Answer skips over count 34, but there are two count 29s.  As such, the two count 29s are identified herein as "Count 29-A" and "Count 29-B."

[7] Notably, the Trustee identifies other alleged co-conspirators that are not parties to the proceeding.

[8] Amended Answer at ¶ 61.

Management, Ltd. ("**Highland CLOM**"). The Trustee alleges that Acis LP transferred the Note in exchange for insufficient consideration and the transaction constituted an actual and constructive fraudulent transfer. **Counts 17-20**.

(6) **Acis CLO 2017-7 Agreement and Acis CLO 2017-7 Equity Transfers.** The Trustee alleges Acis LP transferred to Highland CLO Holdings, Ltd. ("**Highland Holdings**") all of Acis's interests in agreements related to Acis CLO 2017-7, Ltd. ("**CLO 2017-7**"). The Trustee alleges Acis LP transferred to Highland Holdings all of Acis, LP's "equity interests in various entities that constituted Acis LP's indirect equity interest in"[9] Acis CLOM (the "**2017-7 Equity**"). The Trustee alleges that such transactions constituted actual and constructive fraudulent transfers. The Trustee also alleges that such transactions constituted avoidable preferences. **Counts 21-26**.

(7) **BVK Agreement.** The Trustee alleges that Highland tortuously interfered with the contractual relationship between Acis LP and Universal-Investment-Luxembourg S.A. ("**Universal**") in relation to Acis LP providing sub-advisory funds to BayVK R2 Lux S.A., SICAV-FIS ("**BVK**"). **Count 29-B.**

(8) **Other Causes of Action.** The Trustee alleges additional miscellaneous causes of action against Highland including:

o The Trustee alleges Highland engaged in civil conspiracy to commit fraud, including fraudulent transfers, as to Categories 3-7 above. **Count 27.**

o The Trustee alleges breaches of fiduciary duties in relation to Highland allegedly "denuding" Acis LP. **Count 31.**

o The Trustee seeks punitive damages. **Count 32.**

o The Trustee alleges alter ego/collapsing doctrine/unjust enrichment, asserting that the various fraudulent transfers should be collapsed into one transfer and that the Highland-related entities should be considered as one. **Count 33.**

o The Trustee seeks attorneys' fees and costs. **Count 34.**

---

[9] *Id.* at ¶ 70.

# III.
# ARGUMENT

## A. Legal Standard

17. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court held that "a plaintiff's obligation to provide the grounds of his entitlement to relief" under Rule 12(b)(6) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, a plaintiff must allege enough facts to state a claim to relief that is "plausible" on its face. *Id.* at 570. The Supreme Court in *Ashcroft v. Iqbal* held that the "plausibility" standard articulated in *Twombly* applies in all civil cases. *Morgan v. Hubert*, 2009 WL 1884605 (5th Cir. July 1, 2009) (discussing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

18. A claim is plausible on its face only when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, while the facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Id.* at 679. "A court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions." *St. Paul Commodities, LLC v. DB Fleet, LLC*, 2009 WL 3378598, at *2 (N.D. Tex. Oct. 21, 2009) (citing *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005)).

19. Thus, the Trustee's allegations in this case are not sufficient unless they make relief plausible, not merely conceivable, when taken as true. *Ibqal*, 556 U.S. at 679. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.*

**HIGHLAND CAPITAL MANAGEMENT, L.P.'S MOTION TO DISMISS CERTAIN OF THE TRUSTEE'S COUNTERCLAIMS AND THIRD-PARTY CLAIMS**      **PAGE 9**

4840-2791-1299.4

**B.      The Court Should Dismiss the LPA Related Counts Because Highland is Not a Party to the LPA and Because the Trustee is Precluded From Making Such Claims – Counts 1-4**

20.      Counts 1-4 allege that Highland was the recipient of payments that were allegedly overcharged pursuant to the LPA.  Yet, Highland is not a party to the LPA.  Rather, the terms were obligations among the <u>partners</u> to the LPA.  If there were additional expenses that exceeded what the partners otherwise agreed to among themselves per the LPA, that is among the partners (the parties to the LPA).

