Mark M. Maloney (GA 468104) (admitted *pro hac vice*)
W. Austin Jowers (GA 405482) (admitted *pro hac vice*)
Paul R. Bessette (TX 02263050)
**KING & SPALDING LLP**
1180 Peachtree Street NE
Atlanta, GA 30309
Tel: 404-572-4600
Fax: 404-572-5100
mmaloney@kslaw.com

**COUNSEL FOR HIGHLAND CLO FUNDING LTD.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 18-30264-SGJ-11 |
| | § | Case No. 18-30265-SGJ-11 |
| **ACIS CAPITAL MANAGEMENT, L.P.,** | § | |
| **ACIS CAPITAL MANAGEMENT GP, LLC,** | § | (Jointly Administered Under |
| | § | Case   No. 18-30264-SGJ-11) |
| | § | |
| DEBTORS | § | Chapter 11 |
| | § | |
| | | |
| HIGHLAND CAPITAL MANAGEMENT, L.P. AND HIGHLAND CLO FUNDING LTD., | § | |
| | § | |
| | § | |
| PLAINTIFFS | § | Adversary No. 18-03078-sgj |
| | § | |
| v. | § | |
| | § | |
| ROBIN PHELAN, CHAPTER 11 TRUSTEE | § | |
| | § | |
| | § | |
| DEFENDANT | § | |
| | § | |
| | § | |
| ROBIN PHELAN, CHAPTER 11 TRUSTEE, | § | |
| | § | |
| THIRD PARTY PLAINTIFF, | § | |
| | § | |
| v. | § | |
| | § | |
| HIGHLAND HCF ADVISOR, LTD. | § | |
| HIGHLAND CLO HOLDINGS, LTD., AND | § | |
| HIGHLAND CLO MANAGEMENT, LTD. | § | |
| | § | |
| THIRD PARTY DEFENDANTS. | | |

## HIGHLAND CLO FUNDING, LTD.'S
## BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

## TABLE OF CONTENTS

RESERVATION OF RIGHTS ......................................................................................... 1

LEGAL STANDARD...................................................................................................... 2

ARGUMENT .................................................................................................................. 4

I.     Many Counterclaims Should Be Dismissed Because They Do Not Include
       Allegations Against HCLOF............................................................................... 4

       A.     The Counterclaims Impermissibly Rely On "Group Pleading."............................ 4

       B.     Counts 1–4 Should Be Dismissed Because HCLOF Is Not a Party to the
              LPA. ..................................................................................................... 5

       C.     Counts 5–8, 30 and 31 Should Be Dismissed Because HCLOF Is Not a
              Party to the Sub-Advisory Agreement. ................................................. 5

       D.     Counts 17–20 Should Be Dismissed Because HCLOF Was Not Involved
              in the Alleged Note Transfer.................................................................. 6

       E.     Counts 21–24 Should Be Dismissed Because HCLOF Was Not Involved
              in the Alleged 2017-7 Equity and 2017-7 Agreement Transfers........... 7

       F.     Count 25 Should Be Dismissed Because No Preferential Transfers to
              HCLOF Are Alleged.............................................................................. 7

       G.     Count 29(A) Should Be Dismissed For Failure To State a Claim Against
              HCLOF. ................................................................................................. 8

       H.     Count 29(B) Should Be Dismissed Because HCLOF Was Not Involved in
              the Universal/BVK Agreement.............................................................. 9

II.    The Trustee Has Failed To Allege Fraudulent Transfers of the ALF PMA and
       ALF Shares. ...................................................................................................... 9

       A.     Counts 9–12 Should Be Dismissed Because No Value Left the Debtors'
              Estates Via the Alleged ALF PMA Transfer. ....................................... 9

       B.     Counts 9, 10, 13, and 14 Should Be Dismissed Because the Trustee Does
              Not Allege Fraudulent Intent. .............................................................. 12

       C.     Counts 15 and 16 Should Be Dismissed Because the Trustee Does Not
              Allege that HCLOF Paid Insufficient Consideration For the ALF Shares. .......... 13

III.   Counts 27 and 28 Should Be Dismissed Because the Trustee Has Failed to Plead
       Adequately a Civil Conspiracy. ...................................................................... 14

i

IV. Count 33 Should Be Dismissed Because the Trustee Has Failed To Allege Alter Ego, Collapsing Doctrine, or Unjust Enrichment. ............................................................ 15

    A. Alter Ego Is Not Pleaded Adequately. .................................................................. 15

    B. The Collapsing Doctrine Is Not Pleaded Adequately. .......................................... 17

    C. Unjust Enrichment Is Not Pleaded Adequately. ................................................... 18

V. The Trustee Is Not Entitled to Remedies With Respect to Any Claim that Is Dismissed. ..................................................................................................................... 18

CONCLUSION ................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 1701 Commerce, LLC*,
    511 B.R. 812 (Bankr. N.D. Tex. 2014) ................................................................. 9

*A.I. Credit Consumer Disc. Co. v. Premiere Foods, Inc.*,
    No. CIV. 04-4049WHW, 2007 WL 3256733 (D.N.J. Nov. 5, 2007) ...................... 10

*Airport Blvd. Apts. Ltd. v. NE 40 Partners, L.P. (In re: NE 40 Partners, L.P.)*,
    440 B.R. 124 (Bankr. S.D. Tex. 2010) ................................................................. 2, 3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................ *passim*

*Baker v. Great N. Energy, Inc.*,
    No. 3:14-CV-0240-B, 2015 WL 11120878 (N.D. Tex. June 18, 2015) .............. 2, 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................ *passim*

*Berry v. Bryan Cave LLP*,
    No. 3:08-CV-2035-B, 2010 U.S. Dist. LEXIS 46572 (N.D. Tex. May 11,
    2010) ..................................................................................................................... 14

*Brown v. Bilek*,
    No. H-09-2193, 2009 WL 2601615 (S.D. Tex. Aug. 20, 2009) ............................. 3

*Coast Cities Truck Sales v. Navistar Int'l Transp. Co.*,
    147 B.R. 674 (D.N.J. 1992) ................................................................................. 10

