Holland N. O'Neil (TX 14864700)
Jason B. Binford (TX 24045499)
Shiva D. Beck (TX 24086882)
Melina N. Bales (TX 24106851)
**FOLEY GARDERE**
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Ste. 1600
Dallas, Texas 75201
Telephone: (214) 999.3000
Facsimile: (214) 999.4667
honeil@foley.com

Michael K. Hurst (TX 10316310)
A. Shonn Brown (TX 24007164)
Chisara Ezie-Boncoeur (TX 24103714)
Ruben A. Garcia (TX 24101787)
**LYNN PINKER COX & HURST, LLP**
2100 Ross Avenue, Ste. 2700
Dallas, Texas 75201
Telephone: (214) 981.3800
Facsimile: (214) 981.3839
mhurst@lynnllp.com

**COUNSEL FOR HIGHLAND CAPITAL**
**MANAGEMENT, L.P.**

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | **Case No. 18-30264-SGJ-11** |
| | § | **Case No. 18-30265-SGJ-11** |
| **ACIS CAPITAL MANAGEMENT, L.P.,** | § | |
| **ACIS CAPITAL MANAGEMENT GP, LLC,** | § | **(Jointly Administered Under   Case** |
| | § | **No. 18-30264-SGJ-11)** |
| **DEBTORS** | § | |
| | § | **Chapter 11** |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** | § | |
| **AND HIGHLAND CLO FUNDING LTD.,** | § | |
| | § | |
| **PLAINTIFFS** | § | **Adversary No. 18-03078-sgj** |
| | § | |
| **v.** | § | |
| | § | |
| **ROBIN PHELAN, CHAPTER 11 TRUSTEE** | § | |
| | § | |
| **DEFENDANT** | § | |
| | § | |
| | § | |
| **ROBIN PHELAN, CHAPTER 11 TRUSTEE,** | § | |
| | § | |
| **THIRD PARTY PLAINTIFF,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **HIGHLAND HCF ADVISOR, LTD.,** | § | |
| **HIGHLAND CLO MANAGEMENT, LTD.,** | § | |
| **AND HIGHLAND CLO HOLDINGS, LTD.** | § | |
| | § | |
| **THIRD PARTY DEFENDANTS.** | § | |

**HIGHLAND CAPITAL MANAGEMENT, L.P.'S BRIEF IN SUPPORT OF RESPONSE IN
OPPOSITION TO TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT[1]**

---

[1] As set forth in the "Reservation Regarding Pending Stay Motion" (See p. 1, *infra*), this Response is subject to and without waiving *Highland's Motion to Stay and Compel Arbitration as to Certain Relevant Claims* [Doc. No. 102].

**TABLE OF CONTENTS**

RESERVATION REGARDING PENDING STAY MOTION ...................................................... 1

I.     SUMMARY ..................................................................................................................... 2

II.    EVIDENCE SUPPORTING OPPOSITION TO SUMMARY JUDGMENT ................... 3

III.   FACTS AND BACKGROUND ...................................................................................... 6

     A.    The relationship between Highland, Acis and Terry. .............................................. 6

     B.    Terry is terminated and litigation ensues. ............................................................ 10

     C.    Terry's confirmation of the award. ...................................................................... 13

IV.  ARGUMENT AND AUTHORITIES ............................................................................ 14

     A.    Summary judgment standard. .............................................................................. 14

     B.    Collateral estoppel does not apply as a matter of law. ......................................... 15

     C.    The circumstances of this case do not satisfy the *Parklane Hosiery* factors. ....... 16

     D.    The Trustee failed to show Highland and ACIS were cast as adversaries in the Arbitration. ......................................................................................................... 18
          1)  Highland was not a party to the Arbitration. ................................................... 18
          2)  Highland was not in privity with a party to the arbitration. ............................. 20
          3)  If Highland was a party to the Arbitration, then Highland and ACIS were co-defendants and not cast as adversaries. ............................................................ 24

     E.    The Trustee failed to show that the issues sought to be litigated in the Adversary Proceeding were fully and fairly litigated in the Arbitration. ............. 24
          1)  Count 1: declaratory judgment that payments were *ultra vires* and, thus, void or voidable. ................................................................................................. 26
              a.    The panel did not rule that the payments or the agreements were *ultra vires* and, thus, void, or voidable. ............................................. 27
              b.    The Trustee fails to establish that Delaware law on *ultra vires* acts applies to limited partnerships. ......................................................... 28
              c.    Even relying on the findings and conclusions of the panel in the Arbitration, the Trustee fails to establish that Acis LP committed an *ultra vires* act. ................................................................................... 30
              d.    The Trustee fails to establish that Acis LP is entitled to a declaration that the Payments are void or voidable. .......................... 31
          2)  Count 2: Turnover. ....................................................................................... 34
               a.    The Trustee failed to establish that collateral estoppel applies to his claim. ....................................................................................................... 35
              b.    The Arbitration did not resolve any of Highland's arguments against or affirmative defenses to the Trustee's claims. .................... 36
          3)  Count 3: Money Had and Received. .............................................................. 37
               a.    The Trustee failed to establish that collateral estoppel applies to his claim. ....................................................................................................... 38

4842-5977-9974.7

   b. The Arbitration did not resolve any of Highland's affirmative defenses to the Trustee's claims. ........................................................ 38

  4) Count 4: Conversion. ..................................................................... 42

   a. The Trustee failed to establish that collateral estoppel applies to this claim.............................................................................................. 43

   b. The Arbitration did not resolve any of Highland's arguments against or affirmative defenses to the Trustee's claim........................ 43

F. The Court should deny the Motion because a genuine issue of material fact exists concerning the circumstances under which Acis is entitled to receive the purported "Expense Overpayments" at issue in the Motion. ................................ 45

G. The Trustee's request for disallowance must be denied. ....................................... 46

H. In the alternative, the Court should deny the Motion because res judicata may bar the Trustee's request for declaratory judgment and claims. ........................... 47

V. CONCLUSION ............................................................................................................ 48

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amarillo Nat'l Bank v. Komatsu Zenoah Am., Inc.*,
   991 F.2d 273 (5th Cir. 1993) ................................................................................42

*Amstadt v. U.S. Brass Corp*.,
   919 S.W.2d 644 (Tex. 1996)................................................................................21

*In re Ayscue*,
   123 B.R. 28 (Bankr. E.D. Va. 1990)....................................................................36

*Bandy v. First State Bank*,
   835 S.W.2d 609 (Tex. 1992)................................................................................42

*Bank of Saipan v. CNG Fin. Corp*.,
   380 F.3d 836 (5th Cir.2004) ...........................................................................40, 41

*Benson v. Wanda Petroleum Co*.,
   468 S.W.2d 361 (Tex.1971)................................................................................21

*In re Bernstein*,
   252 B.R. 846 (Bankr. D. D.C. 2000) ...................................................................37

*Berryman's S. Fork, Inc. v. J. Baxter Brinkmann Int'l*,
   418 S.W.3d 172 (Tex. App.—Dallas 2013, pet. denied) ........................................41

*Best Buy Co. v. Barrera*,
   248 S.W.3d 160 (Tex. 2007) (per curiam)............................................................40

*Brown v. Zimmerman*,
   160 S.W.3d 695 (Tex. App.—Dallas 2005, no pet.)...............................................21

*Carsanaro v. Bloodhound Techs., Inc.*,
   65 A.3d 618 (Del. Ch. 2013)...............................................................................32

*Carson v. Dynegy, Inc.*,
   344 F.3d 446 (5th Cir. 2003) ..............................................................................42

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)...........................................................................................14

*CompoSecure, L.L.C. v. CardUS, LLC*,
   2018 WL 5816740 (Del. Nov. 7, 2018) ................................................................33

*Conlee Seed Co. v. Brandvik,*
    526 S.W.2d 795 (Tex. Civ. App.—Amarillo 1975, no writ) ...................................................45

*Eagle Properties, Ltd. v. Scharbauer,*
    807 S.W.2d 714 (Tex. 1990)..................................................................................................15

*Edwards v. Mid-Continent Office Distributors,*
    L.P., 252 S.W.3d 833 (Tex. App.—Dallas 2008, pet. denied) .........................................37, 38

*First Options of Chicago, Inc. v. Kaplan,*
    514 U.S. 938 (1995).......................................................................................18, 21, 36, 38, 43

*Goldstein v. Comm'n for Lawyer Discipline,*
    109 S.W.3d 810 (Tex. App.—Dallas 2003, pet. denied)......................................................16

*Harbor Fin. Partners v. Huizenga,*
    751 A.2d 879 (Del. Ch. 1999)...............................................................................................31

*Howsam v. Dean Witter Reynolds, Inc.,*
    537 U.S. 79 (2002)................................................................................................................19

*Inter-Cont'l Corp. v. Moody,*
    411 S.W.2d 578 (Tex. Civ. App.—Houston 1966, writ ref'd n.r.e) .......................................31

*Jody James Farms, JV v. Altman Gtp., Inc.,*
    547 S.W.3d 624 (Tex. 2018).................................................................................................19

*Johnson v. Brewer & Pritchard, P.C.,*
    73 S.W.3d 193 (Tex. 2002)...................................................................................................42

*Johnson v. City of Houston,*
    444 F. App'x 26 (5th Cir. 2011) ...........................................................................................22

*Keyser v. Curtis,*
    2012 WL 3115453 (Del. Ch. July 31, 2012)..........................................................................33

*Lawyers Title Co. v. J.G. Cooper Dev., Inc.,*
    424 S.W.3d 713 (Tex. App.—Dallas 2014, pet. denied)..................................................42, 43

*Lee v. Rogers Agency,*
    517 S.W.3d 137 (Tex. App.—Texarkana 2016, pet. filed)....................................................22

*Lynch v. Coinmaster USA, Inc.,*
    614 F. Supp. 2d 494 (D. Del. 2009).......................................................................................33

*Mack v. Newton,*
    737 F.2d 1343 (5th Cir.1984) ...............................................................................................45

iv

*Maxson v. Travis County Rent Account,*
21 S.W.3d 311 (Tex. App.—Austin 1999, pet. dism'd) .................................................21, 22

*Mayo v. Hartford Life Ins. Co.,*
354 F.3d 400 (5th Cir.2004) ................................................................................................42

*McNeil Interests, Inc. v. Quisenberry,*
407 S.W.3d 381 (Tex. App.—Houston [14th Dist.] 2013, no pet.)...........................21, 22, 23

*Merry Homes, Inc. v. Luc Dao,*
359 S.W.3d 881 (Tex. App.—Houston [14th Dist.] 2012, no pet.).......................................39

*MGA Ins. Co. v. Charles R. Chesnutt, P.C.,*
358 S.W.3d 808 (Tex. App.—Dallas 2012, no pet.)...........................15, 18, 27, 35, 38, 39, 43

*Miga v. Jensen,*
299 S.W.3d 98 (Tex. 2009)...................................................................................................41

*In re Noram Res., Inc.,*
No. 08-38222, 2015 WL 2265405 (Bankr. S.D. Tex. May 11, 2015) ....................................36

*Odmark v. Mesa Ltd. P'ship,*
59 F.3d 1241 (5th Cir. 1995) ................................................................................................28

*Paris v. Profit Sharing Plan for Emp. of Howard B. Wolf, Inc.,*
637 F.2d 357 (5th Cir. 1981) ................................................................................................45

*Parklane Hosiery Co., Inc. v. Shore,*
439 U.S. 322 (1979)....................................................................................................15, 16, 17

*Rapid Settlements, Ltd. v. Green,*
294 S.W.3d 701 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ....................................18, 19

*In re RedF Mktg., LLC,*
589 B.R. 534 (Bankr. W.D. N.C. 2018)...............................................................................35

*Robinson v. National Autotech, Inc.,*
117 S.W.3d 37 (Tex. App.—Dallas 2003, pet. denied) ........................................................45

*Roe v. Ladyman,*
318 S.W.3d 502 (Tex. App.—Dallas 2010, no pet.)..............................................................19

*Samson Expl., LLC v. T.S. Reed Properties, Inc.,*
521 S.W.3d 766 (Tex. 2017)..................................................................................................41

*Santanna Nat. Gas Corp. v. Hamon Operating Co.,*
954 S.W.2d 885 (Tex. App.—Austin 1997, pet. denied).......................................................45

v

*In re Satelco, Inc.*,
    58 B.R. 781 (Bankr. N.D. Tex. 1986)....................................................................................36

*Sauceda v. Kerlin*,
    164 S.W.3d 892 (Tex. App.—Corpus Christi 2005), *review granted, judgment vacated*, 05-0653, 2006 WL 4706002 (Tex. Mar. 10, 2006), *rev'd*, 263 S.W.3d 920 (Tex. 2008), *rev'd* (Oct. 10, 2008)..........................................................................24

*Schwager v. Fallas (In re Schwager)*,
    121 F.3d 177 (5th Cir. 1997) .............................................................................................15

*State & County Mut. Fire Ins. Co. v. Miller*,
    52 S.W.3d 693 (Tex. 2001)...........................................................................................24, 25

*Taylor Pipeline Const., Inc. v. Directional Rd. Boring, Inc.*,
    438 F. Supp. 2d 696 (E.D. Tex. 2006).......................................................................42, 44, 45

*Taylor v. Sturgell*,
    553 U.S. 880 (2008)...........................................................................................................23

*Texas Bank & Tr. Co. of Dallas v. Custom Leasing, Inc.*,
    498 S.W.2d 243 (Tex. Civ. App.—Tyler 1973), *rev'd*, 516 S.W.2d 138 (Tex. 1974) ...............................................................................................................................40

*Texas Capital Sec. Mgmt., Inc. v. Sandefer*,
    80 S.W.3d 260 (Tex. App.—Texarkana 2002, pet. struck) ...............................................22, 23

