Holland N. O'Neil (TX 14864700)
Jason B. Binford (TX 24045499)
**FOLEY GARDERE**
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Ste. 1600
Dallas, Texas 75201
Telephone: (214) 999.3000 / Facsimile: (214) 999.4667
honeil@foley.com

Michael K. Hurst (TX 10316310)
David S. Coale (TX 00787255)
Chisara Ezie-Boncoeur (TX 24103714)
**LYNN PINKER COX & HURST, LLP**
2100 Ross Avenue, Ste. 2700
Dallas, Texas 75201
Telephone: (214) 981.3800 / Facsimile: (214) 981.3839
mhurst@lynnllp.com

**COUNSEL FOR HIGHLAND CAPITAL
MANAGEMENT, L.P.**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 18-30264-SGJ-11 |
| | § | Case No. 18-30265-SGJ-11 |
| ACIS CAPITAL MANAGEMENT, L.P. | § | |
| AND ACIS CAPITAL MANAGEMENT | § | (Jointly Administered Under |
| GP, LLC, | § | Case No. 18-30264-SGJ-11) |
| | § | |
| DEBTORS. | § | Chapter 11 |

| | | |
|---|---|---|
| ACIS CAPITAL MANAGEMENT, L.P., | § | |
| ACIS CAPITAL MANAGEMENT GP, | § | |
| LLC, | § | Adversary No. 18-03078 |
| | § | |
| PLAINTIFFS, | § | (Consolidated with Adversary |
| | § | Nos. 18-03212 & 19-03103) |
| VS. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, | § | |
| L.P., HIGHLAND CLO FUNDING, LTD. | § | |
| F/K/A ACIS LOAN FUNDING, LTD., | § | |
| HIGHLAND HCF ADVISOR, LTD., | § | |
| HIGHLAND CLO MANAGEMENT, LTD., | § | |
| HIGHLAND CLO HOLDINGS, LTD., CLO | § | |
| HOLDCO, LTD., NEUTRA, LTD., ACIS | § | |
| CLO 2014-3 LTD., ACIS CLO 2014-4 | § | |
| LTD., ACIS CLO 2014-5 LTD., ACIS CLO | § | |
| 2015-6 LTD., ACIS CLO 2014-3 LLC, | § | |
| ACIS CLO 2014-4 LLC, ACIS CLO 2014-5 | § | |
| LLC, AND ACIS CLO 2015-6 LLC, | § | |
| | § | |
| DEFENDANTS. | § | |
| | § | |

## HIGHLAND CAPITAL'S PARTIAL MOTION TO DISMISS
### THE SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT

# Table of Contents

Table of Contents ................................................................................................................. 2

Table of Authorities ............................................................................................................ 4

I.      Introduction ........................................................................................................... 8

II.     Applicable pleading standards ............................................................................... 8

III.    Argument and Authorities .................................................................................... 10

        A.      Plaintiffs fail to plead viable claims for alleged overcharges.
                (Counts 1-4) .............................................................................................. 10

        B.      Plaintiffs fail to plead viable fraudulent transfer claims. (Counts
                5-24) ......................................................................................................... 15

                1.      Sub-Advisory Agreement claims. (Counts 5-8). ............................. 15

                2.      "ALF PMA Transfer" (Counts 9-12) ............................................. 16

                3.      "ALF Share Transfer" (Counts 13-16) .......................................... 17

                4.      "Note Transfer" (Counts 17-20) .................................................... 17

                5.      "CLO 2017-7 Equity and 2017-7 Agreement Transfers"
                        (Counts 21-24) ............................................................................. 18

        C.      Plaintiffs fail to plead a viable claim for civil conspiracy for
                fraud, including fraudulent transfers. (Count 27) ...................................... 19

        D.      Plaintiffs fail to allege a viable claim for tortious interference.
                (Count 28) ................................................................................................. 22

        E.      Plaintiffs fail to allege a viable claim for breach of fiduciary duty.
                (Count 30) ................................................................................................. 25

        F.      Plaintiffs fail to allege a viable claim for "disregarding the
                corporate form/alter ego/collapsing doctrine/unjust
                enrichment." (Count 32) ............................................................................ 26

        G.      Plaintiffs lack standing to assert claims for damages for alleged
                stay violations. .......................................................................................... 29

H.      Plaintiffs fail to allege viable claims for equitable relief............................... 30

IV.    Conclusion ............................................................................................................... 31

CERTIFICATE OF SERVICE ................................................................................................ 33

# Table of Authorities

## Cases

*Agar Corp. v. Electro Circuits, Int'l, LLC*, ___ S.W.3d ___, No. 17-0630, 2019 WL 1495211 (Tex. April 5, 2019) ........................................................................................ 22

*Alaska Electrical Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975 (5th Cir. 2019) ............................................................................................................................................. 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................... 9, 28

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................... 8, 19, 28

*Berry v. Bryan Cave LLP*, No. 3:08-CV-2035-B, 2010 U.S. Dist. LEXIS 46572 (N.D. Tex. 2010) ..................................................................................................... 19

*Brown v. Bilek*, 401 F. App'x 889 (5th Cir. 2010) ...................................................... 25

*Burchinal v. PJ Trailers-Seminole Mgmt. Co.*, 372 S.W.3d 200 (Tex. App.—Texarkana 2012, no pet.) ........................................................................................ 27

*C.E. Servs., Inc. v. Control Data Corp.*, 759 F.2d 1241 (5th Cir. 1985) .................... 24

*Carsanaro v. Bloodhound Techs. Inc. Inc.*, 65 A.3d 618 (Del. Ch. 2013) ................. 11

*Castleberry v. Branscum*, 721 S.W.2d 270 (Tex. 1986) ............................................. 27

*Del Commercial Props., Inc. v. Commissioner*, 251 F.3d 210 (D.C. Cir. 2001) ........ 28

*Desmond v. Taxi Affiliation Servcs., LLC*, 344 F. Supp.3d 915 (N.D. Ill. 2018) ...... 10

*Emke v. Compana, LLC*, No. 3:06-CV-1416-L, 2007 WL 2781661 (N.D. Tex. Sept 25, 2007) ................................................................................................................. 27

*Fidelity & Deposit of Md. Commercial Cas. Consultants, Inc.*, 976 F.2d 272 (5th Cir. 1992) .................................................................................................................. 27

