Holland N. O'Neil (TX 14864700)
Jason B. Binford (TX 24045499)
**FOLEY GARDERE**
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Ste. 1600
Dallas, Texas 75201
Telephone: (214) 999.3000 / Facsimile: (214) 999.4667
honeil@foley.com

Michael K. Hurst (TX 10316310)
David S. Coale (TX 00787255)
Chisara Ezie-Boncoeur (TX 24103714)
**LYNN PINKER COX & HURST, LLP**
2100 Ross Avenue, Ste. 2700
Dallas, Texas 75201
Telephone: (214) 981.3800 / Facsimile: (214) 981.3839
mhurst@lynnllp.com

**COUNSEL FOR HIGHLAND CAPITAL
MANAGEMENT, L.P.**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 18-30264-SGJ-11 |
| | § | Case No. 18-30265-SGJ-11 |
| ACIS CAPITAL MANAGEMENT, L.P. | § | |
| AND ACIS CAPITAL MANAGEMENT | § | (Jointly Administered Under |
| GP, LLC, | § | Case No. 18-30264-SGJ-11) |
| | § | |
| DEBTORS. | § | Chapter 11 |

| | | |
|---|---|---|
| ACIS CAPITAL MANAGEMENT, L.P., | § | |
| ACIS CAPITAL MANAGEMENT GP, | § | |
| LLC, | § | Adversary No. 18-03078 |
| | § | |
| PLAINTIFFS, | § | (Consolidated with Adversary |
| | § | Nos. 18-03212 & 19-03103) |
| VS. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, | § | |
| L.P., HIGHLAND CLO FUNDING, LTD. | § | |
| F/K/A ACIS LOAN FUNDING, LTD., | § | |
| HIGHLAND HCF ADVISOR, LTD., | § | |
| HIGHLAND CLO MANAGEMENT, LTD., | § | |
| HIGHLAND CLO HOLDINGS, LTD., CLO | § | |
| HOLDCO, LTD., NEUTRA, LTD., ACIS | § | |
| CLO 2014-3 LTD., ACIS CLO 2014-4 | § | |
| LTD., ACIS CLO 2014-5 LTD., ACIS CLO | § | |
| 2015-6 LTD., ACIS CLO 2014-3 LLC, | § | |
| ACIS CLO 2014-4 LLC, ACIS CLO 2014-5 | § | |
| LLC, AND ACIS CLO 2015-6 LLC, | § | |
| | § | |
| DEFENDANTS. | § | |

## HIGHLAND HCF ADVISOR, LTD., HIGHLAND CLO
## MANAGEMENT, LTD., AND HIGHLAND CLO HOLDINGS,
## LTD.'S JOINT MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

# Table of Contents

Table of Authorities ........................................................................................................ 3

I.     Introduction ........................................................................................................ 6

II.    Factual Background ............................................................................................ 7

       A.    Acis's Service Attempts. ........................................................................ 7

       B.    The Cayman Islands are Party to the Hague Service Convention ............... 7

III.   Argument and authorities .................................................................................. 8

       A.    The Cayman Defendants were not properly served. ..................................... 8

             1.    Applicable law. ............................................................................. 8

             2.    Acis failed to comply with the Hague Service Convention.
                   ....................................................................................................... 10

       B.    The Court lacks personal jurisdiction over the Cayman
             Defendants. ............................................................................................ 11

             1.    Applicable Law. .......................................................................... 11

             2.    The Minimum Contacts Test. ..................................................... 12

             3.    The Cayman Defendants lack minimum contacts. ..................... 14

       C.    The presumption of extraterritoriality forecloses Acis's
             fraudulent transfer claims against the Cayman Defendants. ...................... 22

             1.    Applicable law. ........................................................................... 22

             2.    Acis's avoidance claims against the Cayman Defendants
                   should be dismissed based on the presumption of
                   extraterritoriality. ....................................................................... 24

       D.    Additional grounds support dismissal of the Cayman
             Defendants from this lawsuit. ................................................................ 25

IV.    Conclusion ....................................................................................................... 27

CERTIFICATE OF SERVICE ..................................................................................... 29

## Table of Authorities

**Cases**

*Access Telecom, Inc. v. MCI Telecomm., Corp.*, 197 F.3d 694 (5th Cir. 1999) ......................... 19

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017) ............................................................................................. 13, 14, 17

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ......................................................... 12, 18

*Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364 (5th Cir. 2010) ......................................................................................................... 15

*Dalton v. R & W Marine, Inc.*, 897 F.2d 1359 (5th Cir. 1990) .................................................. 21

*Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327 (5th Cir. 2004) ...................... *passim*

*Gonzalez v. Bank of Am. Ins. Servs., Inc.*, 454 F. App'x 295 (5th Cir. 2011) .............. 19, 20, 21

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ..................... 13, 15, 17

*Hargrave v. Fibreboard Corp.*, 710 F.2d 1154 (5th Cir. 1983) ............................................. 19, 22

*In re Ampal-American Israel Corp.* 532 B.R. 601 (Bankr. S.D.N.Y. 2017) .............................. 23

*In re CHC Grp. Ltd.*, No. 3:17-CV-00075-C, 2017 WL 1380514 (Bankr. N.D. Tex. Mar. 28, 2017) (mem. op.) ...................................................................................... 12, 15

*In re CIL Ltd.*, 582 B.R. 46 (Bankr. S.D.N.Y. 2018) .................................................... 23, 24, 25

*In re Elcoteq, Inc.*, 521 B.R. 189 (Bankr. N.D. Tex. 2014) ...................................................... 24

*In re IFS Fin. Corp.*, No. 02-39553, 2009 WL 3063353 (Bankr. S.D. Tex. Sept. 21, 2009) ..................................................................................................................... 16

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec.* LLC, 917 F.3d 85 (2d Cir. 2019) .......................................................................................................... 24

*In re Rice*, 311 B.R. 450 (Bankr. N.D. Tex. 2004) ..................................................................... 9

*In Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 543 B.R. 127 (Bankr. S.D.N.Y. 2016) ...................................................................................................... 25

*Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F.
Supp. 2d 587 (N.D. Tex. 2014) ............................................................................. 15, 16

*Licea v. Curacao Drydock Co.*, 627 Fed. Appx. 343 (5th Cir. 2015) ........................................ 21

*Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010)...................................................... 23

*Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494 (5th Cir. 2018) ................................ 12

*Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) ............................................. 13, 15

*Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765 (N.D. Tex. 2008) .............. 16, 18, 19, 20

*Sangha v. Navig8 Ship Management*, 882 F.3d 96 (5th Cir. 2018) .......................................... 17

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266 (5th Cir. 2006) ...................................... 15

*Sys. Signs Supplies v. U.S. Dep't of Justice, Washington, D.C.*, 903 F.2d 1011 (5th
Cir. 1990)................................................................................................................................ 11

*Tinsley v. Comm'r of I.R.S.*, No. 396-CV-1769-P, 1998 WL 59481 (N.D. Tex. Feb.
9, 1998) (mem. op) ................................................................................................................. 9

*Volkswagenwerk AG v. Schlunk*, 486 U.S. 684 (1988)................................................................ 10

*Walden v. Fiore*, 571 U.S. 277 (2014) .................................................................................. 14, 17

*World–Wide Volkswagen Cor. v. Woodson*, 444 U.S. 286 (1980)............................................. 14

**Statutes and Rules**

BR 7004 ......................................................................................................................................... 7

BR 7004(a)..................................................................................................................................... 9

BR 7004(f) ................................................................................................................................... 11

BR 7012(b)...................................................................................................................... 7, 11, 12

Fed. R. Civ. P. 12(b)(2) ................................................................................................................ 7

Fed. R. Civ. P. 12(b)(4)-(5) .................................................................................................. 7, 11

Fed. R. Civ. P. 4............................................................................................................................ 9

Fed. R. Civ. P. 4(f)(1)................................................................................................................... 9

**Other Authorities**

*Hauge Convention,* 20 U.S.T. at Articles 3 and 5, T.I.A.S. No. 6638 ........................................ 9

**Highland HCF Advisor, Ltd., Highland CLO Management, Ltd., and Highland CLO Holdings, Ltd.'s Joint Motion to Dismiss the Second Amended Complaint**

Highland HCF Advisor, Ltd., Highland CLO Management, Ltd., Highland CLO Holdings, Ltd. ("Highland Advisor," "Highland Management," and "Highland CLO Holdings" respectively, and together, the "Cayman Defendants") move to dismiss the Second Amended Complaint filed by the plaintiffs in this action—Acis Capital Management, L.P. ("Acis LP") and Acis Capital Management GP, LLC ("Acis GP") (collectively, "Plaintiffs," or "Acis"), and respectfully show as follows.

## I. Introduction

1. The Second Amended Complaint filed by Acis in this recently consolidated adversary proceeding must be dismissed as to Highland Advisor, Highland Management, and Highland CLO Holdings for four reasons. *First*, Acis failed to properly serve the Cayman Defendants domiciled in the Cayman Islands, in violation of the service requirements of Federal Rule of Civil Procedure ("FRCP") 12(b)(4)-(5) and Federal Rule of Bankruptcy Procedure ("BR" or "Bankruptcy Rule") 7004. *Second*, this Court lacks personal jurisdiction over the Cayman Defendants, warranting dismissal pursuant to FRCP Fed. R. Civ. P. 12(b)(2), applicable to this adversary proceeding through BR 7012(b). *Third*, the claims Acis filed against the foreign Cayman Defendants are foreclosed by the

presumption of extraterritoriality. *Fourth*, alternatively and as set forth below, additional grounds exist to support dismissal of the Cayman Defendants.[1]

## II.     Factual Background

### A.     Acis's Service Attempts.

2.     It is undisputed that the Cayman Defendants are each "organized under the laws of the Cayman Islands." *See* Docket No. 157 at ¶¶ 10-12. Acis did not personally serve any of the Cayman Defendants. Instead, on July 2, 2019, Acis provided a copy of the Summons and Second Amended Complaint to a representative of Maples Corporate Services, Limited, in attempt to serve each of the Cayman Defendants. Docket Nos. 165-170.

### B.     The Cayman Islands are Party to the Hague Service Convention

3.     The Hague Convention is a "self-executing treaty" to which the United States and the Cayman Islands have both been parties since 1970. Ezie-Boncoeur Decl. at ¶ 3, (*See* Ex. A, Extensions); *see also Convention Done at The Hague Nov. 15, 1965* (the "Hague Convention"); 20 U.S.T. 361, T.I.A.S. No. 6638 (Feb. 10, 1969). Pursuant to the Hague Convention, the Clerk of the Courts of Grand Cayman is the designated central authority for service of process on entities in the Cayman Islands, like the Cayman Defendants. Ezie-Boncoeur Decl. at ¶ 4, (*See* Ex. B, United Kingdom-Other Authorities, Art. 18).

---

[1] This motion is filed subject to the Cayman Defendants' joinder in HCLOF's motion to withdraw reference, filed this same day.

4. Acis does not contend that it served the Cayman Defendants pursuant to the Hague Convention, nor in accordance with the laws of the Cayman Islands. *See* Docket No. 157 at ¶¶ 10-12; *see also* Docket Nos. 165-170.

### III. Argument and authorities

**A. The Cayman Defendants were not properly served.**

5. Because the Cayman Defendants challenge the validity of service of process, Acis "bears the burden to establish the validity of service." *Tinsley v. Comm'r of I.R.S.*, No. 396-CV-1769-P, 1998 WL 59481, at \*3 (N.D. Tex. Feb. 9, 1998) (mem. op). Acis failed to effectuate service of process on the Highland Parties for the reasons described below.

**1.** *Applicable law.*

6. This Court has instructed that "[s]ervice abroad **must comply** with the Hague Service Convention." *In re Rice*, 311 B.R. 450, 453 (Bankr. N.D. Tex. 2004) (emphasis added). Bankruptcy Rule 7004(a) incorporates FRCP Rule 4, which states that service upon a foreign corporation, such as the Cayman Defendants, shall be made "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents…" Fed. R. Civ. P. 4(f)(1). "Under the Hague Service Convention, service may be accomplished through the use of a designated central authority." *In re Rice*, 311 B.R. at 453; *see also Hauge Convention,* 20 U.S.T. at Articles 3 and 5, T.I.A.S. No. 6638.

