Mark M. Maloney (GA 468104) (admitted *pro hac vice*)
Rebecca Matsumura (TX 24098053)
**KING & SPALDING LLP**
1180 Peachtree Street NE
Atlanta, GA 30309
Tel: 404-572-4600
Fax: 404-572-5100
mmaloney@kslaw.com

**COUNSEL FOR HIGHLAND CLO FUNDING LTD.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § | Case No. 18-30264-SGJ-11 |
| | § | Case No. 18-30265-SGJ-11 |
| ACIS CAPITAL MANAGEMENT, L.P., | § | |
| ACIS CAPITAL MANAGEMENT GP, | § | (Jointly Administered Under |
| LLC, | § | Case No. 18-30264-SGJ-11) |
| | § | |
| DEBTORS | § | Chapter 11 |

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, | § | |
| L.P. AND HIGHLAND CLO FUNDING | § | |
| LTD., | § | |
| | § | |
| PLAINTIFFS | § | **Adversary No. 18-03078-sgj** |
| | § | |
| v. | § | |
| | § | |
| ROBIN PHELAN, CHAPTER 11 | § | |
| TRUSTEE | § | |
| | § | |
| DEFENDANT | § | |
| | § | |
| | § | |
| ROBIN PHELAN, CHAPTER 11 | § | |
| TRUSTEE, | § | |
| | § | |
| THIRD PARTY PLAINTIFF, | § | |
| | § | |
| v. | § | |
| | § | |
| HIGHLAND HCF ADVISOR, LTD. | § | |
| HIGHLAND CLO HOLDINGS, LTD., AND | § | |
| HIGHLAND CLO MANAGEMENT, LTD. | § | |
| | § | |
| THIRD PARTY DEFENDANTS. | § | |

## HIGHLAND CLO FUNDING, LTD.'S MOTION TO
## DISMISS SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT

## TABLE OF CONTENTS

FACTUAL BACKGROUND ................................................................................................... 1

I.     The Relationship Between Acis and HCLOF .................................................. 1

II.    The Thwarted Reset and Redemption Attempts ............................................. 3

III.   The Claims Asserted Against HCLOF ............................................................ 4

RESERVATION OF RIGHTS ............................................................................................ 4

LEGAL STANDARD ......................................................................................................... 5

ARGUMENT ...................................................................................................................... 6

I.     Acis Has Failed To Allege Fraudulent Transfers of the ALF PMA and ALF Shares. ................................................................................................................ 7

     A.    Acis Has Failed To Allege That Value Left the Debtors' Estates Via the Alleged Transfers. ........................................................................ 7

     B.    Acis Does Not Allege Fraudulent Intent Adequately. .......................... 12

II.    Acis Has Failed To Allege Alter Ego, Collapsing Doctrine, or Unjust Enrichment. ........ 15

     A.    Acis Does Not Adequately Allege Alter Ego. .................................... 15

     B.    The Collapsing Doctrine Is Not Pleaded Adequately. ......................... 21

     C.    Unjust Enrichment Is Not Pleaded Adequately. ................................. 22

III.   The Presumption Against Extraterritoriality Mandates Dismissal of Counts 9–16, 26, 31, 32, and 34. ................................................................................... 22

IV.   Count 33 Should Be Dismissed Because Acis Is Not Entitled to Recoveries Under Section 362(k) of the Bankruptcy Code. ........................................................ 25

V.    Acis Is Not Entitled to Remedies With Respect to Any Claim that Is Dismissed. ........... 27

VI.   Acis's Request For a Constructive Trust Should Be Denied. ......................... 27

CONCLUSION ................................................................................................................. 28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 1701 Commerce, LLC*,
    511 B.R. 812 (Bankr. N.D. Tex. 2014) ..................................................................7

*A.I. Credit Consumer Disc. Co. v. Premiere Foods, Inc.*,
    Civ. No. 04-4049 (WHW), 2007 WL 3256733 (D.N.J. Nov. 5, 2007) ...................................8

*ADP Commercial Leasing, LLC v. Obeid*,
    Case No. 14-10549, 2016 WL 74880 (E.D. Mich. Jan. 7, 2016)..............................................8

*Ahmed v. Shah*,
    No. 01-13-00995-CV, 2015 WL 222171 (Tex. App. Jan. 15, 2015)......................................22

*Airport Blvd. Apts. Ltd. v. NE 40 Partners, L.P. (In re NE 40 Partners, L.P.)*,
    440 B.R. 124 (Bankr. S.D. Tex. 2010) .................................................................5, 6

*Alberto v. Diversified Grp., Inc.*,
    55 F.3d 201 (5th Cir. 1995) ...................................................................16

*Allan v. Archer-Daniels-Midland Co. (In re Commodity Merchants, Inc.)*,
    538 F.2d 1260 (7th Cir. 1976) .................................................................7, 8

*In re Amberjack Interests, Inc.*,
    326 B.R. 379 (Bankr. S.D. Tex. 2005) .........................................................25

*Andrews v. RBL, L.L.C. (In re Vista Bella, Inc.)*,
    511 B.R. 163 (Bankr. S.D. Ala. 2014)..........................................................9

*ASARCO LLC v. Ams. Min. Corp.*,
    382 B.R. 49 (S.D. Tex. 2007), *on reconsideration in part*,
    396 B.R. 278 (S.D. Tex. 2008) ...............................................................15, 20

*Baker v. ABC Provider DFW, LLC*,
    Case No. 4:13-CV-288, 2014 WL 1267302 (E.D. Tex. Mar. 26, 2014) ...............................17

*Baker v. Great N. Energy, Inc.*,
    Civil Action No. 3:14-CV-0240-B, 2015 WL 11120878
    (N.D. Tex. June 18, 2015)....................................................................6, 13

*Barclay v. Swiss Fin. Corp. Ltd. (In re Midland Euro Exch. Inc.)*,
    347 B.R. 708 (Bankr. C.D. Cal. 2006)..........................................................23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................17

*Brandon v. Interfirst Corp.*,
    858 F.2d 266 ..............................................................................................................14

*Burchinal v. PJ Trailers-Seminole Mgmt. Co.*,
    LLC, 372 S.W.3d 200 (Tex. App. 2012) ...................................................................20

*Brunswick Corp. v. Vineberg*,
    370 F.2d 605 (5th Cir. 1967) .....................................................................................6

*Carter v. Target Corp.*,
    541 F. App'x 413 (5th Cir. 2013) ............................................................................12

*Castleberry v. Branscum*,
    721 S.W.2d 270 (Tex. 1986)....................................................................................15

*Causey v. Sewell Cadillac-Chevrolet, Inc.*,
    394 F.3d 285 (5th Cir. 2004) .....................................................................................1

*Chaney v. Dreyfus Serv. Corp.*,
    595 F.3d 219 (5th Cir. 2010) ...................................................................................14

*Chemtex, LLC v. St. Anthony Enterprises, Inc.*,
    490 F. Supp. 2d 536 (S.D.N.Y. 2007)........................................................................9

*Coast Cities Truck Sales v. Navistar Int'l Transp. Co. (In re Coast Cities Truck*
    *Sales, Inc.)*, 147 B.R. 674 (D.N.J. 1992) ..................................................................8

*Coca-Cola Co. v. Harmar Bottling Co.*,
    218 S.W.3d 671 (Tex. 2006)....................................................................................23

*Commodore Int'l Ltd. v. Transpacific Co. Ltd. (In re Commodore Int'l Ltd.)*,
    No. 00CIV.1679(SAS), 2000 WL 977681 (S.D.N.Y. July 17, 2000) ......................24

*Corder v. BBG Commc'ns, Inc.*,
    Civil Action No. W-11-CA-00264, 2012 WL 3843714
    (W.D. Tex. July 30, 2012) .......................................................................................16

*Cox v. Bank of Am., N.A.*,
    Civil Action H-16-2624, 2017 WL 1622043 (S.D. Tex. May 2, 2017)....................12

*Davaco, Inc. v. AZ3, Inc.*,
    Civil Action No. 3:07-cv-803, 2008 WL 2243382 (N.D. Tex. May 30, 2008) ........16

*de Fontbrune v. Wofsy*,
    838 F.3d 992 (9th Cir. 2016), *as amended*
    *on denial of reh'g and reh'g en banc* (Nov. 14, 2016) ...........................................16

*Edwards v. Fed. Home Loan Mortg. Corp. (In re LiTenda Mortg. Corp.),*
  246 B.R. 185 (Bankr. N.J. 2000), *aff'd* 276 F.3d 578 (3d Cir. 2001)......................................8

*EEOC v. Arabian Am. Oil Co.,*
  499 U.S. 244 (1991) ........................................................................................22

*Emke v. Compana, L.L.C.,*
  Civil Action No. 3:06-CV-1416-L, 2007 WL 2781661
  (N.D. Tex. Sept. 25, 2007)..............................................................................19

*Faulkner v. Kornman (In re The Heritage Org., L.L.C.),*
  413 B.R. 438 (Bankr. N.D. Tex. 2009)..............................................................16

*First RepublicBank Corp. v. NCNB Texas Nat'l Bank (In re First RepublicBank
  Corp.),* 113 B.R. 277 (Bankr. N.D. Tex. 1989) ...........................................25, 26, 27

*Flourine On Call, Ltd. v. Fluorogas Ltd.,*
  380 F.3d 849 (5th Cir. 2004) ...........................................................................19

*In re Freemyer Indus. Pressure, Inc.,*
  281 B.R. 262 (Bankr. N. D. Tex. 2002).........................................................25, 27

*Garner v. Knoll, Inc. (In re Tusa-Expo Holdings, Inc.),*
  2014 WL 172276 (Bankr. N.D. Tex. Jan. 15, 2014).......................................25, 26

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.,*
  128 F.3d 1074 (7th Cir. 1997) ........................................................................5, 6

*Gierum v. Glick (In re Glick),*
  568 B.R. 634 (Bankr. N.D. Ill. 2017) ..............................................................5, 7

*Global Oil Tools, Inc. v. Barnhill,*
  Civil Action Nos. 12:1507, 12–3041,
  2013 WL 3070838 (E.D. La. June 17, 2013)......................................................19

*Goodman v. H.I.G. Capital, LLC (In re Gulf Fleet Holdings, Inc.),*
  491 B.R. 747 (Bankr. W.D. La. 2013)....................................................... *passim*