21.      In addition, this argument has already been advanced by Terry and adjudicated in the Arbitration.  In that matter, Terry raised the exact same LPA expense overcharging allegations.  In the Arbitration Award (attached to the Amended Answer at Exhibit B), the arbitration panel found that "<u>Acis [LP] and Acis GP</u> paid Highland expenses in excess of the contractual limit imposed by Section 3.10(a) of the Acis LPA."[10]  The panel further found that the "payment of these expenses reduced Terry's ACIS partnership distributions during this period.  Had excess expenses not been paid and only the contractually capped expenses had been paid, Terry would have received additional ACIS profits distributions of $1,755,481.00 for his 25% partnership interest in ACIS."[11]  The Trustee acknowledges that the Arbitration Award was affirmed by the 44th District Court.[12]

22.      It is clear from the plain language of the Arbitration Award that the alleged overcharging was an issue among the partners of Acis LP and their respective distributions, rather than any finding of wrongdoing by Highland.

23.      Therefore, both because Highland was not a party to the LPA, and because any overcharging issue was clearly an issue among the Acis LP partners, the Trustee has failed to

---

[10] Arbitration Award at p. 23 (emphasis added).
[11] *Id.* at p. 21.
[12] Amended Answer at ¶ 42.

state a claim against Highland based on the LPA. Counts 1-4 should be dismissed as to Highland.

## C. The Courts Should Dismiss the Fraudulent Transfer Related Counts (Categories 2 - 6) Because Highland Was Not a Transferee – Counts 5-26

24. None of the Trustee's fraudulent transfer causes of action asserted in Categories 2-6 (covering Counts 5-26 of the Amended Answer) implicate Highland in any way. In order to hold Highland liable for a fraudulent transfer under either the Bankruptcy Code or the Texas Uniform Fraudulent Transfer Act, the Trustee must show either that Highland was an "initial transferee" or "immediate or mediate transferee" of estate property. *See* Bankruptcy Code section 550(a); *see also* Tex. Bus. & Com. Code § 24.009(b) (applying in the context of the "first transferee" or "any subsequent transferee").

25. By the Category 2 Claims (Counts 5-8), the Trustee alleges actual[13] and constructive fraudulent transfers relating to the modifications to the Sub-Advisory Agreement. Even taking the Trustee's allegations as true, the Trustee fails to plead that the modifications amounted to a transfer. Bankruptcy Code section 101(54)(C) defines a transfer to include "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing with or parting with [property or an interest in property]." However, the Trustee makes no effort to establish how a property right or interest in property was "disposed or parted with" in relation to the Sub-Advisory Agreement modifications. Rather, it appears that the Trustee has repackaged his breach of contract claim (Count 30) related to the Sub-Advisory Agreement into actual and constructive fraudulent transfer claims. The elements of a fraudulent transfer simply do not align with the facts and Counts 5-8 should be dismissed.

---

[13] Each of the actual fraud counts should be dismissed because the Trustee fails to allege adequately any party's intent. *See* infra § G.

26.     By the Category 3 Claims (Counts 9-12), the Trustee alleges actual and constructive fraudulent transfers relating to the "ALF PMA Transfer." It is not disputed that Highland was not a party to the ALF PMA and that Highland was not a transferee of any of the rights that were allegedly transferred. The Trustee has also failed to adequately allege that Highland was a party for whose benefit such transfer was made.[14] The Trustee has therefore failed as a matter of law to state a claim against Highland in relation to Counts 9-12.

27.     By the Category 4 Claims (Counts 13-16), the Trustee alleges actual and constructive fraudulent transfers relating to the "ALF Share Transfer." It is not disputed that Highland was not a party to the transactions surrounding ALF's repurchase of Acis LP's equity or that Highland was a transferee of any property related to such transactions. The Trustee has also failed to adequately allege that Highland was a party for whose benefit such transfer was made. The Trustee has therefore failed as a matter of law to state a claim against Highland in relation to Counts 13-16.

28.     By the Category 5 Claims (Counts 17-20), the Trustee alleges actual and constructive fraudulent transfers relating to the "Note Transfer." It is not disputed that Highland was not a party to the Note and that Highland was not a transferee of the Note. The Trustee has also failed to adequately allege that Highland was a party for whose benefit such transfer was made. The Trustee therefore has failed as a matter of law to state a claim against Highland in relation to Counts 17-20.