*C.E. Servs., Inc. v. Control Data Corp.*,
    759 F.2d 1241 (5th Cir. 1985) ............................................................................... 9

*In re Commodity Merchants, Inc.*,
    538 F.2d 1260 (7th Cir. 1976) ........................................................................... 9, 10

*Edwards v. Fed. Home Loan Mortg. Corp. (In re LiTenda Mortg.age Corp.)*,
    246 B.R. 185 (Bankr. N.J. 2000) ......................................................................... 10

*Emke v. Compana, L.L.C.*,
    No. 3:06-CV-1416-L, 2007 WL 2781661 (N.D. Tex. Sept. 25, 2007) ................. 16

*First United Pentecostal Church of Beaumont v. Parker*,
    514 S.W.3d 214 (Tex. 2017) ................................................................................ 15

iii

*Gierum v. Glick (In re Glick)*,
    568 B.R. 634 (Bankr. N. D. Ill. 2017) .................................................................9

*Global Oil Tools, Inc. v. Barnhill*,
    Nos. 12:1507, 12–3041, 2013 WL 3070838 (E.D. La. June 17, 2013) ...................16

*Goodman v. H.I.G. Capital, LLC (In re: Gulf Fleet Holdings, Inc.)*,
    491 B.R. 747 (Bankr. W.D. La. 2013) ............................................................ *passim*

*Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) ................................................................................2

*Hometown 2006-1 1925 Valley View, LLC v. Prime Income Asset Mgmt., LLC*,
    847 F.3d 302 (5th Cir. 2017) .............................................................................10

*Ingalls v. Beutel*,
    No. A-05-CA-461-SS, 2007 WL 9718103 (W.D. Tex. Nov. 28, 2007)..................14

*Juhl v. Airington*,
    936 S.W.2d 640 (Tex. 1996)...............................................................................14

*Meadows v. Hartford Life Ins. Co.*,
    492 F.3d 634 (5th Cir. 2007) ...............................................................................8

*Norwood v. Raytheon Co.*,
    501 F. Supp. 2d 836 (W.D. Tex. 2006) ................................................................3

*O'Connell v. Arthur Andersen LLP (In re: AlphaStar Ins. Grp., Ltd.)*,
    383 B.R. 231 (Bankr. S.D.N.Y. 2008)..................................................................4

*Official Stanford Investors Comm.v. Greenberg Traurig, LLP*,
    No. 3:12-CV-4641-N, 2015 WL 13741905 (N.D. Tex. Feb. 4, 2015) ....................8

*In re Pietri*,
    59 B.R. 69 (M.D. La. 1986) ................................................................................10

*Robinson v. Chicago Hous. Auth.*,
    No. 94 C 4781, 1995 WL 360706 (N.D. Ill. June 14, 1995) ................................10

*SB Liquidation Tr. v. Preferred Bank (In re Syntax-Brillian Corp.)*,
    No. 08-11407 (BLS), 2011 WL 3101809 (Bankr. D. Del. July 25, 2011) .............17

*Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*,
    435 S.W.2d 854 (Tex. 1968)...............................................................................14

*Schroeder v. Wildenthal*,
    No. 3:11-CV-0525-B, 2011 WL 6029727 (N.D. Tex. Nov. 30, 2011).....................3

*Searcy v. Knight (In re: Am. Int'l Refinery)*,
402 B.R. 728 (Bankr. W.D. La. 2008) ...................................................................................4

*Sherman v. FSC Realty LLC (In re Brentwood-Lexford Partners, LLC)*,
292 B.R. 255 (Bankr. N.D. Tex. 2003) ...............................................................................14

*Steadfast Ins. Co. v. Limestone Grp. SW Bluffs, LC*,
No. 3:08-CV-0569-N, 2008 WL 11349994 (N.D. Tex. Oct. 31, 2008) ..................................3

*Tel-Phonic Services, Inc. v. TBS Int'l, Inc.*,
975 F.2d 1134 (5th Cir. 1992) ..............................................................................................2

*Thompson v. Columbia/HCA Healthcare Corp.*,
125 F.3d 899 (5th Cir. 1998) ................................................................................................2

*Trevino v. Merscorp, Inc.*,
583 F. Supp. 2d 521 (D. Del. 2008) ....................................................................................16

*U.S. Bank N.A. v. Verizon Commc'ns, Inc.*,
761 F.3d 409 (5th Cir. 2014) ..............................................................................................15

*U.S. KingKing, LLC v. Precision Energy Servs., Inc.*,
555 S.W.3d 200 (Tex. App. 2018) .......................................................................................16

*In re Watson*,
22 B.R. 938 (Bankr. M.D. Fla. 1982) ..................................................................................10

*In re Wey*,
854 F.2d 196 (7th Cir. 1988) ............................................................................................9, 10

*Williams v. WMX Technologies, Inc.*,
112 F.3d 175 (5th Cir. 1997) ................................................................................................2

*Xtreme Power Plan Trust v. Schindler, et al. (In re Xtreme Power Inc.)*,
563 B.R. 614 (Bank. W.D. Tex. 2016) .................................................................................15

**Statutes**

11 U.S.C. § 550 ...................................................................................................................18

11 U.S.C. § 548(a)(1)(A) ............................................................................................ *passim*

Texas Business & Commerce Code § 24.0005(a)(1) ..........................................................11, 12

**Other Authorities**

Federal Rule of Civil Procedure 8 .........................................................................................8

HCLOF'S BRIEF IN SUPPORT OF MOTION TO DISMISS

Federal Rule of Civil Procedure 9(b) ..................................................................................... *passim*

Federal Rule of Civil Procedure 44.1 ........................................................................................11

Restatement (Second) of Conflict of Laws § 145 ........................................................................1

Highland CLO Funding, Ltd. ("**HCLOF**") hereby moves to dismiss the Counterclaims raised in Defendants' Amended Answer, Affirmative Defenses, Counterclaims, and Third Party Claims [ECF No. 84] as to HCLOF. The allegations in the Counterclaims are presumed true for the purposes of this motion.[1]

## <u>RESERVATION OF RIGHTS</u>

For all of the reasons articulated in *Highland CLO Funding, Ltd.'s Brief in Support of its Motion to Dismiss* [ECF No. 44], HCLOF contends that this Court has no personal jurisdiction over HCLOF. HCLOF recognizes that the Court has ruled against it, and reserves all rights on this issue. Nothing in this motion should be construed to waive this defense.