*Tripp Vill. Joint Venture v. MBank Lincoln Ctr., N.A.*,
    774 S.W.2d 746 (Tex. App.—Dallas 1989, writ denied) .......................................................42

*Universal MRI & Diagnostics, Inc. v. Medical Lien Mgmt.*,
    497 S.W.3d 653 (Tex. App.—Houston [14th Dist.] 2016, no pet.)........................................39

*W. Beach Marina, Ltd. v. Erdeljac*,
    94 S.W.3d 248 (Tex. App.—Austin 2002, no pet.) ..............................................................33

*In re Ward*,
    557 B.R. 508 (Bankr. N.D. Tex. 2016)...........................................................................14, 15

*Yarbrough's Dirt Pit, Inc. v. Turner*,
    65 S.W.3d 210 (Tex. App.—Beaumont 2001, no pet.) ......................................................16, 17

vi

## Statutes

Bankruptcy Code

    § 108................................................................................................................39

    § 108(a) ..........................................................................................................40

    § 542................................................................................................................35

    § 542(a) ..............................................................................................34, 36, 37

    § 542(b)...........................................................................................................36

Del. Code

    Ann. tit. 6, § 17-101(8) ..................................................................................28

    Ann. tit. 6, § 17-106(b) ..................................................................................30

    Ann. tit. 8, § 101, *et seq.* ...............................................................................28

    Ann. tit. 8, § 124 ............................................................................................32

Tex. Bus. Orgs. Code Ann. § 20.002(a).................................................................31

Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) ..................................................45

## Other Authorities

1 David A. Drexler, et al., *Delaware Corporation Law and Practice* § 11.05, at
    11–10 (Supp. 2012)..................................................................................28, 32

2018 ANN. SURV. OF BANKR. LAW 27 (Norton)...................................................34

FED. R. CIV. P. 56(a) ...................................................................................3, 14, 23

2 FLETCHER CORP. FORMS § 9:7 (5th ed.)........................................................30, 32

Jonathan David Pauerstein, *The Future of Offensive Collateral Estoppel in Texas*,
    35 BAYLOR L. REV. 291, 321 n. 13 (1983) .............................................16

1 R. Franklin Balotti & Jesse A. Finkelstein, THE DELAWARE LAW OF
    CORPORATIONS AND BUSINESS ORGANIZATIONS § 21.3 (3d ed. 2006) .............................28, 29

1 R. Franklin Balotti & Jesse A. Finkelstein, THE DELAWARE LAW OF
    CORPORATIONS AND BUSINESS ORGANIZATIONS § 2.3 (3d ed. 2006) ....................................32

 "What debts must be paid to estate—Contingent, disputed, or unliquidated
    debts," 2 BANKRUPTCY DESK GUIDE § 14:48 ..........................................34

TO THE HONORABLE COURT:

Subject to and without waiving its *Motion to Stay and Compel Arbitration as to Certain Relevant Claims* [Doc. No. 102] (the "**Stay Motion**"),[2] Highland Capital Management, L.P. ("**Highland**" or "**HCM**"), creditor and party-in-interest in the above-styled and jointly administered bankruptcy case and Plaintiff in the above-styled adversary proceeding (the "**Adversary Proceeding**"), hereby files this brief (the "**Brief**") in support of Highland's *Response in Opposition to Trustee's Motion for Partial Summary Judgment* (the "**Response**") in opposition to the *Amended Motion for Partial Summary Judgment* [Doc. No. 88] (the "**Motion**")[3] filed by the Chapter 11 trustee (the "**Trustee**") and respectfully states as follows:

## RESERVATION REGARDING PENDING STAY MOTION

On January 22, 2019, Highland filed the Stay Motion, contending, *inter alia*, that certain Counts in the Trustee's Counterclaims [Doc. No. 84] are subject to binding arbitration clauses in agreements between Acis Capital Management, L.P. ("**Acis LP**") and Highland. The four counts subject to the Trustee's Motion overlap with the Counts that Highland contends are subject to arbitration. Highland submits the Response and this Brief based on the required deadline agreed to by the parties in that certain *Agreed Order Granting Highland Capital Management, L.P. and Highland CLO Funding Ltd.'s Expedited Joint Motion to Extend Deadlines for Reply and Summary Judgment Response and Setting Other Related Filing Deadlines* entered January 23, 2019. [Doc. No. 103]. Nonetheless, the Stay Motion is a gating issue, and Highland submits that the

---

[2] There is also pending a *Motion to Withdraw the Reference to the District Court and Memorandum of Law in Support* [Doc. No. 2], which has not been ruled on and to which this Response is likewise subject to and without waiver thereof.

[3] The Trustee's Brief in Support of the Motion shall be cited to herein as "Trustee's Br. at __."

determination of the Stay Motion should be made in advance of any consideration of the Trustee's Motion.

## I.
## SUMMARY

1.      In the Motion, the Trustee asks this Court to award $7,021,94.00 in alleged "excess payments" (the "**Payments**") made by Acis LP to Highland and to disallow all of Highland's claims asserted in the underlying Acis bankruptcy cases. Acis LP made certain payments to Highland pursuant to various written contracts during the relevant time period, which contracts were between Acis LP and Highland. As will be more fully identified below, during the tenure of their contractual relationship, Acis LP and Highland were contractually obligated primarily as it related to two (2) contracts: a shared services agreement and a sub-advisory agreement (collectively, the "**Agreements**") whereby Highland agreed to provide a litany of services to Acis in return for certain management fees. Over the relevant time period, these Agreements were amended and/or amended and restated on several occasions. Notably, the Trustee (now standing in the shoes of Acis LP and Acis GP) does not directly contest the validity of those Agreements; rather, the Trustee contends the Payments run afoul of the Amended and Restated Agreement of Limited Partnership of Acis Capital Management, L.P. (the "**LPA**") to which Highland was not a party.

2.      To recoup the Payments, the Trustee seeks summary judgment on the first four Counts in his Counterclaims in the Adversary Proceeding: Count 1 – request for a declaratory judgment, Count 2 – claim for "money had and received," Count 3 – turnover, and Count 4 – conversion.  To prove these claims, the Trustee does not offer evidence against Highland. Instead, the Trustee seeks to preclude Highland from litigating any issues relating to these claims by applying offensive, non-mutual collateral estoppel based on the findings and conclusions issued

against Acis LP and its general partner, Acis Capital Management GP, LLC ("**Acis GP**"),[4] in an arbitration proceeding (the "**Arbitration**") in which Highland was a non-consenting participant. The Trustee cannot meet the accepted elements for collateral estoppel, and, thus, the Court cannot grant the Trustee's Motion premised on collateral estoppel as a matter of law.

3.  At a minimum, genuine disputes of material fact concerning the Payments preclude summary judgment. *See* FED. R. CIV. P. 56(a) (summary judgment can only be granted when "the movant shows that there is no genuine dispute as to any material fact").

4.  Alternatively, if the Court decides to apply collateral estoppel, the Trustee's claims may still fail as a matter of law because they may be barred by res judicata.

5.  Because the law does not support the relief that the Trustee seeks in his Motion, the Motion should be denied in its entirety, and the Trustee's request for disallowance of Highland's claims should likewise be denied.

## II.
## EVIDENCE SUPPORTING OPPOSITION TO SUMMARY JUDGMENT

6.  In support of Highland's Response and Brief, Highland relies on and incorporates by reference the following exhibits attached hereto as an Appendix:

Exhibit 1   Employment Agreement between Highland Capital Management, L.P. and Joshua Terry (entered March 2, 2009) [App. 000001-15]

Exhibit 2   Amended and Restated Agreement of Limited Partnership of Acis Capital Management, L.P (effective January 21, 2011) [App. 000016-51]

Exhibit 3   Shared Services Agreement by and among Highland Capital Management, L.P. and Acis Capital Management, L.P. (effective January 1, 2011) [App. 000052-63]

Exhibit 4   Sub-Advisory Agreement by and among Acis Capital Management, L.P. and Highland Capital Management, L.P. (effective January 1, 2011) [App. 000064-86]

---

[4] Acis LP and Acis GP may be referred to collectively as "**Acis**."

Exhibit 5    Amended and Restated Sub-Advisory Agreement by and among Acis Capital Management, L.P. and Highland Capital Management, L.P. (made May 5, 2011 to be effective January 1, 2011) [App. 000087-109]

Exhibit 6    Amendment to Amended and Restated Sub-Advisory Agreement between Acis Capital Management, L.P. and Highland Capital Management, L.P. (entered July 1, 2011) [App. 000110-112]

Exhibit 7    Amendment to Shared Services Agreement between Acis Capital Management, L.P. and Highland Capital Management, L.P. (entered July 1, 2011) [App. 000113-115]

Exhibit 8    Amended & Restated Shared Services Agreement by and among Highland Capital Management, L.P. and Acis Capital Management, L.P. (entered June 6, 2013) [App. 000116-128]

Exhibit 9    Second Amended and Restated Shared Services Agreement by and among Highland Capital Management, L.P. and Acis Capital Management, L.P. (effective January 1, 2015) [App. 000129-000143]

Exhibit 10   Second Amended and Restated Sub-Advisory Agreement by and among Acis Capital Management, L.P. and Highland Capital Management, L.P. (made July 29, 2016 to be effective January 1, 2016) [App. 000144-169]

Exhibit 11   Third Amended and Restated Shared Services Agreement by and among Highland Capital Management, L.P. and Acis Capital Management, L.P. (effective January 1, 2016) [App. 000170-183]

Exhibit 12   Original Petition and Application for Injunctive Relief; *Highland Capital Management, L.P. v. Joshua N. Terry,* Cause No. DC-16-11396, in the 162nd Judicial District Court of Dallas County, Texas (filed September 8, 2016) [App. 000184-220]

Exhibit 13   Defendant's Motion to Compel Arbitration and for Sanctions *Highland Capital Management, L.P. v. Joshua N. Terry,* Cause No. DC-16-11396, in the 162nd Judicial District Court of Dallas County, Texas (filed September 12, 2016) [App. 000221-276]

Exhibit 14   Bench Brief Related to Defendant's Demand for Arbitration; *Highland Capital Management, L.P. v. Joshua N. Terry,* Cause No. DC-16-11396, in the 162nd Judicial District Court of Dallas County, Texas (filed September 12, 2016) [App. 000277-341]

Exhibit 15   Interlocutory Order Compelling Arbitration and Staying Case; *Highland Capital Management, L.P. v. Joshua N. Terry,* Cause No. DC-16-11396, in the 162nd Judicial District Court of Dallas County, Texas (entered September 28, 2016) [App. 000342-343]

Exhibit 16    Motion to Dismiss Claims Against Highland Capital Management, L.P. and James Dondero; *Terry v. Highland Capital Management, LP, et al*., in JAMS Arbitration No. 1310022713 (submitted September 22, 2016) [App. 000344-446]

Exhibit 17    Motion for Summary Disposition re Claims against HCM; *Terry v. Highland Capital Management, LP, et al*., in JAMS Arbitration No. 1310022713 (submitted January 24, 2017) [App. 000447-452]

Exhibit 18    Fourth Amended and Restated Shared Services Agreement by and between Acis Capital Management, L.P. and Highland Capital Management, L.P. (dated March 17, 2017) [App. 000453-476]

Exhibit 19    Third Amended and Restated Sub-Advisory Agreement by and between Acis Capital Management, L.P. and Highland Capital Management, L.P. (dated March 17, 2017) [App. 000477-497]

Exhibit 20    Final Award; *Terry v. Highland Capital Management, LP, et al*., in JAMS Arbitration No. 1310022713 (dated October 20, 2017) [App. 000498-525]

Exhibit 21    Petition to Confirm Arbitration Award and Enter Judgment on Same *Terry v. Acis Capital Management, L.P. and Acis Capital Management GP, LLC;* Cause No. DC-17-15244; in the 44th Judicial District Court of Dallas County, Texas (filed November 6, 2017) [App. 000526-567]

Exhibit 22    Final Judgment in *Terry v. Acis Capital Management, L.P. and Acis Capital Management GP, LLC;* Cause No. DC-17-15244; in the 44th Judicial District Court of Dallas County, Texas (entered December 18, 2017) [App. 000568-569]

Exhibit 23    Order Confirming Arbitration Award in *Terry v. Acis Capital Management, L.P. and Acis Capital Management GP, LLC;* Cause No. DC-17-15244; in the 44th Judicial District Court of Dallas County, Texas (entered December 18, 2017) [App. 000570]

Exhibit 24    Defendant's First Traditional Motion for Partial Summary Judgment in *Highland Capital Management, L.P. v. Joshua N. Terry,* Cause No. DC-16-11396, in the 162nd Judicial District Court of Dallas County, Texas (filed May 7, 2018) [App. 000571-1220]

Exhibit 25    Order Denying Motion for Partial Summary Judgment in *Highland Capital Management, L.P. v. Joshua N. Terry,* Cause No. DC-16-11396, in the 162nd Judicial District Court of Dallas County, Texas (entered August 2, 2018) [App. 001221]

Exhibit 26    Order Denying Motion to Confirm Arbitration Award in *Highland Capital Management, L.P. v. Joshua N. Terry,* Cause No. DC-16-11396, in the 162nd Judicial District Court of Dallas County, Texas (entered October 22, 2018) [App. 001222-1223]

Exhibit 27    Excerpt from Hearing Transcript dated September 7, 2017; *Terry v. Highland Capital Management, LP, et al*., in JAMS Arbitration No. 1310022713 [App. 001224-1232]

**III.**
**FACTS AND BACKGROUND**

A.    **The relationship between Highland, Acis and Terry.**

7.    Highland hired Terry in July 2005. *See* Highland's *Original Petition and Application for Injunctive Relief* ("**Highland's Original Petition**") at ¶ 15, App. 188; Final Award, *Terry v. Highland Capital Management, LP, et al.*, in JAMS Arbitration No. 1310022713 (dated October 20, 2017) at 5, App. 503(the "**Award**"). In March 2009, Highland appointed Terry to the position of Portfolio Manager. *Id.* In connection with that appointment, Terry executed an employment agreement dated March 2, 2009 (the "**Employment Agreement**"). *See* Highland's Original Petition at ¶ 15, App. 188.