*First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214 (Tex. 2017) ........................................................................................................................ 19

*Garner v. Knoll*, 2014 WL 172276 (Bankr. N.D. Tex. 2014) .................................... 29

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997) ................ 10

*Goodman v. H.I.G. Capital, LLC*, 491 B.R. 747 (Bankr. W.D. La. 2013) ................................. 27

*Greenberg Traurig v. Nat'l Am. Ins. Co.*, 448 S.W.3d 115 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ....................................................................... 25

*In re Amberjack Interests, Inc.*, 326 B.R. 379 (Bankr. S.D. Tex. 2005) ...................................... 29

*In re Dexterity Surgical, Inc.*, 365 B.R. 690 (Bankr. S.D. Tex. 2007) ...................................... 23

*In re MD Promenade, Inc.*, 2009 WL 80203 (Bankr. N.D. Tex. Jan. 8, 2009) ......................... 29

*In re Rafter Seven Ranches L.P.*, 414 B.R. 722 (10th Cir. BAP 2009) ...................................... 30

*In re TOCFHBI, Inc.*, 413 B.R. 523 (Bankr. N.D. Tex. 2009) .................................................... 21

*In re: Andrew Velez Constr., Inc.*, 373 B.R. 262 (Bankr. S.D.N.Y. 2007) ................................ 12

*In re: Freemyer Industrial Pressure, Inc.*, 281 N.R. 262 (Bankr. N.D. Tex. 2002) ................... 30

*In re: Heller Ehrman LLP*, 461 B.R. 606 (Bankr. N.D. Cal. 2011) ............................................ 12

*In re: Houston Progressive Radiology Assocs., PLLC*, 474 S.W.3d 435 (Tex. App.—Houston [1st Dist.] 2015, orig. proceeding) .................................. 25

*In re: Lawson*, 791 F.3d 214 (1st Cir. 2015) ................................................................ 9

*In re: Sharp Int'l Corp.*, 403 F.3d 43 (2d Cir. 2005) ....................................................... 9

*Ingalls v. Beutel*, 2007 WL 9718103 (W.D. Tex. Nov. 28, 2007) .............................................. 21

*Jacked Up, LLC*, 854 F.3d 797 (5th Cir. 2017) ................................................................ 23

*Jones v. Kelley*, 614 S.W.2d 95 (Tex. 1981) ................................................................ 25

*Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539 (11th Cir. 1996) ............................................. 30

*Juhl v. Airington*, 936 S.W.2d 640 (Tex. 1996) .............................................................. 19

*Lawyers Title Co. v. J.G. Cooper Dev., Inc.*, 424 S.W.3d 713 (Tex. App. – Dallas 2014, pet. denied) ........................................................................ 13

*Licea v. Curacao Drydock Co.*, 627 F. App'x 343 (5th Cir. 2015) ............................................ 27

*Life Partners Creditors' Trust v. Cowley*, 926 F.3d 103 (5th Cir. 2019) ............................... 9, 10

*Mack v. Newton*, 737 F.2d 1343 (5th Cir. 1984) .............................................................. 21

*Merry Homes, Inc. v. Luc Dao*, 359 S.W.3d 881 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ............................................................................. 14

*Meyer v. Cathey*, 167 S.W.3d 327 (Tex. 2005) ........................................ 26

*MGA Ins. Co. v. Chesnutt*, 358 S.W.3d 808 (Tex. App.—Dallas 2012, no pet.).................. 12

*Miga v. Jensen*, 299 S.W.3d 98 (Tex. 2009) ........................................... 15

*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74 (Tex. 2000).................. 23

*Rankin v. Naftalis*, 557 S.W.2d 940 (Tex. 1977) ..................................... 26

*Rente Co. v. Truckers Express, Inc.*, 116 S.W.3d 326 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ....................................................................... 13

*Sherman v. FSC Realty LLC (In re Brentwood Lexford Partners, LLC)*, 292 B.R. 255 (Bankr. N.D. Tex. 2003) .................................................... 22

*Spectrum Creations, L.P. v. Carolyn Kinder Int'l, L.L.C.*, 514 F. Supp. 934 (W.D. Tex. 2007).......................................................................... 24

*SSP Partners v. Gladstrong Inv. (USA) Corp.*, 275 S.W.3d 444 (Tex. 2008) .......................... 27

*St. Paul Fire & Marine Insurance Company v. Labuzan*, 579 F.3d 533 (5th Cir. 2009) ............................................................................. 29

*Stoebner v. Opportunity Fin., LLC*, 909 F.3d 219 (8th Cir. 2018)........................................ 9, 10

*U.S. ex rel. Long v. GSDM Idea City, L.L.C.*, 798 F.3d 265 (5th Cir. 2015)........................... 23

*Xtreme Power Plan Trust v. Schindler, et al. (In re Xtreme Power Inc.)*, 563 B.R. 614 (Bank. W.D. Tex. 2016) ...................................................... 20

## Statutes and Rules

11 U.S.C. § 108(a)........................................................................... 14

11 U.S.C. § 362 .............................................................................. 23

11 U.S.C. § 362(h) .......................................................................... 29

11 U.S.C. § 362(k)........................................................................... 29, 30

11 U.S.C. § 362(k)(1)....................................................................... 29

11 U.S.C. § 542(a) ........................................................................................................ 12

11 U.S.C. § 550(a) ........................................................................................................ 16

Del. Gen'l Corp. Code § 124 ........................................................................................ 11

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 8, 10, 19

Fed. R. Civ. P. 9(b) .................................................................................... 9, 10, 25, 27

Tex. Bus. & Com. Code § 24.009(b) ............................................................................ 17

Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) ......................................................... 14

**Highland Capital's Partial Motion to**
**Dismiss the Second Amended Complaint and Brief in Support**

The plaintiffs in this action—Acis Capital Management, L.P. ("Acis LP") and Acis Capital Management GP, LLC ("Acis GP") (collectively, "Plaintiffs," "Acis," or "Reorganized Debtors")—have filed a Second Amended Complaint ("SAC"). Defendant Highland Capital Management, L.P. ("Highland Capital") moves to dismiss most counts of that pleading[1] and respectfully shows as follows:

## I.      Introduction

1.      The Court recently consolidated three adversary cases into this proceeding. Pursuant to that order, the Plaintiffs combined their claims in those cases into the Second Amended Complaint. The resulting pleading is long on boilerplate and short on substance. Most of the purported claims against Highland Capital should be dismissed because Plaintiffs have failed to properly allege basic elements of those claims.