7.     The procedural law of the Cayman Islands, codified through the Cayman Islands Grand Court Rules of 1995 as revised on October 21, 2013 (the "Grand Court Rules"), incorporates the Hague Convention into its laws governing service of foreign process. *See e.g,.* Grand Court Rules at Order 69, r. 1-3. Among others, consistent with the Hague Convention, which designates the Clerk of the Court as the central authority capable of service in the Cayman Islands, the Grand Court Rules also require the involvement of the Clerk of the Court and the Bailiff, in specific ways, for foreign service of process. Ezie-Boncoeur Decl. at ¶ 4, (*See* Ex. B, United Kingdom-Other Authorities, Art. 18); Grand Court Rules at Order 69, r. 2-3.

8.     Understandably, as a global center of financial activity, the Cayman Islands require all service of process to be funneled through the Clerk of the Court and the Bailiff to manage foreign service of process in a streamlined and systematic manner. *See generally Volkswagenwerk AG v. Schlunk*, 486 U.S. 684, 704 (1988) (noting that a stated purpose of the Hague Convention is "to improve the organisation of mutual judicial assistance for that purpose by simplifying and expediting the procedure," and observing: "By requiring each state to establish a central authority to assist in the service of process, the Convention implements this enabling function." (citation omitted)). Acis failed to adhere to the clear service requirements imposed by the Hague Convention, which the Grand Court Rules incorporate.

**2.      *Acis failed to comply with the Hague Service Convention.***

9.      To properly effectuate service, Acis had to serve the Cayman Defendants through the Clerk of the Courts of Grand Cayman, the designated central authority of the Cayman Islands. Ezie-Boncoeur Decl. at ¶ 4, (*See* Ex. B, United Kingdom-Other Authorities, Art. 18). Acis disregarded this requirement, instead providing a copy of the respective Summonses for the Cayman Defendants, and the Second Amended Complaint, to a representative of Maples Corporate Services, Limited. *See* Docket Nos. 165-170.

10.      Because Acis failed to serve the designated authority of the Cayman Islands, its attempted service on the Cayman Defendants is ineffective under the Hague Convention. Acis's attempted service of the Cayman Defendants is likewise ineffective under the laws of the Cayman Islands, which extend the service requirements of the Hague Convention for legal matters pending in convention countries, like the United States. *See* Grand Court Rules at Order 69, r. 1-4.

11.      Acis failed to satisfy its "burden to establish the validity" of its service on the Cayman Defendants. *See Sys. Signs Supplies v. U.S. Dep't of Justice, Washington, D.C.,* 903 F.2d 1011, 1013 (5th Cir. 1990). The Cayman Defendants should be dismissed from this lawsuit pursuant to Federal Rules of Civil Procedure FRCP 12(b)(4) and (5) , which apply to this adversary proceeding through Bankruptcy Rule 7012(b), because Acis failed to properly serve the Cayman Defendants with the Summons and Second Amended Complaint.

**B. The Court lacks personal jurisdiction over the Cayman Defendants.**

*1. Applicable Law.*

12. "Bankruptcy Rule BR 7004(f) defines personal jurisdiction over defendants in an adversary proceeding, authorizing personal jurisdiction to the extent allowed by the Fifth Amendment Due Process clause." *In re CHC Grp. Ltd.*, No. 3:17-CV-00075-C, 2017 WL 1380514, at *7 (Bankr. N.D. Tex. Mar. 28, 2017) (mem. op.) (granting motion to dismiss complaint against foreign defendant on grounds of *forum non conveniens* and due to lack of personal jurisdiction.) "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant when: (i) the defendant has minimum contacts with the forum, and (ii) the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Id*. quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

13. In conducting a minimum contacts analysis in an adversary proceeding, "courts aggregate the defendant's contacts within the entire United States." *In re CHC Grp. Ltd.*, 2017 WL 1380514 at *7.

14. "When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction." *In re CHC Grp. Ltd.*, 2017 WL 1380514 at *6; *see also Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 499 (5th Cir. 2018). A motion to dismiss for lack of personal jurisdiction applies to adversary proceedings through Bankruptcy Rule 7012(b).

2.    *The Minimum Contacts Test.*

15.    A defendant's minimum contacts with the forum may arise from general or specific personal jurisdiction. The Supreme Court has greatly limited the application of general jurisdiction in recent years.

16.    For example, for general jurisdiction, an entity's "continuous activity of some sorts within a state…is not enough to support the demand that the [entity] be amenable to suits unrelated to that activity." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011). Instead, the Supreme Court has instructed that the decision in *Perkins v. Benguet Consol. Mining Co.* remains "[t]he textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum,"—and the only time that Court has actually found general jurisdiction. *Id*. citing *Perkins*, 342 U.S. 437, 447-48 (1952).

17.    The *Perkins* court exercised general jurisdiction over a nonresident company because the company's continuous and systematic contact with the forum was evident from multiple activities. *See Perkins*, 342 U.S. 437,447-48 (among others, the corporation's president maintained an office in Ohio, the corporation maintained and stored its physical files in its Ohio office, the corporation's president directed business from Ohio.) Thus, courts should abstain from exercising general jurisdiction absent a showing of continuous and systematic presence in a forum that rises to the substantial level of contact shown in *Perkins. See e.g., Goodyear*, 564 U.S. at 925 ("Since *International*

*Shoe*, specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction plays a reduced role.") (internal citations omitted).

18. "Specific jurisdiction is very different." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). "In order for a state court to exercise specific jurisdiction, the suit must aris[e] out of or relat[e] to the defendant's contacts with the forum." *Id*. (internal citations omitted). This minimum contacts analysis assesses "the defendant's contacts with the forum State itself, **not the defendant's contacts with persons who reside there**." *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (internal citations omitted) (emphasis added).

19. The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id*. "As [the Supreme Court has] put it, restrictions on personal jurisdiction are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 (internal citations omitted). Thus, "[e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its

13

power to render a valid judgment." *World–Wide Volkswagen Cor. v. Woodson,* 444 U.S. 286, 294-95 (1980).

### 3. *The Cayman Defendants lack minimum contacts.*

20.     The Second Amended Complaint should be dismissed as to the Cayman Defendants because they lack minimum contacts with the applicable forum, as discussed below.