*Grothues v. IRS (In re Grothues),*
  226 F.3d 334 (5th Cir. 2000) ...........................................................................15

*U.S. ex rel. Grubbs v. Kanneganti,*
  565 F.3d 180 (5th Cir. 2009) .............................................................................6

*Harris v. Pietri (In re Pietri),*
  59 B.R. 69 (M.D. La. 1986)...............................................................................8

iv

*In re Hassan,*
  No. 04-20332-7, 2010 WL 5348761 (Bankr. D. Kan. Dec. 21, 2010) ..................................27

*Hometown 2006-1 1925 Valley View, LLC v. Prime Income Asset Mgmt., LLC,*
  847 F.3d 302 (5th Cir. 2017) ..................................................................................................8

*Ind. Bell Tel. Co., Inc. v. Lovelady,*
  No. SA–05–285, 2006 WL 485305 (W.D. Tex. Jan. 11, 2006) ................................................5

*Janvey v. Alguire,*
  846 F. Supp. 2d 662 (N.D. Tex. 2011) ....................................................................................6

*Janvey v. Nanes,*
  Civil Action No. 3:15-CV-3171-N,
  2016 WL 9527979 (N.D. Tex. Oct. 5, 2016) ..........................................................................16

*Johnston Environmental Corp. v. Knight* (*In re Goodman*),
  991 F.2d 613 (9th Cir. 1993) ..................................................................................................27

*Jove Engineering, Inc. v. I.R.S.,*
  92 F.3d 1539 (11th Cir. 1996) ................................................................................................27

*KCM Fin. LLC v. Bradshaw,*
  457 S.W.3d 70 (Tex. 2015)......................................................................................................27

*LaMonica v. CEVA Grp. PLC (In re CIL Ltd.),*
  582 B.R. 46 (Bankr. S.D.N.Y. 2018)................................................................................23, 24

*Lennard v. Yeung,*
  Case No. 10-09322 MMM, 2011 WL 13217784 (C.D. Cal. June 7, 2011)............................17

*LMS Commodities DMCC v. Libyan Foreign Bank,*
  1:18-CV-679-RP, 2019 WL 1925499 (W.D. Tex. Apr. 30, 2019)..........................................16

*Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372 (Tex. 1984) ......................................................18, 20

*Marmon v. Mustang Aviation, Inc.,*
  430 S.W.2d 182 (Tex. 1968)....................................................................................................23

*Matthews Constr. Co., Inc. v. Rosen,*
  796 S.W.2d 692 (Tex. 1990)....................................................................................................20

*In re MD Promenade, Inc.,*
  No. 08-34113-SGJ-7, 2009 WL 80203 (Bankr. N.D. Tex. Jan. 8, 2009)................................25

*Mobil Oil Corp. v. Linear Films, Inc.,*
  718 F. Supp. 260 (D. Del. 1989)..............................................................................................20

v

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992) ................................................................................22

*Morrison v. Nat'l Australia Bank Ltd.*,
  561 U.S. 247 (2010)................................................................................23

*O'Connell v. Arthur Andersen, LLP (In re: AlphaStar Ins. Grp., Ltd.)*,
  383 B.R. 231 (Bankr. S.D.N.Y. 2008) ....................................................14

*Official Comm. of Unsecured Creditors of Hydrogen, L.L.C. v. Blomen (In re Hydrogen, L.L.C.)*, 431 B.R. 337 (Bankr. S.D.N.Y. 2010) ....................................11

*Palmco Corp. v. Am. Airlines, Inc.*,
  983 F.2d 681 (5th Cir. 1993) ..................................................................22

*Pelliccione v. Watson (In re Watson)*,
  22 B.R. 938 (Bankr. M.D. Fla. 1982) ......................................................8

*Quilling v. Stark*,
  Civil Action No. 3:05-CV-1976-L, 2006 WL 1683442
  (N.D. Tex. June 19, 2006).........................................................................5

*Rafter Seven Ranches L.P. v. WNL Investments L.L.C. (In re Rafter Seven Ranches L.P.)*, 414 B.R. 722 (10th Cir. BAP 2009)..............................................26

*Riquelme Valdes v. Leisure Res. Grp., Inc.*,
  810 F.2d 1345 (5th Cir. 1987) ................................................................18

*Robinson v. Chicago Hous. Auth.*,
  No. 94 C 4781, 1995 WL 360706 (N.D. Ill. June 14, 1995) ....................8

*In re ROFIN Series C Bonds Sec. Interest Litig.*,
  182 F.3d 366 (5th Cir. 1999) ............................................................22, 28

*In re San Angelo Pro Hocky Club, Inc.*,
  292 B.R. 118 (Bankr. N.D. Tex. 2003)....................................................25

*SB Liquidation Tr. v. Preferred Bank (In re Syntax-Brillian Corp.)*,
  Bankruptcy No. 08-11407(BLS), 2011 WL 3101809 (Bankr. D. Del. July 25, 2011), *aff'd in part, vacated in part on other grounds* 573 F. App'x 154 (3d Cir. 2014)...............................................................................................21

*Searcy v. Knight (In re Am. Int'l Refinery)*,
  402 B.R. 728 (Bankr. W.D. La. 2008)......................................................15

*Sears, Roebuck & Co. v. Sears*,
  744 F. Supp. 1297 (D. Del. 1990)...........................................................20

vi

*SEC v. Faulkner,*
  Civil No. 3:16-CV-1735-D, 2018 WL 5458789 (N.D. Tex. Oct. 29, 2018) ........................28

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
  513 B.R. 222 (S.D.N.Y. 2014) ..........................................................................................23

*Sell v. Universal Surveillance Sys., LLC,*
  No. 1:16-CV-660-RP, 2017 WL 3712188 (W.D. Tex. July 6, 2017)...................................16

*Shanghai Hailian Elec. Tools Co. v. Home Depot U.S.A., Inc.,*
  Civil Action No. 3:16-CV-1451-D,
  2017 WL 588656 (N.D. Tex. Feb. 13, 2017)........................................................................22

*Sharp Int'l Corp. v. State St. Bank and Tr. Co. (In re Sharp Int'l Corp.),*
  403 F.3d 43 (2d Cir. 2005)...................................................................................................5

*Societe General plc v. Maxwell Commc'n Corp. (In re Maxwell Commc'n Corp.*
  *plc),* 186 B.R. 807 (S.D.N.Y. 1995), *amended on reconsideration,* Case No.
  13–11272–JLG, 2018 WL 3031094 (Bankr. S.D.N.Y. June 15, 2018) ................................23

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.,*
  365 F.3d 353 (5th Cir. 2004) ..............................................................................................15

*SSP Partners v. Gladstrong Invs. (USA) Corp.,*
  275 S.W.3d 444 (Tex. 2008).........................................................................................15, 20

*St. Paul Fire & Marine Ins. Co. v. Labuzan,*
  579 F.3d 533 (5th Cir. 2009) ..............................................................................................26

*Steadfast Ins. Co. v. Limestone Grp. SW Bluffs, LC,*
  No. 3:08-CV-0569-N, 2008 WL 11349994 (N.D. Tex. Oct. 31, 2008) ..................................5

*StrikeForce Techs., Inc. v. PhoneFactor, Inc.,*
  Civ. A. No. 13-490-RGA-MPT, 2013 WL 6002850 (D. Del. Nov. 13, 2013).......................18

*Sullivan v. Willock (In re Wey),*
  854 F.2d 196 (7th Cir. 1988) .............................................................................................7, 8

*Superior Crewboats Inc. v. Primary P& I Underwriters (In re Superior*
  *Crewboats, Inc.),* 374 F.3d 330 (5th Cir. 2004)....................................................................14

*Tel–Phonic Services, Inc. v. TBS Int'l, Inc.,*
  975 F.2d 1134 (5th Cir. 1992) ..............................................................................................6

*U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.,*
  125 F.3d 899 (5th Cir. 1998) ................................................................................................6

*Trevino v. Merscorp, Inc.,*
  583 F. Supp. 2d 521 (D. Del. 2008)......................................................................................19

vii

*Truk Int'l Fund LP v. Wehlmann*,
   737 F. Supp. 2d 611 ...............................................................................................2

*U.S. Bank Nat. Ass'n v. Verizon Commc'ns, Inc.*,
   761 F.3d 409 (5th Cir. 2014), *as revised* (Sept. 2, 2014).......................................20

*U.S. KingKing, LLC v. Precision Energy Servs., Inc.*,
   555 S.W.3d 200 (Tex. App. 2018)..........................................................................19

*U.S. v. Wallace*,
   961 F. Supp. 969 (N.D. Tex. 1996) .........................................................................18

*Vos v. Lee*,
   No. 07-CV-804 (RLM), 2009 WL 10640615 (E.D.N.Y. Dec. 23, 2009)................................9

*W. Oil & Gas JV, Inc. v. Castlerock Oil Co.*,
   91 F. App'x 901 (5th Cir. 2003) .............................................................................20

*WesternGeco LLC v. ION Geophysical Corp.*,
   138 S.Ct. 2129 (2018)............................................................................................23

*Williams v. WMX Techs., Inc.*,
   112 F.3d 175 (5th Cir. 1997) ...................................................................................6

**Statutes**

11 U.S.C. § 362..................................................................................................25, 26, 27

11 U.S.C. § 544...........................................................................................................23

11 U.S.C. § 548..................................................................................................5, 13, 23

11 U.S.C. § 550.....................................................................................................23, 27

Investment Advisers Act...........................................................................................1, 2

Texas Business & Commerce Code § 24.0005............................................................13

Texas Uniform Fraudulent Transfers Act...............................................................5, 13

**Other Authorities**

Federal Rule of Civil Procedure 8 ................................................................11, 15, 17, 19

Federal Rule of Civil Procedure 9 .................................................................... *passim*

Federal Rule of Civil Procedure 44.1 ........................................................................10, 24

viii

Highland CLO Funding, Ltd. ("HCLOF") hereby moves to dismiss the Second Amended Complaint [ECF No. 157] (the "SAC") as to HCLOF. The allegations in the SAC are presumed true for the purposes of this motion.[1]

## FACTUAL BACKGROUND

### I. The Relationship Between Acis and HCLOF

Highland CLO Funding, Ltd. f/k/a Acis Loan Funding, Ltd. or "ALF" (collectively referred to herein as "HCLOF") is a registered closed-end investment fund incorporated under the laws of Guernsey. SAC ¶ 9. HCLOF holds equity notes issued by certain collateralized loan obligations ("CLOs"). *Id.* ¶¶ 9, 56.