29.     By the Category 6 Claims (Counts 21-26), the Trustee alleges actual and constructive fraudulent transfers, as well as an avoidable preference, relating to the transfer of Acis LP's rights in agreements relating to CLO 2017-7 and the transfer of the 2017-7 Equity. It

---

[14] The Trustee's blanket assertion, and the assertions related to the other fraudulent transfer claims, does not give Highland fair notice of what benefit it allegedly received from these transfers, and is therefore insufficient under Rule 9(b), *Twombly* and *Iqbal*.

is not disputed that Highland was not a transferee of any of the property or rights that were allegedly transferred. The Trustee has also failed to adequately allege that Highland was a party for whose benefit such transfer was made. The Trustee therefore has failed as a matter of law to state a claim against Highland in relation to Counts 21-26.

### D. The Court Should Dismiss the Trustee's Civil Conspiracy Claims Because No Facts Are Pled Establishing Highland's (Or Any Other Party's) Participation in an Alleged Conspiracy – Counts 27 and 28

30. There is no action for civil conspiracy under the Bankruptcy Code; thus, this Court must look to applicable state law, which in this case, is Texas law. *See In re Houston Reg'l Sports Network, L.P.,* 547 B.R. 717, 759 (Bankr. S.D. Tex. 2016) (citing the essential elements of civil conspiracy under Texas law*); In re Anzalduas Bus. Park, L.P.,* 494 B.R. 704, 712 (Bank. S.D. Tex. 2013) (citing the elements under Texas law of an actionable civil conspiracy); *In re Legal Econometrics, Inc.,* 169 B.R. 876, 882-83 (Bankr. N.D. Tex. 1994). Under Texas law, "An action for civil conspiracy has five elements: (1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result." *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017). "This inherently requires a meeting of the minds on the object or course of action." *Id.* Civil conspiracy requires "specific intent" to accomplish an unlawful purpose. *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996). Therefore, to satisfy Rule 12(b)(6), a civil conspiracy claim must include facts to support when the parties agreed to pursue the conspiracy, including the "specific time, place, or person involved." *Berry v. Bryan Cave LLP*, No. 3:08-

CV-2035-B, 2010 U.S. Dist. LEXIS 46572, at *23 (N.D. Tex. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 n.10 (2007)).

31.     In *Xtreme Power Plan Trust v. Schindler, et al. (In re Xtreme Power Inc.),* 563 B.R. 614 (Bank. W.D. Tex. 2016), the bankruptcy court in the Western District of Texas recently considered whether a plaintiff's civil conspiracy claim under Delaware law[15] included sufficient factual allegations to withstand a motion to dismiss. *Id.* at 647. In support of its conspiracy claim, the plaintiff alleged that the defendants "engaged in a confederation or combination of two or more persons; performed at least one unlawful act in furtherance of the conspiracy; acted pursuant to a common scheme; and caused actual damage to [the plaintiff.]" *Id.* at 648. The defendants moved to dismiss for failure to state a claim. *Id.* The court granted the defendants' motion, noting that the complaint lacked "any facts actually pled in support" of the conspiracy claim, and that "the [plaintiff] merely recited the elements of the claim and asked the court to infer from said elements an actionable conspiracy." *Id.*

32.     The Trustee's civil conspiracy claim is basically identical to the pleading the bankruptcy court considered in the *Xtreme Power Plan Trust* case. The allegations supporting the Trustee's civil conspiracy claim are nothing more than a rote recitation of the elements. The Trustee asserts that the "Highland Enterprise . . . had a meeting of the minds on the object or course of action"[16] related to the fraudulent transfers, that its actions "constitute one or more unlawful, overt acts,"[17] and that Acis suffered damages as a result. The Amended Answer lacks "any facts actually pled" to support the Trustee's conspiracy claim. Nor does it establish when

---

[15] As recited by the Court in the *Xtreme Power* case, Delaware law has even fewer elements that must be established than Texas law. *See id.* at 646 (stating that Delaware law defines civil conspiracy as (1) a confederation of two or more persons; (2) who engage in an unlawful act done in furtherance of a conspiracy; (3) that causes actual damages to a plaintiff).