HCLOF further reserves all rights with respect to any choice of law arguments. Many of the Counterclaims may be subject to the laws of Guernsey with respect to the alleged actions of HCLOF. However, because these claims are inadequately pleaded, HCLOF cannot at this time apply the relevant test[2] to determine which state's substantive law applies to these claims. HCLOF therefore reserves the right to plead and prove the applicability of Guernsey law or other applicable law to any or all of the Counterclaims.

---

[1] HCLOF moved to withdraw the reference at the inception of this lawsuit. The Court has stated previously that it will await ruling on that motion until the pleadings close. For the avoidance of doubt, HCLOF reiterates that it does not consent to the entry of final orders by the Bankruptcy Court.

[2] For example, the Restatement (Second) of Conflict of Laws § 145 provides, in relevant part:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.

As described below, because the Trustee has failed to plead the alleged misconduct of HCLOF, or the place where this misconduct occurred, with respect to many of the alleged torts, it is impossible at this stage to determine the applicable law.

1

**LEGAL STANDARD**

Federal Rule of Civil Procedure 9(b) "has long played [a] screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later." *Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). The Fifth Circuit "appl[ies] Rule 9(b) to fraud complaints with 'bite' and 'without apology.' " *Id.* (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)).

 "[W]here plaintiffs seek to establish the actual intent of the debtor, the enhanced pleading requirements of Rule 9(b) should apply." *Baker v. Great N. Energy, Inc.*, No. 3:14-CV-0240-B, 2015 WL 11120878, at *3 (N.D. Tex. June 18, 2015) (citation omitted). "This standard requires sufficient factual detail to lend some measure of substantiation to a claim that the defendant committed fraud." *Id.* "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1998) (quoting *WMX Techs.*, 112 F.3d at 179); *see also Airport Blvd. Apts. Ltd. v. NE 40 Partners, L.P. (In re: NE 40 Partners, L.P.)*, 440 B.R. 124, 128 (Bankr. S.D. Tex. 2010) (citation omitted). In other words, Rule 9(b) requires the plaintiffs to allege "the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Tel-Phonic Services, Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992).

Bankruptcy courts in the Fifth Circuit apply the heightened Rule 9(b) pleading requirement in cases of fraudulent transfers under section 548(a)(1)(A). *See Goodman v. H.I.G. Capital, LLC (In re: Gulf Fleet Holdings, Inc.)*, 491 B.R. 747, 767 (Bankr. W.D. La. 2013) ("The Trustee also asserts a claim for 'actual' fraud under section 548(a)(1)(A) on the grounds that the transfers were made with the 'actual intent to hinder, delay, or defraud' Gulf Fleet's creditors.

2

Rule 9(b)'s heightened pleading requirements apply to fraudulent transfer claims grounded on allegations of actual fraud." (citation omitted)); *see also In re: NE 40 Partners, L.P.*, 440 B.R. at 128 (acknowledging that Delaware bankruptcy courts have applied the Third Circuit's more relaxed Rule 9(b) standard in the context of a trustee as a third-party outsider to the debtor's transactions, but declining to follow the more relaxed approach because "(1) the Fifth Circuit reads Rule 9(b) strictly; and (2) a Chapter 7 trustee has many tools in his tool belt that would enable him to gather the requisite knowledge to file a fraudulent transfer complaint without having to rely on a more relaxed standard of pleading.").

Rule 9(b) also applies to claims under the Texas Uniform Fraudulent Transfers Act. *See, e.g.*, *Steadfast Ins. Co. v. Limestone Grp. SW Bluffs, LC*, No. 3:08-CV-0569-N, 2008 WL 11349994, at *2 (N.D. Tex. Oct. 31, 2008) (dismissing for failure to plead TUFTA claims with particularity where complaint did "not allow the Court to determine exactly what was allegedly transferred between which Defendants").

Constructive fraud claims, breach of fiduciary duty claims premised on fraud, and civil conspiracy claims premised on fraud are also subject to the heightened pleading requirement under Rule 9(b). *See Schroeder v. Wildenthal*, No. 3:11-CV-0525-B, 2011 WL 6029727, at *4 (N.D. Tex. Nov. 30, 2011) (constructive fraud subject to Rule 9(b)), *aff'd* 515 F. App'x 294 (5th Cir. 2013); *Brown v. Bilek*, No. H-09-2193, 2009 WL 2601615, at *2 (S.D. Tex. Aug. 20, 2009) ("When the breach of fiduciary duty is predicated on Fraud, Rule 9(b) is implicated." (citation omitted)); *Norwood v. Raytheon Co.*, 501 F. Supp. 2d 836, 839 (W.D. Tex. 2006) (civil conspiracy premised on fraud subject to Rule 9(b)).

## ARGUMENT

I. **Many Counterclaims Should Be Dismissed Because They Do Not Include Allegations Against HCLOF.**

### A. The Counterclaims Impermissibly Rely On "Group Pleading."

Throughout the Counterclaims, the Trustee impermissibly alleges knowledge of and activity by "the Highlands", a term HCLOF rejects and that the Trustee defines to include four separate entities. *E.g.*, Countercl. ¶¶ 17, 47, 52–54, 64, 67, 69, 77, 202, 219, 233, 241, 248. The Trustee also makes allegations about "the Highland Enterprise," a term HCLOF rejects and that the Trustee defines to include four separate entities and two individuals. *E.g.*, *id.* ¶¶ 202–203, 206. These allegations are improper and do not give HCLOF, or any other defendant, notice of the allegations against it.