8.    Acis LP was formed as a Delaware limited partnership on May 2, 2010. *See* LPA at § 1.04, App. 190. Subsequently, Acis GP, The Dugaboy Investment Trust ("**Dugaboy**"), Mark K. Okada ("**Okada**"), and Terry entered into the LPA effective as of January 21, 2011. *Id.* at 1. App. 16. Acis GP was the general partner of Acis LP, and Dugaboy, Okada, and Terry were the limited partners of Acis LP. *See id.* at 28, A-1, App. 46, 49. Highland was not and never has been a party to the LPA.

9.    At all times until his termination, Terry was the Portfolio Manager for Acis.  Award at App. 503. Specifically, Terry was an officer of Acis GP and Acis GP was responsible for operating and making the decisions for Acis LP.  Arbitration Transcript Excerpt, App. 1231.  In that role, "Terry was responsible for the day-to-day management" of Acis LP. Award at 5, App. 503. For this work, Terry was "paid millions of dollars in Highland salary, bonuses and [Acis LP] profit distributions…." *Id.*

10.    Around the same time period that the amended and restated LPA was being negotiated and executed, Acis LP entered into the first iteration of the Agreements with Highland.

Specifically, Highland and Acis LP entered into a Shared Services Agreement effective as of January 1, 2011. *See* Shared Services Agreement, App. 52-63 (the "**Shared Services Agreement**"), pursuant to which Highland agreed to provide to Acis LP certain "shared services," which included finance and accounting services, human resource services, marketing services, legal services, corporate services, information technology services, and operations services. *See id.* at § 2.01, App. 54. Under the Shared Services Agreement, Highland was entitled to recoup "100%" of items "demonstrably attributable" to Acis and other costs would be proportionately and in good faith allocated to and paid by Acis to Highland. *Id.* at § 4.01, App. 55. Highland agreed to invoice Acis LP for those services, and Acis LP agreed to promptly pay those invoices. *See id.* at § 5.03, App. 56.

11.     Highland and Acis LP also entered into a Sub-Advisory Agreement effective as of January 1, 2011, pursuant to which Highland agreed to provide investment management advice and services to the various "Accounts" (as defined therein) of Acis LP. *See* Sub-Advisory Agreement at § 1, App. 64 (the "**Sub-Advisory Agreement**"). Under the Sub-Advisory Agreement, Highland was entitled to a fee per Schedule A of the agreement of 5 basis points (bps) of the management fees on the Accounts. *Id.* at § 5, Schedule A, App. 68. The Sub-Advisory Agreement also specifically provided that "notwithstanding the foregoing [fee schedule], the parties may agree to a different allocation from that set forth above during any period in order to reflect the then current fair market value of the Advisory Services rendered." *Id.*

12.     From the inception of the Agreements and through the time period relevant to the Trustee's Motion (ending May 2016), the Shared Services Agreement was amended or amended and restated at various times as follows:

- Amendment to Shared Services Agreement between Acis Capital Management,

L.P. and Highland Capital Management, L.P. (entered July 1, 2011), App. 113-115;

- Amended & Restated Shared Services Agreement by and among Highland Capital Management, L.P. and Acis Capital Management, L.P. (dated June 6, 2013, but effective January 1, 2013), App. 116-128, which provided, in part:

    - 2.02(a) allowed for modification of the fees "to reflect the then current fair market value of such services,";

    - 4.01 – Actual Cost Allocation Formula
      (c) It [was] agreed in good faith between both parties that actual cost shall be calculated as follows: for each fund included within Annex B, Actual Cost shall be calculated in exact conformity with the calculation of management fees for such funds, except that the management fee rates applied in the calculation will be replaced by the fee rates described in Annex B …. It is estimated that amounts calculated pursuant to this clause represent 80% direct compensation of employees delivering shared services, 10% employer paid benefits for such employees and 10% other overhead (i.e., rent, equipment, etc.)";

    - Established an Annualized Shared Service Fee set forth in Annex B for Acis CLO 2013-1 of 20 bps.

- Second Amended and Restated Shared Services Agreement by and among Highland Capital Management, L.P. and Acis Capital Management, L.P. (dated January 1, 2015), App. 129-143, which provided, in part:
    - An updated Annex B reflecting annualized Shared Service Fees for each of the Acis CLOs at 20 bps each, and for other funds between 5-15 bps.

- Third Amended and Restated Shared Services Agreement by and among Highland Capital Management, L.P. and Acis Capital Management, L.P. (dated January 1, 2016)[5], App. 170-183, which provided, in part:
    - 100% of Actual Costs to be allocated to Acis and reimbursed to Highland;[6]
    - Updated Annex B to make Annualized Shared Service Fees for all of the Acis CLOs and all other funds 15 bps.

---

[5] A Fourth Amended and Restated Shared Services Agreement was entered into on March 17, 2017, which was after the relevant time period in the Trustee's claims. This was the last version executed by Highland and Acis LP and was the contract terminated by the Trustee effective on or about August 2, 2018.

[6] "For the avoidance of doubt, Acis shall separately reimburse [Highland] for the actual costs and expenses caused by, incurred or otherwise arising from or relating to business development services that are borne by [Highland] on behalf of or for the benefit of Acis." Third Amended and Restated Shared Services Agreement at 4, App. 174.

13. From the inception of the Agreements and through the time period relevant to the Trustee's Motion (ending May 2016), the Sub-Advisory Agreement was amended or amended and restated at various times as follows:

- Amended and Restated Sub-Advisory Agreement by and among Acis Capital Management, L.P. and Highland Capital Management, L.P. (dated May 5, 2011, but effective January 1, 2011), App. 87-109, which provided, in part:
  - Expenses to be reimbursed (¶4);
  - Fee per Schedule A – 5 bps of the management fees on the Accounts; notwithstanding the foregoing, the parties may agree to a different allocation from that set forth above during the period in order to reflect the then current fair market value of the Advisory Services rendered.
- Amendment to Amended and Restated Sub-Advisory Agreement between Acis Capital Management, L.P. and Highland Capital Management, L.P. (dated July 1, 2011), App. 110-112; and
- Second Amended and Restated Sub-Advisory Agreement by and among Acis Capital Management, L.P. and Highland Capital Management, L.P. (dated July 29, 2016, but effective January 1, 2016),[7] App. 144-169, which provided, in part:

  - Expenses to be reimbursed (¶ 4);
  - Fee per Schedule A – 20 bps of the management fees on the Accounts; notwithstanding the foregoing, the parties may agree to a different allocation from that set forth above during the period in order to reflect the then current fair market value of the Advisory Services rendered.

14. During the time period relevant to the Trustee's Motion, Acis undertook a significant expansion of its collateralized loan obligation (or CLO) accounts, which were subsumed under the services provided by Highland pursuant to the Agreements. And at all times relevant to the Trustee's Motion, Terry was substantially responsible for running Acis and knew or should have known of the fees for services being paid to Highland per the Agreements. As the Portfolio Manager, Terry oversaw all of the Acis' Accounts and knew or should have known of all expenditures relative to such Accounts. *See Findings of Fact and Conclusions of Law in Support of*

---

[7] The Third Amended and Restated Sub-Advisory Agreement was entered into on March 17, 2017, which was after the relevant time period of the Trustees claims referenced in the Motion. That was the last version executed by Highland and Acis LP and was the contract terminated by the Trustee effective on or about August 2, 2018.

*Orders for Relief Issued After Trial on Contested Involuntary Bankruptcy Petitions* [Trustee Exhibit M] at ¶ 32 (recognizing that Terry "presided over the business of the Alleged Debtors from their inception until June 9, 2016" and further recognizing Terry's detailed knowledge of the Debtors' operations, relationships with creditors, and contractual obligations). There is no evidence of Terry ever protesting the fees being paid to Highland pursuant to the Agreements and, in fact, Terry benefited therefrom by compensation and bonuses he received from Highland based on his role as the Portfolio Manager.

15.     Likewise, at all times relevant, Terry was a limited partner under the LPA and received various types of partner distributions therefrom.  Award at App. 503.

**B.     Terry is terminated and litigation ensues.**

16.     On June 13, 2016, Terry was terminated from Highland. Highland's Original Petition at ¶ 39, App. 195. Highland contended that Terry, among other things, breached the Employment Agreement. *Id.* at ¶¶ 42-47.  In conjunction with his termination from Highland and pursuant to the terms of the LPA, Terry forfeited his limited partnership interest in Acis LP. *See* LPA at § 4.04, App. 36-37.

17.     On September 8, 2016, Highland filed a lawsuit against Terry styled *Highland Capital Management, L.P. v. Joshua N. Terry*, Cause No. DC-16-11396 (the "**Highland State Court Lawsuit**"), in the 162nd Judicial District Court of Dallas, Texas (the "**162nd Court**"). *See* Highland's Original Petition, App. 184-220. Highland asserted claims against Terry for, *inter alia*, breach of the Employment Agreement, breach of fiduciary duty and self-dealing, violation of the Texas Uniform Trade Secrets Act, and declaratory and injunctive relief. *See* Highland's Original Petition at ¶¶ 24-71, App. 192-201.

18.     On September 9, 2016, Highland's counsel received Terry's Original Statement of Claim and Demand for Arbitration from Terry's counsel. *See* Bench Brief Related to Defendant's Demand for Arbitration at App. 278.  Terry initiated the Arbitration proceeding against numerous parties styled *Joshua N. Terry v. Highland Capital Management, L.P., Acis Capital Management, L.P., Acis Capital Management GP, LLC, James D. Dondero, as Trustee of The Dugaboy Investment Trust and Mark K. Okada*, JAMS Arbitration No. 1310022413.

19.     Shortly thereafter, on September 12, 2016, Terry filed a motion to compel arbitration in the Highland State Court Lawsuit. *See* Terry's Motion to Compel Arbitration and for Sanctions, App. 221-276 ("**Terry's Arbitration Motion**"). In asserting that arbitration was appropriate, Terry relied on the "Dispute Resolution" provision of the LPA. *See* the LPA at § 6.12(b), App. 44-45; *see also* Terry's Arbitration Motion at ¶¶ 47-49, App. 233-234. Highland objected to participating in the Arbitration because, among other reasons, Highland was not a party to the LPA, and the Employment Agreement to which Highland was a party provided that disputes would be resolved in a judicial forum. *See* Bench Brief Related to Defendant's Demand for Arbitration at App. 280.

20.     On September 28, 2016, the 162nd Court entered an interlocutory order compelling the parties to arbitration and staying the Highland State Court Lawsuit pending a final arbitral award. *See* Interlocutory Order Compelling Arbitration and Staying Case Pending Arbitration, App. 342-343.

21.     In the Arbitration, Terry asserted multiple claims against Highland, including "claims against Highland for Sabine Pilot wrongful termination;" "claims against [Acis LP], [Acis GP] and Highland for reputational damages;" and "claims against [Acis LP], [Acis GP] and Highland for *conversion* of assets, *fraudulent transfer of Acis LP assets*, recovery of [Terry's] attorney's fees, and costs." *See* Award at App. 502-503 (emphasis added).

22. Highland immediately moved to dismiss Terry's claims against it and for summary disposition. *See Motion to Dismiss Claims Against Highland Capital Management, L.P. and James Dondero*, App. 344-446; Motion for Summary Disposition re Claims against HCM, App. 447-452. In the Arbitration, Highland stated claims against Terry:

> [S]ubject to, and without waiver of its contention that Highland is not a party to a valid arbitration agreement with Terry and its claims against him are not arbitrable or within the scope of any applicable arbitration agreement, which contentions remain fully reserved.[8]

*See* Award at App. 503.

23. On October 20, 2017, the arbitration panel entered a final award in the Arbitration. *See* Award at App. 498-525. In the Award, the panel explained that

> Although Highland is a party to the District Court suit [o]rdered to arbitration, Highland is not a party to an arbitration agreement and has stated claims against Terry with the above noted reservation, "subject to and without waiver." To the extent [Highland's claims for breach of employment agreement, theft/theft of trade secrets and breach of fiduciary stated against Terry] are stated in this Arbitration in affirmative avoidance of Terry's claims stated against [Acis LP] and [Acis GP], they are addressed in this Award.

Award at App. 516. Further, the arbitration panel stated that the Award "only addresse[d] proved claims against appropriate Parties to [the] Arbitration." *See* Award at App. 517. The arbitration panel specifically deferred "[a]ll claims, not denied or awarded" in the Award "to the 162nd District Court, Dallas County, Texas or other appropriate venue." *See* Award at App. 520. Terry did not prevail on any of his claims against Highland in the Arbitration. *See* Award at 16-19, App. 514-517.

---

[8] Specifically, Highland stated claims against Terry in the Arbitration for breach of Employment Agreement, theft/theft of trade secrets, breach of fiduciary duty/self-dealing, and recovery of attorneys' fees and costs, subject in all instances to the above-quoted proviso. *See* Arbitration Award at 5, App. 503.