## II.      Applicable pleading standards

2.      "[A] plaintiff's obligation to provide the grounds of his entitlement to relief … requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is "plausible on its face," and satisfies the requirements of Rule 12(b)(6), only when a "plaintiff pleads factual content that allows the court to draw the reasonable inference

---

[1] Highland Capital files this motion subject in all ways to the Motions to Withdraw the Reference filed in this proceeding.

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "'Conclusory allegations, unwarranted deductions, or legal conclusions' are not 'well-pleaded facts' for purposes of evaluating a complaint." *Alaska Electrical Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975, 981 (5th Cir. 2019).

3.      Many of Plaintiffs' claims are also subject to the requirements of Fed. R. Civ. P. 9(b). For allegations of fraud, that rule requires factual allegations of the "'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.' … In other words, to properly allege fraud under Rule 9(b), the plaintiff must plead the who, what, when, where, and why as to the fraudulent conduct." *Life Partners Creditors' Trust v. Cowley*, 926 F.3d 103, 117 (5th Cir. 2019) (quoting *Tuchman v. DSC Comm'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).

4.      In particular, Highland contends that Rule 9(b) applies to Plaintiffs' claims for actual and constructive fraudulent transfers. As to actual fraudulent transfer, while the Fifth Circuit has deferred ruling on the point, the three Circuits that have addressed it have all applied Rule 9(b) to such claims. *See Life Partners*, 926 F.3d at 117.[2] The reason is straightforward; the rule applies not only to claims of fraud but also to those that "sound[] in fraud," which includes claims "premised upon a course of fraudulent

---

[2] (citing *In re: Lawson*, 791 F.3d 214, 217 & n.5 (1st Cir. 2015); *In re: Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005); and *Stoebner v. Opportunity Fin., LLC*, 909 F.3d 219, 225, 226 & n.6 (8th Cir. 2018))

conduct" such as a claim of actual fraudulent transfer. *See, e.g., Desmond v. Taxi Affiliation Servcs., LLC,* 344 F. Supp.3d 915, 923 (N.D. Ill. 2018).

5.      The Fifth Circuit has also deferred ruling about Rule 9(b)'s application to constructive fraudulent transfer claims; here again, the two Circuits that have addressed the point "have held that constructive fraudulent transfer claims are subject to Rule 9(b)." *See Life Partners,* 926 F.3d at 120.[3]  Those opinions are well-taken and this Court should follow the majority approach of the circuits as to the pleading standards for these claims.[4] In the briefing that follows, Highland Capital will identify the claims that implicate Rule 9(b) in addition to the baseline requirements of Rule 12(b)(6).

### III.      Argument and Authorities

### A.      Plaintiffs fail to plead viable claims for alleged overcharges. (Counts 1-4)

6.      Plaintiffs' first four causes of action involve alleged overcharges of Acis LP by Highland Capital. (SAC at 42-46, Counts 1-4.) Each of these claims rests on the factual allegations that "Highland Capital invoiced Acis for, and received payments for, at least $7,021,924 in excess of Revenues, in violation of the [Acis LP] LPA" (SAC ¶¶ 127, 132, 138, 142), and that "Highland Capital, an Affiliate of Acis GP, accepted such funds in

---

[3] (citing *Gen. Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1078-79 (7th Cir. 1997) and *Stoebner,* 909 F.3d at 225, 226 & n.6).

[4] *Life Partners* notes that district courts in the Fifth Circuit have taken different positions on both of these issues  and describes their holdings. *See* 926 F.3d at 118, 120.

violation of Section 3.10 of the LPA" (SAC ¶¶ 126, 138.) Plaintiffs do not properly plead a claim based on these allegations.[5]

7.      ***Ultra vires.*** Plaintiffs' first claim is that these allegedly unauthorized payments are *ultra vires* because they exceeded the limitations set by Acis LP's partnership agreement, making them "either void or voidable" under Delaware law. (SAC at 42-43 ¶ 126.) Plaintiffs fail to allege, however, why **they** have the right to seek such relief. For corporations, Delaware law clearly limits the right to assert an *ultra vires* claim to a handful of situations, none of which involve the entity itself seeking to recover damages for allegedly *ultra vires* transactions. *See* Del. Gen'l Corp. Code § 124; *Carsanaro v. Bloodhound Techs. Inc. Inc.*, 65 A.3d 618, 648 (Del. Ch. 2013). Plaintiffs cite nothing suggesting that the *ultra vires* doctrine applies to a limited partnership at all, much less without the limitations imposed on that doctrine by other Delaware corporate law. The absence of any allegation on this threshold point is fatal to Plaintiffs' pleading of this claim, and Count 1 should be dismissed.

8.      This claim also fails on the merits. Section 1.3 of the Limited Partnership Agreement for Acis LP says that the partnership may engage in "any business or activity that may be lawfully be conducted by a limited partnership . . . ," which necessarily includes the power and capacity to enter contract and make payments under such contracts. (SAC Ex. A.) And section 4.01(c) of the LPA makes clear that HCM was entitled

---

[5] These claims do not implicate the heightened-pleading requirements of Rule 9(b).

to rely on representations made to it by Acis about the power and authority of Acis to enter contracts. Plaintiff's complaint about contract prices is simply not a claim about an *ultra vires* act, and should be dismissed for that reason as well.

9. ***"Turnover."*** Plaintiffs' second claim seeks recovery of the alleged overcharges to section 542(a) of the Bankruptcy Code. (SAC at 43-44, Count 2.) Turnover actions, however, involve property that is indisputably property of the estate. *See, e.g.*, *In re: Andrew Velez Constr., Inc.*, 373 B.R. 262, 273 (Bankr. S.D.N.Y. 2007). When the defendant disputes liability, as Highland Capital does here, "the estate's property is the claim for damages itself, which is not subject to turnover." *See, e.g.*, *In re: Heller Ehrman LLP*, 461 B.R. 606, 608 (Bankr. N.D. Cal. 2011). This claim, on its face, is a nonstarter as a matter of law and Count 2 should be dismissed.