21.     *First*, none of the Cayman Defendants have "continuous and systematic contacts" with the United States sufficient for the exercise of general jurisdiction. *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). The Cayman Defendants were formed under the laws of the Cayman Islands, conduct business out of the Cayman Islands, and maintain registered agents in the Cayman Islands. *See* Docket No. 157 at ¶¶ 10-12.

22.     The evidence in the record "must" show that the Cayman Defendants' contacts with the forum state are "substantial"; "random, fortuitous, or attenuated contacts are not sufficient." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 616 (N.D. Tex. 2014) (quoting *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 368 (5th Cir. 2010)). The record fails to meet this burden, and contains no evidence connecting the Cayman Defendants to the United States in the fashion of the non-resident entity in *Perkins*, "[t]he textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum." *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 927.

23. Further, the Form ADV of Highland Capital Management, L.P. ("Highland Capital") for the years 2019 and 2017, submitted by Acis, fails to establish the continuous and systematic contacts requisite for the exercise of jurisdiction over Highland Advisor. *See* Exhibits T and S to the Second Amended Complaint; *In re CHC Grp. Ltd.*, 2017 WL 1380514 at *7 ("When examining a general personal jurisdiction issue, courts consider the defendant's contacts occurring within the forum 'over a reasonable number of years, up to the date the suit was filed.'"); *see also In re IFS Fin. Corp.*, No. 02-39553, 2009 WL 3063353, at *4 (Bankr. S.D. Tex. Sept. 21, 2009) (same). And any alleged affiliation of Highland Advisor with Highland Capital Management, L.P.'s is insufficient to establish requisite contacts with the forum. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004); *see also Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 788 (N.D. Tex. 2008).

24. ***Second***, the Cayman Defendants have not purposefully availed themselves of the privileges of the forum. "Courts may exercise specific jurisdiction if a nonresident defendant purposefully avails himself of the privileges of conducting activities in the forum state and the controversy arises out of or is related to the defendant's contacts with the forum state." *Innova Hosp. San Antonio, L.P.,* 995 F. Supp. 2d at 618 (internal citations omitted). The Cayman Defendants did not file any claims in the bankruptcy case, in this adversary proceeding, or otherwise submit themselves to the jurisdiction of this Court.

25. ***Third***, Acis cannot rely on the existence of contracts between the Cayman Defendants and others, payments made in the United States, or even communications

between the foreign Cayman Defendants and others as jurisdictional evidence. *See Freudensprung*, 379 F.3d at 344; *infra* p. 20.

26. *Fourth,* Acis provided no evidence to support the exercise of jurisdiction over the Cayman Defendants under a theory of specific jurisdiction. "For a court to exercise specific jurisdiction over a claim there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.' When no such connection exists, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1776 (citing *Goodyear*, 564 U.S. at 919). The evidence in the record, and the conclusory jurisdictional background provided by Acis in the Second Amended Complaint, fall short of the evidence required to authorize the exercise of specific jurisdiction over the Cayman Defendants. *See Sangha v. Navig8 Ship Management*, 882 F.3d 96, 103-04 (5th Cir. 2018) ("The proper question is not whether [Plaintiff] experienced an an injury or effect in a particular location, but whether [Defendant's] conduct connects it to the forum in a meaningful way.").

27. While the Second Amended Complaint makes generalized allegations about an alleged ALF PMA Transfer, ALF Share Transfer, Note Transfer, an alleged transfer of 2017-7 Equity, and certain agreements, Acis provides no evidence linking these alleged events, or any others, to the Cayman Defendants such that the exercise of jurisdiction over them is permissible. The Supreme Court's analysis of personal

jurisdiction in *Walden v. Fiore* is instructive. There, the Court explained that a "Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections." 571 U.S. at 289.

28.     Similarly, here, the Cayman Defendants' actions in the Cayman Islands do not create sufficient contacts with the United States simply because the Cayman Defendants allegedly directed conduct at Acis, a party with connections in the United States. To do so "reasonably improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis. It also obscures the reality that none of the [Cayman Defendants'] challenged conduct had anything to do with [the United States] itself." *Id*.

29.     For the above reasons, Acis failed to meet its "burden of establishing the district court's jurisdiction over the nonresident" Cayman Defendants. *Rolls–Royce Corp. v. Heros, Inc.*, 576 F.Supp.2d 765, 773 (N.D. Tex. 2008). The Cayman Defendants lack minimum contacts with the United States, and the exercise of jurisdiction over the Cayman Defendants offends "traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. at 474 (1985). The Second Amended Complaint, should therefore be dismissed as to the Cayman Defendants for lack of personal jurisdiction.

**C.    Acis cannot overcome the presumption of corporate separateness.**

30.    The Court cannot exercise jurisdiction over Cayman Defendants based on any relationship with other defendants in this lawsuit.

31.    By alleging that the Cayman Defendants are alter egos of each other and of Highland Capital, Acis is attempting to establish personal jurisdiction over the Cayman Defendants through the minimum contacts of their alleged alter egos. *Rolls-Royce Corp.*, 576 F. Supp. 2d at 787; *see e.g.*, Second Amended Complaint at Count 32. The Cayman Defendants are not alter egos of any entities, and Acis failed to provide grounds to assert jurisdiction over the Cayman Defendants pursuant to an alter ego theory, as discussed below.

32.    *First,* courts in this Circuit "begin with a presumption that a subsidiary, even one that is wholly-owned, is independent of its parent for jurisdictional purposes." *Gonzalez v. Bank of Am. Ins. Servs., Inc.*, 454 F. App'x 295, 300 (5th Cir. 2011). Thus "[a]s a general rule, however, the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated." *Freudensprung,* 379 F.3d at 346; *see also Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983) (observing that "[g]enerally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business in the forum state"). The Cayman Defendants are independent legal entities, and must be treated as such for jurisdictional purposes. *See Access Telecom, Inc. v. MCI Telecomm., Corp.*, 197 F.3d 694, 717

(5th Cir. 1999) (noting that "typically, the corporate independence of companies defeats the assertion of jurisdiction over one by using contacts with the other").