Acis is a registered investment advisor that manages the CLOs. *Id.* ¶ 51. Acis' authority to manage the CLOs is governed by certain portfolio management agreements, established according to criteria specified in the applicable indentures (the "CLO PMAs"). *Id.* ¶ 51. The plain text of the CLO PMAs requires that Acis, as the portfolio manager of the CLOs, "comply with all terms and conditions of the Indenture affecting the duties and functions that have been delegated to it thereunder." *E.g.*, Ex. 1 (CLO-3 PMA) § 3(b).[2] Acis also agreed to act as an "investment advisor" within the meaning of the Investment Advisers Act. *Id.* § 17(b)(i). In return for CLO management services, Acis received management fees, its primary source of income. SAC ¶ 51.

---

[1] HCLOF moved to withdraw the reference at the inception of this lawsuit and is filing a renewed motion to withdraw the reference simultaneously with this motion to dismiss. The Bankruptcy Court has stated that it will issue a report and recommendation, and await a determination from the district court, on the motion to withdraw the reference before considering this motion to dismiss. Hr'g Tr. (June 10, 2019) at 22:21–23:1. For the avoidance of doubt, HCLOF reiterates that it does not consent to the entry of final orders by the Bankruptcy Court on the counts subject to the motion to withdraw the reference.

[2] Citations to "Ex. __" refer to exhibits to the Declaration of Rebecca Matsumura, filed concurrently with this motion. These exhibits are numbered, whereas exhibits to the SAC are lettered. The Court may properly consider the CLO PMAs on a motion to dismiss: "Documents that are attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *see also, e.g.*, SAC ¶ 51 n.8, 25, 27 (allegations citing the CLO PMAs). The CLO-3 PMA is cited as an example; the relevant provisions are the identical in each CLO PMA discussed in the SAC.

Because Acis has no employees, it sub-contracted with Highland Capital Management ("Highland") to provide the management services called for under the CLO PMAs. *Id.* ¶ 53.

Separately, Acis used to administer and advise HCLOF's investments pursuant to a Portfolio Management Agreement dated December 22, 2016 (the "ALF PMA"). *Id.* ¶ 83; *id.* Ex. F. The ALF PMA required Acis to act as a fiduciary of HCLOF, and Acis' management of HCLOF's investments was subject at all times to HCLOF's "policies and control." *Id.* Ex. F § 6; *see also id.* §§ 2, 5. Furthermore, while section 5 of the ALF PMA granted Acis authority to act on behalf of HCLOF with respect to its investments, the prefatory language in that section qualified that the authority granted to Acis was "[s]ubject at all times to (i) provisions of applicable law, and (ii) the Investment Policy" of HCLOF. *Id.* Ex. F § 5. Acis did not earn any fees under the ALF PMA. *See generally id.* As in any other agency relationship, HCLOF retained ultimate control over its assets and Acis performed an advisory and administrative role to facilitate HCLOF's ultimate investment policy. *See* SAC Ex. Q at 73:19–74:21.

Acis served HCLOF as portfolio manager under the ALF PMA until ALF was reconstituted in connection with a substantial third-party investment. HCLOF understood at that time that purchasing back Acis's *de minimis* investment in HCLOF, and entering a new portfolio management agreement with another entity, (i) was a condition to the proposed third-party investment, (ii) would improve the marketability of the fund, and (iii) was a necessary update to comply with risk-retention rules under U.S. law. *See* SAC Ex. Q at 42:18–50:18; Ex. 2 (Board Minutes from October 6, 2017) § 6.4.[3]

---

[3] The Court may properly consider the October 6, 2017 Board Minutes on a motion to dismiss: "When considering the motions to dismiss, the court is to consider, in addition to the allegations of the complaint, the full text of documents partially quoted in the complaint . . . ." *Truk Int'l Fund LP v. Wehlmann*, 737 F. Supp. 2d 611, 616 (N.D. Tex. 2009), *aff'd*, 389 F. App'x 354 (5th Cir. 2010); *see* SAC ¶ 93 n.23 (partially quoting the October 6, 2017 Board Minutes).

## II.     The Thwarted Reset and Redemption Attempts

HCLOF's equity notes are profitable when the interest paid by the underlying loan asset investments exceeds the payments to the secured noteholders. SAC ¶ 56. When the interest rates on the underlying loans rise or fall, the internal distribution of income may become misaligned with the prevailing market rates. Under the indentures, equity noteholders may recalibrate the notes with prevailing market conditions using one of two techniques: (1) a "reset," which involves lowering the interest rates assigned to the senior notes and thus raising the yield accruing to the equity notes, and (2) a redemption call, whereby the CLOs are liquidated or repackaged, and the proceeds are invested elsewhere. *E.g.*, Ex. 3 (CLO-3 Indenture) § 9.2.[4] Exercising its rights under the Indenture, HCLOF had priced and was ready to close a reset in January 2018. *See* SAC Ex. Q at 66:16–68:10. But on January 30, 2018, Joshua Terry filed involuntary bankruptcy petitions against Acis, thwarting the contemplated reset. *See* SAC ¶ 30; *id.* Ex. Q at 68:7–69:2.

On April 30, 2018, HCLOF issued written instructions to the indenture trustee, the applicable CLO issuer, and Acis. SAC ¶ 107. The Indenture required Acis to "direct the sale (and the manner thereof) of all or part of the Collateral Obligations and other Assets" upon receipt of this notice from the equity noteholders. Ex. 3 (CLO-3 Indenture) § 9.2(b). Disregarding this duty, on May 22, 2018, Acis (through its Chapter 11 Trustee) responded that it would not effectuate any redemption and asserted that the redemption notices contained certain technical defects. SAC ¶ 109.

On May 30, 2018, HCLOF filed the Original Complaint in this adversary proceeding, seeking to compel the Chapter 11 Trustee to comply with Acis's obligation to effect the requested

---

[4] The Court may properly consider the Indenture on a motion to dismiss. *See supra* n.2; SAC ¶¶ 51 & n.7, 107, 108, 119 (allegations citing the Indentures). The CLO-3 Indenture is cited as an example; the relevant provisions are identical in each Indenture discussed in the SAC.

redemption. *Id.* ¶ 110.[5]  On May 31, 2018, the Bankruptcy Court, *sua sponte*, issued a temporary restraining order, enjoining all parties from taking any action in furtherance of the redemptions for a period of 14 days. *Id.* ¶ 112.  On June 6, 2018, the Bankruptcy Court entered a second temporary restraining order preventing the redemption until at least June 15, 2018. *Id.* ¶ 113.  HCLOF withdrew its redemption notices on June 13, 2018. *Id.* ¶ 116.  HCLOF reissued the redemption notices on June 15, 2018. *Id.* ¶ 119.  Acis again refused to comply with its obligation to effectuate the reset.

### III.    The Claims Asserted Against HCLOF

In its Second Amended Complaint, Acis asserts counterclaims against HCLOF, arising from three alleged transactions.  First, Counts 9–12 allege that by terminating the ALF PMA and executing a new PMA with a Highland affiliate, HCLOF made a constructive or intentional fraudulent transfer.  *Id.* ¶¶161–178.  Second, Counts 13–16 allege that by buying back a small number of ALF Shares from Acis at market value and later selling a much larger number of shares at the same price to another investor, HCLOF made constructive or intentional fraudulent transfer. *Id.* ¶¶179–196.  Third, Count 33 alleges that HCLOF violated the automatic stay by requesting optional redemptions.  *Id.*  ¶¶ 281–288.  Finally, Acis seeks various forms of relief as separate "counts." *Id.* ¶¶ 238–244, 269–280, 289–291, 297–302.

### <u>RESERVATION OF RIGHTS</u>

For all of the reasons articulated in *Highland CLO Funding, Ltd.'s Brief in Support of its Motion to Dismiss* [ECF No. 44], HCLOF contends that this Court has no personal jurisdiction

---

[5] The SAC is the live complaint in this adversary proceeding, which is a consolidation of claims previously pending in adversary proceeding No. 18-3078 (the subject of a previous motion to withdraw the reference), adversary proceeding No. 18-3212 (which involves claims related to alleged violations of the automatic stay), and adversary proceeding No. 19-3101 (which involves an administrative expense claim by Highland, not HCLOF).

over HCLOF. HCLOF recognizes that the Bankruptcy Court has ruled against it, and reserves all rights on this issue. Nothing in this motion should be construed to waive this defense.