[16] Amended Answer at ¶ 203.

[17] *Id.* at ¶ 204.

the alleged co-conspirators formed the conspiracy, what the object of the conspiracy was, or how Highland participated in it. The Trustee's "thread-bare recital of the elements . . . do[es] not suffice," and, accordingly, the Court should dismiss the Trustee's conspiracy counterclaim pursuant to Rule 12(b)(6).

### E. The Trustee's Civil Conspiracy Claims and Aiding and Abetting Claims Are Otherwise Impermissible Under Applicable Law – Counts 27, 28, and 29-A

33. The Trustee's civil conspiracy claims are independently deficient because the Trustee does not have standing to bring such claims. As this Court has recognized:

> [I]t is perfectly true that 'the general rule under [the Bankruptcy Code or the old Act] is that one who did not actually receive any of the property fraudulently transferred (or any part of a "preference") will not be liable for its value, even though he may have participated or conspired in the making of the fraudulent transfer (or preference) ....'

*In re TOCFHBI, Inc.*, 413 B.R. 523, 535 (Bankr. N.D. Tex. 2009) (quoting *Mack v. Newton*, 737 F.2d 1343, 1357 (5th Cir. 1984)).

34. The Fifth Circuit in *Mack v. Newton* provided the reasoning for such a general rule, first developed under the Bankruptcy Act, as follows:

> The purpose of those sections of the Bankruptcy Act is clearly to preserve the assets of the bankrupt; <u>they are not intended to render civilly liable all persons who may have contributed in some way to the dissipation of those assets</u>. The Act carefully speaks of conveyances of property as being 'null and void,' and authorizes suit by the trustee to 'reclaim and recover such property or collect its value.' The actions legislated against are not 'prohibited'; those persons whose actions are rendered 'null and void' are not made 'liable'; and terms such as 'damages' are not used. The legislative history is cancellation, not the creation of liability for the consequences of a wrongful act.

*Mack v. Newton*, 737 F.2d at 1358 (emphasis added).

35. In addition to this Court's *In re TOCFHBI, Inc.* decision cited above, the rule was applied under the Bankruptcy Code in *Ingalls v. Beutel*, 2007 WL 9718103, at *4 (W.D. Tex. Nov. 28, 2007). In *Ingalls*, the district court held that the trustee did not have standing to bring a

claim for civil conspiracy in relation to an alleged fraudulent transfer. The court reasoned that while Bankruptcy Code section 544(a)(1) gives a trustee the status of a judgment creditor, the Fifth Circuit was aware of that statute and still, in such circumstances, "denied trustees a cause of action for civil conspiracy." *Id.* at *4.

36.     As such, to the extent any of the Trustee's civil conspiracy claims are premised on an alleged fraudulent transfer, such claims must be dismissed. Civil conspiracy is not a "free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." *CNH Capital America, LLC v. Hunt Tractor, Inc.*, 568 Fed. Appx. 461, 472 (6th Cir. 2014); *see also Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) (stating that a "defendant's liability for conspiracy depends on the participation of some underlying tort."). A fraudulent transfer claim cannot act as such an underlying tort for the purposes of civil conspiracy. *See Sherman v. FSC Realty LLC (In re Brentwood Lexford Partners, LLC)*, 292 B.R. 255, 275 (Bankr. N.D. Tex. 2003).

37.     In this matter, the Trustee's civil conspiracy claims relate directly to the various alleged fraudulent transfers at the heart of the Trustee's case. <u>This includes Counts 28 and 29-A, which are disingenuously presented by the Trustee as conspiracy to commit fiduciary duties and aiding and abetting breach of fiduciary duties.</u>[18] In his factual summation in support of Count 28, the Trustee states that the alleged conspiracy was "to make numerous transfers to denude Acis, including the ALF PMA Transfer, the ALF Share Transfer, the Note Transfer, the 2017-7 Agreements transfer, the 2017-7 Equity transfer and the thwarted Universal/BVK Agreement transfer."[19] Likewise, as to Count 29-A (purportedly an aiding and abetting claim), the Trustee

---

[18] Highland disputes that, to the extent Highland owed fiduciary duties, such duties were owed to the Debtors.
[19] *Id.* at ¶ 209.

stated that Highland, and other entities, "<u>conspired</u> to make numerous transfers to denude Acis . . . ."[20]

38.     The Trustee's own words demonstrate that the Trustee has dressed up conspiracy to commit fraudulent transfer claims as a conspiracy to breach fiduciary duty claim and an aiding and abetting claim, in attempt to avoid binding law prohibiting his claim. Such claims should be dismissed.