"Rule 9(b) generally precludes 'group pleading' because 'each defendant is entitled to know what he is accused of doing.' " *Gulf Fleet Holdings*, 491 B.R. at 766 (quoting *O'Connell v. Arthur Andersen, LLP (In re: AlphaStar Ins. Grp., Ltd.)*, 383 B.R. 231, 257–58 (Bankr. S.D.N.Y. 2008)). "Rule 9(b) requires specific, separate allegations detailing the allegedly fraudulent conduct of each defendant," and "at a minimum, the complaint must plead sufficient facts to show each defendant's allegedly fraudulent conduct, or each defendant's role in a scheme to commit fraud":

> When a claim is asserted against multiple defendants, Rule 9(b) requires specific, separate allegations detailing the allegedly fraudulent conduct of each defendant. In other words, **a complaint cannot, consistent with Rule 9(b), group all defendants into "one wrongdoing monolith."** At a minimum, the complaint must plead sufficient facts to show each defendant's allegedly fraudulent conduct, or each defendant's role in a scheme to commit fraud.

*Searcy v. Knight (In re: Am. Int'l Refinery)*, 402 B.R. 728, 738 (Bankr. W.D. La. 2008) (internal citations omitted) (emphasis added).

4

For these reasons, the Court should disregard the group-pleaded allegations that form the basis for many of the Trustee's Counterclaims.

**B. Counts 1–4 Should Be Dismissed Because HCLOF Is Not a Party to the LPA.**

Counts 1, 2, 3 and 4 allege that Highland Capital Management, LP ("**Highland**") overcharged Acis Capital Management, LP ("**Acis LP**") for certain fees under a contract the Counterclaims label the "LPA." *See* Countercl. ¶¶ 81–98. The Trustee fails to allege that HCLOF was party to the LPA or had any role, direct or indirect, in the alleged overcharges, a transaction between Acis LP and Highland. *See id.* ¶¶ 31–34 (factual allegations related to the LPA). Therefore, the Trustee has failed to state a claim against HCLOF based on the LPA. Counts 1, 2, 3, and 4 should be dismissed as to HCLOF.

**C. Counts 5–8, 30 and 31 Should Be Dismissed Because HCLOF Is Not a Party to the Sub-Advisory Agreement.**

Counts 5, 6, 7, and 8 allege that Highland impermissibly modified, and therefore engaged in alleged fraudulent transfers with respect to, the so-called Sub-Advisory Agreement between Acis LP and Highland. *See id.* ¶¶ 99–116. Count 30 alleges that Highland breached the Sub-Advisory Agreement. *See id.* ¶¶ 229–234. Count 31 alleges that Highland breached fiduciary duties it owed to Acis LP pursuant to the Sub-Advisory Agreement. *See id.* ¶¶ 235–239.

The Trustee fails to allege that HCLOF was a party to the Sub-Advisory Agreement or had any role, direct or indirect, in the alleged modifications to that agreement, which involved only Acis LP and Highland. *See id.* ¶¶ 44–47 (factual allegations related to the Sub-Advisory Agreement). The Trustee did not allege that HCLOF was a direct, mediate, or subsequent transferee with respect to this transfer. The Trustee also failed to allege that HCLOF was a party

5

for whose benefit the transfer was made.[3] Therefore, the Trustee has failed to state a claim against HCLOF based on the Sub-Advisory Agreement. Counts 5, 6, 7, 8, 30, and 31 should be dismissed as to HCLOF.[4]

### D. Counts 17–20 Should Be Dismissed Because HCLOF Was Not Involved in the Alleged Note Transfer.

Counts 17, 18, 19, and 20 allege that a note was fraudulently transferred from Acis LP to Highland CLO Management Ltd. ("**HCLOM**") (the "**Note Transfer**"). *See id.* ¶¶ 153–170. The Trustee fails to allege that HCLOF had any role, direct or indirect, in the Note Transfer, a transaction between Acis LP and HCLOM. *See id.* ¶¶ 65–68 (factual allegations related to the Note Transfer). The Trustee did not allege that HCLOF was a direct, mediate, or subsequent transferee with respect to this transfer. The Trustee also failed to allege that HCLOF was a party for whose benefit the transfer was made.[5] Therefore, the Trustee has failed to state a claim against HCLOF based on the Note Transfer. Counts 17, 18, 19, and 20 should be dismissed as to HCLOF.[6]

---

[3] The Trustee conclusorily alleges that that "Each of the Highlands, and in particular Highland Capital and Highland Funding, benefitted from the ALF PMA Transfer, the ALF Share Transfer, the Note Transfer, and the transfer of the 2017-7 Equity and the 2017-7 Agreements even if they were not the direct transferee." Countercl. ¶ 248. As a preliminary matter, this assertion does not give HCLOF fair notice of what benefit it allegedly received from these transfers, and is therefore insufficient under Rule 9(b), *Twombly* and *Iqbal*. Further, this allegation was not incorporated into Counts 5–8, 30, and 31.

[4] The actual fraud counts should also be dismissed because the Trustee fails to allege adequately any party's intent. *See infra* § IIB.

[5] The Trustee's conclusory allegation that HCLOF benefited from the Note Transfer is insufficient under Rule 9(b), *Twombly* and *Iqbal*, and was not incorporated into Counts 17–20. *See, supra*, n. 2.

[6] The actual fraud counts should also be dismissed because the Trustee fails to allege adequately any party's intent. *See infra* § IIB.

E.    **Counts 21–24 Should Be Dismissed Because HCLOF Was Not Involved in the Alleged 2017-7 Equity and 2017-7 Agreement Transfers.**

Counts 21, 22, 23, and 24 allege fraudulent transfers related to a portfolio management agreement related to a certain CLO. *See id.* ¶¶ 171–188. The Trustee fails to allege that HCLOF had any role, direct or indirect, in these transactions. *See id.* ¶¶ 69–74 (factual allegations related to CLO 2017-7). The Trustee did not allege that HCLOF was a direct, mediate, or subsequent transferee with respect to this transfer. The Trustee also failed to allege that HCLOF was a party for whose benefit the transfer was made.[7] Therefore, the Trustee has failed to state a claim against HCLOF based on these transfers. Counts 21, 22, 23, and 24 should be dismissed as to HCLOF.[8]

F.    **Count 25 Should Be Dismissed Because No Preferential Transfers to HCLOF Are Alleged.**

Count 25 alleges that certain transfers were made within one year of the petition date. The Trustee fails to allege that any such transfers were to or for the benefit of HCLOF. *See id.* ¶¶ 78–80, 189–193. Therefore, the Trustee has failed to state a claim against HCLOF. Count 25 should be dismissed as to HCLOF.