C.     **Terry's confirmation of the award.**

24.     After the Award was issued, instead of returning to the 162nd Court, on November 6, 2017, Terry initiated a new lawsuit against Acis LP and Acis GP styled *Joshua N. Terry v. Acis Capital Management, L.P. and Acis Capital Management GP, LLC* (the "**Terry State Court Lawsuit**"), in the 44th Judicial District Court of Dallas County, Texas (the "**44th Court**"). *See Petition to Confirm Award and Enter Judgment on the Same*, App. 526-567.  In the Terry State Court Lawsuit, Terry sought to confirm the Award and for entry of judgment against Acis LP and Acis GP. *See id*.  Terry did not name Highland as a party to the Terry State Court Lawsuit in the 44th Court.

25.     On December 18, 2017, the 44th Court entered a final judgment confirming the Award (the "**Final Judgment**"). *See* Final Judgment, App. 568-569. The Final Judgment expressly ordered, adjudged, and decreed "that Joshua N. Terry shall have judgment against Acis Capital Management, L.P. and Acis Capital Management GP, LLC, jointly and severally, in the amount of seven million nine hundred forty-nine thousand seven hundred forty-nine and 15/100 dollars ($7,949,749.15), together with interest at five percent (5%) per annum from and after October 20, 2017, until paid in full." Final Judgment, App. 568-569. The Final Judgment provided that "[a]ll relief not expressly granted herein is hereby denied. The final judgment disposes of *all* parties and *all* claims." Final Judgment, *Id.* (emphasis added). The Final Judgment states that it is "final and appealable." Final Judgment, *Id*.

26.     Almost nine (9) months later, on September 10, 2018, Terry filed a motion to confirm the Award against Highland in the Highland State Court Lawsuit in the 162nd Court. Terry's Motion to Confirm, App. 526-567 (the "**Motion to Confirm**"). At the hearing on the Motion to

Confirm, Highland maintained that it "was not a party to the Arbitration." [Trustee Exhibit T] at

23:2-8. In questioning the parties, the 162nd Court stated:

> Any advantage [Terry] would want to take out of an award confirming the arbitration
> award, he already has. This does – there's no need for belt and suspenders, he already has
> it vis-à-vis Highland with respect to the 44th District Court [Final Judgment].

[Trustee Exhibit T] at 19:16-21.[9] Thereafter, the 162nd Court denied the Motion to Confirm. *See*

*Order Denying Motion to Confirm Arbitration Award*, App. 1222-1223. As previously stated,

however, the Final Judgment entered in the 44th Court did not find any liability by Highland; rather,

it only rendered judgment against Acis LP and Acis GP. Consequently, there is no finding of any

liability by Highland from the Award, the Final Judgment, the 162nd Court or the 44th Court. As

will be further set forth herein, the entire bases for the Trustee's Motion fails as a matter of law and

fact.

## IV.
## ARGUMENT AND AUTHORITIES

### A.      Summary judgment standard.

27.      A court may only grant summary judgment if there are no genuine issues of material

fact and if the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A genuine issue of material fact exists 'if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party.'" *In re Ward*, 557

B.R. 508, 511 (Bankr. N.D. Tex. 2016) (citing *Pylant v. Hartford Life and Acc. Ins. Co.*, 497 F.3d

536, 538 (5th Cir. 2007)).

---

[9] In the Highland State Court Lawsuit, Terry sought summary judgment against Highland by attempting to assert
collateral estoppel just as the Trustee is doing by this Motion. *See Defendant's First Traditional Motion for Partial
Summary Judgment*, App. 571-1220. The 162nd Court denied Terry's motion for summary judgment. *See Order
Denying Motion for Partial Summary Judgment*, App. 1221. At the hearing on Terry's Motion to Confirm, counsel for
Highland explained, "[w]ell, again, whether or not Highland was a party [to the Arbitration] was something that we
had a fact dispute on the summary judgment issue." [Trustee Exhibit T] at 23:16-18.

28.     "In deciding whether a fact issue has been raised, the facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party." *In re Ward*, 557 B.R. at 510 (citing *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007)). "A court's role at the summary judgment stage is not to weigh the evidence or determine the truth of the matter, but rather to determine only whether a genuine issue of material fact exists for trial." *Id.* at 510 (*citing Peel & Co., Inc. v. The Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001) ("the court must review all of the evidence in the record but make no credibility determinations or weigh any evidence").

## B.     Collateral estoppel does not apply as a matter of law.

29.     In his Motion, the Trustee asks this Court to rule that the "the arbitration panel's findings and conclusions . . . have preclusive effect upon [Highland] under the doctrine of collateral estoppel." Trustee's Br. at ¶ 41. "Collateral estoppel, or issue preclusion, prevents the relitigation of identical issues of fact or law that were actually litigated and essential to the final judgment in a prior suit." *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 817 (Tex. App.—Dallas 2012, no pet.) (citing *Texas Dep't of Public Safety v. Petta*, 44 S.W.3d 575, 579 (Tex.2001); *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex.1992)). "[T]o invoke the doctrine of collateral estoppel, a party must establish '(1) the facts sought to be litigated in the first action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action.'" *Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 721 (Tex. 1990).[10]   When a party invokes collateral estoppel offensively, the Court must consider the factors articulated in *Parklane Hosiery Co., Inc. v. Shore,*

---

[10] Because the judgment subject of the Motion "was entered by a Texas state court, Texas rules of preclusion apply." *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 181 (5th Cir. 1997).

439 U.S. 322, 329-330 (1979). *See Goldstein v. Comm'n for Lawyer Discipline*, 109 S.W.3d 810, 813 (Tex. App.—Dallas 2003, pet. denied).

30.     For the reasons established herein,[11] the Trustee's wholesale request that this Court rule that the arbitration panel's findings and conclusions against Acis LP and Acis GP in the Arbitration have a preclusive effect on Highland under the doctrine of collateral estoppel and, on that basis alone, grant summary judgment on the Trustee's Counts 1-4 fails as a matter of law. Alternatively, at a minimum, Highland raises a fact issue regarding the applicability of collateral estoppel and the Trustee's entitlement to summary judgment as requested in the Motion.

### C.     The circumstances of this case do not satisfy the *Parklane Hosiery* factors.

31.     In the Motion, the Trustee attempts to use the doctrine of collateral estoppel offensively. "When collateral estoppel is being used offensively . . . the plaintiff uses the doctrine to estop a defendant from relitigating an issue that the defendant litigated and lost in prior litigation with another party." *Goldstein*, 109 S.W.3d at 812 (citing *Yarbrough's Dirt Pit, Inc. v. Turner*, 65 S.W.3d 210, 216 (Tex. App.—Beaumont 2001, no pet.)). "In determining whether to apply collateral estoppel offensively, the trial court must consider the *Parklane Hosiery* factors." *Id.* at 813 (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329-330 (1979); *Yarbrough's Dirt Pit*, 65 S.W.3d at 216). "The first factor is whether application of the doctrine will tend to increase litigation by allowing a plaintiff to 'wait and see' before filing suit instead of joining in the prior litigation." *Id.* (citing *Parklane Hosiery*, 439 U.S. at 329–330; *Avila v. St. Luke's Lutheran Hosp.*, 948 S.W.2d 841, 858 (Tex. App.—San Antonio 1997, pet. denied)). "Second, the offensive use of

---

[11] The Trustee bears the burden to establish the applicability of collateral estoppel. *See* Jonathan David Pauerstein, *The Future of Offensive Collateral Estoppel in Texas*, 35 BAYLOR L. REV. 291, 321 n. 13 (1983) ("A plaintiff seeking to use offensive collateral estoppel to establish an element of his cause of action has the burden to prove the facts necessary to raise the estoppel. … A defendant seeking to use non-mutual collateral estoppel has the burden to plead and prove the estoppel as an affirmative defense.") (citations omitted).

collateral estoppel may be unfair under the circumstances of a particular case." *Id.* "Under this factor, [courts] consider the defendant's incentive in the first action to vigorously defend the suit, the foreseeability of future suits, and the availability of procedural safeguards in the second suit that were not available in the first suit." *Id.* (citing *Parklane Hosiery,* 439 U.S. at 330).

32.     This case does not satisfy the *Parklane Hosiery* factors, and application of collateral estoppel would be unfair under the circumstances of this case. Typically, through offensive non-mutual collateral estoppel, a plaintiff seeks to prevent a defendant from relitigating an issue that the defendant has unsuccessfully litigated before a different party. However, under the circuitous set of facts presented in this case, the Trustee, on behalf of Acis LP and Acis GP, seeks to prevent Highland from litigating an issue that Acis LP and Acis GP unsuccessfully litigated in a prior Arbitration against Terry. At the time of the Arbitration, Acis LP and Acis GP made no effort to join Highland in the Arbitration.[12]  Yet, Acis LP and Acis GP, through the Trustee, endeavor to hold Highland responsible.  At the time of the Arbitration, Highland could not foresee that Acis LP and Acis GP would eventually seek to recoup *from Highland* more than $7 million premised on Acis LP and Acis GP's purported failure to comply with their contractual obligations to Terry under the LPA. As a result, while Acis LP and Acis GP arbitrated the breach of contract and breach of fiduciary duty claims against Terry, Highland objected to participating in the Arbitration. No arbitrable claims existed between Highland and Terry, and no other party to the Arbitration asserted claims against Highland. Highland had no incentive to vigorously defend these issues in the Arbitration.  To allow the Trustee, now standing in the shoes of Acis LP and Acis GP, to use non-

---

[12] As explained in the Stay Motion, certain Counts in the Trustee's Counterclaims are subject to binding arbitration clauses in agreements between Acis LP and Highland.

mutual collateral estoppel to prevent Highland's litigation of issues that Acis LP and Acis GP lost in the Arbitration, would be unfair and an improper use of offensive non-mutual collateral estoppel.

**D.     The Trustee failed to show Highland and ACIS were cast as adversaries in the Arbitration.**

33.     The Trustee bears the burden to establish that the parties were cast as adversaries in the Arbitration. "Strict mutuality of parties is no longer required." *MGA Ins.* 358 S.W.3d at 817 (citing *Petta*, 44 S.W.3d at 579; *Richards v. Comm'n for Lawyer Discipline*, 35 S.W.3d 243, 249 (Tex. App.—Houston [14th Dist.] 2000, no pet.)). However, "the party against whom collateral estoppel is being asserted [must have been] a party or in privity with a party in the first action." *Id.* (citing *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex.1990)); *see MGA Ins.* 358 S.W.3d at 817 (explaining that for collateral estoppel to apply, it is necessary for "the party against whom collateral estoppel is being asserted was a party or in privity with a party in the first action"). As explained below, Highland was not a party to the Arbitration. To the extent the Court disagrees, there can be no question that Acis and Highland were not cast as adversaries in the Arbitration. Alternatively, Highland was not in privity with any party to the Arbitration. Because Highland was neither a party to, nor in privity with a party to, the Arbitration, the Trustee cannot assert collateral estoppel against Highland as a matter of law.

**1)     Highland was not a party to the Arbitration.**

34.     The Trustee failed to establish that Highland was a party to the Arbitration. "It goes without saying that a contract cannot bind a nonparty." *Rapid Settlements, Ltd. v. Green,* 294 S.W.3d 701, 706 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (quoting *EEOC v. Wajjle House, Inc.,* 534 U.S. 279, 294 (2002)). "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943 (1995). "[A] party can

be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." *Jody James Farms, JV v. Altman Gtp., Inc.,* 547 S.W.3d 624, 631 (Tex. 2018) (internal quotation marks omitted); *accord Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.").

35.     On September 8, 2016, Highland filed the Highland State Court Lawsuit asserting claims against Terry for, among other things, breaching the Employment Agreement. The next day, on September 9, 2016, purportedly relying on the LPA, Terry initiated the Arbitration against Highland, Acis LP, Acis GP, and others. Shortly thereafter, Terry moved to stay the Highland State Court Lawsuit pending the outcome of the Arbitration. There is no dispute that Highland is not a party to the LPA, which contains the arbitration clause relied upon by Terry to initiate the Arbitration. "A duty to arbitrate can arise only by agreement." *Rapid Settlements,* 294 S.W.3d at 706 (internal quotation marks omitted). "[A]rbitration is a matter of consent, not coercion." *Roe v. Ladyman,* 318 S.W.3d 502, 510 (Tex. App.—Dallas 2010, no pet.) (internal quotation marks omitted). Nevertheless, even though Highland was not a party to the LPA and had not agreed to arbitrate disputes arising under the Employment Agreement with Terry, the 162nd District Court stayed the Highland State Court Case during the pendency of the Arbitration.

36.     Highland vigorously contested that it was obligated to arbitrate its claims against Terry in the Arbitration. In the Employment Agreement, Highland and Terry did not agree to arbitrate but, instead, bargained for the right to resolve disputes in a court. The Employment Agreement provided:

> All disputes relating to the interpretation and enforcement of the provisions of this Agreement shall, at the choice of [Highland], be resolved and determined exclusively by the federal or state courts in Dallas County, Texas, or in the federal or state courts in the state where the Executive worked for the Company.

Employment Agreement at § 7.6, App. 9. After the 162nd District Court stayed the Highland State Court Lawsuit, Highland immediately sought to dismiss Terry's claims. However, the panel did not rule on the arbitrability of Highland's claims until issuing the Award.

37.     To the extent Highland "participated" in the Arbitration, Highland did so only subject to its objection to arbitral jurisdiction. The arbitration panel addressed this issue in the Award, stating:

> Although Highland is a party to the District Court suit [o]rdered to arbitration, Highland *is not a party to an arbitration agreement* and has stated claims against Terry *with the above noted reservation, and "subject to and without waiver."* To the extent these claims are stated in this Arbitration in affirmative avoidance of Terry's claims stated against [Acis LP] and [Acis GP] they are addressed in this Award. . . . [Highland's claims for breach of employment agreement, theft/theft of trade secrets and breach of fiduciary duty stated against Terry] are not proved and are not an affirmative defense or avoidance available to [Acis LP] or [Acis GP].