10. ***"Money Had and Received" and "Conversion."*** Plaintiffs' third and fourth counts plead themselves out of court. Their third claim purports to be for "money had and received." (SAC at 44-45.) The factual basis for this claim is the alleged violation of the LPA for Acis LP described above, as well as alleged interest overcharges under two sub-servicing agreements. (SAC ¶¶ 139, 142.) Because these factual allegations are about express contracts, they defeat the legal basis for this claim, which assumes the lack of such a contract. *See, e.g.*, *MGA Ins. Co. v. Chesnutt*, 358 S.W.3d 808, 815 (Tex. App.—Dallas 2012, no pet.) ("Generally, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory. The quasi-

contractual action for money had and received is a cause of action for a debt not evidenced by a written contract between the parties." (citations omitted)). Count 3 should be dismissed.

11.     Plaintiffs' fourth count is for conversion. (SAC at 45-46.) It has the same problem. Plaintiffs allege that Highland Capital improperly has "money," "overpaid funds" and "overcharges" in its possession. (SAC at 45-46 ¶ 142.)  These allegations cannot support a conversion claim under Texas law, under which:  "[A]n action for conversion of money arises only where the money can be identified as a specific chattel, meaning it is (1) defined for safe keeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper." *Lawyers Title Co. v. J.G. Cooper Dev., Inc.*, 424 S.W.3d 713, 718 (Tex. App. – Dallas 2014, pet. denied) (citations omitted). *See also Rente Co. v. Truckers Express, Inc.*, 116 S.W.3d 326, 332 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("[T]hese sums of money are not identifiable, specific chattels capable of being converted; rather, they are alleged indebtedness that may be discharged by the payment of money generally. Therefore, [Plaintiff's] claim for conversion as to amounts of money allegedly owed by [Defendants] fails as a matter of law." (citations omitted)). Count 4 should be dismissed.

12.     Counts 3 and 4 should also be dismissed because they fall outside of the statute of limitations under applicable state law.  Those claims are subject to a two-year

statute of limitations under Texas law. *Merry Homes, Inc. v. Luc Dao*, 359 S.W.3d 881, 882 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (*citing* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a)). Plaintiffs allege that Highland Capital wrongly received at least $7,021,924.00 in violation of Section 3.10(a) of the LPA (SAC at 22 ¶ 69). The claim for money had and received accrued when Highland accepted the payments, which occurred "during the years of 2013, 2014, 2015, and from January until May 2016."[6] Section 108(a) provides:

> If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) two years after the order for relief.

11 U.S.C. § 108(a).

13. The Court entered orders for relief on April 13, 2018. *See* Bankruptcy Case Doc. Nos. 118 and 119. Under the applicable statute of limitations as tolled by Bankruptcy Code section 108(a), on April 13, 2018, Plaintiffs, at most, may seek to recover purported Payments made two years before entry of the orders for relief, *i.e.* April 13, 2016. Therefore, any claims related to Payments preceding April 13, 2016, are barred by the two-year limitations period.

14. Counts 1-4 are also barred by the voluntary payment rule. "The voluntary payment rule precludes a party from 'pay[ing] out his money, leading the other party to

---

[6] *See* Brief in Support of Trustee's Amended Motion for Partial Summary Judgment ["Trustee's Brief"] (Docket 88) at ¶ 1 (Nov. 30, 2018).

act as though the matter were closed, and then be in the position to change his mind and invoke the aid of the courts to get it back.'" *Miga v. Jensen*, 299 S.W.3d 98, 103 (Tex. 2009). The Trustee – Plaintiffs' predecessor-in-interest – has admitted that "[Acis LP] contracted out certain of its administrative functions and portfolio management responsibilities to [Highland] pursuant to that certain Sub-Advisory Agreement, originally dated to be effective as of January 1, 2011 . . . and that certain Shared Services Agreement, originally dated to be effective as of January 1, 2011."[7] He stated that Highland invoiced Acis LP, and Acis LP paid money to Highland. *Id.* The Plaintiffs do not contend that Acis LP or Acis GP was unaware of the terms of the LPA.

**B.      Plaintiffs fail to plead viable fraudulent transfer claims. (Counts 5-24)[8]**

> *1.      Sub-Advisory Agreement claims. (Counts 5-8).*

15.      In Counts 5-8, Plaintiffs allege actual and constructive fraudulent transfers about modifications to the Sub-Advisory Agreement. These claims fail for two reasons. First, while Plaintiffs make threadbare claims that Acis was insolvent when these contract modifications were made, the SAC cites no facts on that topic. And the SAC concedes that these contract modifications were made shortly after Terry was terminated in 2016 but before any litigation had begun. Simply reciting a key element of a fraudulent transfer claim—here, insolvency—does not satisfy Rule 9(b).

---

[7] Trustee's Brief, *supra*, at ¶ 11.
[8] All of these fraudulent transfer claims implicate Rule 9(b). *See supra* at 6-7.

16.     Second, Plaintiffs fail to plead that the modifications amounted to a transfer. Bankruptcy Code section 101(54)(C) defines a transfer to include "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing with or parting with [property or an interest in property]." Plaintiffs make no effort to establish how a property right or interest in property was "disposed or parted with" in relation to the Sub-Advisory Agreement modifications. At most, the SAC alleges that fees became more expensive over time. The mere fact that expenses rise over time, and a debtor thus pays more for services, does not establish that anything of value was "transferred" from the debtor—"disposed of" in the terminology of the statute. Counts 5-8 do not comport with the statute and should be dismissed.

### 2.     *"ALF PMA Transfer" (Counts 9-12)*

17.     Plaintiffs allege actual and constructive fraudulent transfer claims about the "ALF PMA Transfer." (SAC at 51-56, Counts 9-12.) Plaintiffs identify a Portfolio Management Agreement ("PMA") between Acis LP and ALF, under which Acis LP had certain rights to manage ALF assets. (SAC ¶¶ 83-84.) Plaintiffs allege that in October 2017, Acis LP terminated that agreement and entered a new management agreement with Highland Advisor. (SAC ¶¶ 86-89.)