33.    *Second*, "the presumption of institutional independence of related corporate entities may be rebutted by '**clear evidence**,' which **requires a showing of 'something beyond' the mere existence of a corporate relationship** between a resident and nonresident entity to warrant the exercise of jurisdiction over the nonresident." *Freudensprung*, 379 F.3d at 346 (emphasis added); *see also Gonzalez*, 454 F. App'x at 300 (the presumption of corporate separateness can "only be overcome by the plaintiff with clear evidence that is sufficient to demonstrate that the subsidiary is the alter ego of the parent.") Acis failed to provide "clear evidence" that satisfies this stringent standard. Instead, the jurisdictional "evidence" submitted by Acis includes, among others, allegations made upon information and belief, and allegations that principals of Highland Capital serve as officers of the Cayman Defendants. *See* Second Amended Complaint at ¶¶ 13,15, 22-23.

34.    *Third*, Acis's allegations that the Cayman Defendants share an address with Highland Capital are irrelevant for jurisdictional purposes. *See* Docket No. 157 at ¶¶ 10-12. Among others, this District has held that evidence of companies having the same business address does "not tend to prove that either [company] was the alter ego of [the other]." *Rolls-Royce Corp.*, 576 F. Supp. 2d at 788. Likewise, testimony concerning the formation of the Cayman Defendants, and allegations concerning any alleged shared

inside information is insufficient to prove an alter ego theory. In the context of an alter ego allegation, this District explained:

> In its response, Rolls–Royce cites deposition testimony where Kajberouni states that Hye–Tech was set up to protect Heros, and that Hye–Tech and Heros shared inside information because they had common ownership. Rolls–Royce also points to a number of Heros documents that bear Hye–Tech legends asserting that the documents contain trade secrets of Hye–Tech. The complaint also alleges that Heros facilitated Hye–Tech's sale of genuine Rolls–Royce parts as Hye–Tech's own imitation PMA parts, and that Hye–Tech and Heros have the same business address. **This evidence and these allegations do not tend to prove that either Hye–Tech or Heros was the alter ego of Kajberouni**. **Rather, Rolls–Royce's complaint and jurisdictional evidence are directed at blurring the distinction** between Hye–Tech and Heros, not Kajberouni and Hye–Tech or Kajberouni and Heros.

*Id*. (emphasis added).

35. Further, the Fifth Circuit has held that "demonstrating 100% stock ownership of stock and commonality of directors and officers is insufficient to show that the subsidiary is an alter ego of it[s] parent." *Gonzalez,* 454 F. App'x at 300-01 (citing authority including *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990)) (declining to find an alter ego although one entity owned 100% of its subsidiary, "was responsible for corporate policy, funneled revenues into centralized accounts, and filed consolidated tax returns because those factors were 'outweighed, albeit modestly' by observation of corporate formalities and subsidiary control over certain daily operations."); *see also Licea v. Curacao Drydock Co.*, 627 Fed. Appx. 343, 349 (5th Cir. 2015)

(finding that organizational charts "are not probative" of alter ego for jurisdictional purposes).

36.     And while Acis acknowledges that courts generally consider five non-exhaustive factors when determining whether a plaintiff has overcome the presumption of corporate separateness, Acis failed to submit clear jurisdictional evidence under these non-exhaustive factors. *Freudensprung*, 379 F.3d at 346 (identifying the non-exhaustive as: "(1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities.")

37.     Cases in this Circuit "[g]enerally ... demand proof of control by [one corporation] over the internal business operations and affairs' of another corporation to make the other its agent or alter ego, and hence 'fuse the two together for jurisdictional purposes." *Id*. citing *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983). The record evidence falls short of these evidentiary requirements.

38.     ***Fourth***, Acis improperly relies on Highland Advisor and Highland Management's alleged entry into certain agreements as a basis to exercise jurisdiction over these foreign entities. *See* Second Amended Complaint at ¶¶ 16 and 27. The Fifth Circuit "has repeatedly held that the combination of mailing payments to the forum state,

engaging in communications related to the **execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are** insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant." *Freudensprung,* 379 F.3d at 344 (collecting cases) (emphasis added).

39.     For the foregoing reasons, the exercise jurisdiction over the Cayman Defendants is improper under an alter ego theory.

**D.     The presumption of extraterritoriality forecloses Acis's fraudulent transfer claims against the Cayman Defendants.**

*1.     Applicable law.*

40.     "It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Morrison v. Nat'l Australia Bank Ltd.,* 561 U.S. 247, 255 (2010) (internal citations omitted). As explained by the Supreme Court, this presumption "rests on the perception that Congress ordinarily legislates with respect to domestic, not foreign, matters." *Id.* Accordingly, "unless there is the affirmative intention of the Congress clearly expressed to give a statute extraterritorial effect, we must presume it is primarily concerned with domestic conditions." *Id.* (internal citations omitted).

41.     Courts have not uniformly determined the reach of the presumption against extraterritorial as applied to the Bankruptcy Code's avoidance provisions. The Southern District of New York recently held that actual and constructive fraudulent

transfer claims, against a Cayman Islands debtor company, were impermissible extraterritorial applications of bankruptcy fraudulent transfer avoidance and recovery statutes. *In re CIL Ltd.*, 582 B.R. 46, 92–93 (Bankr. S.D.N.Y. 2018), amended on reconsideration, No. 13-11272-JLG, 2018 WL 3031094 (Bankr. S.D.N.Y. June 15, 2018); *see also In re Ampal-American Israel Corp.* 532 B.R. 601 (Bankr. S.D.N.Y. 2017). In reaching this decision, the court explained that "Congress has not 'clearly expressed' that sections 548 and 550 apply extraterritorially and the Court finds that they do not." *CIL*, 582 B.R. at 92-93. The *CIL* court also held that section 544(b) cannot be used to avoid foreign transfers. *See id.* at 97. The purported fraudulent transaction at issue centered outside the United States, a factor which the court weighed in favor of the presumption against extraterritoriality. *Id.* at 95.

42.    The Second Circuit has likewise placed focus on the location of the alleged fraudulent transfer when assessing whether the presumption of extraterritoriality applies to avoidance provisions. ("We hold that a domestic debtor's allegedly fraudulent, hindersome, or delay-**causing transfer of property from the United** States is domestic activity for the purposes of §§ 548(a)(1)(A) and 550(a)). *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec.* LLC, 917 F.3d 85, 99 (2d Cir. 2019) (emphasis added).[2]

---

[2] In the context of alleged fraudulent transfers without a center of gravity in the United States, the Southern District of New York held that Sections 548 and 550 did not apply extraterritorially. *CIL*, 582 B.R. at 92-93. The recent *Picard* decision declined to blanketly apply the presumption against extraterritoriality in all Section 548 and 550 proceedings with foreign entities. *Picard* 917 F.3d at 99. Instead, the Second Circuit analyzed whether the presumption against extraterritoriality should apply by, *inter alia,* considering whether the transfers at issue—even if linked to foreign entities—constitute domestic activity. *Id.* at 100.