## LEGAL STANDARD

Courts in the Fifth Circuit apply the heightened Rule 9(b) pleading requirement to alleged fraudulent transfers under section 548(a)(1)(A). *See Goodman v. H.I.G. Capital, LLC (In re Gulf Fleet Holdings, Inc.)*, 491 B.R. 747, 767 (Bankr. W.D. La. 2013) ("Rule 9(b)'s heightened pleading requirements apply to fraudulent transfer claims grounded on allegations of actual fraud." (citation omitted)); *Airport Blvd. Apts. Ltd. v. NE 40 Partners, L.P. (In re NE 40 Partners, L.P.)*, 440 B.R. 124, 128 (Bankr. S.D. Tex. 2010) (applying Rule 9(b) to actual fraudulent transfer and noting that the Fifth Circuit "reads Rule 9(b) strictly"). Constructive fraud claims are also subject to the heightened pleading requirement under Rule 9(b). *Ind. Bell Tel. Co., Inc. v. Lovelady*, No. SA–05–285, 2006 WL 485305, at * 1 (W.D. Tex. Jan. 11, 2006) (holding that Rule 9(b) applies to both constructive and actual fraudulent transfer claims); *see also Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078–80 (7th Cir. 1997) (applying Rule 9(b) to a constructive fraudulent transfer claim); *Gierum v. Glick (In re Glick)*, 568 B.R. 634, 657 (Bankr. N.D. Ill. 2017) (noting that Rule 9(b) applies to both constructive and fraudulent transfer claims). Similarly, Rule 9(b) applies to claims under the Texas Uniform Fraudulent Transfers Act. *See, e.g.*, *Steadfast Ins. Co. v. Limestone Grp. SW Bluffs, LC*, No. 3:08-CV-0569-N, 2008 WL 11349994, at *2 (N.D. Tex. Oct. 31, 2008) (dismissing TUFTA claims for failure to plead with particularity); *Ind. Bell Tel. Co.*, 2006 WL 485305, at *1 (dismissing TUFTA claims for failure to comply with Rule 9(b)); *Quilling v. Stark*, Civil Action No. 3:05-CV-1976-L, 2006 WL 1683442, at *5 (N.D. Tex. June 19, 2006) (same); *see also, e.g., Sharp Int'l Corp. v. State St. Bank and Tr. Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005) (dismissing claims brought under New York UFTA for failure to plead in conformance with Rule 9(b)); *Gen. Elec. Capital Corp.*, 128 F.3d at 1078–79

5

(applying to Rule 9(b) pleading standard to Illinois UFTA claims).[6]

Federal Rule of Civil Procedure 9(b) "has long played [a] screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). The Fifth Circuit "appl[ies] Rule 9(b) to fraud complaints with 'bite' and 'without apology.' " *Id.* (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)). "Rule 9(b) requires sufficient factual detail to lend some measure of substantiation to a claim that the defendant committed fraud." *Baker v. Great N. Energy, Inc.*, Civil Action No. 3:14-CV-0240-B, 2015 WL 11120878, at *3 (N.D. Tex. June 18, 2015) (citation omitted). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1998) (quoting *WMX Techs.*, 112 F.3d at 179); *see also NE 40 Partners*, 440 B.R. at 128. In other words, Rule 9(b) requires the plaintiffs to allege "the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.' " *Tel-Phonic Services, Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992).

## ARGUMENT

Rule 9(b)'s heightened pleading standard applies to Counts 9, 10, 11, 12, 13, 14, 15, and 16 of the SAC because these claims all sound in fraud. It also applies to Counts 26, 31, 32, and 34 to the extent these counts are based fraud allegations. *See Gulf Fleet Holdings*, 491 B.R. at 761

---

[6] To be clear, courts in the Fifth Circuit do not apply Rule 9(b) to every complaint that alleges a fraudulent transfer. Rather, the cases make a distinction between, on the one hand, fraudulent transfer claims brought against "ostensibly nonculpable third parties" who received property that was alleged fraudulently transferred and, on the other hand, cases like this one where the named defendants are accused of engaging in fraud. *See Janvey v. Alguire*, 846 F. Supp. 2d 662, 677 n.13 (N.D. Tex. 2011) (explaining this distinction). In the latter case, Fifth Circuit courts apply Rule 9(b). *Id.* This is particularly true where, as here, the complaint "alleg[es] a scheme to divest [a company] of all of its valuable assets . . . so that [a creditor's] opportunity to collect on its debt [i]s diminished." *Id.* (quoting *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 608 (5th Cir. 1967)); *see also id.* at 677 n.14 (explaining that courts in other circuits make the same distinction).

("Rule 9(b) applies not only to fraud claims, but also to "non-fraud" claims that are based upon allegations of fraud."). These counts should all be dismissed because the SAC does not satisfy Rule 9(b)'s basic requirements. For this and the other reasons set forth below, the SAC fails to state a claim against HCLOF as a matter of law.

## I. Acis Has Failed To Allege Fraudulent Transfers of the ALF PMA and ALF Shares.

### A. Acis Has Failed To Allege That Value Left the Debtors' Estates Via the Alleged Transfers.

To allege a fraudulent transfer adequately, there must be an alleged actual transfer of value. "Without the transfer of an 'asset' the parties' intent is irrelevant . . . . A 'transfer,' in turn, requires the debtor dispose of, or part with, an 'asset.' " *In re 1701 Commerce, LLC*, 511 B.R. 812, 826 (Bankr. N.D. Tex. 2014). An "asset" with no value cannot support a fraudulent transfer claim, and courts have consistently held that a fraudulent transfer claim cannot be maintained when there is no allegation or evidence of an actual transfer of value. *See, e.g.*, *Sullivan v. Willock (In re Wey)*, 854 F.2d 196, 199 (7th Cir. 1988) (no fraudulent transfer based on cancellation of contract where debtor "possessed *no rights* which he could transfer"); *Allan v. Archer-Daniels-Midland Co. (In re Commodity Merchants, Inc.*), 538 F.2d 1260, 1264 (7th Cir. 1976) (contracts that had no value could not support a claim for fraudulent transfer); *Glick*, 568 B.R. at 673–74 (dismissing fraudulent transfer claims where allegations, if true, would not show that debtor "relinquish[ed] some 'valuable property right' " or "suffer[ed] some loss as a consequence"); *1701 Commerce*, 511 B.R. at 826, 835 (transaction did not give rise to any liability under Texas fraudulent transfer law, given that the property transferred was fully encumbered and therefore no value would have accrued to the estate by returning it); *A.I. Credit Consumer Disc. Co. v. Premiere Foods, Inc.*, Civ. No. 04-4049 (WHW), 2007 WL 3256733, at *9 (D.N.J. Nov. 5, 2007) (no fraudulent transfer where "Premiere Foods did not transfer anything to Fifth of Nevada

when it allegedly assumed Premiere Foods's management activities; rather, the Affiliate Defendants simply took their business elsewhere."); *Edwards v. Fed. Home Loan Mortg. Corp. (In re LiTenda Mortg. Corp.)*, 246 B.R. 185, 190–94 (Bankr. N.J. 2000) (no transfer where defendant terminated servicing agreement with plaintiff pursuant to terms of contract, denying plaintiff proceeds of servicing agreement which was its primary source of income), *aff'd* 276 F.3d 578 (3d Cir. 2001); *Robinson v. Chicago Hous. Auth.*, No. 94 C 4781, 1995 WL 360706, at *5 (N.D. Ill. June 14, 1995) (no fraudulent transfer where "[t]he value of the lease was zero, and plaintiff therefore received reasonably equivalent value for it when she received nothing"); *Coast Cities Truck Sales v. Navistar Int'l Transp. Co. (In re Coast Cities Truck Sales, Inc.)*, 147 B.R. 674, 677–78 (D.N.J. 1992) (no fraudulent transfer where "Coast Cities possessed no rights as a matter of law which it could relinquish since the contract between Navistar and the debtor had expired by its own terms"); *Harris v. Pietri (In re Pietri)*, 59 B.R. 69, 70–71 (M.D. La. 1986) (marital property agreement did not form the basis of a fraudulent transfer claim because it did not deprive the debtor of any property interest which he presently possessed); *Pelliccione v. Watson (In re Watson)*, 22 B.R. 938, 941 (Bankr. M.D. Fla. 1982) (dismissing fraudulent transfer claim where "the actual stock transferred had no value whatsoever" and "was not a marketable item"); *cf. Hometown 2006-1 1925 Valley View, LLC v. Prime Income Asset Mgmt., LLC*, 847 F.3d 302, 308 (5th Cir. 2017) (agreeing with reasoning of *Wey* and *Commodity Merchants* in dicta).

**A plaintiff must allege an injury-in-fact to establish standing to bring these fraudulent transfer claims.** *See, e.g.*, *ADP Commercial Leasing, LLC v. Obeid*, Case No. 14-10549, 2016 WL 74880, at *4 (E.D. Mich. Jan. 7, 2016) (creditor failed to state a claim for fraudulent transfer where it did not plead prejudice); *Andrews v. RBL, L.L.C. (In re Vista Bella, Inc.)*, 511 B.R. 163, 216–17 (Bankr. S.D. Ala. 2014) ("[D]amages are an essential element" of fraudulent transfer claims under the Bankruptcy Code and Alabama code); *Vos v. Lee*, No. 07-CV-804 (RLM), 2009

8

WL 10640615, at *10 (E.D.N.Y. Dec. 23, 2009) (collecting cases for the proposition that "liability for a fraudulent conveyance will not attach absent some prejudice to the creditor challenging the transfer"); *Chemtex, LLC v. St. Anthony Enterprises, Inc.,* 490 F. Supp. 2d 536, 542 (S.D.N.Y. 2007) ("To challenge a conveyance as fraudulent, a plaintiff must suffer prejudice or injury as a result of the conveyance at issue.").

**Acis has failed to allege that value left the estate via the "ALF PMA Transfer."** Counts 9, 10, 11, and 12 allege actual and constructive fraudulent transfer of the ALF PMA. Here, Acis has not alleged sufficiently that the ALF PMA had *any* value to Acis — instead, as a matter of fact and law, it only imposed obligations on Acis that were removed when the agreement was transferred. There are no allegations that Acis was paid for services it provided under the ALF PMA. *See generally* SAC Ex. F (ALF PMA); *see also id.* ¶ 51 ("Acis LP . . . generates revenue primarily through management *of the CLOs . . . .*" (emphasis added)). Nor are there any other that the ALF PMA provided any value to Acis. Instead, the only alleged value to Acis was alleged "rights . . . to liquidate the CLOs, by directing optional redemptions." *Id.* ¶ 90; *see also id.* ¶ 83 (asserting that "[p]rior to October 27, 2017, Acis LP — not ALF (or Highland Funding as it is currently named) — had authority to direct and effectuate an optional redemption and otherwise pervasively control ALF's assets").

But Acis is wrong as a matter of law that the ALF PMA gave it this authority. The contract's plain language shows that the authority of ALF's portfolio manager was "[s]ubject at all times to (i) provisions of applicable law, and (ii) the Investment Policy" of HCLOF. *Id.* Ex. F (ALF PMA) § 5. The SAC omits this prefatory clause but it cannot be ignored. The clause immediately precedes and qualifies the ALF PMA's limited delegation of authority to Acis. Compare *id.* Ex. F (ALF PMA) § 5 *with id.* ¶ 84. The ALF PMA further clarifies that "[t]he

9

activities engaged in by the Portfolio Manager shall be subject to the policies and control of [ALF]." *Id.* Ex. F (ALF PMA) § 6.