**F.      The Trustee Cannot State a Claim for Tortious Interference Under Applicable Law – Count 29-B**

39.     Count 29-B is premised on Highland allegedly tortuously interfering with the contractual relationship between Universal and Acis LP. It is not disputed that the Agreement for Outsourcing of Asset Management (the "**Outsourcing Agreement**") between Universal and Acis LP was an at-will contract.[21] Applicable Texas law maintains that a claim for tortious interference cannot lie where the actor, furthering its own legitimate interests, merely induces a third party to cease its contractual relations when the third party has the right to do so. *See C.E. Servs., Inc. v. Control Data Corp.*, 759 F.2d 1241, 1248 (5th Cir. 1985) (discussing the "competitors rule" set forth in section 786 of the Restatement (Second) of Torts).

40.     Further, it is not in dispute that the Sub-Advisory Agreements waived any conflicts and otherwise provided for Highland to compete against Acis LP. A tortious interference claim cannot be established where the counterparty affirmatively acknowledged and contracted away any claim of conflict. *See* Sub-Advisory Agreement (repeatedly referenced by the Trustee in his Amended Answer) at § 5 and Appendix B thereto.

---

[20] *Id.* at ¶ 219 (emphasis added).
[21] *See* Hr'g Tr (Dec. 11, 2018) (PM) 46:8-11 ("Q: And was the BVK contract an at-will contract? A: That's my understanding.").

41.     The Trustee is estopped from asserting Count 29-B because the party he is relying upon to make such assertions (Acis LP) contractually executed a waiver of the issue. Moreover, because of such wavier, the Trustee has not alleged, and cannot allege, any facts that would support a finding that Highland was legally prohibited from taking the actions set forth in the Amended Answer. In other words, even if the facts where true (which Highland disputes), the Trustee has failed to state a claim. As such, Count 29-B should be dismissed.

## G.     The Trustee Fails to Plead His Fraud-Related Claims with Particularity – Counts 4-24, 27-29, 31-33

42.     Federal Rule of Civil Procedure 9(b) requires a plaintiff to "state with particularity the circumstances surrounding the fraud or mistake." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). The requirement "has long played [a] screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner rather than later." *Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). "At a minimum Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1998) (emphasis added).

43.     A large portion of the Trustee's allegations are premised on actual fraud allegedly committed by Highland including Counts 5, 6, 9, 10, 13, 14, 17, 18, 21, 22, 27, 32, and 33. In addition, the Trustee alleges causes of action involving constructive fraud, including Counts 4, 7, 8, 11, 12, 15, 16, 19, 20, 23, 24, 28, 29-A, 29-B, and 31. Constructive fraud claims, conversion claims, breach of fiduciary duty claims, and civil conspiracy claims are subject to the heightened pleading requirement under Rule 9(b). *See Schroeder v. Wildenthal*, 2011 WL 6029727, at *4 (N.D. Tex. Nov. 30, 2011); *Taylor v. Feinberg*, 2009 WL 3156747, at *5 (N.D. Ill. Sept. 28, 2009).

44.     In each of the counts listed above, the Trustee fails to plead the "who, what, when, where, and how" of the fraudulent activity the Trustee is alleging.  Rather, the Trustee provides threadbare facts and a recitation of the cause of action elements.  These counts should be dismissed on the basis that Rule 9(b) and associated case law specifically prohibits such generalized pleading.