---

[7] The Trustee's conclusory allegation that HCLOF benefited from the Note Transfer is insufficient under Rule 9(b), *Twombly* and *Iqbal*, and was not incorporated into Counts 21–24. *See, supra*, n. 2. Finally, there is an allegation that a payable was transferred to "Highland Funding." Countercl. ¶ 73. This appears to be a typo, as it is contradicted by the findings in the Court's opinion cited in Paragraph 72, which explain that the payable was transferred to Highland CLO *Holdings*, Ltd. *Id.* ¶ 72.

[8] The actual fraud counts should also be dismissed because the Trustee fails to allege adequately any party's intent. *See infra* § IIB.

### G. Count 29(A)[9] Should Be Dismissed For Failure To State a Claim Against HCLOF.

Count 29(A) alleges that HCLOF aided and abetted breaches of fiduciary duty by Dondero and Waterhouse. *Id.* ¶¶ 218–219. Because Count 29(A) "relies on underlying fraudulent conduct as an element of the claim," "Rule 9(b) applies." *See Official Stanford Investors Comm.v. Greenberg Traurig, LLP*, No. 3:12-CV-4641-N, 2015 WL 13741905, at *2 (N.D. Tex. Feb. 4, 2015). However, the sole allegation relating to HCLOF is that "[HCLOF] knowingly participated in Dondero and Waterhouse's breach of fiduciary duties to Acis LP, its limited partners and its creditors." *Id.* ¶ 220. This "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements, do[es] not suffice" to plead adequately a cause of action under Rule 8, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) — and certainly does not meet the heightened pleading standard of Rule 9(b).

To plead adequately aiding and abetting a breach of fiduciary duty, a party must plead, "(1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship." *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (citation omitted). Even assuming the Trustee has alleged a fiduciary relationship between Dondero or Waterhouse and Acis LP, the Trustee has not alleged that HCLOF knew of this relationship or knew it was interfering with this relationship. For these reasons, Count 29(A) should be dismissed as to HCLOF.

---

[9] The Counterclaims contain two Counts 29. For purposes of this motion, HCLOF refers to the count for aiding and abetting breach of fiduciary duties as "Count 29(A)" and the count for tortious interference with the Universal/BVK agreement as "Count 29(B)."

8

### H. Count 29(B) Should Be Dismissed Because HCLOF Was Not Involved in the Universal/BVK Agreement.

Count 29(B) alleges that Highland tortuously interfered with Acis LP's contract to manage accounts held by Universal and BVK. *See* Countercl. ¶¶ 223–228. The Trustee fails to allege that HCLOF had any role, direct or indirect, in this alleged tort. *See id.* ¶¶ 75–77 (factual allegations related to Universal/BVK agreement). Therefore, the Trustee has failed to state a claim against HCLOF. Count 29(B) should be dismissed as to HCLOF.[10]

## II. The Trustee Has Failed To Allege Fraudulent Transfers of the ALF PMA and ALF Shares.

### A. Counts 9–12 Should Be Dismissed Because No Value Left the Debtors' Estates Via the Alleged ALF PMA Transfer.

Counts 9, 10, 11, and 12 allege actual and constructive fraudulent transfer of the ALF PMA. To allege adequately a fraudulent transfer, there must actually be a transfer. "Without the transfer of an 'asset' the parties' intent is irrelevant. . . . A 'transfer,' in turn, requires the debtor dispose of, or part with, an 'asset.' " *In re 1701 Commerce, LLC*, 511 B.R. 812, 826 (Bankr. N.D. Tex. 2014). An "asset" with no value cannot support a fraudulent transfer claim. *See, e.g.*, *In re Wey*, 854 F.2d 196, 199 (7th Cir. 1988) (no fraudulent transfer based on cancellation of contract where debtor "possessed *no rights* which he could transfer"); *In re Commodity Merchants, Inc*., 538 F.2d 1260, 1264 (7th Cir. 1976) (contracts that had no value could not support a claim for fraudulent transfer); *Gierum v. Glick (In re Glick)*, 568 B.R. 634, 673–74 (Bankr. N. D. Ill. 2017) (dismissing fraudulent transfer claims allegations, if true, would not show that debtor "relinquish[ed] some 'valuable property right' " or "suffer[ed] some loss as a consequence" of terminating a contract"); *1701 Commerce, LLC*, 511 B.R. at 826–35

---

[10] This claim should also be dismissed because Texas law does not recognize a claim for tortious interference where a competitor merely induces a third party to terminate an at-will contract. *See C.E. Servs., Inc. v. Control Data Corp.*, 759 F.2d 1241, 1248 (5th Cir. 1985).