Award at App. 516-517. (emphasis added). Ultimately, Highland's opposition was validated by the panel's conclusion that "Highland is not a party to an arbitration agreement." Award at App. 516. The panel expressly "deferred to the 162nd District Court, Dallas County, Texas or other appropriate venue" all claims not decided in the Award, which included Highland's claims for relief. Award at App. 520. Consistent with this ruling, the panel only considered Highland's claims against Terry "to the extent" asserted by Acis LP and Acis GP as affirmative defenses. Award at App. 516-517. Thus, because the Trustee only relies upon the Award in the Motion, the Trustee has failed to establish that Highland was a party to the Arbitration as a matter of law.

### 2)     <u>Highland was not in privity with a party to the arbitration.</u>

38.     Alternatively, the Trustee failed to establish that Highland was in privity with a party to the Arbitration. In the Motion, the Trustee argues that "[e]ven treating Highland as a nonparty to the finding that [Acis LP] overpaid [Highland], [Highland] was in privity with [Acis LP] and [Highland's] interests were 'adequately represented.'" Trustee's Br. at ¶ 41. "Privity connotes those

who are in law so connected with a party to a judgment as to have such an identity of interest that the party to the judgment represented the same legal right." *Maxson v. Travis County Rent Account*, 21 S.W.3d 311, 316 (Tex. App.—Austin 1999, pet. dism'd) (citing *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex.1971)). "The Texas Supreme Court has stated that there is not a specific definition of privity that can be applied generally to all res judicata cases; instead, the circumstances of each case must be carefully examined." *Id.* (citing *Getty Oil Co. v. Insurance Co. of N. Am.*, 845 S.W.2d 794, 800 (Tex.1992); *Benson*, 468 S.W.2d at 363). However, the Texas Supreme Court has recognized that "[p]eople can be in privity in at least three ways: (1) they can control an action even if they are not parties to it; (2) their interests can be represented by a party to the action; or (3) they can be successors in interest, deriving their claims through a party to the prior action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996).[13]

39.     *First,* Highland was not in privity with any party to the Arbitration under a theory of "control" over the Arbitration. "In determining whether privity exists through control over a prior action, Texas courts have focused on whether an individual actively and openly participated in the prior proceedings to such an extent that it was clear that the individual had the right to direct them." *McNeil Interests, Inc. v. Quisenberry*, 407 S.W.3d 381, 389 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (quoting *Maxson v. Travis Cnty. Rent Account,* 21 S.W.3d 311, 316 (Tex. App.—Austin 1999, pet. dism'd by agr.). "'[M]ere participation in a prior trial does not suffice to bar the participant on principles of res judicata, nor does knowledge of an ongoing trial.'" *Brown v. Zimmerman,* 160 S.W.3d 695, 703 (Tex. App.—Dallas 2005, no pet.). "A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the

---

[13] In the Motion, the Trustee does not argue that Highland was in privity with a party to the Arbitration on the basis that Highland is a successor in interest, deriving its claim through a party to the prior action.

benefits of the rules of res judicata in a subsequent action in which he appears in another capacity." *Quisenberry*, 407 S.W.3d at 389. The Trustee has offered no evidence that Highland controlled the Arbitration. As explained above, Highland vigorously contested that Highland was a proper party to the arbitration and, to the extent Highland "participated," Highland did so subject to its objection and because the panel declined to decide the issue of arbitrability of Highland's claims against Terry until issuance of the Award. Moreover, the Trustee's unsupported allegation that "the actions of both [Highland] and [Acis LP] were commonly controlled by Dondero" fails to establish privity between Acis LP and Highland. Trustee's Br. at ¶ 43. Dondero's appearance in the Arbitration, either in his individual capacity or as a representative of another entity, does not establish that Highland participated in, or controlled, the Arbitration. *See, e.g., Johnson v. City of Houston,* 444 F. App'x 26, 31 (5th Cir. 2011) ("[A]s a general rule, the identity requirement for claim preclusion is not fulfilled when a person participates in two different suits in different capacities."). Finally, that Highland and Acis LP engaged the same counsel for the Arbitration does not establish privity. *See, e.g., Texas Capital Sec. Mgmt., Inc. v. Sandefer*, 80 S.W.3d 260, 267 (Tex. App.—Texarkana 2002, pet. struck). Rather, it bolsters the fact that Highland and Acis were not adversaries and therefore the Trustee, now standing in the shoes of Acis, cannot assert collateral estoppel against Highland.

40.     *Second*, Highland was not in privity with any party to the Arbitration under a theory of "adequate representation" in the Arbitration. "The Texas Supreme Court has emphasized that the mere fact that persons may happen to be interested in the same question or in proving the same state of facts is not sufficient to prove privity through adequate representation." *Maxson*, 21 S.W.3d at 316-317 (citing *Benson*, 468 S.W.2d at 363). Indeed, "courts have cautioned against the over-expansion of privity for purposes of applying res judicata to non-parties." *Lee v. Rogers Agency*,

517 S.W.3d 137, 155 (Tex. App.—Texarkana 2016, pet. filed). The United States Supreme Court has explained, under federal law, "[r]epresentative suits with preclusive effect on nonparties include properly conducted class actions ... and suits brought by trustees, guardians, and other fiduciaries… ." *Taylor v. Sturgell*, 553 U.S. 880, 894–95 (2008). The Trustee has offered no evidence to prove that any relationship—much less a fiduciary relationship—exists between Highland and Acis LP. Even assuming that Highland and Acis LP are affiliates, the Trustee cites no case holding that an affiliate relationship establishes privity for collateral estoppel. *See, e.g., Texas Capital Sec. Mgmt.,* 80 S.W.3d at 266-67 (holding that management company's status as wholly owned subsidiary of brokerage firm was insufficient to establish privity); *Quisenberry,* 407 S.W.3d at 388 (rejecting notion that "a fifty-percent owner of a company is in privity with its company on all obligations arising from a transaction for purposes of res judicata"). Likewise, the Trustee cites no case holding that a contractual relationship establishes privity for collateral estoppel. The Shared Services Agreement makes clear that Highland and Acis LP do not have the authority to act on behalf of one another. Shared Services Agreement at § 9.01, App. 58-59 (consistent in other relevant versions as well).

41.     Because the Trustee failed to establish that Highland was a party to, or in privity with a party to, the Arbitration, the Trustee cannot use offensive non-mutual collateral estoppel to establish his claims against Highland as a matter of law. Alternatively, the Court should deny the Motion because, at a minimum, a genuine issue of material fact exists as to whether Highland, a non-signatory to the LPA, and an improper party to the Arbitration, was a party or in privity with a party in the Arbitration. *See* FED. R. CIV. P. 56(a) (summary judgment must be denied where there is a material fact issue).

### 3) If Highland was a party to the Arbitration, then Highland and ACIS were co-defendants and not cast as adversaries.

42.     If this Court determines Highland was a party to the Arbitration, the Court should decline to apply collateral estoppel because Highland and Acis LP were not cast as adversaries. At least one Texas court has required adversity in the prior action. That court explained, "[i]t is a generally accepted proposition that collateral estoppel is not applied to an action unless the parties were adversaries in the original action." *Sauceda v. Kerlin*, 164 S.W.3d 892, 913–14 (Tex. App.— Corpus Christi 2005), *review granted, judgment vacated*, 05-0653, 2006 WL 4706002 (Tex. Mar. 10, 2006), *rev'd*, 263 S.W.3d 920 (Tex. 2008), *rev'd* (Oct. 10, 2008). The court stated:

> Parties who are not adversaries to each other under the pleadings in an action involving them and a third party are bound by and entitled to the benefits of issue preclusion with respect to issues they actually litigate fully and fairly as adversaries to each other and which are essential to the judgment rendered.

*Id.* (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 38 (1982); *see also Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 821 n. 1 (Tex.1984) (J. McGee, dissenting)). In that case, because the two parties were "co-parties who did not maintain adversarial positions during the proceedings," "[t]he doctrine of collateral estoppel [could not] be applied." *Id.* at 913-914. Thus, if the Court determines that Highland was a party to the Arbitration, then the Court must deny the Trustee's motion for summary judgment as it is irrefutable that Highland was not cast as an adversary to Acis LP and Acis GP.

### E. The Trustee failed to show that the issues sought to be litigated in the Adversary Proceeding were fully and fairly litigated in the Arbitration.

43.     The Trustee also must show that the issues to be litigated in the Adversary Proceeding were fully and fairly litigated in the Arbitration. "When asserted against a party who was actually a party in the first action, the doctrine of collateral estoppel bars relitigation of fact issues that were fully and fairly litigated and that were essential to the prior judgment." *State &*

*County Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696–97 (Tex. 2001) (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 519 (Tex. 1998)). "The issue decided in the prior action must be identical to the issue in the pending action." *Id.* at 697 (citing *Getty Oil Co. v. Ins. Co. of N. Am.,* 845 S.W.2d 794, 802 (Tex. 1992)).

44.     The Trustee has failed to meet his burden. In the Arbitration, Terry, who is not a party to this Adversary Proceeding, asserted a claim against Acis LP and Acis GP for breach of contract and a claim against Acis GP for breach of fiduciary duty related to his limited partnership interest. The contract at issue was the LPA, to which Highland was not a party and by which Highland was not bound. In the Award, the panel made very narrow findings and conclusions against Acis LP and Acis GP in deciding Terry's breach of contract and breach of fiduciary duty claims: "[Acis LP] and [Acis GP] paid Highland expenses in excess of the contractual limit imposed by Section 3.10(a) of the LPA;" "[Acis LP] and [Acis GP] wrongfully denied Terry his contractual rights to payment for his limited partnership interest in [Acis LP] and are liable for and owe Terry for same;" "[i]n breach of contract and fiduciary duties, [Acis LP] and [Acis GP] are liable and owe Terry his [Acis LP] *profits distributions* which were payable but for the wrongful payment of excess expenses to Highland;" "[Acis GP's] actions were willful and wanton breaches of their fiduciary duties to Terry as their limited partner;" and "[Acis LP's] and [Acis GP's] breaches of contract and [Acis GP's] breach of fiduciary duties have injured Terry and resulted in damages, together with pre-award interest in the total amount of [$7,816,024.00]." Award at ¶¶ 7-10, App. 520-521. The panel made no findings or conclusions against Highland with respect to Terry's claims for breach of contract and breach of fiduciary duty. To the extent Highland was referenced, Highland's identity was not essential to the finding or conclusion. Indeed, Acis LP and Acis GP, under Terry's theory, would have committed the same breach of contract and Acis GP would have committed the same

breach of fiduciary duty if the expenses in excess of 20% of Acis LP's revenue had been made to any creditor of Acis, whether or not it was Highland.

45.    As explained in more detail below, the arbitration panel's narrow findings and conclusions against Acis LP and Acis GP, which were made in the context of ruling on the value of Terry's limited partnership interest (which he claimed he was entitled to upon forfeiture of his limited partnership interest), do not overlap with any elements of the Trustee's request for a declaratory judgment or claims for turnover, money had and received, or conversion asserted in Counts 1-4.  Because the Trustee failed to establish that the issues sought to be litigated in the Adversary Proceeding were fully and fairly litigated in the Arbitration, the Trustee cannot use offensive, non-mutual collateral estoppel to establish his claims against Highland as a matter of law.

### 1)    Count 1: declaratory judgment that payments were *ultra vires* and, thus, void or voidable.

46.    In the Motion, the Trustee seeks summary judgment on his request that the Court "enter judgment declaring that [the Payments] made to [Highland] in excess of 20% of Revenue and any agreements supporting such overpayments were *ultra vires* and, thus, void or voidable." Doc 84 at p. 77. The panel did not decide this issue in the Arbitration, and, as a result, the Trustee cannot rely on collateral estoppel to prevail on this request. Alternatively, even assuming the applicability of collateral estoppel to particular findings and conclusions in the Award, to prevail, the Trustee must establish two things under Delaware law:  (a) the Trustee must show that a limited partnership commits an *ultra vires* act when making payments in breach of the limited partnership agreement, and (b) the Trustee must show that, assuming a limited partnership committed an *ultra vires* act, the limited partnership may ask a court to declare the payments made to a third-party in

violation of the limited partnership agreement void or voidable. The Trustee has failed to meet his burden, and, as a result, the Court should deny his request for summary judgment.

### a. The panel did not rule that the payments or the agreements were *ultra vires* and, thus, void, or voidable.

47.     The central issue of the Trustee's request for a declaratory judgment is whether the Payments Acis LP made to Highland and the Agreements between Acis LP and Highland were *ultra vires* and, thus, void or voidable. To use collateral estoppel, the Trustee bears the burden to prove that this issue was fully and fairly litigated in the Arbitration. *See MGA Ins. Co.*, 358 S.W.3d at 817.  The Trustee has not met this burden.  In the Motion, the Trustee fails to demonstrate that these issues were presented to the arbitration panel or that the panel decided them. First, in the Award, the panel never used the term "*ultra vires*." Second, the panel never considered, among other issues, whether Acis LP had the power or capacity to make the Payments or enter into the Agreements. Third, if Acis LP did lack the power or capacity, the panel never considered, for example, whether:  (a) Acis LP could have those Payments or the Agreements declared void or voidable under Delaware law; (b) whether Highland was entitled to rely on the "Reliance by Third Parties" provision in the LPA; (c) whether the "Severability" provisions of the Agreement impacted the enforceability of the Agreements; or (d) whether Highland would be entitled to assert any equitable defenses to the Trustee's claims.[14]  Because these issues were not fully and fairly litigated in the Arbitration, collateral estoppel in inapplicable.