18.     To hold Highland Capital liable for a fraudulent transfer under section section 550(a) of Bankruptcy Code, Plaintiffs must show either that Highland Capital was an "initial transferee," or an "immediate or mediate transferee of such initial transferee"

as to estate property. TUFTA has a similar requirement. *See* Tex. Bus. & Com. Code § 24.009(b) ("[J]udgment may be entered against … the first transferee of the asset … [or] any subsequent transferee"). Plaintiffs do not allege that Highland Capital received anything, immediately or subsequently, as part of the ALF PMA Transfer. They thus fail to plead viable fraudulent transfer claims against Highland Capital about that transaction and Counts 9-12 should be dismissed.

### 3. *"ALF Share Transfer" (Counts 13-16)*

19. Plaintiffs also allege actual and constructive fraudulent transfers about the "ALF Share Transfer." (SAC at 57-61, Counts 13-16.) They describe this transaction as ALF's repurchase of its own stock from Acis LP, for $991,180.13, in October 2017. (SAC at 30 ¶ 91.) They do not allege that Highland Capital received anything, immediately or subsequently, as part of this transaction. They thus fail to plead viable fraudulent transfer claims against Highland Capital about that transaction and Counts 13-16 should be dismissed.

### 4. *"Note Transfer" (Counts 17-20)*

20. Plaintiffs define the "Note" as a $9.5 million promissory note, executed by Highland Capital as obligor, and payable to Acis LP. (SAC at 31-32 ¶ 94.) They allege that in November 2017, Acis LP transferred the Note to Highland Management for inadequate consideration (SAC at 31-32 ¶¶ 94-95), and from there, allege actual and fraudulent transfer claims about that transfer. (SAC at 61-66, Counts 17-20.)

21.     Plaintiffs allege that Highland Capital was a party to the agreement by which the Note was transferred. (SAC at 31 ¶ 94.) But they do not allege that Highland Capital received anything as a result of the transfer. To the contrary, they admit that Highland Capital continued to be the obligor of the Note. (*See id*.) Because Plaintiffs do not allege that Highland Capital received anything, immediately or subsequently, as part of this transaction, they fail to plead viable fraudulent transfer claims about that transaction and Counts 17-20 should be dismissed.

22.     Plaintiffs speculate about the benefit to Highland Capital of having its liability "transferred … away from Acis LP (and its legal woes with Terry)," as well as other potential tactical benefits in the ongoing litigation. (SAC at 32 ¶ 96.) Those speculations, however, have nothing to do with fraudulent transfer liability. There is no way for a court to order the avoidance of a "legal woe" or litigation tactic. These spurious allegations do not cure the fundamental problem with Plaintiffs' pleading of this claim.

**5.      *"CLO 2017-7 Equity and 2017-7 Agreement Transfers" (Counts 21-24)***

23.     Plaintiffs allege that in December 2017, Acis LP transferred its equity interests related to a CLO entity called "2017-7," along with certain contracts involving that entity, to Highland Management. (SAC at 33-34 ¶ 99.) Plaintiffs then challenge this transaction as an actual and constructive fraudulent transfer, as well as avoidable preferences. (SAC at 66-71, Counts 21-24.)

24.     Plaintiffs again fail to allege that Highland Capital received anything, immediately or subsequently, as part of this transaction. In fact, they plead the opposite,

alleging that part of the consideration for the transaction was forgiveness of a note owed by Acis LP to Highland Capital. (SAC at 35 ¶ 102.) These claims are not properly pleaded and Counts 21-24 should be dismissed.

**C.     Plaintiffs fail to plead a viable claim for civil conspiracy for fraud, including fraudulent transfers. (Count 27)**

25.     Because the Bankruptcy Code does not address civil conspiracy, this Court looks to state law about that claim. Under Texas law, "An action for civil conspiracy has five elements: (1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result." *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017). "This inherently requires a meeting of the minds on the object or course of action." *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996). Therefore, to satisfy Rule 12(b)(6), a civil conspiracy claim must include factual allegations as to when the parties agreed to pursue the conspiracy, including the "specific time, place, or person involved." *Berry v. Bryan Cave LLP*, No. 3:08-CV-2035-B, 2010 U.S. Dist. LEXIS 46572, at *23 (N.D. Tex. 2010) (quoting *Twombly*, 550 U.S. 544, 565 n.10 (2007)).

26.     The bankruptcy court in the Western District of Texas recently addressed the pleading of a civil conspiracy claim under Delaware law[9] in *Xtreme Power Plan Trust v. Schindler, et al. (In re Xtreme Power Inc.)*, 563 B.R. 614 (Bank. W.D. Tex. 2016). The plaintiff alleged that the defendants "engaged in a confederation or combination of two or more persons; performed at least one unlawful act in furtherance of the conspiracy; acted pursuant to a common scheme; and caused actual damage to [the plaintiff.]" *Id.* at 648. The court granted the defendants' motion to dismiss, noting that the complaint lacked "any facts actually pled in support" of the conspiracy claim, and that "the [plaintiff] merely recited the elements of the claim and asked the court to infer from said elements an actionable conspiracy." *Id.*

27.     Plaintiffs' civil conspiracy claim (SAC 73-74, Count 27) is functionally identical to the pleading in *Xtreme Power*. The allegations supporting the claim are nothing more than a rote recitation of the elements. Plaintiffs assert that the "Highland Enterprise . . . had a meeting of the minds on the object or course of action" (SAC at 74 ¶ 247), that its actions "constitute one or more unlawful, overt acts," and that Acis suffered damages as a result. The pleading lacks "any facts actually pled" to support the Trustee's conspiracy claim. Nor does it establish when the alleged co-conspirators formed the conspiracy, what the object of the conspiracy was, or how Highland participated in it.

---

[9] As noted in *Xtreme Power*, Delaware law has fewer elements than Texas law. *See id.* at 646 (noting that Delaware law defines civil conspiracy as (1) a confederation of two or more persons; (2) who engage in an unlawful act done in furtherance of a conspiracy; (3) that causes actual damages to a plaintiff).