43.     This Court has answered a slightly different extraterritorial question—whether a court may decline to exercise jurisdiction as a matter of international comity. *See In re Elcoteq, Inc.*, 521 B.R. 189, 197 (Bankr. N.D. Tex. 2014). In this context, the Court advised that five international transactions factors guide the analysis concerning whether a foreign court's judgment on a certain matter is conclusive in federal court. *Id*. In the same opinion, the Court also explained that the Bankruptcy Code's provisions concerning violations of an automatic stay can apply extraterritorially, reasoning that the property of a debtor in violation of an automatic stay—"wherever located"—is within reach of bankruptcy courts. *Id*. at 198-199. The Court did not directly address what it considers to be the full reach of the presumption against extraterritoriality as applied to the Bankruptcy Code's avoidance provisions. Authority on this specific inquiry is limited within the Fifth Circuit.

   2.     ***Acis's avoidance claims against the Cayman Defendants should be dismissed based on the presumption of extraterritoriality.***

44.     Acis characterizes the purported fraudulent transfers that it seeks to recover as alleged transfers occurring offshore. *See* Second Amended Complaint at ¶¶ 80, 94, 98, 102, 278. The offshore nature of the alleged fraudulent transactions supports this Court's application of the presumption against extraterritoriality as it pertains to the claims against the Cayman Defendants.

45. Specifically, bankruptcy courts have held that a "trustee could not avoid [a] fraudulent transfer and recover that property if the center of gravity of the fraudulent transfer were outside of the United States." *In re CIL Ltd.*, 582 B.R. at 91 (quoting *In Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 543 B.R. 127, 154-55 (Bankr. S.D.N.Y. 2016). Because the center of gravity of the purported fraudulent transfers alleged by Acis is outside of the United States, Acis should not be permitted to exercise the Bankruptcy Code's avoidance provisions as applied to the Cayman Defendants.

46. Further, because many of the other claims asserted against the Cayman Defendants are grounded in the fraudulent transfer allegations, the doctrine of extraterritoriality also bars Counts 26, 31, 32, and 34, as well as Acis's request for a constructive trust. Acis's "alter ego" claim presents additional extraterritoriality concerns because the Cayman Defendants enjoy corporate separateness from the other parties to this lawsuit. *See supra* p. 16-20.

**E.   Additional grounds support dismissal of the Cayman Defendants from this lawsuit.**

47. For the reasons set forth above, the Second Amended Complaint should be dismissed as to Highland Advisor, Highland Management, and Highland CLO Holdings because the Cayman Defendants were not properly served. The Cayman Defendants should also be dismissed from this lawsuit because the Court lacks personal jurisdiction over them. Subject to and without waiver of the above, in an abundance of caution, the

Cayman Defendants direct the Court to the following additional grounds which support their dismissal from this lawsuit, which the Cayman Defendants plead in the alternative:

    a.    The Cayman Defendants, who lack jurisdictional ties to the United States, move for dismissal based on *forum non conveniens*;

    b.    Acis failed to plead viable fraudulent transfer claims against the Cayman Defendants;

    c.    Acis failed to allege a viable claim for "disregarding the corporate form/alter ego/collapsing doctrine/unjust enrichment against the Cayman Defendants;[3]"

    d.    Acis failed to allege viable claims for equitable relief against the Cayman Defendants; and

    e.    Acis's claims against the Cayman Defendants are barred by the applicable statute of limitations.

48.    In support of the foregoing alternative grounds for dismissal, Highland Advisor expressly incorporates by reference the arguments and authorities concerning grounds for dismissal of Counts 9-12, 26-27, 31-32 and 34 of the Second Amended Complaint, in addition to arguments and authorities concerning Acis's failure to plead viable claims for equitable relief and to satisfy the applicable statute of limitations, as set forth in the Motions to Dismiss filed by Highland Capital and Highland CLO Funding, Ltd., dated July 22, 2019.

49.    In support of the foregoing alternative grounds for dismissal, Highland Management expressly incorporates by reference the arguments and authorities concerning grounds for dismissal of Counts 17-20, 25-27, 31-32 and 34 of the Second

---

[3] *See* Count 32 of the Second Amended Complaint.

Amended Complaint, in addition to arguments and authorities concerning Acis's failure to plead viable claims for equitable relief and to satisfy the applicable statute of limitations, as set forth in the Motions to Dismiss filed by Highland Capital and Highland CLO Funding, Ltd., dated July 22, 2019.

50.     In support of the foregoing alternative grounds for dismissal, Highland CLO Holdings expressly incorporates by reference the arguments and authorities concerning grounds for dismissal of Counts 21-27, 31-32 and 34 of the Second Amended Complaint, in addition to arguments and authorities concerning Acis's failure to plead viable claims for equitable relief and to satisfy the applicable statute of limitations, as set forth in the Motions to Dismiss filed by Highland Capital and Highland CLO Funding, Ltd., dated July 22, 2019.

## IV.     Conclusion

51.     For the foregoing reasons, the Cayman Defendants respectfully request that this Court grant their Motion, and dismiss Highland Advisor, Highland Management, and Highland CLO Holdings from this action. The Cayman Defendants respectfully request any further relief consistent with that disposition.