Moreover, "applicable law" prohibits the directors of HCLOF from contracting away their control and discretion over HCLOF. Specifically, Guernsey law, which governs the obligations of the directors of this Guernsey entity, undisputedly requires *the directors* to retain control and discretion. *See, e.g.*, Ex. 4, The Companies (Guernsey) Law, 2008, as amended, Part XI, section 134(1); Ex. 5, Guernsey Financial Services Commission Finance Sector Code of Corporate Governance (February 2016), Principle 3.4; Ex. 6, *Carlyle Capital Corporation Limited (in Liquidation) and others v. Conway and others* [2017] Civil Action No. 1510, Guernsey Judgment 38/2017.[7]

In light of the contract provisions, and governing law, the SAC was required to include particularized allegations explaining what value Acis received under the ALF PMA and lost in the supposed transfer. Because the only alleged value of the ALF PMA arises from an unsustainable interpretation of the contract that is impermissible as a matter of law, Acis has not alleged a transfer of value from the estate, and therefore there is no fraudulent transfer. Further, because Acis has not alleged adequately that it was injured by the alleged ALF PMA transfer, Acis does not have standing to bring Counts 13–16. For both of these reasons, the fraudulent transfer claims related to the ALF PMA must be dismissed.

---

[7] These foreign authorities are properly considered on a motion to dismiss under Federal Rule of Civil Procedure 44.1. *See infra* n.12. The Court may also consider the agreement, under oath, by both Guernsey experts at this hearing that Acis's interpretation of the ALF PMA is forbidden by Guernsey law. *See* Ex. 7, Hr'g Tr. (Dec. 13, 2018 (PM)) at 102:9–12 ("Q. Given those duties you've just described[,] does Guernsey Law permit directors to contract [a]way their discretion or their oversight over service providers? A. [by Mr. Corfield]: No."); *Id.* at 156:4–7 ("Q. So Guernsey directors wouldn't be allowed to completely a[bdicate] their supervisory or oversight or control? A. [by Mr. McGuffin] They, no, they are ultimately responsible for the control of the company and they cannot a[bdicate] their duties.").

**Acis has failed to allege that value left the estate via the "ALF Share Transfer."**

Counts 13, 14, 15, and 16 allege actual and constructive fraudulent transfer of certain shares of ALF. But the SAC also alleges that HCLOF paid Acis $991,180.13 in exchange for these shares. SAC ¶ 91. Acis does not allege what these ALF shares were worth, or any other facts that would, if true, show that the ALF shares were worth more than the substantial consideration paid. Instead, Acis merely asserts that "Acis LP received less than a reasonably equivalent value in exchange." *Id.* ¶¶ 189(i), 193. Not only is this conclusory allegation insufficient under Rule 9(b), it does not even meet the much less stringent requirements of Rule 8. Acis "must plead more than a mere conclusion that [debtor] failed to receive reasonably equivalent value from the transaction" to survive a motion to dismiss. *Gulf Fleet Holdings*, 491 B.R. at 766; *see also Official Comm. of Unsecured Creditors of Hydrogen, L.L.C. v. Blomen (In re Hydrogen, L.L.C.)*, 431 B.R. 337, 355 (Bankr. S.D.N.Y. 2010) (dismissing complaint that "sets forth no facts supporting the allegation that the Debtor failed to receive 'reasonably equivalent value' or 'fair consideration' in exchange" for the transferred assets).

In fact, the documents cited in and attached to the SAC, which this Court may consider on a motion to dismiss, directly contradict Acis's allegations. Those documents make clear that HCLOF paid Acis the same price per share paid by a third-party investor for a larger number of shares purchased around that same time in a market-tested transaction. *Compare* Ex. 8 (a copy of the resolution described in SAC ¶ 91) *with* SAC Ex. H (the subscription agreement for the third-party investment).[8] Especially in light of these documents, Acis has failed to allege that it received insufficient value for the ALF Shares. *See Cox v. Bank of Am., N.A.*, Civil Action H-16-2624,

---

[8] Ex. 8 shows that HCLOF paid $1.02535 per share for Acis's shares. ($991,180.13 paid divided by 966,679 shares equals $1.02535.) SAC Ex. H, the subscription agreement for the third-party investment, shows that the third-party investor agreed to "buy Shares at $1.02535 per Share."

2017 WL 1622043, at *2 (S.D. Tex. May 2, 2017) ("When conclusory allegations and unwarranted deductions of fact are contradicted by facts disclosed in the appended exhibit, which is treated as part of the complaint, the allegations are not admitted as true." (citing *Carter v. Target Corp.*, 541 F. App'x 413, 417 (5th Cir. 2013))).

In light of the fact that Acis was paid the fair value of its ALF shares, Acis has failed to plead a fraudulent transfer of these shares. Further, because Acis fails to allege that it was not paid market value for its shares (and fails to allege any other prejudice it suffered as a result of the transfer), Acis lacks standing to bring fraudulent transfer claims related to the ALF Shares.

**Acis has failed to plead that the Debtor did not receive reasonably equivalent value for the ALF PMA and ALF Shares.** In the alternative and at a minimum, Counts 11, 12, 15, and 16, which allege constructive fraudulent transfers should be dismissed because Acis has failed to allege adequately that the Debtor did not receive reasonably equivalent value. *See Gulf Fleet Holdings*, 491 B.R. at 766. With respect to Counts 11 and 12, because the ALF PMA did not have value to Acis, but imposed obligations upon it, being released from the contract was a net gain to Acis. With respect to Counts 15 and 16, as described above, the SAC pleads that Acis received payment for the ALF Shares that the exhibits attached to the SAC show to be reasonably equivalent to the value of those shares. For all of these reason, Acis has failed to plead a fraudulent transfer against HCLOF.

### B. Acis Does Not Allege Fraudulent Intent Adequately.

Counts 9, 10, 13, and 14 allege actual fraudulent transfers under Section 548(a)(1)(A) and Texas Business & Commerce Code § 24.0005(a)(1). Section 548(a)(1)(A) of the Bankruptcy Code governs "actual" fraud and allows a trustee to avoid a transfer made only "with *actual intent* to hinder, delay, or defraud any entity to which the debtor was or became . . . indebted." 11 U.S.C. § 548(a)(1)(A) (emphasis added). Similarly, under the Texas Code, a

12

transfer is actually fraudulent only "'if the debtor made the transfer . . . with *actual intent* to hinder, delay, or defraud any creditor of the debtor." Tex. Bus. & Com. Code § 24.005(a)(1) (emphasis added). Therefore, to plead a claim for actual fraud, a plaintiff must plead the requisite intent. *See Great N. Energy*, 2015 WL 11120878, at *3 (noting that a plaintiff must satisfy Rule 9(b) in pleading a claim under the Texas Uniform Fraudulent Transfer Act claim or under Section 548).

Acis attempts only to plead intent by itself or the parties that allegedly controlled it. But this intent is insufficient given the multi-step nature of the fraudulent transfers alleged. First, the ALF PMA was not signed over by Acis to HCF Advisor; rather, one contract was terminated and HCLOF initiated another.[9] *See* SAC ¶¶ 86–87. Similarly, Acis did not sell any ALF Shares to HCLOF's new investor; rather, HCLOF purchased the nominal number of shares held by Acis at market value and then later sold a much larger number of shares to a third party as part of a larger shareholder realignment. While Acis's intent may be relevant to the question of why it accepted cancellation of the ALF PMA or payment for its shares, the SAC does not include allegations sufficient to explain why *Acis's* intent would be relevant to the question of why *HCLOF* subsequently signed a new PMA or sold additional shares — both of which purport to be critical components of the alleged claims.

Acis has not even attempted to plead that HCLOF had the requisite intent. Indeed, Acis admits that HCLOF was motivated only by a desire to secure investment by a third party. *Id.* ¶ 93 n.23. Crucially, while Acis alleges that various transfers were part of a scheme "to hinder, delay, or defraud Terry as a creditor" after his arbitration award, *id.* ¶ 74, Acis did not plead that HCLOF

---

[9] Notably, the ALF PMA did not require to HCLOF to cancel that contract before engaging another advisor, and HCLOF could have retained both entities as advisors simultaneously. *See generally* SAC Ex. F.

had knowledge of Terry's arbitration award at *any* relevant time.[10] Without this knowledge, HCLOF could not possibly have formed the actual intent to aid in the alleged scheme.

Further, Acis cannot rely on intent by the "Highlands" (a term HCLOF rejects), or allegations written in the passive voice, to allege intent by HCLOF. *Cf*, SAC ¶¶ 35, 43, 74, 79–82, 93, 96, 98, 104, 163, 167, 181, 185, 199, 203, 261, 270, 280, 299, 300, 302. "Rule 9(b) generally precludes 'group pleading' because 'each defendant is entitled to know what he is accused of doing.'" *Gulf Fleet Holdings*, 491 B.R. at 767 (quoting *O'Connell v. Arthur Andersen, LLP (In re: AlphaStar Ins. Grp., Ltd.)*, 383 B.R. 231, 257–58 (Bankr. S.D.N.Y. 2008)). A plaintiff cannot merely assert that all defendants acted in concert, but must include factual allegations that specifically explain each defendant's alleged wrongdoing:

> When a claim is asserted against multiple defendants, Rule 9(b) requires specific, separate allegations detailing the allegedly fraudulent conduct of each defendant. In other words, **a complaint cannot, consistent with Rule 9(b), group all defendants into "one wrongdoing monolith."** At a minimum, the complaint must plead sufficient facts to show each defendant's allegedly fraudulent conduct, or each defendant's role in a scheme to commit fraud.