## H.     The Trustee Has Failed to Allege Alter Ego – Count 33

45.     Count 33 alleges that Highland is the alter ego of various other entities with the word "Highland" in their names.  The Trustee does not make any attempt to allege facts (e.g., failure to follow corporate formalities) that would support piercing the corporate veil or similar relief.  Rather, the claims asserted by the Trustee in Count 33 appear to be entirely premised on the ability of courts to hold affiliated companies liable as one entity where the "corporate structure has been abused to perpetrate a fraud, evade and existing obligation . . . or justify a wrong."[22]

46.     In alleged support of such an argument, the Trustee cites to *SSP Partners v. Gladstrong Inv. (USA) Corp.*, 275 S.W.3d 444, 451 (Tex. 2008).  The Texas Supreme Court in *SSP Partners* mentions the possibility of using a corporate structure to perpetrate a fraud.  *Id.* at 454 (discussing *Castleberry v. Branscum*, 721 S.W.2d 270 (Tex. 1986)).[23]  However, the *SSP Partners* case actually turned on the "single enterprise theory."  As made clear by the *SSP Partners* court, factors to be considered by a court for making a single enterprise theory determination include, but are not limited to: "common employees; common offices; centralized accounting; payment of wages by one corporation to another corporation's employees; common business name; services rendered by the employees of one corporation on behalf of another

---

[22] Amended Answer at ¶ 243.
[23] *Castleberry* was subsequently superseded by statute on other grounds.  *See Fidelity & Deposit of Md. Commercial Cas. Consultants, Inc.*, 976 F.2d 272, 275 (5th Cir. 1992).

corporation; undocumented transfers of funds between corporations; and unclear allocations of profits and losses between corporations." *Id.* at 451 (quoting *Paramount Petroleum Corp. v. Taylor Rental Center*, 712 S.W.2d 534, 536 (Tex. App. – Houston [14th Dist.] 1986, writ ref'd n.r.e.)).

47.     The Trustee alleges <u>no</u> facts to support <u>any</u> such common enterprise theory in relation to Highland.   Rather, the Trustee apparently is basing Count 33 entirely on the proposition that Highland is using its corporation form as a means to commit fraud.  The case cited by the *SSP Partners* case – *Castleberry v. Branscum*  – provides that, in order to establish such a claim, the Trustee must allege facts that would support factors such as: the company was organized and operated as a mere tool or business conduit of another company; the company fiction is resorted to as a means of evading an existing legal obligation; the company fiction is employed to achieve or perpetrate monopoly; the company fiction is used to circumvent a statute; and the company fiction is relied upon as a protection of crime or to justify a wrong. *Castleberry v. Branscum*, 721 S.W.2d at 271.

48.     There are no such facts alleged that would support such a claim.  Rather, the Trustee makes additional threadbare accusations that the Supreme Court has held are demonstrably inadequate.  *See Iqbal*, 556 U.S. at 678.  Accordingly, the Court should dismiss Count 33.

**I.     The Trustee Has Failed to Establish a Right to Punitive Damages or Attorneys' Fees – Count 33 and Count 34**

49.     The Trustee has failed to provide any basis for punitive damages or attorneys' fees.  Accordingly, the Court should dismiss Counts 33 and 34.

WHEREFORE, Highland respectfully requests that the Court dismiss the referenced Counterclaims and Third Party Claims against Highland, and grant Highland all such other relief to which it may be entitled.

DATED: December 21, 2018

Respectfully submitted,

/s/ Holland N. O'Neil
Holland N. O'Neil
State Bar No. 14864700
honeil@foley.com
Jason B. Binford
State Bar No. 24045499
jbinford@foley.com
Melinda N. Bales
State Bar No. 24106851
mbales@foley.com
**FOLEY GARDERE**
**FOLEY & LARDNER, LLP**
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

--and--

Michael K. Hurst
Texas Bar No. 10316310
mhurst@lynnllp.com
Ben A. Barnes
Texas Bar No. 24092085
bbarnes@lynnllp.com
Patrick B. Disbennett
Texas Bar No. 24094629
pdisbennett@lynnllp.com
**LYNN PINKER COX & HURST, L.L.P.**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

**ATTORNEYS FOR HIGHLAND CAPITAL
MANAGEMENT, L.P.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served via ECF on December 21, 2018 to all parties of record.

/s/ Jason B. Binford
Jason B. Binford