9

(transaction did not give rise to any liability under Texas fraudulent transfer law, given that the property transferred was fully encumbered); *A.I. Credit Consumer Disc. Co. v. Premiere Foods, Inc.*, No. CIV. 04-4049WHW, 2007 WL 3256733, at *9 (D.N.J. Nov. 5, 2007) (no fraudulent transfer where "Premiere Foods did not transfer anything to Fifth of Nevada when it allegedly assumed Premiere Foods's management activities; rather, the Affiliate Defendants simply took their business elsewhere."); *Edwards v. Fed. Home Loan Mortg. Corp. (In re LiTenda Mortg. Corp.)*, 246 B.R. 185, 190–94 (Bankr. N.J. 2000) (no transfer where defendant terminated servicing agreement with plaintiff pursuant to terms of contract, denying plaintiff proceeds of servicing agreement which was its primary source of income), *aff'd* 276 F.3d 578 (3d Cir. 2001); *Robinson v. Chicago Hous. Auth.*, No. 94 C 4781, 1995 WL 360706, at *5 (N.D. Ill. June 14, 1995) (no fraudulent transfer where "[t]he value of the lease was zero, and plaintiff therefore received reasonably equivalent value for it when she received nothing"); *Coast Cities Truck Sales v. Navistar Int'l Transp. Co.*, 147 B.R. 674, 677–78 (D.N.J. 1992) (no fraudulent transfer where "Coast Cities possessed no rights as a matter of law which it could relinquish since the contract between Navistar and the debtor had expired by its own terms"); *In re Pietri*, 59 B.R. 69, 70–71 (M.D. La. 1986) (marital property agreement did not form the basis of a fraudulent transfer claim because it did not deprive the debtor of any property interest which he presently possessed); *In re Watson*, 22 B.R. 938, 941 (Bankr. M.D. Fla. 1982) (dismissing fraudulent transfer claim where "the actual stock transferred had no value whatsoever" and "was not a marketable item"); *cf. Hometown 2006-1 1925 Valley View, LLC v. Prime Income Asset Mgmt., LLC*, 847 F.3d 302, 308 (5th Cir. 2017) (agreeing with reasoning of *Wey* and *Commodity Merchants* in dicta).

10

Here, the Trustee has not alleged sufficiently that ALF PMA had any value to Acis LP. Acis LP was not paid for services it provided under the ALF PMA. *See generally* Countercl. Ex. F (ALF PMA).    Rather, the only alleged value of this agreement to Acis LP was alleged "virtually unlimited rights and unfettered discretion to control and manage ALF's assets." *Id.* ¶¶ 55–56. But the Trustee is wrong as a matter of law that the ALF PMA gave such authority to Acis LP. A plain reading of the contract shows that the authority of ALF's portfolio manager was "[s]ubject at all times to (i) provisions of applicable law, and (ii) the Investment Policy" of HCLOF. *Id.* Ex. F (ALF PMA), § 5. The ALF PMA further clarifies that "[t]he activities engaged in by the Portfolio Manager shall be subject to the policies and control of [ALF]." *Id.* § 6.

Further, "applicable law" prohibits the directors of HCLOF from contracting away their control and discretion over HCLOF. Specifically, Guernsey law, which governs the obligations of the directors of this Guernsey entity, requires directors to retain control and discretion. *See, e.g.*, The Companies (Guernsey) Law, 2008, as amended, Part XI, section 134(1);[11] Guernsey Financial Services Commission Finance Sector Code of Corporate Governance (February 2016), Principle 3.4;[12] *Carlyle Capital Corporation Limited (in Liquidation) and others v. Conway and others* [2017] Civil Action No. 1510, Guernsey Judgment 38/2017.[13] Because the only alleged

---

[11] The Court can find a copy of this Guernsey statute as Exhibit 473 to the recent Plan D confirmation hearing.

[12] The Court can find a copy of this Guernsey regulatory pronouncement as Exhibit 474 to the recent Plan D confirmation hearing.

[13] The Court can find a copy of this Guernsey case as Exhibit 431 to the recent Plan D confirmation hearing. As allowed under Federal Rule of Civil Procedure 44.1, the Court may also take judicial notice of the agreement by both Guernsey experts at this hearing that the Trustee's interpretation of the ALF PMA is forbidden by Guernsey law. *See* Hr'g Tr. (Dec. 13, 2018) at 102:9–12 ("Q. Given those duties you've just described[,] does Guernsey Law permit directors to contract [a]way their discretion or their oversight over service providers? A. [by Mr. Corfield]: No."); *Id.* at 156:4–7 ("Q. So Guernsey directors wouldn't be allowed to completely a[bdicate] their supervisory or oversight or control? A. [by Mr. McGuffin] They, no, they are ultimately responsible for the control of the company

value of the ALF PMA arises from an (unsustainable) interpretation of the contract that is impermissible as a matter of law, there is no alleged value transfer from the estate, and therefore no fraudulent transfer.

In the alternative, at a minimum, Counts 11 and 12, which allege constructive fraudulent transfer of the ALF PMA should be dismissed because the Trustee has failed to allege adequately that the Debtor did not receive reasonably equivalent value. Because the ALF PMA did not have value to Acis LP, but imposed obligations upon it, it was a net gain to Acis LP to be released from that contract. Therefore, the Trustee has failed to allege a constructive fraudulent transfer of the ALF PMA.

**B.      Counts 9, 10, 13, and 14 Should Be Dismissed Because the Trustee Does Not Allege Fraudulent Intent.**

Counts 9 and 10 allege actual fraudulent transfers of the ALF PMA under Section 548(a)(1)(A) and Texas Business & Commerce Code § 24.0005(a)(1). Section 548(a)(1)(A) of the Bankruptcy Code governs "actual" fraud and allows a trustee to avoid a transfer made only "with *actual intent* to hinder, delay, or defraud any entity to which the debtor was or became . . . indebted." 11 U.S.C. § 548(a)(1)(A) (emphasis added). Similarly, under the Texas Code, transfer is actually fraudulent only "'if the debtor made the transfer . . . with *actual intent* to hinder, delay, or defraud any creditor of the debtor." Tex. Bus. & Com. Code § 24.005(a)(1) (emphasis added). Therefore, to plead a claim for actual fraud, a plaintiff must plead that the defendant had the requisite intent. *See Baker*, 2015 WL 11120878, at *3 (noting that a plaintiff must satisfy Rule 9(b) in pleading a claim under the Texas Uniform Fraudulent Transfer Act claim or under Section 548).

---

and they cannot a[bdicate] their duties.").