---

[14] This delineation of issues not considered by the arbitration panel is not intended to be exhaustive and Highland reserves its rights to raise other fact issues and defenses.

### b. **The Trustee fails to establish that Delaware law on *ultra vires* acts applies to limited partnerships.**

48.     In the Motion, the Trustee does not identify any case applying the doctrine of *ultra vires* to a limited partnership. Instead, the Trustee cites cases involving Delaware corporate law and asks this Court to apply the doctrine of *ultra vires* by analogy.

49.     Delaware Corporation Law is not directly applicable to Acis LP, as a limited partnership. Indeed, the Fifth Circuit has explained, "the terms 'partnership' and 'limited partnership' have specific meanings under Delaware law that do not overlap with 'corporation.'" *Odmark v. Mesa Ltd. P'ship*, 59 F.3d 1241 (5th Cir. 1995) (citing Del. Code Ann. tit. 6, § 1506 (partnership) and § 17-101(8) (limited partnership); compare Del. Code Ann. tit. 8, § 101, *et seq.* (corporation)). Unlike the Delaware Corporation Law, the Delaware Limited Partnership Act does not address the issue of "*ultra vires*" acts by a limited partnership.

50.     Instead, the Delaware Limited Partnership Act grants limited partnerships broad freedom of contract:

> A key advantage of a Delaware limited partnership is the contractual flexibility permitted by the Act. The Act's basic approach is to permit partners to have the broadest possible discretion in drafting their partnership agreement and to furnish answers only in situations where the partners have not made provision in their partnership agreement. … Truly, the partnership agreement is the cornerstone of a Delaware limited partnership, and generally constitutes the entire agreement among the partners with respect to … the creation, operation, and termination of, the limited partnership.

1 R. Franklin Balotti & Jesse A. Finkelstein, THE DELAWARE LAW OF CORPORATIONS AND BUSINESS ORGANIZATIONS § 21.3 (3d ed. 2006). Acis LP's LPA does not provide that an act committed in violation of the LPA's term is void. To the contrary, rather than providing that an action taken without required consent would be void, Terry, Acis GP, and the other partners of Acis LP included a "Reliance by Third Parties" provision in the LPA. That provision provides:

Notwithstanding any other provision of this Agreement to the contrary, **no** lender or purchaser or **other Person**, including any purchaser of property from the Partnership or any other Person dealing with the Partnership, **shall be required to verify any representation by the General Partner as to its authority to** encumber, sell, or **otherwise use any assess or properties of the Partnership**, and **any** such lender, purchaser, or **other Person shall be entitled to rely exclusively on such representations and shall be entitled to deal with the General Partner as if it were the sole party in interest therein, both legally and beneficially**. Each Limited Partner hereby waives any and all defenses or other remedies that may be available against any such lender, purchaser, or other Person to contest, negate, or disaffirm any action of the General Partner in connection with any such sale or financing. **In no event shall any Person dealing with the General Partner or the General Partner's representative with respect to any business or property of the Partnership be obligated to ascertain that the terms of this Agreement have been complied with,** and each such Person shall be entitled to rely on the assumptions that the Partnership has been duly formed and is validly in existence. In no event shall any such Person be obligated to inquire into the necessity or expedience of any act or action of the General Partner or the General Partner's representative, and **every contract, agreement,** deed, mortgage, security agreement, promissory note, or other instrument or document **executed by the General Partner or the General Partner's representative with respect to any business** or property **of the Partnership shall be conclusive evidence in favor of any and every Person relying thereon or claiming thereunder that (i), at the time of the execution and delivery thereof, this Agreement was in full force and effect; (ii) such instrument or document was duly executed in accordance with the terms and provisions of this Agreement and is binding upon the Partnership; and (iii) the General Partner or the General Partner's representative was duly authorized and empowered to execute and deliver any and every such instrument or document for and on behalf of the Partnership.**

LPA at § 4.01(c), App. 32-33 (emphasis added). Highland is a "Person" under the LPA. *See id.* at § 2.01, App. 23 (defining "person" to mean "an individual or a corporation, partnership, trust, estate, unincorporated organization, association, or other entity"). Thus, under this provision, Highland was entitled to rely on Acis' representations. Highland had no obligation to ensure Acis GP complied with the terms of the LPA. The Agreements, which were executed by Acis GP on behalf of Acis LP, are conclusive evidence in favor of Highland that the Agreements were duly executed in accordance with the terms of the LPA; that Acis GP was authorized and empowered to enter into the Agreements on behalf of Acis LP; and that the Agreements were binding on Acis. On this basis

alone, the Trustee is not entitled to summary judgment.

### c. Even relying on the findings and conclusions of the panel in the Arbitration, the Trustee fails to establish that Acis LP committed an *ultra vires* act.

51.     Acis LP is a Delaware limited partnership. LPA at App. 19.  Section 17-106 of the

Delaware Limited Partnership Act provides that a limited partnership.

> shall possess and may exercise all the powers and privileges granted by this chapter or by any other law or by its partnership agreement, together with any powers incidental thereto, including such powers and privileges as are necessary or convenient to the conduct, promotion or attainment of the business, purposes or activities of the limited partnership.

Del. Code Ann. tit. 6, § 17-106(b).  Acis LP's LPA implements the Delaware Limited Partnership

Act's grant of authority. Section 1.3 of the LPA provides:

> The purpose and business of the Partnership shall be the conduct of any business or activity that may lawfully be conducted by a limited partnership organized pursuant to the Delaware Act. Any or all of the foregoing activities may be conducted directly by the Partnership or indirectly through another partnership, joint venture, or other arrangement.

LPA at § 1.03, App. 19. This broad grant of authority necessarily includes the power and capacity

to enter into contracts and make payments thereunder.

52.     Even assuming this Court can apply the doctrine of *ultra vires* to Acis LP by

analogy, Acis LP did not commit any act qualifying as *ultra vires*.  Generally speaking, "[a]n act

by private corporation is ultra vires if it is beyond purposes or powers expressly or impliedly

conferred upon corporation by its articles of incorporation and relevant statutes and ordinances." 2

FLETCHER CORP. FORMS § 9:7 (5th ed.) (citing *Nevins v. Bryan*, 885 A.2d 233 (Del. Ch. 2005),

judgment aff'd, 884 A.2d 512 (Del. 2005) (other citations omitted)).  In the Motion, the Trustee

does not establish that Acis LP committed any "*ultra vires*" act. The Trustee states that the

purported "limit" on compensation to Highland turns on a lack of "proper consent." Trustee's Br.

at ¶ 15. Thus, according to the Trustee, if Acis LP obtained the "proper consent" purportedly required under the LPA, Acis LP could have exceeded the "limit." *Id.* The Trustee's argument necessarily leads to the conclusion that Acis LP had the power and capacity to make the Payments and enter into the Agreements. Regardless of whether Acis breached contractual obligations or Acis GP breached fiduciary duties to Terry by entering into the Agreements and making the Payments, Acis had the power and capacity to do so. Therefore, the Trustee has failed to establish that Acis committed any *ultra vires* acts. *See Harbor Fin. Partners v. Huizenga*, 751 A.2d 879, 896 (Del. Ch. 1999) (explaining that "void acts are said to be non-ratifiable because the corporation cannot, in any case, lawfully accomplish them" and "are often described in conclusory terms such as 'ultra vires'").

### d. The Trustee fails to establish that Acis LP is entitled to a declaration that the Payments are void or voidable.

53. Even if Trustee could establish that Acis committed an *ultra vires* act, the Trustee fails to identify a single case authorizing him to seek a declaration that the Payments are void or voidable. The Trustee's only basis for asking the Court to declare the Payments and Agreements *ultra vires* and, thus, void or voidable, is Delaware corporate law by analogy. Trustee's Br. at ¶¶ 48-51.

54. To the extent that the Court considers Delaware corporate law instructive, the Trustee has neglected to provide the Court with a full picture of the doctrine of *ultra vires* as applied to corporations under Delaware law. Most states, including Delaware,[15] have "enacted statutes

---

[15] Texas law is equally unavailing. *See* Tex. Bus. Orgs. Code Ann. § 20.002(a) ("Lack of capacity of a corporation may not be the basis of any claim or defense at law or in equity.); *see also Inter-Cont'l Corp. v. Moody*, 411 S.W.2d 578, 587 (Tex. Civ. App.—Houston 1966, writ ref'd n.r.e) (explaining that "the defense of ultra vires by the corporation in a suit by the other party to the transaction is unavailable even though the other party had actual notice of the want of authority").

sharply limiting or abolishing ultra vires as a defense except in a few exceptions." 2 FLETCHER

CORP. FORMS § 9:7 (5th ed.). The Court of Chancery of Delaware as explained:

> Broadly stated, the ultra vires doctrine which Section 124 abolishes declared that a
> corporation, or a party contracting with a corporation, could assert as a defense in a
> suit to enforce its or his obligations under such contract that, in entering into the
> otherwise lawful contract, the corporation acted outside the scope of ... its authorized
> powers. It was a double-edged sword, available under certain circumstances to both
> corporations and those contracting with corporations to escape from their contractual
> liabilities.... [D]uring the formative years of corporation law in the 19th and early
> 20th centuries, the ultra vires doctrine was an oft-recurring theme in litigation
> seeking to enforce or avoid corporate contractual obligations, leading to much
> confusion and patently inequitable results. Actually, the case law in Delaware was
> such that the doctrine had very little scope. However, no decision had ever clearly
> nullified its application.

*Carsanaro v. Bloodhound Techs., Inc.*, 65 A.3d 618, 648–49 (Del. Ch. 2013) (quoting 1 David A.

Drexler, et al., *DELAWARE CORPORATION LAW AND PRACTICE* § 11.05, at 11–10 (Supp. 2012)).

55.     Section 124 of the Delaware General Corporation Law limits the application of

the *ultra vires* doctrine in Delaware to three limited circumstances, none of which are present here.

*See* Del. Code Ann. tit. 8, § 124; *see also* 1 R. Franklin Balotti & Jesse A. Finkelstein, THE

DELAWARE LAW OF CORPORATIONS AND BUSINESS ORGANIZATIONS § 2.3 (3d ed. 2006)

("Section 124 of the General Corporation Law was added in 1967 to abolish the ultra vires doctrine

except in three limited circumstances."). The statute provides:

> No act of a corporation and no conveyance or transfer of real or personal property
> to or by a corporation shall be invalid by reason of the fact that the corporation was
> without capacity or power to do such act or to make or receive such conveyance or
> transfer, but such lack of capacity or power may be asserted:
>
> (1) In a proceeding by a stockholder against the corporation....
>
> (2) In a proceeding by the corporation, whether acting directly or through a
> receiver, trustee or other legal representative, or through stockholders in a
> representative suit, against an incumbent or former officer or director of the
> corporation.... for loss or damage due to such incumbent or former officer's or
> director's unauthorized act;

(3) In a proceeding by the Attorney General to dissolve the corporation, or to enjoin the corporation from the transaction of unauthorized business.

Del. C. § 124. This matter does not fit within any of those proceedings described in the statute. Accordingly, the Trustee cannot obtain summary judgment on his request for a declaratory judgment, because "[b]y their plain language, all three categories of Section 124 are inapplicable to the case at bar." *Lynch v. Coinmaster USA, Inc.*, 614 F. Supp. 2d 494, 501 (D. Del. 2009).

56. Alternatively, if this Court determines that the Payments or Agreements are voidable, Highland is entitled to raise equitable defenses, including implied ratification. *See, e.g., W. Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 260 (Tex. App.—Austin 2002, no pet.) (restating jury instruction on ratification, which includes statement that "[i]mplied ratification occurs if a party, though he may have been unaware of unauthorized conduct taken on his behalf at the time it occurred, retains the benefits of the transaction involving the unauthorized conduct after he acquires full knowledge of the unauthorized conduct. Implied ratification results in the ratification of the entire transaction."); *Keyser v. Curtis*, 2012 WL 3115453, at *16 (Del. Ch. July 31, 2012) (describing express and implied ratification) ("Ratification of an unauthorized act may be found from conduct which can be rationally explained only if there were an election to treat a supposedly unauthorized act as in fact authorized. Ratification may also be found where a party receives and retains the benefit of [that transaction] without objection, [ ] thereby ratify[ing] the unauthorized act and estop[ping] itself from repudiating it."); *see also CompoSecure, L.L.C. v. CardUS, LLC*, 2018 WL 5816740 (Del. Nov. 7, 2018) (under New Jersey law, "[a] corporation may, however, ratify any act done without previous authority which it could have authorized, and such ratification will be implied from acquiescence or acceptance of benefits of such contract, it being essential to implied ratification that it and the acceptance of benefits be with knowledge of the fact"). The panel did not decide this defense in the Arbitration.

57.     To grant the Trustee's request for a declaratory judgment, this Court must rule that the Payments and the Agreements were *ultra vires* acts by Acis. The Trustee has offered no other theory supporting his request. However, as explained above, Acis did not commit an *ultra vires* act because Acis had the authority to enter into the Agreements with Highland and to make the Payments to Highland. Moreover, even if those acts were *ultra vires* under Delaware law, this is not a basis to declare the acts invalid under Delaware corporate law. Because the Trustee has failed to prove that the acts were *ultra vires,* the Trustee cannot prevail on his request for a declaratory judgment as a matter of law and is not entitled to a judgment that the Payments or Agreements are void or voidable.

### 2)     Count 2: Turnover.

58.     The Trustee seeks summary judgment on his claim for turnover under 11 U.S.C. § 542(a). Section 542(a) provides, in relevant part, that "an entity . . . , in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease" or "that the debtor may exempt" that entity "shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a). However,

> [a]s a general rule, an action to collect a debt that is contingent, disputed, or unliquidated is not within the scope of the general turnover provision of the Bankruptcy Code which requires the payment of debts to the estate. Thus, turnover applies to monies due to a debtor without dispute which are fully matured and payable upon demand.