28.     Plaintiffs will certainly answer that they have "incorporate[d] the preceding paragraphs" by reference, about "the foregoing fraudulent transfers and schemes." (SAC at 73 ¶ 245, 247 ¶ 247.) But that response defeats itself, because a common-law civil conspiracy claim has no place in the detailed system established by the federal and state fraudulent transfer statutes. As this Court has recognized:

> [I]t is perfectly true that 'the general rule under [the Bankruptcy Code or the old Act] is that one who did not actually receive any of the property fraudulently transferred (or any part of a "preference") will not be liable for its value, even though he may have participated or conspired in the making of the fraudulent transfer (or preference) .…'

*In re TOCFHBI, Inc.*, 413 B.R. 523, 535 (Bankr. N.D. Tex. 2009) (quoting *Mack v. Newton*, 737 F.2d 1343, 1357 (5th Cir. 1984)).

29.     The referenced *Mack* case explains the reasoning for this rule, first developed under the Bankruptcy Act:

> The purpose of those sections of the Bankruptcy Act is clearly to preserve the assets of the bankrupt*; they are not intended to render civilly liable all persons who may have contributed in some way to the dissipation of those assets*. The Act carefully speaks of conveyances of property as being 'null and void,' and authorizes suit by the trustee to 'reclaim and recover such property or collect its value.' The actions legislated against are not 'prohibited'; those persons whose actions are rendered 'null and void' are not made 'liable'; and terms such as 'damages' are not used. The legislative history is cancellation, not the creation of liability for the consequences of a wrongful act.

737 F.2d at 1358 (emphasis added); *see also Ingalls v. Beutel*, 2007 WL 9718103, at *4 (W.D. Tex. Nov. 28, 2007) (observing that while Bankruptcy Code section 544(a)(1) gives a trustee the status of a judgment creditor, the Fifth Circuit knew of that statute and still,

in such circumstances, "denied trustees a cause of action for civil conspiracy"); *Sherman v. FSC Realty LLC (In re Brentwood Lexford Partners, LLC)*, 292 B.R. 255, 275 (Bankr. N.D. Tex. 2003) ("[T]he court does not consider the fraudulent transfer under the civil conspiracy claim. To do so could lead to a result that expands remedies beyond [Bankruptcy Code] § 550.").

30.     "[C]ivil conspiracy is a theory of vicarious liability and not an independent tort." *Agar Corp. v. Electro Circuits, Int'l, LLC*, ___ S.W.3d ___, No. 17-0630, 2019 WL 1495211 at *4 (Tex. April 5, 2019). A fraudulent transfer claim cannot serve as that underlying tort. Yet alleged fraudulent transfers are the only alleged wrongs identified in Plaintiffs' civil conspiracy claim. (See SAC at 74 ¶¶ 246-49.) Count 27 thus fails as a matter of law and should be dismissed for failure to state a claim.

**D.     Plaintiffs fail to allege a viable claim for tortious interference. (Count 28)**

31.     Count 28 alleges that Highland has interfered with an outsourcing contract between Acis LP and "Universal/BVK." (SAC at 75.) The alleged interference is "communications over many months"; Plaintiffs particularly complain that "Highland Capital even prepared and sent to Universal and BVK a new outsourcing agreement, which would be entered once Acis LP and its bankruptcy were out of the way." (SAC at 75 ¶ 254; *see also* SAC at 35-37 ¶¶ 104-105.)  Acknowledging the undisputed point that the

contract is at-will,[10] Plaintiffs further plead that "[t]he fact that a contract is an at-will

agreement is no defense to a tortious interference claim." (SAC at 75 § 252.)

32.    Tortious interference with contract is a tort recognized in Texas and

evaluated by state and federal courts under Texas state law. *See In re Dexterity Surgical,*

*Inc.,* 365 B.R. 690, 700 (Bankr. S.D. Tex. 2007). To present a valid claim of tortious

interference in Texas, the Trustee must prove the tort's four elements: (1) an existing

contract subject to interference; and (2) a willful and intentional act of interference with

the contract; (3) that proximately caused the Trustee's injury; and (4) caused actual

damages or loss. *See Jacked Up, LLC,* 854 F.3d 797, 813 (5th Cir. 2017) (citing *Prudential Ins.*

*Co. of Am. V. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex. 2000)). The Plaintiff has not

pled the elements under Texas law because they do not exist.  The Trustee willingly

entered into a post-bankruptcy agreement with Universal/BVK to terminate the

automatic stay of 11 U.S.C. § 362 for the express purpose of allowing Universal/BVK to

terminate the outsourcing contract, and the bankruptcy court entered into an agreed

order lifting the stay (Case No. 18-30264, Doc. No. 726).  The Plaintiff is thus judicially

estopped from claiming tortious interference. *See, e.g., U.S. ex. rel. Long v. GSDM Idea City,*

*L.L.C.,* 798 F.3d 265, 271-72 (5th Cir. 2015) (applying judicial estoppel when "(1) the party

against whom judicial estoppel is sought has asserted a legal position which is plainly

---

[10] *See* Hr'g Tr (Dec. 11, 2018) (PM) 46:8-11 ("Q: And was the BVK contract an at-will contract? A: That's my understanding.").

inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently" (citations omitted)).

33.     To be sure, at-will status is not an automatic bar to a tortious interference claim. But it is highly relevant to the controlling principle of Texas law—that a claim for tortious interference cannot lie where the actor, furthering its own legitimate interests, merely induces a third party to cease its contractual relations when the third party has the right to do so. *See C.E. Servs., Inc. v. Control Data Corp.*, 759 F.2d 1241, 1248 (5th Cir. 1985) (discussing the "competitors rule" set forth in section 786 of the Restatement (Second) of Torts); *see also Spectrum Creations, L.P. v. Carolyn Kinder Int'l, L.L.C.*, 514 F. Supp. 934, 944 (W.D. Tex. 2007) (summarizing cases since *C.E. Servs.*). Plaintiffs do not identify a single word in the alleged "communications" that was inconsistent with this principle, and their pleading of this claim fails as a result.

34.     This pleading has two other fatal problems. First, it is not in dispute that the parties' contractual relationships waived conflicts, thus letting Highland compete against Acis LP. *See infra* Part E. A tortious interference claim cannot lie where the counterparty affirmatively acknowledged and contracted away any claim of conflict. Second, Plaintiffs make no attempt to plead damages, aside of a one-line throwaway in paragraph 75. That is because those facts do not exist, as explained above.  Count 28 fails as a matter of law and should be dismissed.