DATED: July 22, 2019                              Respectfully submitted,

                                                 /s/ Michael K. Hurst
                                                 Holland N. O'Neil
                                                 State Bar No. 14864700
                                                 honeil@foley.com
                                                 Jason B. Binford
                                                 State Bar No. 24045499
                                                 jbinford@foley.com
                                                 FOLEY GARDERE
                                                 2021 McKinney Avenue, Suite 1600
                                                 Dallas, Texas 75201
                                                 Telephone: (214) 999-3000
                                                 Facsimile: (214) 999-4667

                                                 and

                                                 Michael K. Hurst
                                                 Texas Bar No. 10316310
                                                 mhurst@lynnllp.com
                                                 David S. Coale
                                                 Texas Bar No. 00787255
                                                 dcoale@lynnllp.com
                                                 Chisara Ezie-Boncoeur
                                                 Texas Bar No. 24103714
                                                 cezie-boncoeur@lynnllp.com
                                                 LYNN PINKER COX & HURST, LLP
                                                 2100 Ross Avenue, Suite 2700
                                                 Dallas, Texas 75201
                                                 Telephone: (214) 981-3800
                                                 Facsimile: (214) 981-3839

                                                 ATTORNEYS FOR HIGHLAND HCF
                                                 ADVISOR, LTD., HIGHLAND CLO
                                                 MANAGEMENT, LTD., AND
                                                 HIGHLAND CLO HOLDINGS, LTD.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served via ECF on July 22, 2019 on all parties of record.

*/s/Michael K. Hurst*
Michael K. Hurst

Holland N. O'Neil (TX 14864700)
Jason B. Binford (TX 24045499)
**FOLEY GARDERE**
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Ste. 1600
Dallas, Texas 75201
Telephone: (214) 999.3000
Facsimile: (214) 999.4667
honeil@foley.com

Michael K. Hurst (TX 10316310)
David S. Coale (TX 00787255)
Chisara Ezie-Boncoeur (TX 24103714)
**LYNN PINKER COX & HURST, LLP**
2100 Ross Avenue, Ste. 2700
Dallas, Texas 75201
Telephone: (214) 981.3800
Facsimile: (214) 981.3839
mhurst@lynnllp.com

**COUNSEL FOR HIGHLAND CAPITAL**
**MANAGEMENT, L.P.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 18-30264-SGJ-11 |
| | § | Case No. 18-30265-SGJ-11 |
| ACIS CAPITAL MANAGEMENT, L.P. | § | |
| AND ACIS CAPITAL MANAGEMENT | § | (Jointly Administered Under |
| GP, LLC, | § | Case No. 18-30264-SGJ-11) |
| | § | |
| DEBTORS. | § | Chapter 11 |
| | § | |

| | | |
|---|---|---|
| ACIS CAPITAL MANAGEMENT, L.P., | § | |
| ACIS CAPITAL MANAGEMENT GP, | § | |
| LLC, | § | Adversary No. 18-03078 |
| | § | |
| PLAINTIFFS, | § | (Consolidated with Adversary Nos. 18-|
| | § | 03212 & 19-03103) |
| VS. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, | § | |
| L.P., HIGHLAND CLO FUNDING, LTD. | § | |
| F/K/A ACIS LOAN FUNDING, LTD., | § | |
| HIGHLAND HCF ADVISOR, LTD., | § | |
| HIGHLAND CLO MANAGEMENT, LTD., | § | |
| HIGHLAND CLO HOLDINGS, LTD., CLO | § | |
| HOLDCO, LTD., NEUTRA, LTD., ACIS | § | |
| CLO 2014-3 LTD., ACIS CLO 2014-4 | § | |
| LTD., ACIS CLO 2014-5 LTD., ACIS CLO | § | |
| 2015-6 LTD., ACIS CLO 2014-3 LLC, | § | |
| ACIS CLO 2014-4 LLC, ACIS CLO 2014-5 | § | |
| LLC, AND ACIS CLO 2015-6 LLC, | § | |
| | § | |
| DEFENDANTS. | § | |
| | § | |

## DECLARATION V. OF CHISARA EZIE-BONCOEUR

STATE OF TEXAS       §
                        §
COUNTY OF DALLAS    §

        This declaration is being made under oath pursuant to 28 U.S.C. Section 1746. I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. The facts contained in this document are within my personal knowledge based on my review of official documents, and are true and correct:

        1.      My name is V. Chisara Ezie-Boncoeur. I am over the age of twenty-one, of sound mind and I am fully competent to make this oath and declaration and to testify to the matters stated herein. All facts set forth below are based on my personal knowledge.

        2.      I am an Associate at Lynn Pinker Cox & Hurst, LLP, which represents Highland HCF Advisor, Ltd., Highland CLO Management, Ltd., and Highland CLO Holdings, Ltd in the above referenced consolidated lawsuit.

        3.      Attached hereto as Exhibit A is a true and correct copy of *Extensions #14: Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Extensions")* to the Hague Service Convention. Extensions is available at https://www.hcch.net/en/instruments/conventions/status-table/extensions/?cid=17&mid=427, and was last accessed online on July 22, 2019.

        4.      Attached hereto as Exhibit B is a true and correct copy of *United Kingdom – Other Authorities (Art. 18)* to the Hague Service Convention, which is available at https://www.hcch.net/en/states/authorities/details3/?aid=681, and was last accessed online on July 22, 2019.

        I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 22, 2019.

                                    *V. Chisara Ezie-Boncoeur*
                                    V. Chisara Ezie-Boncoeur



# EXTENSIONS

## 14: Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters

Entry into force: 10-II-1969

N.B. In case a particular territorial unit is not mentioned in this table of extensions, it means that the application of the Convention has not (yet) been extended to that territorial unit.

| Territorial units | Extension | EIF | Auth | Res/D/N |
|---|---|---|---|---|
| Anguilla (UK) | 3-VIII-1982 | 2-X-1982 | | D |
| Bermuda (UK) | 20-V-1970 | 19-VII-1970 | | D |
| British Virgin Islands (UK) | 20-V-1970 | 19-VII-1970 | | D |
| Cayman Islands (UK) | 20-V-1970 | 19-VII-1970 | | D |
| Falkland Islands (UK) | 20-V-1970 | 19-VII-1970 | | D |
| [former British territories] | | 19-VII-1970 | | D |
| Gibraltar (UK) | 20-V-1970 | 19-VII-1970 | | D |
| Guernsey, Bailiwick of (UK) | 20-V-1970 | 19-VII-1970 | | D |
| Isle of Man (UK) | 20-V-1970 | 19-VII-1970 | | D |
| Jersey (UK) | 20-V-1970 | 19-VII-1970 | | D |
| Montserrat (UK) | 20-V-1970 | 19-VII-1970 | | D |
| Pitcairn (UK) | 20-V-1970 | 19-VII-1970 | | D |
| Saint Helena (UK) | 20-V-1970 | 19-VII-1970 | | D |
| Turks and Caicos Islands (UK) | 20-V-1970 | 19-VII-1970 | | D |