*Searcy v. Knight (In re Am. Int'l Refinery)*, 402 B.R. 728, 738 (Bankr. W.D. La. 2008) (internal citations omitted and emphasis added)*; see also Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 241 (5th Cir. 2010) ("Even if we were to consider it, we note that, as a general rule, where 'an essentially subjective state of mind is an element of a cause of action' we have declined to allow

---

[10] Nor could it. In its closing brief in support of plan confirmation, Acis's Chapter 11 Trustee argued that "the Guernsey directors [did not] know, about the Terry arbitration award (Oct. 2017), the Terry judgment (Dec. 2017), or the involuntary bankruptcy (Jan. 2018) until after the entry of the orders for relief in mid-April 2018." *Closing Summation of Robin Phelan, Chapter 11 Trustee, in Support of Confirmation of Chapter 11 Trustee's Third Amended Joint Plan of Reorganization*, Case No. 18-30264, Dkt. 815, at 20. The Bankruptcy Court relied on this argument in its order confirming the plan of reorganization. *See Bench Ruling and Memorandum of Law in Support of: (A) Final Approval of Disclosure Statement; and (B) Confirmation of Chapter 11 Trustee's Third Amended Joint Plan*, Case No. 18-30264, Dkt. 827, at 43–44. Acis is therefore estopped from asserting that HCLOF had knowledge of the arbitration award or judgment. *See Superior Crewboats Inc. v. Primary P& I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 334–35 (5th Cir. 2004) ("Judicial estoppel is a common law doctrine that prevents parties from assuming inconsistent positions in litigation." (citing *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988))).

this element to be met by a corporation's collective knowledge, instead requiring that the state of mind 'actually exist' in at least one individual and not be imputed on the basis of general principles of agency." (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 366 (5th Cir. 2004)). Indeed, collective pleading does not even "satisfy basic notice pleading under Rule 8(a)." *Am. Int'l Refinery*, 402 B.R. at 739. For all of these reasons, the SAC has failed to plead adequately fraudulent intent, and Counts 9, 10, 13, and 14 should be dismissed.

## II. Acis Has Failed To Allege Alter Ego, Collapsing Doctrine, or Unjust Enrichment.

### A. Acis Does Not Adequately Allege Alter Ego.

Count 32 alleges that various entities "should be held liable for any damages awarded under any Count in this Second Amended Complaint, as each is the alter ego of the others." SAC ¶ 275.[11]

*Guernsey Law Applies To Any Attempt To Disregard HCLOF's Corporate Form.* "[B]ankruptcy courts . . . apply the choice-of-law rules of the forum in which they sit over state-law claims that do not implicate federal policy." *ASARCO LLC v. Ams. Min. Corp.*, 382 B.R. 49, 60–61 (S.D. Tex. 2007) (applying Texas choice-of-law rules to fraudulent transfer and alter ego claims), *on reconsideration in part*, 396 B.R. 278 (S.D. Tex. 2008). "In Texas, when deciding which state's law to apply in determining the liability of an interest holder for a corporation's debts—*i.e.*, a veil piercing claim, the court looks to the law of the jurisdiction of formation." *Faulkner v. Kornman (In re The Heritage Org., L.L.C.)*, 413 B.R. 438, 510 (Bankr. N.D. Tex. 2009); *see also, e.g.*, *Sell v. Universal Surveillance Sys., LLC*, No. 1:16-CV-660-RP, 2017 WL 3712188, at *2 (W.D. Tex. July 6, 2017) ("Texas law applies the alter ego rules of the state of

---

[11] As Acis's own case explains, alter ego is one type of disregarding the corporate form. *See SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 454 (Tex. 2008); *see also Grothues v. IRS (In re Grothues)*, 226 F.3d 334, 337 (5th Cir. 2000) ("[A]lter ego theory is just one of several ways to pierce the corporate veil under the applicable Texas law."). Acis has not pleaded—even conclusorily—that any other theory for disregarding the corporate form applies. *See Castleberry v. Branscum*, 721 S.W.2d 270, n.5 (Tex. 1986) ("Each basis for disregarding the corporate fiction should be pleaded separately.").

incorporation."); *Janvey v. Nanes*, Civil Action No. 3:15-CV-3171-N, 2016 WL 9527979, at *2 (N.D. Tex. Oct. 5, 2016) ("Under Texas choice of law rules, the law of an entity's state of incorporation controls whether that entity's owner can be held responsible for the entity's liability." (citing TEX. BUS. ORGS. CODE § 1.104; *Alberto v. Diversified Grp., Inc.*, 55 F.3d 201, 204 (5th Cir. 1995))); *Davaco, Inc. v. AZ3, Inc.*, Civil Action No. 3:07-cv-803, 2008 WL 2243382, at *1 (N.D. Tex. May 30, 2008) ("[A] choice of law provision in a contract does not alter the rule that the law of the state of incorporation governs the alter ego analysis."). Because HCLOF is organized under the laws of Guernsey, SAC ¶ 9, Guernsey law governs Acis's alter ego claims.

**Alter Ego Is Pleaded Inadequately Under Guernsey Law.** As explained in the Affidavit of Tim Channer Corfield, attached as Ex. 9,[12] Acis has pleaded alter ego inadequately under Guernsey law. *Id.* ¶¶ 74–83. Most fundamentally, Guernsey law has never recognized (and would not recognize) a theory of veil piercing or alter ego that would allow a plaintiff to hold an allegedly *controlled* entity liable for the actions of a *controlling* entity. *Id.* ¶¶ 44–55, 72. Therefore, even if Acis had pleaded adequately alter ego as to the persons and entities alleged to control HCLOF, this theory would not apply to hold HCLOF liable for the actions of those controlling entities. In short, under Guernsey law, HCLOF cannot be held responsible for actions it did not take and had no control over. This principal applies with particular force in this case, because Acis also has sued directly the entities it alleges are actually at fault for its alleged injuries.

---

[12] The Court " 'may consider any relevant material or source, including testimony' . . . when determining foreign law for purposes of deciding a 12(b)(6) motion." *LMS Commodities DMCC v. Libyan Foreign Bank*, 1:18-CV-679-RP, 2019 WL 1925499, at *3 (W.D. Tex. Apr. 30, 2019) (granting motion to dismiss based on affidavit from legal expert attached to the motion; quoting Fed. R. Civ. P. 44.1 and citing *de Fontbrune v. Wofsy*, 838 F.3d 992, 996–1000 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Nov. 14, 2016))); *see also Corder v. BBG Commc'ns, Inc.*, Civil Action No. W-11-CA-00264, 2012 WL 3843714, at *4 (W.D. Tex. July 30, 2012) (With respect to foreign law issues, "the Court can consider matters outside the pleadings without converting the motion to dismiss into one for summary judgment;" considering affidavit of foreign legal expert on motion to dismiss).

Indeed, Guernsey law disregards the corporate form only in "limited" circumstances and does not recognize alter ego claims where an adequate alternative remedy exists. *Id.* ¶¶ 32–33, 71. Acis has not pleaded — nor could it — that any defendant, to the extent held liable, would be unable to satisfy a judgment against it. It therefore has an adequate remedy for each of its counts, and Guernsey courts would not resort to veil piercing under these circumstances.

Further, as Mr. Corfield explains, to adequately plead alter ego, Guernsey law requires allegations of fact that (1) HCLOF was controlled by Highland and (2) the corporate structure of HCLOF was itself used to facilitate a wrongdoing. *Id.* ¶ 77. Acis has not pleaded adequately either of these conditions. First, while Acis has pleaded conclusorily that Dondero controls HCLOF, SAC ¶ 275, this allegation is insufficient even under Rule 8, which requires "specific facts" not merely " 'a formulaic recitation of the elements of a cause of action.' " *Baker v. ABC Provider DFW, LLC*, Case No. 4:13-CV-288, 2014 WL 1267302, at *2 (E.D. Tex. Mar. 26, 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Lennard v. Yeung*, Case No. 10-09322 MMM (AGRx), 2011 WL 13217784, at *8 (C.D. Cal. June 7, 2011) (collecting cases standing for the proposition that "It is not sufficient, at the pleading stage, to make conclusory allegations of control."). Second, Acis has not even attempted to plead, as Guernsey law requires, the misuse of the corporate structure to conceal wrongdoing. *See* Ex. 9 (Corfield Aff.) ¶ 77. Nowhere does Acis allege that HCLOF's separate corporate identity is being misused to provide a shield for others' conduct. And any such allegation would ring particularly hollow in light of Acis's direct claims against the parties who it alleges to control HCLOF. For all of these reasons, alter ego is pleaded inadequately under Guernsey law, and Count 32 should be dismissed.

***Alternatively, Alter Ego Is Pleaded Inadequately Under Texas Law.*** Notwithstanding that Guernsey law applies to this claim, the SAC cites Texas (and Delaware) law with respect to

17

its alter ego claim. SAC ¶ 274. Even assuming Texas (or Delaware) law applies to its alter ego claim, Acis has nonetheless failed to state a claim.

At the outset, the SAC does not allege that any defendant, to the extent held liable, would be incapable of satisfying any judgment entered against it. *Cf. Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 375 (Tex. 1984) ("If the corporation responsible for the plaintiff's injury is capable of paying a judgment upon proof of liability, then no reason would exist to attempt to pierce the corporate veil"). Alter ego is therefore pleaded inadequately.

More fundamentally, the SAC's theory of alter ego liability is upside down. Courts disregard the corporate form in appropriate cases to hold the allegedly *controlling* entity or person liable for the actions of the *controlled* entity. *See Riquelme Valdes v. Leisure Res. Grp., Inc.*, 810 F.2d 1345, 1353 (5th Cir. 1987) ("In alter ego cases, the unfairness consists, not in fraud, but in the fact that the dominant shareholder or parent entity, because it controls the subservient company, is the party responsible for creating the subservient's debts."). The "rationale underlying" any theory of liability under which the corporate veil may be pierce "is that the parent must be in control of the subsidiary to be held liable for the subsidiary's action." *U.S. v. Wallace*, 961 F. Supp. 969, 979 (N.D. Tex. 1996) (emphasis added and citation omitted).[13] But that is not what Acis has alleged. Instead, the SAC seeks to hold an allegedly *controlled* entity liable for the torts of a *controlling* entity. But Acis fails to cite any case — and HCLOF is not aware of any case — to support this novel theory of alter ego liability. *Cf. Flourine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 861–62 (5th Cir. 2004) ("[I]t is illogical, for example, to hold a parent liable

---

[13] The same logic holds in Delaware cases. *See, e.g.*, *StrikeForce Techs., Inc. v. PhoneFactor, Inc.*, Civ. A. No. 13-490-RGA-MPT, 2013 WL 6002850, at *4 (D. Del. Nov. 13, 2013) ("Under the alter ego analysis, a *subsidiary* may be regarded as the alter ego of its parent corporation *and render the parent liable* . . ." (emphasis added, applying Delaware law)); *see also id.* n. 48.

for controlling another corporation's debts when it had no control at the time the debts were incurred."). The SAC nowhere alleges that HCLOF controlled any other person or entity. Therefore, alter ego is inapplicable as to HCLOF.