Here, the Trustee has failed to make a single allegation of fact regarding fraudulent intent. Rather, the Trustee alleges that "The ALF PMA Transfer was made with the actual intent to divert Acis LP's contractual rights under the ALF PMA," *e.g.*, Countercl. ¶ 119(ii), but does not allege *which entity or persons* had that intent. Similarly, the Trustee alleges that "The ALF Share Transfer was made with the actual intent to divert Acis LP's interest and control in ALF," e.g., Countercl. ¶ 137(ii), but again does not allege *which entity or persons* had that intent. The Trustee's mere restating of the elements of a fraudulent transfer insufficient to plead intent under Rule 9(b). *See Gulf Fleet Holdings*, 491 B.R. at 768 (finding that "the Trustee ha[d] not met the burden required under Rule 9(b) to plead actual fraud" where he pleaded "no facts (as opposed to conclusions)"). For these reasons, Counts 9, 10, 13, and 14 should be dismissed.[14]

### C.    Counts 15 and 16 Should Be Dismissed Because the Trustee Does Not Allege that HCLOF Paid Insufficient Consideration For the ALF Shares.

Counts 15 and 16 allege constructive fraudulent transfers of certain shares of ALF. However, the Counterclaims allege that HCLOF paid LP $ 991,180.13 in exchange for these shares. Countercl. ¶ 62. The Trustee does not allege what these ALF shares were worth, or any other facts that would, if true, show that the ALF shares were worth more than the consideration paid. Instead, the Trustee merely asserts that "Acis LP received less than a reasonably equivalent value in exchange." Countercl. ¶¶ 141(v), 145(i). This conclusory allegation should be stricken under Rule 9(b), *Twombly*, and *Iqbal* — particularly when the Trustee is on notice of the fact that the $991,180 payment was in fact made in exchange for Acis' 0.7% interest in ALF and was calculated based on ALF's net asset value as of the payment date. Thus, the absence of

---

[14] For the same reason, to the extent any other Count of actual fraud is pleaded against HCLOF, it should be dismissed. At a minimum, the Trustee should be required to replead all actual fraud counts with the particularity required under Rule 9(b).

sufficiently pleaded facts reveals an ultimate substantive factual deficiency. Therefore, the Trustee has failed to allege a constructive fraudulent transfer of the ALF Shares.

### III. Counts 27 and 28 Should Be Dismissed Because the Trustee Has Failed to Plead Adequately a Civil Conspiracy.

Count 27 alleges a civil conspiracy to commit fraudulent transfers. Count 28 alleges a civil conspiracy to breach fiduciary duties. These claims should be dismissed for several reasons. First, the "Fifth Circuit has explicitly found that a bankruptcy trustee does not have a cause of action for civil conspiracy." *Ingalls v. Beutel*, No. A-05-CA-461-SS, 2007 WL 9718103, at *4 (W.D. Tex. Nov. 28, 2007) (citation omitted). Indeed, fraudulent transfers cannot form the basis for a civil conspiracy claim. *See Sherman v. FSC Realty LLC (In re Brentwood-Lexford Partners, LLC)*, 292 B.R. 255, 275 (Bankr. N.D. Tex. 2003). Here, Count 27 alleges a civil conspiracy to commit fraudulent transfers. Countercl. ¶ 204. While Count 28 purports to allege a conspiracy to breach fiduciary duties, the breaches alleged are the alleged fraudulent transfers. *See id.* ¶ 209. Therefore, both civil conspiracy counts should be dismissed.

Second, notwithstanding the above legal infirmities, these counts are not pleaded adequately. Texas law requires a plaintiff alleging civil conspiracy to allege that each defendant had the specific intent to accomplish an unlawful purpose: A "joint 'intent to engage in the conduct that resulted in the injury' is not sufficient to establish a cause of action for civil conspiracy." *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996) (citation omitted); *see also Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.,* 435 S.W.2d 854, 857–58 (Tex. 1968) (a party cannot be a co-conspirator without actual knowledge of the wrong intended to be committed). The Trustee has failed to allege adequately that HCLOF had any intent to engage in any unlawful activity or any knowledge of the alleged conspiracy. Therefore, Counts 27 and 28 should be dismissed as to HCLOF.

14

A plaintiff must also plead facts showing when the parties agreed to pursue the conspiracy, including the "specific time, place, or person involved." *Berry v. Bryan Cave LLP*, No. 3:08-CV-2035-B, 2010 U.S. Dist. LEXIS 46572, at *23 (N.D. Tex. May 11, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 n.10 (2007) (dismissing civil conspiracy where "the Complaint lack[ed] well-pleaded facts to support that an agreement was ever made")). The Trustee has only conclusorily alleged that the so-called "Highland Enterprise . . . had a meeting of the minds." Countercl. ¶ 203. The Trustee does not plead *when* this alleged "meeting of the minds" happened, which persons were involved, or which of the four other "Highlands" supposedly agreed. These details are essential because "even where a conspiracy is established, wrongful acts by one member of the conspiracy that occurred before the agreement creating the conspiracy do not simply carry forward, tack on to the conspiracy, and support liability for each member of the conspiracy as to the prior acts." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017) (citations omitted).

Indeed, as with many of the other Counterclaims, the Trustee has done little more than recite the elements of civil conspiracy. This is not sufficient. *See Xtreme Power Plan Trust v. Schindler, et al. (In re Xtreme Power Inc.),* 563 B.R. 614, 648 (Bank. W.D. Tex. 2016) (dismissing conspiracy claim that "merely recited the elements of the claim and asked the court to infer from said elements an actionable conspiracy"). For these reasons, Counts 27 and 28 should be dismissed.

## IV. Count 33 Should Be Dismissed Because the Trustee Has Failed To Allege Alter Ego, Collapsing Doctrine, or Unjust Enrichment.

### A. Alter Ego Is Not Pleaded Adequately.

Count 33 alleges that various entities "should be held liable for any damages awarded under any Count in this Amended Answer, as each is the alter ego of the others." *Countercl.*

15

¶ 244.  As a preliminary matter, alter ego is not an independent cause of action under Texas law.
*U.S. Bank N.A. v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 442 (5th Cir. 2014).