"What debts must be paid to estate—Contingent, disputed, or unliquidated debts," 2 BANKRUPTCY DESK GUIDE § 14:48. "[T]urnover proceedings are strictly limited to actions to recover property that is indisputably part of the estate." 2018 ANN. SURV. OF BANKR. LAW 27 (Norton). Recently, the Bankruptcy Court for the Western District of North Carolina applied the general rule:

Turnover under Section 542 is available only for property that is **undeniably** estate property. *Stanziale v. Pepper Hamilton, LLP (In re Student Fin. Corp.)*, 335 B.R. 539, 554 (D. Del. 2005) (To "state a claim for turnover of property under § 542, a plaintiff must allege that transfer of the property has already been avoided or that the property is otherwise the undisputed property of the bankruptcy estate.").… Not surprisingly, turnover claims for assets which are the subject of disputed causes of action are routinely dismissed as not being ripe. *See Schlossberg v. Madeoy* (*In re Madeoy*), 576 B.R. 484 (Bankr. D. Md. 2017) (citing *Pry v. Maxim Glob. Inc.* (*In re Maxim Truck Co., Inc.*), 415 B.R. 346, 357 n. 4 (Bankr. S.D. Ind. 2009) ("[T]he Trustee's remedy under § 542 for turnover ... only ripens upon a determination by the Court that the property in dispute is, in fact, property of the estate.")).

*In re RedF Mktg., LLC*, 589 B.R. 534, 546 (Bankr. W.D. N.C. 2018) (emphasis added). For the reasons explained below, the Trustee's claim for turnover fails as a matter of law.

### a. The Trustee failed to establish that collateral estoppel applies to his claim.

59. The central issue of the Trustee's claim for turnover is whether Highland must deliver the money paid by Acis to Highland under the Agreements. To use collateral estoppel, the Trustee bears the burden to prove that this issue was fairly and fully litigated in the Arbitration. *See MGA Ins. Co.*, 358 S.W.3d at 817. The Trustee has not met this burden. The Trustee failed to show that, in the Arbitration, the panel determined that the money Acis LP paid to Highland is undisputed property of the bankruptcy estate. In the Arbitration, the panel's analysis with respect to "excess expenses" arose in the context of Terry's profits distributions from Acis based on his limited partnership interest. Award at App. 518. The panel made no determinations with respect to payments to Highland by Acis LP. Because this issue was not fully and fairly litigated in the Arbitration, collateral estoppel is inapplicable.

**b.   The Arbitration did not resolve any of Highland's arguments against or affirmative defenses to the Trustee's claims.**

60.     *First*, the Trustee failed to prove that the Payments are "indisputably part of the estate." The Bankruptcy Court for the Northern District of Texas explained in *In re Satelco, Inc.* that

> [u]nless and until Debtor's claims against the defendants are liquidated in a court of competent jurisdiction or by agreement, they cannot be enforced here through a turnover order. *Accord, In re Theobold Industries, Inc.,* 53 B.R. 506, 508 (Bankr. D. N.J. 1984) ("Since the right to the payment of the claims [asserted by the estate] is contingent on a judgment establishing liability, the claims are not 'matured' ... Section 542(b), dealing only with matured claims, is inapplicable here").

*In re Satelco, Inc.*, 58 B.R. 781, 786 (Bankr. N.D. Tex. 1986). Here, there is no dispute that the panel made no findings and conclusions as to Highland and awarded Terry no monetary damages on his claims against Highland. *See* Award at App. 519-520. Thus, because Acis's claims against Highland have not been liquidated in a court of competent jurisdiction or by agreement, Acis cannot enforce those claims through a turnover action.

61.     *Second*, the Trustee failed to prove that the estate property in question has consequential value. "An essential element of a turnover action is that the estate property in question must have consequential value."  *In re Noram Res., Inc*., No. 08-38222, 2015 WL 2265405, at *9 (Bankr. S.D. Tex. May 11, 2015) (quoting Bankruptcy Code section 542(a): "an entity ... shall deliver to the trustee ... such property or the value of such property, unless such property is of consequential value, or benefit to the estate"). Courts have declined to grant summary judgment on claims under section 542(a), like the Trustee's claim, when material questions of fact exist concerning the determination of whether property is of inconsequential value to the estate. *See, e.g., In re Ayscue*, 123 B.R. 28, 30 (Bankr. E.D. Va. 1990) (the issue of inconsequential value "will be left for trial.").  Here, the Trustee failed to demonstrate that any amounts allegedly "overpaid" by

Acis would have been retained by Acis rather than distributed by Acis to its partners.[16]  As a result, the Court should decline to grant summary judgment because a material fact issue exists concerning an essential element of the Trustee's turnover claim, namely whether "the Expense Overpayments are property of the estate, and [whether] the value of such property is not of inconsequential value or benefit to the estate." Trustee's Br. at ¶ 4.

62.     *Third,* the Arbitration did not address any of Highland's potential defenses to the Trustee's claim for turnover. "Section 542(a) envisions that the defendant in a turnover action will be entitled to raise any defenses that it has to turnover before it is compelled to turn an asset over to the bankruptcy estate." *In re Bernstein*, 252 B.R. 846, 850 (Bankr. D. D.C. 2000).

### 3)     Count 3: Money Had and Received.

63.     The Trustee seeks summary judgment on his claim for money had and received. Under Texas law, "'[a] cause of action for money had and received is equitable in nature.'" *Edwards v. Mid-Continent Office Distributors*, L.P., 252 S.W.3d 833, 837 (Tex. App.—Dallas 2008, pet. denied) (quoting *Stonebridge Life Ins. Co. v. Pitts,* 236 S.W.3d at 203 n.1; *Acoustical Screens in Color, Inc. v. T.C. Lordon Co.,* 524 S.W.2d at 350 (Tex. Civ. App. 1975)). "The claim 'belongs conceptually to the doctrine of unjust enrichment.'" *Id.* (quoting *Amoco Prod. Co. v. Smith,* 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ)). "The doctrine of unjust enrichment applies the principles of restitution to disputes that are not governed by a contract between the parties." *Id.* "It characterizes the result of a failure to make restitution under circumstances that give rise to an implied or quasi-contractual obligation to return those benefits." *Id.* "To prove the claim, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him." *Id.*

---

[16] The fact that the arbitration panel concluded that a portion of Terry's Award was attributable to distributions he should have received but for the alleged "overpayments" further supports the notion that such amounts would not have been retained by Acis, but distributed in the ordinary course to the partners.

(citing *Best Buy Co. v. Barrera,* 248 S.W.3d 160, at 162–63 (Tex. 2007) (per curiam)). "A defendant may present any facts or raise any defenses that would deny a claimant's right to recover under this theory." *Id.* (citations omitted).

### a.  The Trustee failed to establish that collateral estoppel applies to his claim.

64.     The central issue of the Trustee's claim for money had and received is whether Highland holds money which in equity and good conscience belongs to Acis LP. To use collateral estoppel, the Trustee bears the burden to prove that this issue was fairly and fully litigated in the Arbitration. *See MGA Ins. Co.*, 358 S.W.3d at 817.  The Trustee has not met this burden. In the Motion, the Trustee fails to demonstrate that this issue was presented to the panel or that the panel decided this issue. In the Award, the panel made no findings and conclusions against Highland, and the panel made no findings and conclusions balancing the equities as between and among Acis LP, Acis GP and Highland. In connection with claims that Acis LP and Acis GP breached the LPA, the panel merely concluded that "[Acis LP] and [Acis GP] paid Highland expenses in excess of the contractual limit imposed by Section 3.10(a) of the [Acis LP] LPA." Highland was not a party to the LPA, and thus, was not bound by any limit imposed by the LPA. As the Trustee admits, this compensation was paid to Highland "for providing services to [Acis LP]." Trustee's Br. at ¶ 15. Even the findings made by the panel in the Arbitration do not support the Trustee's claim. Because this issue was not fully and fairly litigated in the Arbitration, collateral estoppel is inapplicable.

### b.  The Arbitration did not resolve any of Highland's affirmative defenses to the Trustee's claims.

65.     Highland is entitled to assert affirmative defenses to the Trustee's claim for money had and received, which were not decided in the Arbitration. *See Edwards*, 252 S.W.3d at 837. *First*, The Trustee's claim fails because a valid, express contract covers the subject matter of the

dispute. Under Texas law, "[g]enerally, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory." *MGA Ins. Co.*, 358 S.W.3d at 815 (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000); *McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 828 (Tex. App.—Dallas 2010, no pet.)); *see Universal MRI & Diagnostics, Inc. v. Medical Lien Mgmt.*, 497 S.W.3d 653, 663 (Tex. App.—Houston [14th Dist.] 2016, no pet.). "The quasi-contractual action for money had and received is a cause of action for a debt not evidenced by a written contract between the parties." *Id.* (citations omitted). Here, because Acis LP and Highland are parties to the Agreements that address the subject matter of this dispute, the Trustee cannot recover under the theory of money had and received.

66.    *Second*, the Trustee's claim is barred, at least in part, by a two-year statute of limitations.  Under Texas law, a claim for money had and received is subject to a two-year statute of limitations. *Merry Homes, Inc. v. Luc Dao*, 359 S.W.3d 881, 882 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a)). Here, the Trustee alleges that "[Highland] invoiced [Acis LP] for, and received payment for, at least $7,021,924.00 in excess of 20% of Revenues without the consent of all members of the Founding Partner Group in violation of the LPA." Trustee's Br. at ¶ 38. The Trustee further alleges that "[Highland] accepted such funds in violation of Section 3.10(a) of the LPA. Highland Capital was therefore unjustly enriched in the amount of at least $7,021,924.00." *Id.* Thus, according to the Trustee, the claim for money had and received accrued when Highland accepted the Payments, which occurred "during the years of 2013, 2014, 2015, and from January until May 2016." Trustee's Br. at ¶ 1.  Section 108(a) provides that:

> If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—(1) the end of such

period, including any suspension of such period occurring on or after the commencement of the case; or (2) two years after the order for relief.

11 U.S.C. § 108(a). Here, the Court entered orders for relief on April 13, 2018. *See* Bankruptcy Case Doc. Nos. 118 and 119. Thus, under the applicable statute of limitations as tolled by Bankruptcy Code section 108(a) on April 13, 2018, the Trustee, at most, may seek to recover purported Payments made two years prior to the entry of the orders for relief, i.e. April 13, 2016. Therefore, any claims related to Payments preceding April 13, 2016, are barred by the two-year limitations period.

67.      *Third*, Acis LP and Acis GP lack clean hands, and, thus, the Trustee cannot recover on his claim for money had a received. A claim for money had and received is based in equity, and a plaintiff must have "clean hands" to recover. *See Texas Bank & Tr. Co. of Dallas v. Custom Leasing, Inc.*, 498 S.W.2d 243, 251 (Tex. Civ. App.—Tyler 1973), *rev'd*, 516 S.W.2d 138 (Tex. 1974); *Best Buy Co. v. Barrera*, 248 S.W.3d 160, 163 (Tex. 2007); *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840-41 (5th Cir.2004). Under Texas law, the doctrine of unclean hands "applie[s] where a plaintiff's conduct 'has been unconscientious, unjust, marked by a want of good faith or violates the principles of equity and righteous dealing.'" *Bank of Saipan*, 380 F.3d at 840 (quoting *City of Fredericksburg v. Bopp*, 126 S.W.3d 218, 221 (Tex. App.—San Antonio 2003)). Here, the Trustee admits that "[Acis LP] contracted out certain of its administrative functions and portfolio management responsibilities to [Highland] pursuant to that certain Sub-Advisory Agreement, originally dated to be effective as of January 1, 2011 . . . and that certain Shared Services Agreement, originally dated to be effective as of January 1, 2011." Trustee's Br. at ¶ 11. Citing section 3.10(a) of the LPA, the Trustee argues that Highland has been unjustly enriched by the Payments made under the Sub-Advisory Agreement and Shared Services Agreement. Trustee's Br. at ¶ 58. However, Highland is not a party to the LPA. Indeed, under the terms of the LPA and

Delaware law, Highland was entitled to rely on the representations of Acis and not obligated to ensure compliance with the terms of the LPA. LPA § 4.01(c), App. 32-33. Thus, to the extent the Trustee claims an entitlement to damages premised on Acis LP's Payments to Highland and Acis GP's execution of the Sub-Advisory Agreement and Shared Services Agreement on behalf of Acis LP, the Trustee – stepping into the shoes of Acis LP and Acis GP – lacks clean hands because their conduct was "unconscientious, unjust, marked by a want of good faith or violates the principles of equity and righteous dealing." *Bank of Saipan*, 380 F.3d at 840.

68. *Fourth*, the Trustee's claim is barred by the voluntary payment rule. Under the voluntary payment rule, "'[m]oney voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, deception, duress, or compulsion, cannot be recovered back merely because the party at the time of payment was ignorant of or mistook the law as to his liability.'" *Samson Expl., LLC v. T.S. Reed Properties, Inc.*, 521 S.W.3d 766, 779 (Tex. 2017) (quoting *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 768 (Tex. 2005)); *Berryman's S. Fork, Inc. v. J. Baxter Brinkmann Int'l*, 418 S.W.3d 172, 189 (Tex. App.—Dallas 2013, pet. denied). "The voluntary payment rule precludes a party from 'pay[ing] out his money, leading the other party to act as though the matter were closed, and then be in the position to change his mind and invoke the aid of the courts to get it back.'" *Miga v. Jensen*, 299 S.W.3d 98, 103 (Tex. 2009). Again, the Trustee has admitted that "[Acis LP] contracted out certain of its administrative functions and portfolio management responsibilities to [Highland] pursuant to that certain Sub-Advisory Agreement, originally dated to be effective as of January 1, 2011 . . . and that certain Shared Services Agreement, originally dated to be effective as of January 1, 2011." Trustee's Br. at ¶ 11. The Trustee states that Highland invoiced Acis LP, and Acis LP paid money to Highland. *Id.* The Trustee does not contend that Acis LP or Acis GP was unaware of the terms of the LPA. Acis had

full knowledge of all the facts, and the Trustee has failed to establish any fraud, deception, duress, or compulsion in connection with the entry into the Agreements with Highland and effectuating the Payments to Highland.