**E.** **Plaintiffs fail to allege a viable claim for breach of fiduciary duty. (Count 30)**

35.    Count 30 purports to allege a claim for breach of fiduciary duty, arising

from two sources: the Sub-Advisory Agreement between HCM and Acis LP, and the

general obligations of an investment adviser. (SAC at 78 ¶ 265.) Neither alleged source

creates such a duty and this claim should be dismissed.[11]

36.    As the parties' contracts, it is well-settled that contracts executed at the

same time in the course of the same transaction should be construed together. *See, e.g., In

re: Houston Progressive Radiology Assocs., PLLC*, 474 S.W.3d 435, 443-44 (Tex. App.—

Houston [1st Dist.] 2015, orig. proceeding) (citing *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex.

1981) and *Harris v. Rowe*, 593, S.W.2d 303, 306 (Tex. 1979)). And here, the parties' Shared

Service Agreement speaks directly to the parties' duties to one another—independent

contractor rather than agency (§ 8.11), to act with reasonable care (*id.* § 6.01), and without

other "duties or obligation" unless expressly agreed upon. (*Id.* § 2.06). (Ex. "A" hereto.)[12]

The parties' contractual relationship does not create the claimed fiduciary duty.

37.    Neither does the law of investment advisers. Any duty owed by an

investment adviser runs only to the subject of—investments. *See generally Greenberg

Traurig v. Nat'l Am. Ins. Co.*, 448 S.W.3d 115, 120 (Tex. App.—Houston [14th Dist.] 2014,

no pet.) ("Although the relationship between the parties may be fiduciary in character,

---

[11] This claim is subject to Rule 9(b) because it is based on allegedly fraudulent conduct. *See Life Partners*, 926 F.3d at 124 (citing *Brown v. Bilek*, 401 F. App'x 889, 893 (5th Cir. 2010)).

[12] The parties Shared Service Agreements – this one and predecessors – are cited several times in the SAC, making it appropriate for consolidation in this Motion.

their fiduciary duties extend only to dealings within the scope of the underlying relationship of the parties." (citing, *inter alia*, *Rankin v. Naftalis*, 557 S.W.2d 940, 944 (Tex. 1977)). Nothing about the "series of fraudulent schemes" summarized in Plaintiffs' pleading (SAC at 79 § 266) is tied to that subject, and thus that alleged duty. The pleading is thus fatally deficient.

38.     Plaintiffs also allege a relationship of "trust and confidence" from the combined effect of the parties' contracts and investment-adviser law. (SAC at 78 § 265.) Since those alleged sources of obligation do not create the claimed duties, this argument necessarily fails. Additionally, "[t]o impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005). Plaintiffs cannot claim a relationship of "trust and confidence" from the very contract that they purport to sue on, and this part of Count 30 should be dismissed as well.

**F.      Plaintiffs fail to allege a viable claim for "disregarding the corporate form/alter ego/collapsing doctrine/unjust enrichment." (Count 32)**

39.     In Count 32, Plaintiffs allege that each defendant "should be held liable for any damages awarded under any Count in this Second Amended Complaint, as each is the alter ego of the others," as well as pre-bankruptcy Acis LP. (SAC at 81 ¶ 275.) As

signaled by the unusual, slash-separated heading for this Count, this pleading does not coherently describe any recognized legal basis for such a result.[13]

40.     The Count has seven substantive paragraphs. The first (SAC at 80 ¶ 274) cites to *SSP Partners v. Gladstrong Inv. (USA) Corp.*, in which the Texas Supreme Court mentions the possibility of using a corporate structure to perpetrate a fraud. 275 S.W.3d 444, 454 (Tex. 2008) (discussing *Castleberry v. Branscum*, 721 S.W.2d 270 (Tex. 1986)).[14] But *SSP Partners* rejects a "single enterprise" theory of liability, such as Plaintiffs appear to be trying to plead here. *See Burchinal v. PJ Trailers-Seminole Mgmt. Co.*, 372 S.W.3d 200, 200-01 (Tex. App.—Texarkana 2012, no pet.). The next two paragraphs claim that the defendants "are all controlled by the CEO and ultimate majority owner of Highland Capital, Dondero," and that new offshore entities were created after the award issued in the Terry arbitration (SAC at 81 ¶¶ 275, 276) – allegations that bear only on that rejected theory. And substantively, "mere affiliation . . . is insufficient to pierce to veil." *Licea v. Curacao Drydock Co.*, 627 F. App'x 343, 349 (5th Cir. 2015). Inadequate allegations about an invalid theory do not satisfy Plaintiffs' pleading requirement. *See Emke v. Compana, LLC*, No. 3:06-CV-1416-L, 2007 WL 2781661, at *7 (N.D. Tex. Sept 25, 2007) (dismissing alter ego complaint unsupported by factual allegations).

---

[13] Rule 9(b) applies. *See Goodman v. H.I.G. Capital, LLC*, 491 B.R. 747, 761 (Bankr. W.D. La. 2013) ("Rule 9(b) applies not only to fraud claims, but also to 'non-fraud' claims that are based upon allegations of fraud.").
[14] *Castleberry* was subsequently superseded by statute on other grounds. *See Fidelity & Deposit of Md. Commercial Cas. Consultants, Inc.*, 976 F.2d 272, 275 (5th Cir. 1992).

41.     The fourth and fifth paragraphs observe that "multistep transactions can be collapsed when the steps of the transaction are part of one integrated transaction," citing two cases, one of which is from 1939.  (SAC at 81-82 ¶¶ 277-78.) The "step transaction" doctrine has nothing to do with *parties*, and neither of the cited cases applies that doctrine to create vicarious liability. The doctrine focuses entirely on *transactions*, asking whether a particular step of a business deal was "included for no other purpose than to avoid U.S. taxes," for example. *See Del Commercial Props., Inc. v. Commissioner*, 251 F.3d 210, 213 (D.C. Cir. 2001). It has nothing to do with the relief that Plaintiffs purport to seek in this part of their amended pleading.

42.     Plaintiffs' last two paragraphs cite the general principle that restitution is a potential remedy for unjust enrichment. (SAC at 81-82 ¶¶ 279-80.) That principle has a role to play when a party has established a liability claim and is considering what remedy to elect. But it has nothing to do with vicarious liability among parties, and no case Plaintiff cites suggests that it does.