EXHIBIT

B

# AUTHORITY

## United Kingdom - Other Authorities (Art. 18)

<u>For England and Wales:</u>
The Senior Master
For the attention of the Foreign Process Section
Room E16
Royal Courts of Justice
Strand
LONDON WC2A 2LL
tel.: +44 207 947 6691 / 7786 / 6488 / 6327 / 1741
fax: +44 870 324 0025

<u>For Scotland:</u>
Scottish Government Justice Directorate
Central Authority & International Law Team
St. Andrew's House (GW15)
EDINBURGH EH1 3DG
Scotland, UK
tel.: +44 (131) 244 4829
fax: +44 (131) 244 4848

<u>For Northern Ireland:</u>
The Master (Queen's Bench and Appeals)
Royal Courts of Justice
BELFAST 1
Northern Ireland

<u>For the overseas territories</u> - with the following declarations:

"(a) In accordance with Article 18 of the Convention the authority shown against the name of each territory in the Annex (hereinafter severally called "the designated authority") is designated as the authority in that territory competent to receive requests for service in accordance with Article 2 of the Convention.
(b) The authority in each territory competent under Article 6 of the Convention to complete the Certificate of Service is the designated authority.
(c) In accordance with the provisions of Article 9 of the Convention, the designated Authority shall receive process sent through consular channels.
(d) With reference to the provisions of paragraphs (b) and (c) of Article 10 of the Convention, documents sent for service through official channels will be accepted in a territory listed in the Annex by the designated authority and only from judicial, consular or diplomatic officers of other Contracting States.
(e) The acceptance by the United Kingdom of the provisions of the second paragraph of Article 15 of the Convention shall equally apply to the territories named in the Annex.

The authorities designated in the Annex will require all documents forwarded to them for service under the provisions of the Convention to be in duplicate and, pursuant to the third paragraph of Article 5 of the Convention, will require the documents to be written in, or translated into, the English language."

*Annex:*

| | |
|---|---|
| Anguilla | The Registrar of the Supreme Court, Anguilla. |
| *Antigua* [1)] | *Please click here for the Central Authority of Antigua and Barbuda* |
| Bermuda | The Registrar of the Supreme Court, Bermuda. |
| *British Honduras (since 21 September 1981: Belize)* [2)] | -- |
| *British Solomon Islands (since 7 July 1978: the Solomon Islands)* [2)] | -- |
| British Virgin Islands | Registrar of the Supreme Court<br>Supreme Court Registry<br>No. 84 Main Street<br>P.O. Box 418<br>Road Town, Tortola,<br>British Virgin Islands VG1110<br>Tel: (284) 468-5001<br>Fax: (284) 468-4951 |
| Cayman Islands | The Clerk of the Courts, Grand Cayman, Cayman Islands |
| *Central and Southern Line Islands (since 12 July 1979: Kiribati)* [2)] | -- |
| Falkland Islands and Dependencies | The Registrar of the Supreme Court, Stanley, Falkland Islands. |
| *Fiji* [2)] | -- |
| Gibraltar | The Registrar of the Supreme Court, Gibraltar**\*** |
| *Gilbert and Ellice Islands (became respectively Kiribati (12 July 1979) and Tuvalu (1 October 1978))* [2)] | -- |
| Guernsey | The Bailiff, Bailiff's Office, Royal Court House, Guernsey, Channel Islands. |
| Isle of Man (as per 15 March 2010)<br>*(previous authority:*<br>*the First Deemster and Clerk of the Rolls)* | The Chief Registrar<br>Isle of Man Courts of Justice<br>Deemsters Walk<br>Douglas<br>ISLE OF MAN<br>IM1 3AR |
| Jersey | The Attorney General, Jersey, Channel Islands. |
| Montserrat | The Registrar of the High Court, Montserrat. |

| Pitcairn | The Governor and Commander-in-Chief, Pitcairn. |
|---|---|
| St.Helena and Dependencies | The Supreme Court, St.Helena. |
| *St.Lucia* [2] | -- |
| *St.Vincent* [1] | *please click here for the Central Authority of St.-Vincent and the Grenadines* |
| *Seychelles* [3] | *please click here for the Central Authority of Seychelles* |
| Turks and Caicos Islands | The Registrar of the Supreme Court, Turks and Caicos Islands. |

[1] This country achieved independence and declared that it considers itself bound by the Convention.

[2] This country achieved independence, but has not declared that it considers itself bound by the Convention.

[3] This country achieved independence and acceded to the Convention.

**\*** By Note dated 26 August 1997, the Embassy of Spain at The Hague informed the depositary of the following declaration: "España no reconoce, para la aplicación del presente Convenio, como autoridad al Tribunal Supremo de Gibraltar, y en consecuencia, cualquier documentación intervenida por dicho organo se considerará como nula y no existente."

By Note dated 28 October 1997, the British Embassy at The Hague informed the depositary of the following:

"Her Britannic Majesty's Embassy present their compliments to the Ministry of Foreign Affairs of the Kingdom of the Netherlands as depositary of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters done at The Hague on 15 November 1965 (hereinafter referred to as the `Convention'), and have the honour to refer to the Ministry's Note No 5/1997 of 1 September 1997 communicating the recent declaration by Spain to the effect that it does not recognise the Supreme Court of Gibraltar as an authority for the purposes of the Convention.

Under Article 18 of the Convention a Contracting State may designate `other authorities in addition to the Central Authority and shall determine the extent of their competence'. The Registrar of the Supreme Court of Gibraltar was designated as such authority for Gibraltar by the United Kingdom in 1970.

The Kingdom of Spain ratified the Convention in 1987, and has made no previous objection to the United Kingdom's pre-existing designation of the Supreme Court of Gibraltar. In such circumstances, the United Kingdom is of the view that Spain may not object legitimately to this designation now. Thus the Supreme Court of Gibraltar remains the United Kingdom's designated authority for Gibraltar for the purposes of the Convention.

Her Britannic Majesty's Embassy avail themselves of this opportunity to renew to the Ministry of Foreign Affairs of the Kingdom of the Netherlands the assurances of their highest consideration."

This page was last updated on: 11 June 2019

## Conventions (incl. Protocols and Principles)

Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters [14]