In any event, Acis has failed to plead facts sufficient to overcome a motion to dismiss its alter ego theory.[14]  Texas courts consider a number of factors when assessing whether two entities are alter egos, including

> (1) whether the entities shared a common business name, common offices, common employees, or centralized accounting; (2) whether one entity paid the wages of the other entity's employees; (3) whether one entity's employees rendered services on behalf of the other entity; (4) whether one entity made undocumented transfers of funds to the other entity; and (5) whether the allocation of profits and losses between the entities is unclear.

*U.S. KingKing, LLC v. Precision Energy Servs., Inc.*, 555 S.W.3d 200, 214 (Tex. App. 2018) (internal citations omitted).[15]  Other than noting that both "Highland Capital Management, LP" and "Highland CLO Funding, Ltd." start with the word "Highland," Acis has failed to allege *any* of these factors. This is not sufficient even under Rule 8. *See Emke v. Compana, L.L.C.*, Civil Action No. 3:06-CV-1416-L, 2007 WL 2781661, at *7 (N.D. Tex. Sept. 25, 2007) (dismissing alter ego complaint unsupported by factual allegations).

Acis's allegation that "Defendants" coordinated to close a private placement transaction in Fall 2017, SAC ¶¶ 93 n.23, 276, is similarly insufficient to plead alter ego under Texas law. The Texas Supreme Court has "completely rejected" the position that arguments based on an alleged

---

[14] Under Texas law, Acis's alter ego allegations must meet the higher particularity standard of Rule 9(b). *See* Tex. Bus. Org. § 21.223(b); *Global Oil Tools, Inc. v. Barnhill*, Civil Action Nos. 12:1507, 12–3041, 2013 WL 3070838, at *13 (E.D. La. June 17, 2013) (applying Texas law).

[15] Similar factors are considered under Delaware law. *See Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528–29 (D. Del. 2008) (listing several factors to consider, including "(1) undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) the insolvency of the debtor corporation at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders").

coordinated business enterprise are "a valid mechanism for piercing the corporate veil":

> The "single business enterprise" liability theory . . . does not entail the level of agreement required for joint enterprise liability or the abuse required before the law disregards the corporate structure to impose liability. The theory . . . applies whenever two corporations coordinate operations and combine resources in pursuit of the same business purpose. We have never approved of imposing joint liability on separate entities merely because they were part of a single business enterprise.

*Burchinal v. PJ Trailers-Seminole Mgmt. Co.*, LLC, 372 S.W.3d 200, 217–18 (Tex. App. 2012) (quoting *SSP Partners*, 275 S.W.3d at 452); *see also Lucas*, 696 S.W.2d at 376 ("the blending of activities alone cannot suffice to treat two corporations as one.").

Acis has also failed to plead alter ego adequately because it has failed to plead that any injustice would result from respecting the corporate form. Like Guernsey law, under Texas law, only "[w]hen the corporate form is used as an essentially unfair device — when it is used as a sham — [do] courts . . . act in equity to disregard the usual rules of law in order to avoid an inequitable result." *Matthews Constr. Co., Inc. v. Rosen,* 796 S.W.2d 692, 693 (Tex. 1990). The same rule applies under Delaware law: "[T]he underlying cause of action does not supply the necessary fraud or injustice. To hold otherwise would render the fraud or injustice element meaningless, and would sanction bootstrapping." *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 268 (D. Del. 1989) (applying Delaware law).[16] Acis has failed to allege that any injustice would result from respecting the separateness of HCLOF.

Finally, "[a]bsent a cognizable cause of action [the alter ego] remedy is unavailable." *W. Oil & Gas JV, Inc. v. Castlerock Oil Co.*, 91 F. App'x 901, 904 (5th Cir. 2003); *see also U.S. Bank Nat. Ass'n v. Verizon Commc'ns, Inc.,* 761 F.3d 409, 442 (5th Cir. 2014), *as revised* (Sept. 2, 2014)

---

[16] *See also Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1305 (D. Del. 1990) ("the alleged fraud or inequity must be distinct from the tort alleged in the complaint"); *ASARCO LLC*, 396 B.R. at 320 ("Under Delaware law, a plaintiff must show fraud or inequity in the use of the corporate form, i.e., the corporate structure itself must be used to effect the fraud or injustice").

("[U]nder Texas law, while alter ego theory is a means to pierce the corporate veil, it still relies on an underlying claim. Consequently, 'alter ego is not a separate cause of action but a remedy to enforce a substantive right' " (citation omitted)).  Accordingly, to the extent the underlying separate causes of action in the SAC are dismissed as to the other defendants, an alter ego remedy is unavailable.

### B. The Collapsing Doctrine Is Not Pleaded Adequately.

Count 32 alleges that "multistep transactions can be collapsed when the steps of the transaction are 'part of one integrated transaction.' "  SAC ¶ 277 (citation omitted).  A plaintiff has not pleaded adequately that a series of transactions should be collapsed where "the allegations do not address the factors germane to whether these two transactions should be viewed as a single integrated transaction." *Gulf Fleet Holdings*, 491 B.R. at 771 (finding the collapsing doctrine inadequately pleaded).  These factors include "(1) whether all parties involved in the individual transactions had knowledge of the other transactions, (2) whether each transaction would have occurred on its own, and (3) whether each transaction was dependent or conditioned on the other transactions." *Id.* (collecting cases).  Acis has not addressed any of these factors.

Acis has further failed to plead that HCLOF "knew or should have known of the allegedly wrongful purpose of the many transactions outlined above." *SB Liquidation Tr. v. Preferred Bank (In re Syntax-Brillian Corp.)*, Bankruptcy No. 08-11407(BLS), 2011 WL 3101809, at *12 (Bankr. D. Del. July 25, 2011) (finding the collapsing doctrine inadequately pleaded), *aff'd in part, vacated in part on other grounds* 573 F. App'x 154 (3d Cir. 2014).  In fact, Acis has not even pleaded that HCLOF *knew of* the majority of the transactions discussed in the SAC.  Similarly, Acis has not alleged that the transactions would not have occurred on their own or that the transactions were dependent upon each other.  For these reasons, the collapsing doctrine is inadequately pleaded.

### C.     Unjust Enrichment Is Not Pleaded Adequately.

Count 32 alleges conclusorily that HCLOF benefitted from various transfers and should be liable for benefits unjustly received.  SAC ¶¶ 279–80.  Acis has failed to identify with specificity any benefit to HCLOF from the complained-of transactions.  "A key element of unjust enrichment is that the person sought to be charged wrongly secured or passively received a benefit." *Shanghai Hailian Elec. Tools Co. v. Home Depot U.S.A., Inc.*, Civil Action No. 3:16-CV-1451-D, 2017 WL 588656, at *5 (N.D. Tex. Feb. 13, 2017) (quoting *Ahmed v. Shah*, No. 01-13-00995-CV, 2015 WL 222171, at *5 (Tex. App. Jan. 15, 2015)).  In fact, as the SAC acknowledges, HCLOF has been and continues to be significantly harmed by the injunction — imposed and enforced at Acis's request — preventing it from exercising its right to call for an optional redemption.  *See* SAC ¶ 90 n. 21.  Thus, unjust enrichment has not been pleaded adequately.

Further, equitable remedies like unjust enrichment are unavailable to the extent that Acis has legal remedies available to it.  *See In re ROFIN Series C Bonds Sec. Interest Litig.*, 182 F.3d 366, 373 (5th Cir. 1999) (noting "the general rule that a court in equity should not act when the moving party has an adequate remedy at law."  (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992); *Palmco Corp. v. Am. Airlines, Inc.*, 983 F.2d 681, 686 n.9 (5th Cir. 1993))).  Notably, Acis is pursuing legal remedies against HCLOF and other parties and has not pleaded that these remedies are insufficient.

### III.    The Presumption Against Extraterritoriality Mandates Dismissal of Counts 9–16, 26, 31, 32, and 34.

"It is a 'longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.' " *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) (quoting *EEOC v.*

*Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991)).[17] The Supreme Court "has established a two-step framework for deciding questions of extraterritoriality":

> The first step asks whether the presumption against extraterritoriality has been rebutted. It can be rebutted only if the text provides a clear indication of an extraterritorial application. If the presumption of extraterritoriality has not been rebutted, the second step . . . asks whether the case involves a domestic application of the statute. Courts make that determination by identifying the statute's "focus" and asking whether the conduct relevant to that focus occurred in United States territory.

*WesternGeco LLC v. ION Geophysical Corp.*, 138 S.Ct. 2129, 2136 (2018) (internal citations omitted). Applying this test, the fraudulent transfers alleged against HCLOF are barred by the presumption against extraterritoriality.

First, "[n]othing in the language of sections 544, 548, and 550 of the Bankruptcy Code suggests that Congress intended those provisions to apply to foreign transfers." *LaMonica v. CEVA Grp. PLC (In re CIL Ltd.)*, 582 B.R. 46, 84–85 (Bankr. S.D.N.Y. 2018) (citing *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 228 (S.D.N.Y. 2014); *Barclay v. Swiss Fin. Corp. Ltd. (In re Midland Euro Exch. Inc.)*, 347 B.R. 708, 717 (Bankr. C.D. Cal. 2006); *Societe General plc v. Maxwell Commc'n Corp. (In re Maxwell Commc'n Corp. plc)*, 186 B.R. 807, 816 (S.D.N.Y. 1995), *amended on reconsideration*, Case No. 13–11272–JLG, 2018 WL 3031094 (Bankr. S.D.N.Y. June 15, 2018)); *see also CIL Ltd.*, 582 B.R. at 92 ("Congress has not expressed an affirmative intent for sections 548 and 550 to be applied extraterritoriality, and nothing in the text of those sections indicates such an intent."). Therefore, "the presumption of extraterritoriality has not been rebutted." *WesternGeco*, 138 S.Ct. at 2136.

---

[17] The Texas Supreme Court has long applied the same presumption against extraterritorial application of Texas state law: "[T]he presumption is that the statute is intended to have no extraterritorial effect, but to apply only within the territorial jurisdiction of the state of country enacting it, and it is generally so construed." *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182, 187 (Tex. 1968) (denying extraterritorial effect to Texas wrongful death statute); *see also Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 682 (Tex. 2006) (denying extraterritorial effect to Texas antitrust law).