Further, to the extent the Trustee seeks to rely on its allegations of alter ego as a theory of
attribution of liability, the Trustee's allegations must meet the higher particularity standard of
Rule 9(b).  *See Global Oil Tools, Inc. v. Barnhill*, Nos. 12:1507, 12–3041, 2013 WL 3070838, at
*13 (E.D. La. June 17, 2013) (applying Texas law).  The Trustee has not met this standard as to
HCLOF.  The Counterclaims' only allegation relating to the relationship between Highland and
HCLOF is the conclusory statement that they are alter egos.  This is not sufficient.  *See Emke v.
Compana, L.L.C.*, No. 3:06-CV-1416-L, 2007 WL 2781661, at *7 (N.D. Tex. Sept. 25, 2007)
(dismissing alter ego complaint unsupported by factual allegations).

Texas courts consider a number of factors when assessing whether two entities are alter
egos, including

> (1) whether the entities shared a common business name, common offices,
> common employees, or centralized accounting; (2) whether one entity paid the
> wages of the other entity's employees; (3) whether one entity's employees
> rendered services on behalf of the other entity; (4) whether one entity made
> undocumented transfers of funds to the other entity; and (5) whether the allocation
> of profits and losses between the entities is unclear.

*U.S. KingKing, LLC v. Precision Energy Servs., Inc.*, 555 S.W.3d 200, 214 (Tex. App. 2018)
(internal citations omitted).[15]  Other than noting that both "Highland Capital Management, LP"
and "Highland CLO Funding, Ltd." start with the word "Highland", the Trustee has failed to
allege *any* of these factors.

---

[15] Similar factors are considered under Delaware law.  *See Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528–29
(D. Del. 2008) (listing several factors to consider, including "(1) undercapitalization; (2) failure to observe corporate
formalities; (3) nonpayment of dividends; (4) the insolvency of the debtor corporation at the time; (5) siphoning of
the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) the fact that the
corporation is merely a facade for the operations of the dominant stockholder or stockholders").  HCLOF again
reserves the right to assert application of Guernsey law to the extent further pleading or discovery so indicates.

HCLOF'S BRIEF IN SUPPORT OF MOTION TO DISMISS

### B. The Collapsing Doctrine Is Not Pleaded Adequately.

Count 33 further alleges that "multistep transactions can be collapsed when the steps of the transaction are 'part of one integrated transaction.' " Countercl. ¶ 245 (citation omitted). However, the collapsing doctrine is not a separate cause of action and is unrelated to an alter ego theory of attribution of liability. In any event, a plaintiff has not pleaded adequately that a series of transactions should be collapsed where "the allegations do not address the factors germane to whether these two transactions should be viewed as a single integrated transaction." *Gulf Fleet Holdings*, 491 B.R. at 771 (finding the collapsing doctrine inadequately pleaded). These factors include "(1) whether all parties involved in the individual transactions had knowledge of the other transactions, (2) whether each transaction would have occurred on its own, and (3) whether each transaction was dependent or conditioned on the other transactions." *Id.* (collecting cases).

The Trustee has not addressed any of these factors. He has further failed to plead that HCLOF "knew or should have known of the allegedly wrongful purpose of the many transactions outlined above." *SB Liquidation Tr. v. Preferred Bank (In re Syntax-Brillian Corp.)*, No. 08-11407 (BLS), 2011 WL 3101809, at *12 (Bankr. D. Del. July 25, 2011) (finding the collapsing doctrine inadequately pleaded "[b]ecause the Complaint fails to alleges that the Bank knew or should have known of the allegedly wrongful purpose of the many transactions outlined above"), *aff'd in part, vacated in part on other grounds* 573 F. App'x 154 (3d Cir. 2014). In fact, the Trustee has not even pleaded that HCLOF *knew of* the majority of the transactions he proposes to collapse. Similarly, the Trustee has not alleged that the transactions would not have occurred on their own or that the transactions were dependent upon each other.

### C.    Unjust Enrichment Is Not Pleaded Adequately.

Count 33 alleges conclusorily that HCLOF benefitted from various transfers and should be liable for benefits unjustly received. *Countercl.* ¶ 247–48. But the Trustee has failed to allege any benefit to HCLOF flowing from the transactions the Trustee describes. *See supra* § IIA (explaining why transfer of ALF PMA was not a benefit to HCLOF). In fact, as the Counterclaims acknowledge, HCLOF has been and continues to be significantly harmed by the injunction preventing it from exercising its right to call an optional redemption. *See* Countercl. ¶ 61 n. 13.

### V.    The Trustee Is Not Entitled to Remedies With Respect to Any Claim that Is Dismissed.

Counts 26, 32, and 35 do not contain separate claims for relief, but rather request specific remedies.[16] With respect to Count 26, the Trustee is not entitled to avoid a transfer under 11 U.S.C. § 550 for any fraudulent transfer claim that is dismissed. With respect to Counts 32 and 35, the Trustee is not entitled to punitive damages or attorneys' fees for any claim that is dismissed.

### <u>CONCLUSION</u>

For all of these reason, the Counterclaims should be dismissed as to HCLOF. Because the Trustee has already had an opportunity to replead, the dismissal should be with prejudice.

---

[16] The Counterclaims omit Count 34.

HCLOF'S BRIEF IN SUPPORT OF MOTION TO DISMISS

Dated: December 21, 2018

Respectfully submitted,

**KING & SPALDING LLP**

/s/ Mark M. Maloney

Mark M. Maloney
Georgia Bar No. 468104 (admitted *pro hac vice*)
W. Austin Jowers
Georgia Bar No. 405482 (admitted *pro hac vice*)
1180 Peachtree Street NE
Atlanta, GA 30309
Tel: 404-572-4600
Fax: 404-572-5100
mmaloney@kslaw.com
ajowers@kslaw.com

Paul R. Bessette
Texas Bar No. 02263050
500 West 2nd St., Suite 1800
Austin, TX 78701-4684
(512) 457-2000 (phone)
(512) 457-2100 (fax)
pbessette@kslaw.com

*Counsel for Highland CLO Funding, Ltd.*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served electronically by the Court's ECF system on December 21, 2018.

/s/ Rebecca Matsumura

Rebecca Matsumura

19