### 4)      Count 4: Conversion.

69.      The Trustee seeks summary judgment on his claim for conversion. "Under Texas law, conversion is the wrongful exercise of dominion and control over another's property in violation of the property owner's rights." *Taylor Pipeline Const., Inc. v. Directional Rd. Boring, Inc.*, 438 F. Supp. 2d 696, 708–09 (E.D. Tex. 2006) (quoting *ITT Commercial Fin. Corp. v. Bank of the W.,* 166 F.3d 295, 305 (5th Cir. 1999)); *see also Amarillo Nat'l Bank v. Komatsu Zenoah Am., Inc.,* 991 F.2d 273, 274 (5th Cir. 1993); *Tripp Vill. Joint Venture v. MBank Lincoln Ctr., N.A.,* 774 S.W.2d 746, 750 (Tex. App.—Dallas 1989, writ denied)); *Mayo v. Hartford Life Ins. Co.,* 354 F.3d 400, 410 (5th Cir.2004); *Carson v. Dynegy, Inc.,* 344 F.3d 446, 456 (5th Cir. 2003); *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 211 n. 44 (Tex. 2002); *Bandy v. First State Bank,* 835 S.W.2d 609, 622 (Tex. 1992). "To establish a claim for conversion, a plaintiff must prove that (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property." *Lawyers Title Co. v. J.G. Cooper Dev., Inc.*, 424 S.W.3d 713, 718 (Tex. App.—Dallas 2014, pet. denied) (citing *Grand Champion Film Prod., L.L.C. v. Cinemark USA, Inc.*, 257 S.W.3d 478, 485 (Tex. App. —Dallas 2008, no pet.)). "The plaintiff also must establish it was injured by the conversion." *Id.* (citing *United Mobile Networks, LP. v. Deaton*, 939 S.W.2d 146, 147 (Tex. 1997) (per curiam)). "[A]n action for conversion of money arises only where the money can be identified as a specific chattel,

meaning it is (1) delivered for safe keeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper." *Id.* (quoting *Entm't Merch. Tech., L.L.C. v. Houchin*, 720 F. Supp. 2d 792, 799 (N.D. Tex. 2010) (applying Texas law)) (internal quotations omitted).

### a. The Trustee failed to establish that collateral estoppel applies to this claim.

70.     To prevail on this claim, the Trustee must establish that Acis LP owned or had possession of the property or entitlement to possession; Highland unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the Acis LP's rights as an owner; Acis LP demanded return of the property; and Highland refused to return the property. *See Lawyers Title*, 424 S.W.3d at 718.  To use collateral estoppel, the Trustee bears the burden to prove that these elements were fully and fairly litigated in the Arbitration. *See MGA Ins. Co.*, 358 S.W.3d at 817.  The Trustee has not met this burden.  In the Motion, the Trustee fails to demonstrate that these elements were presented to the panel or that the panel decided any of these issues. The Trustee offers no other evidence in support of this claim. Because these issues were not fully and fairly litigated in the Arbitration, collateral estoppel is inapplicable.

### b. The Arbitration did not resolve any of Highland's arguments against or affirmative defenses to the Trustee's claim.

71.     The Arbitration did not address Highland's arguments against or affirmative defenses to the Trustee's conversion claim.  *First*, the Trustee failed to establish that the alleged converted property was personal property.  Texas jurisprudence holds that money can be the subject of conversion, but only when it is in the form of specific chattel, such as old coins, or when "the money is delivered to another party for safekeeping, the keeper claims no title, and the money is

required and intended to be segregated, either substantially in the form in which it was received or as an intact fund." *Taylor Pipeline Const.*, 438 F. Supp. 2d at 707–08 (quoting *Mitchell Energy Corp. v. Samson Res. Co.,* 80 F.3d 976, 984 (5th Cir. 1996)). "From its nature the title to money passes by delivery, and its identity is lost by being changed into other money or its equivalent in the methods ordinarily used in business for its safekeeping and transmission." *Id.* (quoting *Story v. Palmer,* 284 S.W. 331, 332 (Tex. Civ. App.—El Paso 1926, no writ)). "Thus, a cause of action for conversion fails when the plaintiff cannot trace the exact funds claimed to be converted, making it impossible to identify the specific monies in dispute." *Id.* at 708. "It is well settled that money can be a subject of conversion only if it can be described or identified as a specific chattel, but not where an indebtedness can be discharged by a payment of money generally." *Id.* (quoting *Bobby Smith Brokerage, Inc. v. Bones,* 741 S.W.2d 621, 623 (Tex. App.—Fort Worth 1987, no writ)). "When an indebtedness can be discharged by payment of money generally, an action in conversion is inappropriate." *Id.* (citing *Edlund v. Bounds,* 842 S.W.2d 719, 727 (Tex. App.—Dallas 1992, writ denied). Here, the Trustee does not establish that the Payments are personal property. The Trustee has not established that the Payments can be described or identified as a specific chattel. If Highland were found liable, any purported indebtedness could be discharged by money generally. As a result, an action in conversion is inappropriate. The Trustee's claim fails as a matter of law.

72.      *Second*, the Trustee failed to establish that Highland took the Payments without Acis LP's consent. "Conversion involves the taking of property without the owner's consent." *Taylor Pipeline Const.*, 438 F. Supp. 2d at 708 (citing *Mack v. Newton,* 737 F.2d 1343, 1354 (5th Cir.1984); *Bernstein v. Portland Sav. & Loan Ass'n,* 850 S.W.2d 694, 711 (Tex. App.—Corpus Christi 1993, writ denied)). "[I]f the property owner expressly or impliedly assented to the taking or disposition of the property, the owner may not maintain a claim for conversion." *Id.* (citing *Pan E. Exploration*

*Co. v. Hufo Oils,* 855 F.2d 1106, 1125 (5th Cir. 1988)); *Mack,* 737 F.2d at 1354; *Robinson v. National Autotech, Inc.,* 117 S.W.3d 37, 39–40 (Tex. App.—Dallas 2003, pet. denied); *Conlee Seed Co. v. Brandvik,* 526 S.W.2d 795, 798 (Tex. Civ. App.—Amarillo 1975, no writ)). Here, the Trustee failed to establish that Highland took the Payments without Acis LP's consent.  Acis and Highland entered into the Agreements, and Acis LP voluntarily paid Highland the Payments pursuant to the Agreements.   Because Acis LP expressly or impliedly consented to making the Payments to Highland, the Trustee is precluded from asserting that Highland's receipt of the funds was wrongful. The Trustee's claim for conversion fails as a matter of law.

73.     *Third*, the Trustee's claim for conversion is similarly barred, at least in part, by a two-year statute of limitations.  Under Texas law, a claim for conversion is subject to a two-year statute of limitations. Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a); *Santanna Nat. Gas Corp. v. Hamon Operating Co.,* 954 S.W.2d 885, 890 (Tex. App.—Austin 1997, pet. denied) ("A two-year statute of limitations applies to an action for conversion"). Typically, "[a] cause of action accrues when the events upon which it is based occur." *Paris v. Profit Sharing Plan for Emp. of Howard B. Wolf, Inc*., 637 F.2d 357, 361 (5th Cir. 1981). "Generally, a claim for conversion begins to run at the time of the unlawful taking." *Santanna*, 954 S.W.2d at 890.  As previously stated, any claim for turnover of Payments made prior to April 13, 2016, is time barred.

**F.     <u>The Court should deny the Motion because a genuine issue of material fact exists concerning the circumstances under which Acis is entitled to receive the purported "Expense Overpayments" at issue in the Motion.</u>**

74.     The Trustee alleges in a conclusory manner that it is entitled to "100% of the Expense Overpayments to Highland Capital" in the amount of $7,021,924.00." Trustee's Br. at ¶ 1. But a genuine disputed fact issue exists as to whether the alleged expense over payments, if proven,

would have been retained by Acis or distributable to the partners in the ordinary course under the terms of the LPA.

**G.** **The Trustee's request for disallowance must be denied.**

75.     Based on his request for declaratory judgment and claims for turnover, money had and received, and conversion, the Trustee asks this Court to disallow Highland's claims in their entirety. Trustee's Br. at ¶¶ 63-67. The Trustee's extraordinary request calls on this Court to ignore the express terms of the Agreements between Acis LP and Highland. Even if the Trustee established that the Payments were *ultra vires* acts, which they are not, the Trustee has not established as a matter of law that the Sub-Advisory Agreement and Shared Services Agreement are void or voidable in their entirety. Each agreement contains a severability clause. *See* Sub-Advisory Agreement at ¶ 16(d), App. 70; Amended and Restated Sub-Advisory Agreement at ¶ 16(d), App. 70; Second Amended and Restated Sub-Advisory Agreement at ¶ 16(d), App. 151; Third Amended and Restated Sub-Advisory Agreement at ¶ 15, App. 489; Shared Services Agreement at § 9.13, App. 60; Amended & Restated Shared Services Agreement at § 9.13, App. 124; Second Amended and Restated Shared Services Agreement at § 9.13, App. 138; Third Amended and Restated Shared Services Agreement at § 9.13, App. 179; Fourth Amended and Restated Shared Services Agreement at § 8.06, App. 472. Thus, even if a single provision of either agreement were held unenforceable, all other provision in the agreements would be valid and enforceable. *Id.* Importantly, each agreement also contains a waiver of liability or an indemnification provision. *See* Sub-Advisory Agreement at ¶ 13, App. 69; Amended and Restated Sub-Advisory Agreement at ¶ 13, App. 92; Second Amended and Restated Sub-Advisory Agreement at ¶ 13, App. 92-93; Third Amended and Restated Sub-Advisory Agreement at ¶ 4(c), App. 484; Shared Services Agreement at § 8.02, App. 68; Amended & Restated Shared Services Agreement at § 8.02, App. 58; Second Amended and

Restated Shared Services Agreement at § 8.02, App. 122; Third Amended and Restated Shared Services Agreement at § 8.02, App. 176-177; Fourth Amended and Restated Shared Services Agreement at § 6.03, App. 468. The Trustee's claims against Highland, including the claims for money had and received and conversion, to the extent they survive, are covered by the terms of those provisions. *See id.* There is no basis to disallow Highland's claims.

**H.**  **In the alternative, the Court should deny the Motion because res judicata may bar the Trustee's request for declaratory judgment and claims.**

76.  Highland maintains that it was not a proper party to the Arbitration, a position with which the Arbitration panel agreed. However, assuming *arguendo* and solely in the alternative, if the Court determines that (a) Highland was a proper party to the Arbitration, and (b) the issues on which the Trustee asserts collateral estoppel were adjudicated in the Arbitration, then such determination may necessitate the dismissal of the Trustee's claims for the reasons set forth below.

77.  Res judicata may bar the relief the Trustee seeks in this action. Final damages flowing from the Arbitration have already been adjudicated, with no liability assessed against Highland.  Award, App. 498-525; Final Judgment, App. 569-569. Instead, pursuant to the Final Judgment, the Acis entities were held "jointly and severally" liable to Terry for "seven million nine hundred forty-nine thousand seven hundred forty-nine and 15/100 dollars ($7,949,749.15)" in damages resulting from the same Arbitration on which the Trustee rests his collateral estoppel claims. Trustee's Br. at ¶¶ 26, 34.

78.  Critically, the Final Judgment expressly stated that "[a]ll relief not expressly granted herein is hereby denied.  The final judgment disposes of *all* parties and *all* claims."  Final Judgment, App. 568-569 (emphasis added).  If this Court accepts the Trustee's application of collateral estoppel as to Highland, the Court would consequently be bound to conclude that the Final Judgment disposed of the claims against Highland, and denied all relief since none was expressly

granted against Highland.  For the foregoing reasons and in the alternative, the Trustee's Motion should be denied because it may be barred by res judicata.

## V.
## <u>CONCLUSION</u>

Highland respectfully requests that the Court: (i) deny the Trustee's Motion for Partial Summary Judgment in its entirety; and (ii) grant any other such relief that Highland Capital Management L.P. may show itself to be justly entitled in law or in equity.

DATED: February 4, 2019          Respectfully submitted,

/s/ Jason B. Binford
Holland N. O'Neil
State Bar No. 14864700
honeil@foley.com
Jason B. Binford
State Bar No. 24045499
jbinford@foley.com
Melinda N. Bales
State Bar No. 24106851
mbales@foley.com
FOLEY GARDERE
FOLEY & LARDNER LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

and

Michael K. Hurst
Texas Bar No. 10316310
mhurst@lynnllp.com
A. Shonn Brown
Texas Bar No. 24007164
sbrown@lynnllp.com
Chisara Ezie-Boncoeur
cezie-boncoeur@lynnllp.com
Texas Bar No. 24103714
Ruben Garcia
rgarcia@lynnllp.com
Texas Bar No. 24101787
LYNN PINKER COX & HURST, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

**COUNSEL FOR HIGHLAND CAPITAL
MANAGEMENT, L.P.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served via ECF on February 4, 2019 to all parties of record.

*/s/ Jason B. Binford*
Jason B. Binford