43.     In sum, Plaintiffs cite two doctrines—step transaction and unjust enrichment— that have nothing to do with Highland Capital's responsibility for damages awarded against any other defendant. And while *SSP* relates to that general topic, Plaintiffs do not plead a coherent statement about what that case holds or what facts are relevant to the application of that holding. *Twombly* and *Iqbal* are intended to remove precisely such vacuous claims from the courts. Count 32 should be dismissed.

**G.** **Plaintiffs lack standing to assert claims for damages for alleged stay violations.**

44. Section 362(k) provides that "an *individual* injured by any willful violation of a stay provided by [section 362] shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1) (emphasis added). "[I]t is well settled that a corporation is not entitled to recover damages for violation of the automatic stay." *E.g.*, *In re MD Promenade, Inc.*, 2009 WL 80203, at *12 (Bankr. N.D. Tex. Jan. 8, 2009) (Jernigan, J.).

45. In *MD Promenade*, the Chapter 7 trustee pursued damages under section 362(k). 2009 WL 80203, at *12. The court held that "[t]he court may not award [the trustee] damages pursuant to section 362(k) because, although he is an individual, a natural person, he is acting as the representative of the estate of a debtor *corporation* and therefore cannot be considered an individual for purposes of section 362(k) ." *Id.* (citing *In re Amberjack Interests, Inc.*, 326 B.R. 379, 386 n.1 (Bankr. S.D. Tex. 2005) (finding that a trustee suing on behalf of a debtor corporation "cannot be considered an individual for purposes of obtaining standing under section 362(h) [now 362(k) ]")). Other courts have agreed. *See, e.g.*, *Garner v. Knoll*, 2014 WL 172276 (Bankr. N.D. Tex. 2014) (holding that "in order to recover under section 362(k), the Trustee must be an 'individual' within the meaning of the statute," and applying *St. Paul Fire & Marine Insurance Company v. Labuzan*, 579 F.3d 533, 545 (5th Cir. 2009)).

46.     Further, limited partnerships, like corporations, are not entitled to relief under section 362(k) because they are not individuals. *See, e.g.*, *In re Rafter Seven Ranches L.P.*, 414 B.R. 722, 732-33 (10th Cir. BAP 2009) (finding that "in defining 'person,' Congress used the word 'individual' to distinguish natural persons from corporations and partnerships" to hold that the limited partnership debtor is not entitled to an award of damages under section 362(k)); *Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1551 (11th Cir. 1996) (analyzing that partnerships are not entitled to relief under section 362(k) of the Bankruptcy Code because "Congress used the word 'individual' to distinguish natural persons from corporations and partnerships." These holdings are consistent with this Court's precedent that "relief under section [362(k)] is limited to individuals." *In re: Freemyer Industrial Pressure, Inc.*, 281 N.R. 262, 268 (Bankr. N.D. Tex. 2002). Plaintiffs are not entitled to relief under section 362(k) of the Bankruptcy Code, and Count 33 should be dismissed.

**H.     Plaintiffs fail to allege viable claims for equitable relief.**

47.     The Second Amended Complaint concludes with a "Request for Disgorgement" and a "Request for Imposition of a Constructive Trust." (SAC at 84 § VII, 85 § VIII.) Both are pleaded as remedies for Plaintiffs' claim for breach of fiduciary duty (SAC at 85 § 295, 86 § 301). If that claim is dismissed, then these requests must necessarily be dismissed as well.

48.    Plaintiffs' request for a constructive trust also purports to seek that remedy because of "the series of fraudulent transfers" described previously (*see* SAC at 86 §§ 299-300)—"and in particular Highland Capital and Highland Funding … even if they were not the direct transferee." (SAC at 86 § 300) For the same reasons that civil conspiracy is not available in a fraudulent transfer case, *see supra* Part C, a constructive trust is not available as a remedy against parties who are "not the direct transferee."  The relevant statutes carefully define who is, and who is not, liable for a fraudulent transfer, and a free-floating "indirect" equitable remedy has no place in that detailed statutory system.[15]

49.    As set forth above, the majority of Plaintiffs' claims, including, without limitation, Counts 1-4, 5-24, 27-28, 30 and 32 must be dismissed. Once these claims are dismissed from this lawsuit, no recovery is possible under Section 550 of the Bankruptcy Code. As such, Count 26 of the SAC, which seeks liability for avoided transfers, should also be dismissed as to Highland Capital.

### IV.    Conclusion

For the foregoing reasons, the specified portions of the Second Amended Complaint should be dismissed with prejudice, along with all other relief to which Highland Capital may be justly entitled that is consistent with that disposition.

---

[15] Similarly, Counts 26, 31, and 34, which seek certain remedies, but do not contain separate claims for relief, should be dismissed to the extent the underlying claims are dismissed.

DATED: July 22, 2019                    Respectfully submitted,

                                        /s/ Michael K. Hurst
                                        Holland N. O'Neil
                                        State Bar No. 14864700
                                        honeil@foley.com
                                        Jason B. Binford
                                        State Bar No. 24045499
                                        jbinford@foley.com
                                        FOLEY GARDERE
                                        2021 McKinney Avenue, Suite 1600
                                        Dallas, Texas 75201
                                        Telephone: (214) 999-3000
                                        Facsimile: (214) 999-4667

                                        and

                                        Michael K. Hurst
                                        Texas Bar No. 10316310
                                        mhurst@lynnllp.com
                                        David S. Coale
                                        Texas Bar No. 00787255
                                        dcoale@lynnllp.com
                                        Chisara Ezie-Boncoeur
                                        Texas Bar No. 24103714
                                        cezie-boncoeur@lynnllp.com
                                        LYNN PINKER COX & HURST, LLP
                                        2100 Ross Avenue, Suite 2700
                                        Dallas, Texas 75201
                                        Telephone: (214) 981-3800
                                        Facsimile: (214) 981-3839

                                        **ATTORNEYS FOR HIGHLAND
                                        CAPITAL MANAGEMENT, L.P.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served via ECF on July 22, 2019 on all parties of record.


_/s/Michael K. Hurst_
Michael K. Hurst