Second, the fraudulent transfer allegations against HCLOF involve an extraterritorial application. *See CIL Ltd.*, 582 B.R. at 93–96 (finding alleged fraudulent transfer of stock in an English and Wales company to a Marshall Islands company to be an extraterritorial application of the fraudulent transfer provisions in the Bankruptcy Code). Both the alleged transfer of the ALF PMA (Counts 9–12) and the alleged transfer of the ALF Shares (Counts 13–16) are centered around the internal affairs of a Guernsey-domiciled and Guernsey-regulated entity. *See* SAC ¶ 9. With respect to the Counts 9–12, the portfolio management function of a Guernsey-domiciled investment fund is highly regulated by the Guernsey Financial Services Commission. Ex. 7, Hr'g Tr. (Dec. 13, 2018 (PM)) at 94:6–95:7; *id.* at 144:13–145:17, 156:20–157:9.[18] Indeed, a Guernsey-domiciled investment fund cannot change its portfolio manager without regulatory approval. *Id.* at 157:6–9. Acis seeking to reimpose itself as HCLOF's portfolio manager is necessarily a Guernsey-based and Guernsey-centered matter. A lawsuit seeking to compel such a result should not proceed in the United States. *See Commodore Int'l Ltd. v. Transpacific Co. Ltd. (In re Commodore Int'l Ltd.)*, No. 00CIV.1679(SAS), 2000 WL 977681, at *3 (S.D.N.Y. July 17, 2000) (affirming Bankruptcy Court decision dismissing case on comity grounds where Bahamian interest outweighed interests of the United States in the dispute).

Similarly, the shareholdings of HCLOF are also a matter of Guernsey law and should not be the subject of attempted forcible realignment by the courts in the United States. HCLOF presently has multiple groups of shareholders, virtually all of which are not party to this lawsuit, and all of which agreed to participate as shareholders of a Guernsey entity, with their investment governed by Guernsey law. *See* SAC ¶ 9.

---

[18] On questions of foreign law, Federal Rule of Civil Procedure 44.1 provides that the Court may consider sworn testimony of Guernsey legal experts on a motion to dismiss. *See supra* n.12.

Further, because many of the other claims asserted against HCLOF are grounded in the fraudulent transfer allegations, the doctrine of extraterritoriality also bars Count 26, 31, 32, and 34, as well as Acis's request for a constructive trust. Extraterritoriality concerns are particularly pronounced with respect to the "alter ego" claim, because that claim is centered upon the corporate separateness of a Guernsey corporation and must be governed by Guernsey law. *See supra* §II(A).

## IV.   Count 33 Should Be Dismissed Because Acis Is Not Entitled to Recoveries Under Section 362(k) of the Bankruptcy Code.

Section 362(k) provides that "an *individual* injured by any willful violation of a stay provided by [section 362] shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1) (emphasis added). As the Bankruptcy Court has held, "[i]t is well settled that a corporation is not entitled to recover damages for violation of the automatic stay." *In re MD Promenade, Inc.*, No. 08-34113-SGJ-7, 2009 WL 80203, at *12 (Bankr. N.D. Tex. Jan. 8, 2009) (Jernigan, J.); *see also Garner v. Knoll, Inc. (In re Tusa-Expo Holdings, Inc.)*, 2014 WL 172276, at *4 (Bankr. N.D. Tex. Jan. 15, 2014) (Lynn, J.); *In re San Angelo Pro Hocky Club, Inc.*, 292 B.R. 118, 124 (Bankr. N.D. Tex. 2003) (Jones, J.); *In re Freemyer Indus. Pressure, Inc.*, 281 B.R. 262, 268 (Bankr. N.D. Tex. 2002 (Lynn, J.); *First RepublicBank Corp. v. NCNB Texas Nat'l Bank (In re First RepublicBank Corp.)*, 113 B.R. 277, 279 (Bankr. N.D. Tex. 1989) (Felsenthal, J.).

In *MD Promenade*, the Chapter 7 trustee pursued damages under section 362(k). *MD Promenade*, 2009 WL 80203, at *12. The Bankruptcy Court held that "[t]he court may not award [the trustee] damages pursuant to section 362(k) because, although he is an individual, a natural person, he is acting as the representative of the estate of a debtor *corporation* and therefore cannot be considered an individual for purposes of section 362(k)." *Id.* (citing *In re Amberjack Interests, Inc.*, 326 B.R. 379, 386 n.1 (Bankr. S.D. Tex. 2005) (Bohm, J.) (finding that a trustee suing on

behalf of a debtor corporation "cannot be considered an individual for purposes of obtaining standing under section 362(h) [now 362(k)]"")).

Other courts have agreed with the Bankruptcy Court's holding that "the Trustee, acting on behalf of the estate of a debtor corporation lacks standing to seek damages under section 362(k)." *Tusa-Expo Holdings*, 2014 WL 172276, at *4. In reviewing section 362(k), Judge Lynn held that "in order to recover under section 362(k), the Trustee must be an 'individual' within the meaning of the statute." *Id.*[19] In coming to this conclusion, the *Tusa-Expo Holdings* court reviewed the Fifth Circuit's then-recent decision in *St. Paul Fire & Marine Insurance Company v. Labuzan* and found that the Fifth Circuit determined that individuals lacked standing under section 362(k) of the Bankruptcy Code when that individual is acting on behalf of a debtor corporation. *Id.* (citing *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 545 (5th Cir. 2009)).

Limited partnerships, like corporations, are not entitled to relief under section 362(k) because such entities are not *individuals*. In the same way that courts have distinguished *individuals* from *corporations*, courts have also distinguished *individuals* from *partnerships* to hold that partnerships are not entitled to damages under section 362(k). *See, e.g.*, *Rafter Seven Ranches L.P. v. WNL Investments L.L.C. (In re Rafter Seven Ranches L.P.)*, 414 B.R. 722, 732-33 (10th Cir. BAP 2009) (finding that "in defining 'person,' Congress used the word 'individual' to distinguish natural persons from corporations and partnerships" to hold that the limited partnership debtor is not entitled to an award of damages under section 362(k)); *Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1551 (11th Cir. 1996) (analyzing that partnerships are not entitled to relief

---

[19] The *Tusa-Expo Holding* court reviewed the Bankruptcy Code to note that it does not define the term "individual," but does distinguish between the terms "corporation" and "individual." The court further noted that "[t]his distinction is evident in the Code's definition of the term 'person,' which includes 'individual' and 'corporation.' Congress's use of the restrictive term 'individual' in section 362(k) rather than the inclusive term 'person' indicates that damages under the statute are only available to natural persons." *Id.* (citing 11 U.S.C. § 101(41); *First RepublicBank Corp.*, 113 B.R. at 278–79).

under section 362(k) of the Bankruptcy Code because "Congress used the word 'individual' to distinguish natural persons from corporations and partnerships."); *Johnston Environmental Corp. v. Knight* (*In re Goodman*), 991 F.2d 613, 619 (9th Cir. 1993) (holding that the word "individual" "means individual, and not a corporation or other artificial entity."); *In re Hassan*, No. 04-20332-7, 2010 WL 5348761, at *7 (Bankr. D. Kan. Dec. 21, 2010) (finding that "'individual'" in § 62(k)(1) refers only to natural persons, and not to corporations, partnerships, or other artificial entities.");. These holdings are consistent with the Court's precedent that "relief under section [362(k)] is limited to individuals." *Freemyer Indus. Pressure*, 281 B.R. at 268 (citing *First RepublicBank Corp.*, 113 B.R. at 279). Thus, Acis is not entitled to relief under section 362(k) of the Bankruptcy Code.

## V. Acis Is Not Entitled to Remedies With Respect to Any Claim that Is Dismissed.

Counts 26, 31, and 34 do not contain separate claims for relief, but rather request specific remedies. With respect to Count 26, Acis is not entitled to avoid a transfer under 11 U.S.C. § 550 for any fraudulent transfer claim that is dismissed. With respect to Counts 31 and 34, Acis is not entitled to punitive damages or attorneys' fees for any claim that is dismissed.

## VI. Acis's Request For a Constructive Trust Should Be Denied.

Section VIII of the SAC "requests that a constructive trust is established for . . . benefits unjustly received by the [so-called] Highlands." As Acis admits, a constructive trust requires it to show "(1) breach of a special trust or fiduciary relationship or actual or constructive fraud; (2) unjust enrichment of the wrongdoer; and (3) an identifiable res that can be traced back to the original property." *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015) (citations omitted); *see* SAC ¶ 298. "Absent a fiduciary relationship,[20] a showing of actual fraud is still

---

[20] Acis does not allege that HCLOF is a fiduciary.

usually required, and the movant *at least* must show that the property in question was wrongfully acquired." *SEC v. Faulkner*, Civil No. 3:16-CV-1735-D, 2018 WL 5458789, at *3 (N.D. Tex. Oct. 29, 2018) (citation omitted). For all of the reasons explained above, Acis has failed to allege actual fraud by HCLOF or that HCLOF wrongfully acquired any property. Further, Acis has an adequate remedy at law. *See supra* § III(C) (citing *ROFIN*, 182 F.3d at 373). Therefore, a constructive trust is not warranted.

## CONCLUSION

For all of these reasons, the Counterclaims should be dismissed as to HCLOF. Because Acis already has had multiple opportunities to replead, the dismissal should be with prejudice.

Dated: July 22, 2019

Respectfully submitted,

**KING & SPALDING LLP**

*/s/ Mark M. Maloney*
Mark M. Maloney
Georgia Bar No. 468104 (admitted *pro hac vice*)
1180 Peachtree Street NE
Atlanta, GA 30309
Tel: 404-572-4600
Fax: 404-572-5100
mmaloney@kslaw.com

Rebecca Matsumura
Texas Bar No. 24098053
500 West 2nd St., Suite 1800
Austin, TX 78701-4684
Tel: 512-457-2000
Fax: 512-457-2100
rmatsumura@kslaw.com

***Counsel for Highland CLO Funding, Ltd.***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Motion and supporting Brief have been

served upon counsel for all parties of record via ECF on this 22nd day of July, 2019.


*/s/ Rebecca Matsumura*
Rebecca Matsumura