Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Jason A. Enright – State Bar No. 24087475
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone:  (214) 745-5400
Facsimile:  (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jenright@winstead.com
achiarello@winstead.com

**COUNSEL FOR REORGANIZED DEBTORS**

Brian P. Shaw – State Bar No. 24053473
**ROGGE DUNN GROUP, PC**
500 N. Akard St., Suite 1900
Dallas, Texas 75201
Telephone: (214) 888-5000
Facsimile:  (214) 220-3833
shaw@roggedunngroup.com

**COUNSEL FOR REORGANIZED DEBTORS**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | **Case No. 18-30264-SGJ-11** |
| | § | **Case No. 18-30265-SGJ-11** |
| **ACIS CAPITAL MANAGEMENT, L.P.,** | § | |
| **ACIS CAPITAL MANAGEMENT GP,** | § | **(Jointly Administered Under Case** |
| **LLC,** | § | **No. 18-30264-SGJ-11)** |
| | § | |
| **Debtors.** | § | **Chapter 11** |
| | § | |

| | | |
|---|---|---|
| **ACIS CAPITAL MANAGEMENT, L.P.,** | § | |
| **ACIS CAPITAL MANAGEMENT GP,** | § | |
| **LLC, Reorganized Debtors,** | § | |
| | § | **Adversary No. 18-03078** |
| **Plaintiffs,** | § | |
| | § | **(Consolidated with Adversary Nos.** |
| **vs.** | § | **18-03212 & 19-03103)** |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT,** | § | |
| **L.P., HIGHLAND CLO FUNDING, LTD.** | § | |
| **F/K/A ACIS LOAN FUNDING, LTD.,** | § | |
| **HIGHLAND HCF ADVISOR, LTD.,** | § | |
| **HIGHLAND CLO MANAGEMENT, LTD.,** | § | |
| **and HIGHLAND CLO HOLDINGS, LTD,** | § | |
| | § | |
| **Defendants.** | § | |

## OBJECTION TO HIGHLAND CAPITAL'S PARTIAL MOTION
## TO DISMISS THE SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT

Acis Capital Management, L.P. ("Acis LP") and Acis Capital Management GP, LLC ("Acis GP" together with Acis LP, the "Reorganized Debtors" or "Acis")[1] the reorganized debtors in the above-styled and jointly administered bankruptcy cases (the "Bankruptcy Cases"), and Plaintiffs in the in the above-styled adversary proceeding (the "Adversary Proceeding"), file this objection (the "Objection") to *Highland Capital's Partial Motion to Dismiss the Second Amended Complaint and Brief in Support* [Docket No. 171] (the "Motion to Dismiss"), filed by Highland Capital Management, L.P. ("Highland Capital").

## I.    SUMMARY OF OBJECTION[2]

1.      The Motion to Dismiss advances no legitimate basis for the dismissal of any of Acis's claims.  As a prime example of the overall frivolousness of the Motion to Dismiss, Highland Capital's leading arguments (seeking dismissal of a whopping 20 counts in the Second Amended Complaint) are that TUFTA and the Bankruptcy Code do not allow for the avoidance of obligations fraudulently incurred and they do not allow for recovery from a party for whose benefit a transfer is made.  Highland Capital gets to this conclusion by simply leaving out these parts of the statutes and hoping no one notices.  Highland Capital makes similarly deceptive and legally frivolous arguments throughout the Motion to Dismiss.  The Motion to Dismiss should be summarily denied—Acis filed an unquestionably well-pleaded complaint—and Highland Capital should be directed to file an answer to the Second Amended Complaint.

---

[1] On February 15, 2019, the date upon which the Plan (defined below) became effective, Acis was substituted for Robin Phelan, the Chapter 11 Trustee, in the above-referenced consolidated adversary cases. *See* Case No. 18-30264, Docket Nos. 829, 830, & 863. Prior to the date upon which the Plan (defined below) became effective, Acis may be referred to as the "Debtors."

[2] Any capitalized term not otherwise defined in this Summary of Objection shall have the meaning ascribed to such term later in this Objection.

## II. LEGAL STANDARD

### A. The 12(b)(6) Standard

2. A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), incorporated by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012, is typically "viewed with disfavor and is rarely granted." *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981); *accord Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009). Under Rule 8(a), incorporated by Bankruptcy Rule 7008, a pleading need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Even when the more specific pleading standard of Rule 9(b) applies, "the court's key concern … is to determine whether the plaintiff seeks to redress specific wrongs or whether the plaintiff seeks the opportunity to search out actionable wrongs." *Clapper v. Am. Realty Inv., Inc.*, 2018 U.S. Dist. Lexis 136739, *13; 2018 WL 3868703 (N.D. Tex. 2018) (Fitzwater, J.).

3. When considering a motion to dismiss, "the complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (citing *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). Accordingly, a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task which requires the reviewing court to draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679. Importantly, in considering a motion to dismiss, the issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims. *See Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 205 (5th Cir. 1994). The moving party (here, Highland Capital) has the heavy burden to show that dismissal is proper.

*See Servicios Azucareros De Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012).

**B.     Use of the Rule 9(b) pleading standard for constructive fraudulent transfers**

4.      Highland Capital's direction in the Motion to Dismiss for this Court to use a Rule 9(b) standard to analyze summary dismissal of Acis's constructive fraudulent transfer claims is directly contrary to voluminous controlling precedent in this District.  *See* Motion to Dismiss at 10.  Every reported case from the District Judges in the Northern District of Texas that have considered the issue have utilized Rule 8(a), not Rule 9(b), to test the pleading of constructive fraudulent transfer claims.  *Clapper v. Am. Realty Inv., Inc.*, No. 3:14-CV-2970-D, 2018 U.S. Dist. Lexis 136739, at * 22 (N.D. Tex. 2018) (Fitzwater, J.);[3] *Moran v. Pando*, Case No. 15-40289-RFN-11, No. 4:15-CV-905-O, 2016 U.S. Dist. Lexis 192191, at * 25 (N.D. Tex. 2016) (O'Conner, J.); *U.S. Bank v. Verizon Comm., Inc.*, No. 3:10-CV-1842-G, 2012 U.S. Dist. Lexis 106576, at * 32 (N.D. Tex. 2012) (Fish, J.) ("[T]he trend in this district is to conclude that fraudulent consideration claims are not subject to Rule 9(b)'s pleading requirements."); *Janvey v. Alguire*, 846 F. Supp. 2d 662, 676-77 (N.D. Tex. 2011) (Godbey, J.); *GE Capital Commer., Inc. v. Wright & Wright, Inc.*, No. 3:09-CV-572-L, 2009 U.S. Dist. LEXIS 121472, at *34 (N.D. Tex. 2009) (Lindsay, J.); *E. Poultry Distr., Inc. v. Yarto Puez*, No. 3:00-CV-1578-M, 2001 U.S. Dist. Lexis 27007, at * 6 (N.D. Texas 2001) (Lynn, J.).

5.      It is also well-established in the Northern District of Texas that rulings of the District Court are binding precedent on the Bankruptcy Judges in the district.  *In re Schooler*, 449 B.R. 502, 515 (Bankr. N.D. Tex. 2010); *In re Jobs.com, Inc.*, 283 B.R. 209, 218 (Bankr. N.D. Tex. 2002); *In re Rand Energy Co.*, 259 B.R. 274, 276 (Bankr. N.D. Tex. 2001); *In re*

---

[3] Notably, Judge Fitzwater is the District Judge that has received the appeals and other matters arising from this bankruptcy case.

*Whitehorn*, 99 B.R. 734, 736 (Bankr. N.D. Tex. 1989). Thus, Highland Capital's request on page 10 of the Motion to Dismiss that "this Court should follow the majority approach of the circuits" ignores controlling precedent and (either intentionally[4] or negligently) encourages this Court to make an embarrassing legal error.[5] Clearly, the Court must use the Rule 8(a) legal standard to test the Second Amended Complaint's constructive fraudulent transfer allegations (although, as noted below, the allegations in the Second Amended Complaint clearly withstand Rule 8(a) or Rule 9(b) scrutiny).

### III. RELEVANT JURISDICTIONAL, PROCEDURAL, AND FACTUAL BACKGROUND

6. On June 20, 2019, Acis filed its *Second Amended Complaint (Including Claim Objections and Objections to Administrative Expense Claim)* [Docket No. 157] (the "Second Amended Complaint"). In Parts III, IV, and V of the Second Amended Complaint, Acis sets forth in detail the jurisdictional, procedural, and factual background underlying its claims. Acis incorporates by reference Parts III, IV, and V of the Second Amended Complaint herein for all purposes.

7. On July 18, 2019, the District Court for the Northern District of Texas affirmed in its entirety this *Court's Bench Ruling and Memorandum of Law in Support of: (A) Final Approval of Disclosure Statement; and (B) Confirmation of Chapter 11 Trustee's Third*

---

[4] Counsel assumes that footnote 4 of the Motion to Dismiss is Highland Capital's attempt to create plausible deniability. This would indicate that counsel for Highland Capital was fully aware of the voluminous binding precedent in the Northern District and chose not to cite it and address it head on, but rather drop a footnote that effectively says "there might be other cases."

[5] In the very recent case of *Life Partners Creditors Trust v. Cowley*, 926 F.3d 103 (5th Cir. 2019), the Fifth Circuit again notes that it has not determined whether Rule 9(b) or 8(a) apply to actual fraudulent transfer claims under Texas law and the Bankruptcy Code. However, admittedly the District Judges in the Northern District have conflicting rulings on this issue, and thus there is no binding precedent on this Court as there is with the constructive fraudulent transfer standard. However, this is a distinction without a difference here because the Second Amended Complaint easily meets both standards.

*Amended Joint* Plan  [Case No. 18-30264, Docket No. 827] (the "Bench Ruling"). *See* Case

3:18-cv-01822-D, Docket No. 67.

## IV.    OBJECTIONS[6]

**A.    Acis adequately pleaded the fraudulent transfer claims against Highland Capital, and Highland Capital's arguments to the contrary are utterly frivolous (Counts 5-24).**

8.    Highland Capital makes the legally preposterous argument in the Motion to

Dismiss that the modifications to the Sub-Advisory Agreement, which (as Highland Capital puts

it) caused Acis to "pay more for services," cannot be avoided because they are not transfers.

Motion to Dismiss at 16.  This is a nonsense argument based on an intentional misreading of

section 548 and TUFTA, and it should be summarily rejected.[7]

9.    Section 548 and TUFTA clearly provide for the avoidance of obligations

fraudulently incurred.  "[T]he Trustee may avoid any transfer … of any interest of the debtor in

property, or **any obligations** . . . incurred by the debtor . . . ."  11 U.S.C. § 548(a)(1) (emphasis

added).  "[A] transfer made or **obligation incurred** by a debtor is fraudulent . . . if the debtor

made the transfer or **incurred the obligation** . . . ."  Tᴇx. Bᴜs. & Cᴏᴍᴍ. Cᴏᴅᴇ § 24.005(a)

(emphasis added). Case law is consistent with this plain language interpretation.  *See Stanley v.*

*US Bank Nat'l Ass'n (In re TransTexas Gas Corp.)*, 597 F.3d 298, 305 (5th Cir. 2010); *U.S. Bank*

*v. Verizon Comm., Inc*., 2012 U.S. Dist. Lexis 106576, at *11-15 ("[B]ecause both 'a transfer

made or an obligation incurred' can be fraudulent as to a particular creditor, both can be

---

[6] Any capitalized term not otherwise defined herein shall have the meaning ascribed to such term later in the Second Amended Complaint.

[7] Acis notes that Highland Capital made a similar argument in its prior motion to dismiss [Dkt No. 97] and that the Trustee's response gave HCLOF notice that it was legally insupportable based on the clear language of the Bankruptcy Code and TUFTA [Dkt No. 109].  Thus, in making the same argument in the Motion to Dismiss, Highland Capital intentionally doubled down on this legally frivolous argument.

avoided.");[8] 5 COLLIER ON BANKRUPTCY ¶ 548.03[4] (16th ed. 2018) ("[I]f the court avoids an obligation under section 548 . . . transfers made by the debtor on account of that obligation are not made for reasonably equivalent value, and may be set aside as actually or constructively fraudulent[.]")

10.    Highland Capital's argument is the written equivalent of putting its thumb over the sections of the Bankruptcy Code that it does not like, and trying to pass that off as the law. Unfortunately, this Court has addressed just such dishonest tactics before, and as the Court wryly noted, "Thankfully, the court has several copies of the Bankruptcy Code handy so it could consult the entire statutory provision in addressing this question." *In re Sharpe*, 351 B.R. 409, 424 n.13 (Bankr. N.D. Tex. 2006).  Acis is certain the Court still has a copy of the Bankruptcy Code handy, and will summarily dismiss this legally frivolous argument (and maybe peruse Rule 9011 while she has her Code open).

11.    Further, Acis has thoroughly pled that the modifications to the Sub-Advisory Agreement constitute obligations fraudulently incurred.  The modifications occurred shortly after Mr. Terry was illegally terminated and his multi-million dollar claim against Acis accrued, and they increased the liability of Acis under the agreement fourfold.  *See* Second Amended Complaint at 22-23, 46-51. Further, these modifications added, for the first time, an onerous and expansive indemnity provision running from Acis to Highland Capital and under which Highland Capital now asserts a claim.  *See* Second Amended Complaint at 98, n.46.

12.    Continuing its theme of just ignoring what is stated in plain writing in the statute, Highland Capital goes on to make the spurious argument in that it cannot be held liable for a variety of fraudulent transfers because it was not the initial transferee or a subsequent transferee.

---

[8] The *Verizon* case is also instructive on what constitutes an obligation: "While the Code does not define the term 'obligation,' one court has understood it to mean '[a] formal binding agreement or acknowledgment of a liability to pay a certain amount or to do a certain thing for a particular person; esp. a duty arising by contract.'" *Id*. at *13.

*See* Motion to Dismiss at 16-19. This is also a nonsense argument based on an intentional misreading of section 550 and TUFTA, and it should be summarily rejected.[9]

13.     In the Motion to Dismiss, Highland Capital boldly states that the only parties that avoided transfers can be recovered from are initial transferees or subsequent transferees. See Motion to Dismiss at 16-17 (¶ 18). This, of course, ignores the fact that both section 550 and TUFTA allow for the recovery of avoided transfers against a party for whose benefit such transfer was made. "The trustee may recover . . . from the initial transferee of such transfer **or the entity for whose benefit such transfer was made** . . . ." 11 U.S.C. § 550(a) (emphasis added). "The judgment may be entered against the first transferee of the asset **or the person for whose benefit the transfer was made** . . . ." TEX. BUS. & COMM. CODE § 24.009(b)(1) (emphasis added). In paragraph 18 of the Motion to Dismiss, Highland Capital even deceptively uses ellipses to omit this provision of TUFTA, again apparently blissfully unaware that Acis and this Court have copies of the statutes that they can (and will) consult.

14.     Further, like the counts for obligations fraudulently incurred, Acis has clearly pled that Highland Capital is a party for whose benefit the fraudulent transfers were made in Counts 9 through 25. *See* Second Amended Complaint at 28-35, 73. In fact, Highland Capital was the primary beneficiary of the numerous fraudulent transfers made by Acis. In every instance, the actual transferee was a foreign affiliate of Highland Capital (often newly created) that Highland Capital completely controlled - basically just a throw away entity that Highland Capital has attempted to interpose as a shield between it and Acis.

---

[9] Like its argument completely ignoring the ability to avoid obligations fraudulently incurred, Highland Capital made a similar argument ignoring the ability to avoid transfers from a party for whose benefit such transfers were made in its prior motion to dismiss [Docket No. 97]. Likewise, the Trustee's response gave Highland Capital notice that its argument was legally insupportable [Docket No. 109]. But again, in making the same argument in the Motion to Dismiss, Highland Capital intentionally doubled down on this legally frivolous argument.

15. The fraudulent transfer counts against Highland Capital are properly pled under applicable law, and Highland Capital's arguments to the contrary are frivolous and asserted only to cause delay and needlessly increase the costs of this litigation.

**B. Acis adequately pleaded *ultra vires* and the claims for overcharges to Highland Capital (Counts 1-4).**

16. The first Count of the Second Amended Complaint is simply for a declaratory judgment that the Expense Overpayments made to Highland Capital in the amount of at least $7,021,924.00 were *ultra vires* acts. *Ultra vires* means that Acis made the payments to Highland Capital without legal authority to do so pursuant to its governing charter, the LPA, and, thus, such payments are void or voidable. While not necessary to sufficiently plead under Rule 8(a) or 9(b), Acis cites three different Delaware law cases in explaining and supporting the *ultra vires* Count. Acis pleads in detail the facts upon which the claim is based, including that the arbitration panel specifically found that such payments violated the LPA. *See* Second Amended Complaint ¶¶ 57-60, 64-69, 125-28. Accordingly, Acis more than sufficiently pleaded Count 1.

17. Highland Capital also flagrantly misrepresents the pleading. Despite the fact that Highland Capital claims Acis "cite[s] nothing suggesting that the *ultra vires* doctrine applies to a limited partnership at all," the Second Amended Complaint clearly states that "Delaware courts apply the doctrine of *ultra vires* to partnerships by analogy." *See id.* ¶ 126. (citing *In re Mesa Ltd. P'ship Preferred Unitholders Litig.*, Civil Action No. 12,243, 1991 Del. Ch. LEXIS 214, at *20 (Dec. 10, 1991)). Further, in Count 1, Acis does not ask to "recover damages" for the "*ultra vires* transactions." It is in Counts 2-4 that Acis pleads for recovery of the Expense Overpayments.

18.     Acis's claim for turnover is also straightforward.  If the Expense Overpayments were *ultra vires*, and the transactions are void or voidable, then the Expense Overpayments are Acis's property, and Highland Capital must return the funds under section 542(a).  Similarly, in pleading money had and received and conversion, Acis asserts that Highland Capital wrongfully received and exercised control over the Expense Overpayments (knowingly so), and such funds are the rightful property of Acis and must be returned. Acis more than adequately pleads facts that support the claims.

19.     With respect to money had and received, Highland Capital asserts that "[b]ecause these factual allegations are about express contracts, they defeat the legal basis for this claim, which assumes the lack of such a contract."  Motion to Dismiss ¶ 10.  Acis is more than willing to accept Highland Capital's admission (and agrees) that Acis's *ultra vires* claim arises from payments for Highland's services pursuant to the Sub Agreements because this conclusively establishes Acis's right to recoupment (addressed below). However, if Highland Capital intends to argue that the basis of the claim is some other agreement (like the LPA, to which Highland Capital is not a party) or no agreement at all, Acis is entitled to plead this theory.  In this regard, Acis points the Court to *Synergy Strategic Solutions, LLC v. Totus Solutions, Inc.*, No. 3:16-CV-2649-S, 2019 U.S. Dist. Lexis 53179 (N.D. Tex. 2019), in which Judge Scholer recently dealt with a very similar issue.  In *Totus*, Judge Scholer denied a motion to dismiss under Rule 12(b)(6) where the defendant argued that a contract prohibited a claim for money had and received (like Highland Capital does here) because the defendant was not a party to the contract under which the disputed payments had been made. *Id.* at *17.  As Judge Scholer recognized, and this Court should as well, at the pleading stage no answer has been filed nor any legal theories developed, and thus all facts pled in the complaint must be accepted as true and viewed in the light most favorable to the plaintiff.

20. Confoundingly, Highland Capital argues further that the *ultra vires* claim "fails on the merits," Counts 3 and 4 are barred under relevant statutes of limitation, and Counts 1-4 are barred under the "voluntary payment rule." *See* Motion to Dismiss ¶¶ 8, 12-14. In considering dismissal pursuant to Rule 12(b)(6), the Court does not decide if there is a basis to dismiss "on the merits" or on relevant defenses that Highland Capital claims to have. The Court simply assesses whether Acis pleaded facts sufficient to state a claim for the relief it seeks. Further, to the extent limitations might apply to any affirmative recoveries that Acis would otherwise be entitled to make, limitations does not prevent Acis from using Highland Capital's liability defensively under the doctrine of recoupment. *Kandosky v. United States*, 216 F.3d 499, 507 (5th Cir. 2000); *In re Gober*, 100 F.3d 1195, 1207-08 (5th Cir. 1996). The Second Amended Complaint contains an objection to Highland Capital's alleged $4.6 million claim and pleads both offset and recoupment in connection with such claim objection. *See* Second Amended Complaint at 87-89. Accordingly, these arguments are inapposite for 12(b)(6) dismissal.

**C.     Acis adequately pleaded civil conspiracy to commit fraud, including fraudulent transfers (Count 17).**

21. Apparently ignoring the Second Amended Complaint's detailed Factual Background, Highland Capital contends that Acis simply "recited the elements of the claim" and failed to plead any facts in support of the conspiracy claim. *See* Motion to Dismiss ¶ 26 (citing *Xtreme Power Plan Trust v. Schindler, et al. (In re Xtreme Power Inc.),* 563 B.R. 614 (Bank. W.D. Tex. 2016)). To the contrary, Acis describes in detail the Highlands' objective to strip Acis of its assets (directed by Highland Capital and Dondero), when it began, the numerous actions taken in furtherance of the conspiracy, and the motivation behind the conspiracy. *See* Second Amended Complaint at 22-24, 26-41. This is simply a meritless argument.

22. Highland Capital also appears to argue (again) that Acis cannot bring a claim for civil conspiracy to commit a fraudulent transfer. As is the case throughout the Motion to Dismiss, Highland Capital simply distorts case law in order to reach its desired conclusion.

23. Highland Capital primarily cites *Milbank v. Holmes (In re TOCFHBI, Inc.)*, 413 B.R. 523, 535 (Bankr. N.D. Tex. 2009) and *Mack v. Newton*, 737 F.2d 1343, 1357-58 (5th Cir. 1984) (analyzing under the Bankruptcy Act) for the proposition that Acis cannot bring a civil conspiracy claim against Highland Capital in connection with its role in orchestrating and executing the numerous fraudulently transfers. A closer reading of these cases reveals that such a claim fails only when the alleged conspirator *did not receive property or a benefit from the fraudulent transfer. See TOCFHBI*, 413 B.R. at 535-36, 538; *Mack*, 737 F.2d at 1357. Acis plainly pleads that Highland Capital actively participated (with the other Highlands) in the slew of fraudulent transfers—*for its benefit and to the detriment of Acis. See* Second Amended Complaint at 22-24, 26-41. Thus, just like Highland Capital's argument that it cannot be liable for fraudulent transfers because it wasn't a transferee, this argument is really just a continuation of Highland Capital's obfuscation of its role as the ringmaster (and primary beneficiary) of the efforts to strip Acis of its assets.

24. Reviewing the claims as pleaded demonstrates this is a specious argument—Acis specifically alleged facts to support the elements of both the conspiracy and Highland Capital's benefit from the fraudulent transfers. Accordingly, dismissal of these claims should be denied.

**D.    Acis adequately pleads a claim for tortious interference (Count 28).**

25. Highland Capital's primary argument is that Acis is somehow judicially estopped from pursuing a tortious interference claim because the Trustee ultimately allowed stay relief to Universal/BVK. As the Court will recall, the issue of whether Universal/BVK could obtain stay relief (that we now know was promoted by Highland Capital through its solicitation of

Universal/BVK to terminate its management agreement with Acis and enter an identical agreement with Highland Capital) was contested by the Trustee, but ultimately granted by an agreed order. Apparently Highland Capital's argument is that because the Trustee could not perpetually keep the automatic stay in place or otherwise stop Universal/BVK from terminating the contract, Acis is now estopped from asserting claims arising from the termination. This argument is non-sensical and fails to recognize that lifting the automatic stay simply allows a party to exercise whatever rights it believes it has without interference from the automatic stay. It has nothing to do with whether the exercise of such rights is otherwise actionable, nor does it "bless" the transaction.

26. The order lifting the automatic stay with Universal/BVK is consistent with this concept. *See* Docket No. 726. The order simply lifts the stay and allows Universal/BVK to terminate its agreement with Acis, if it chooses to do so. It does not order that the agreement be terminated, or approve any such termination.

27. Additionally, estoppel is an affirmative defense, and it is an inappropriate basis for a motion to dismiss. *Collins v. PBW Stock Ex., Inc.*, 408 F. Supp. 1344, 1348 (E.D. Pa. 1976) (estoppel is inappropriate basis for 12(b)(b) dismissal).

28. Notwithstanding Highland Capital's continued protestations in the Motion to Dismiss about the Universal/BVK agreement being an at-will contract, the Texas Supreme Court expressly acknowledged that an at-will contract is subject to tortious interference, like any other contract. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex. 1989). Judge Boyle of the Northern District recognized the *Sterner* ruling and denied a motion to dismiss a tortious interference claim for an at-will contract based on facts that are very similar to the facts in this case. *Official Brands, Inc. v. Roc Nation Sports, LLC*, 2015 U.S. Dist. Lexis 167320 (N.D. Tex.

2015). It simply doesn't matter for purposes of a tortious interference claim that it is an at-will contact.

29. Finally, Highland Capital's reliance on the conflict of interest provisions of the Sub-Advisory Agreement is unavailing. First, Highland Capital's argument is clearly based on theory of waiver, which is an affirmative defense. *See* F.R.C.P. 8(c) (made applicable by F.R.B.P. 7008). Thus, it is an inappropriate basis for a motion to dismiss. *Manecke v. School Bd. of Pinellas Cty.*, 553 F. Supp. 787, 788 (M.D. Fla. 1982) (waiver is inappropriate basis for 12(b)(6) dismissal). Furthermore, there is absolutely nothing in the Sub-Advisory Agreement (including Appendix B) that allows Highland Capital to steal an existing Acis client and solicit termination of an existing Acis contract, and Highland Capital has not even tried to cite any such provisions of the Sub-Advisory Agreement. This is not a conflict of interest; this is an intentional tort against Acis and its assets that occurred post-petition and during this Court's administration of the Chapter 11 case. Dismissal should be denied.

**E.      Acis adequately pleads a claim for breach of fiduciary duty (Count 30).**

30. It is obvious that a principal-agent relationship existed between Acis and Highland Capital, and thus Highland Capital owed fiduciary duties to Acis. In the Motion to Dismiss, Highland Capital does not even attempt to contest this fact head on, but instead argues that the Sub-Advisory Agreement and the Shared Services Agreement must be construed together, of course with the language in the Shared Services Agreement most useful to Highland Capital (that Highland Capital is just an independent contractor with minimal duties to Acis) controlling. This argument is based entirely on any intentionally deceptive citation to *Houston Prog. Radiology Assocs. v. Lee*, 474 S.W.3d 435 (Tex. App.—Houston [1st Dist.] 2015, no pet.), the lone case Highland Capital cited in the Motion to Dismiss on this point. This is what the *Lee* case cited by Highland Capital actually holds:

The general rule is that separate instruments or contracts executed at the same time, *for the same purpose*, and in the course of the same transaction are to be considered as one instrument, and are to be read and construed together." *Jones v. Kelley,* 614 S.W.2d 95, 98 (Tex.1981); *see also Harris v. Rowe,* 593 S.W.2d 303, 306 (Tex.1979) ("Separate instruments contemporaneously executed as a part of the same transaction and *relating to the same subject matter* may be construed together as a single instrument.") (emphasis added).

*Id*. at 443-44.

31.     The Court will note that Highland Capital conveniently leaves out the bolded parts of the *Lee* opinion in its Motion to Dismiss.  This is because the Shared Services Agreement was clearly <u>not</u> executed "for the same purpose" or "relating to the same subject matter" as the Sub-Advisory Agreement.  Notably, the Sub-Advisory Agreement does not even reference the Shared Services Agreement.  In fact, Section 20 of the Sub-Advisory Agreement has a merger clause that states that it and certain other defined documents (clearly <u>not</u> including the Shared Services Agreement) "constitute the entire agreement of the parties with respect to subject matter hereof."  Further, Highland Capital notes that the Shared Services Agreement has a standard of care section that it alleges applies to both contracts.  Motion to Dismiss at 25.  But the Sub-Advisory Agreement also has a standard of care section (Section 4), so it makes no sense that the standard of care from the Shared Services Agreement would apply to the Sub-Advisory Agreement.  This just serves to highlight that these agreements do not "have the same purpose" and do not relate "to the same subject matter" and is exactly why Highland Capital hid such language in the authority it cited to this Court.

32.     Delving further into the Motion to Dismiss, Highland Capital would have the Court believe that while acting as Acis's investment adviser, it could not breach any fiduciary duty owed to Acis by causing it to fraudulently transfer its portfolio management assets to Highland Capital's affiliates and engage in a stealth liquidation because such acts did not "run[] . . . to the subject of investments" and "[n]othing about the 'series of fraudulent schemes' . . . is

tied to that subject, and thus that alleged duty." *See* Motion to Dismiss ¶ 37. This argument is farcical.

33.    Preliminarily, Acis notes that there is both a state law imposed fiduciary duty and federal law imposed fiduciary duty arising from Highland Capital's position as Acis's investment advisor.  Acis (again) cites the Supreme Court's opinion in *Capital Gains Research Bureau*, where it described the "fundamental purpose" of the Investment Advisers Act of 1940:

> The broad proscription against "**any . . . practice . . . which operates . . . as a fraud or deceit upon any client or prospective client**" remained in the bill from beginning to end. . . . The Investment Advisers Act of 1940 thus reflects a congressional recognition "of the delicate fiduciary nature of an investment advisory relationship," as well as a congressional intent to eliminate, or at least to expose, all conflicts of interest which might incline an investment adviser -- consciously or unconsciously -- to render advice which was not disinterested. It would defeat the manifest purpose of the Investment Advisers Act of 1940 for us to hold, therefore, that Congress, in empowering the courts to enjoin any practice which operates "as a fraud or deceit," intended to require proof of intent to injure and actual injury to clients.

*SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 191-92 (1963) (emphasis added); *see also* Commission Interpretation Regarding Standard of Conduct for Investment Advisers, Release No. IA-5248, 17 C.F.R. Part 276 (June 5, 2019) (attached hereto and available at https://www.sec.gov/rules/interp/2019/ia-5248.pdf).  Texas law also imposes a general fiduciary duty on investment advisors based on a special relationship of trust and confidence.  *West. Reserve Life Assur. Co. of Ohio v. Graben*, 233 S.W.3d 360, 373-74 (Tex. App.—Fort Worth 2007, no pet.).

34.    In the Second Amended Complaint, Acis specifically pleads that, while acting as sub-advisor to Acis, Highland Capital's actions in connection with (i) overcharging for services provided under the Sub-Advisory Agreement and Shared Services Agreement in violation of the LPA, (ii) orchestrating the series of fraudulent schemes that terminated or transferred away Acis's rights in various investment management assets such as the ALF PMA, the 2017-7

Equity and the 2017-7 Agreements, as well as (iii) interference with, and ultimately termination of, the Universal/BVK Agreement, constituted a breach of its fiduciary duties to Acis. Further, in the preceding Count 29 of the Second Amended Complaint (for breach of contract), Acis details Highland Capital's attempted stealth liquidation of the CLOs for its benefit, and to the detriment of Acis. This final attempt by Highland Capital while acting as sub-advisor, which continued while this Court presided over the Bankruptcy Cases, was yet another piece of Highland's grand fraudulent transfer scheme, as detailed in the Factual Background of the Second Amended Complaint. *See* Second Amended Complaint ¶¶ 75-121.

35.     All of the actions complained of above relate to Highland Capital's position as investment advisor to Acis. In fact, Highland Capital was only in a position to take these actions because it was Acis's investment advisor.

36.     Finally, Acis would note that the Securities and Exchange Commission will likely be very interested in Highland Capital's written legal position that while serving as a registered investment advisor and pursuant to a sub-advisory agreement to another registered investment advisor (Acis), it believes it owes no fiduciary duties whatsoever, but is just an "independent contractor."[10]

---

[10] "As an investment adviser, you are a fiduciary to your advisory clients. This means that you have a fundamental obligation to act in the best interests of your clients and to provide investment advice in your clients' best interests. You owe your clients a duty of undivided loyalty and utmost good faith. You should not engage in any activity in conflict with the interest of any client, and you should take steps reasonably necessary to fulfill your obligations. You must employ reasonable care to avoid misleading clients and you must provide full and fair disclosure of all material facts to your clients and prospective clients. Generally, facts are material if a reasonable investor would consider them to be important. You must eliminate, or at least disclose, all conflicts of interest that might incline you — consciously or unconsciously — to render advice that is not disinterested. If you do not avoid a conflict of interest that could impact the impartiality of your advice, you must make full and frank disclosure of the conflict. You cannot use your clients' assets for your own benefit or the benefit of other clients, at least without client consent. Departure from this fiduciary standard may constitute fraud upon your clients (under Section 206 of the Advisers Act)."  https://www.sec.gov/divisions/investment/advoverview.htm

37.    Acis's claim for breach of fiduciary duty is well pleaded, and Highland Capital's arguments to the contrary are frivolous and (once again) based on trying to mislead this Court as to applicable law.

**F.    Acis adequately pleads a claim for disregarding the corporate form/alter ego/collapsing doctrine/unjust enrichment (Count 32).**

38.    Highland Capital (again) obfuscates by attempting to distinguish the *SSP Partners* case cited by Acis as a "single enterprise theory" case, rather than an alter ego case, and then arguing that this Count should therefore be summarily dismissed.  In *SSP Partners*, in addition to single enterprise theory, the Texas Supreme Court explained the basis for piercing the corporate veil under an alter ego theory (and thus the reason Acis cited the case). *See SSP Partners v. Gladstrong Inv. (USA) Corp.*, 275 S.W.3d 444, 451-52 (Tex. 2008).

39.    Specifically, the court in *SPP* stated:

> We have held that the limitation on liability afforded by the corporate structure can be ignored only 'when the corporate form has been used as part of a basically unfair device to achieve an inequitable result.' Examples are when the corporate structure has been abused to perpetrate a fraud, evade an existing obligation, achieve or perpetrate a monopoly, circumvent a statute, protect a crime, or justify wrong. In some instances, the imposition of liability is limited by statute to situations involving actual fraud.

*Id*. (citing *Castleberry v. Branscum*, 721 S.W.2d 270, 271-72 (Tex. 1986)). The Factual Background of the Second Amended Complaint is replete with allegations supporting a claim for alter ego—particularly with respect to how Highland Capital and Dondero used the other Highland entities and abused the corporate structure to perpetrate the sweeping fraudulent scheme to denude Acis and steal its business. *See* Second Amended Answer at 24, 26-41.

40.    Surprisingly (or perhaps not), Highland Capital has the audacity to argue that Acis's assertion that the Highlands "are all controlled by the CEO and ultimate majority owner of Highland Capital, Dondero" is a "rejected theory."  Not only has Acis adequately pleaded that

Dondero, through Highland Capital, controls the Highlands, but this Court made multiple findings so in its Bench Ruling, which was affirmed on appeal. *See* Bench Ruling at 8, 12, 13, 42-46.

41.     Accordingly, Acis has more than adequately pleaded how Highland Funding's "corporate structure has been abused to perpetrate a fraud . . . or justify a wrong." *See SSP Partners v. Gladstrong Inv. (USA) Corp.*, 275 S.W.3d 444, 451 (Tex. 2008).  Such facts as pleaded satisfy Rule 8(a) (and 9(b)) and would support alter ego among the Highlands.

42.     Highland Capital also objects to Acis's characterization of the Highlands' fraudulent transfer scheme in the context of "multistep transactions" when pleading the collapsing doctrine. Bankruptcy courts have recognized the use of the collapsing doctrine as "an equitable tool whereby a court can collapse multiple transactions and consider the overall financial consequences of the transactions[, but typically require] a showing of the transferee's knowledge of the fraudulent scheme." *See SB Liquidation Trust v. Preferred Bank (In re Syntax-Brillian Corp.)*, 2016 Bankr. LEXIS 988, at *4 (Bankr. D. Del. Feb. 8, 2016). The facts as pleaded clearly reflect that all of the transactions following the Arbitration Award, which constituted the concerted scheme to fraudulently transfer the assets of Acis to other Highland entities, including offshore entities, was known by the various Highlands, while under the control of Dondero.

43.     Finally, contrary Highland Capital's objection, Acis appropriately pleads unjust enrichment to recover against all of the Highlands for the benefits they unjustly received, even if not a direct transferee, in connection with the fraudulent transfers, as the Highlands effectively acted with one mind, under the Highland Capital umbrella, to decimate Acis—and to the ultimate detriment of the estate and its creditors.

44.     The facts alleged in the Second Amended Complaint adequately plead disregarding of the corporate form, alter ego, collapsing doctrine, and unjust enrichment.

**G.    Acis has standing to plead for damages against Highland Capital for its willful violation of the stay (Count 33).**

45.     Highland Capital wants the Court to believe—and its actions show that it actually does believe—that it can violate the stay with impunity because Acis is a business entity and not an individual. Acis pleads willful violation of the stay and for damages under sections 362(k) <u>and</u> 105(a). Even accepting that the Fifth Circuit's opinion in *Labuzan* prevents damages under section 362(k), as Judge Lynn also decided in *Tusa-Expo Holdings*, the Trustee or Acis may still obtain damages for willful violation of the stay under section 105(a). In *MD Promenade* (cited by Highland Capital), this Court declined to award 362(k) damages to a trustee of a debtor corporation, but emphasized that "the court may award damages to a corporate debtor (or, in this case, the trustee of the estate of a corporate debtor) ***in the form of contempt sanctions in order to enforce this court's civil contempt power pursuant to this court's equitable authority under section 105(a).***" *In re MD Promenade, Inc.*, No. 08-34113-SGJ-7, 2009 Bankr. LEXIS 34, at *39 (Bankr. N.D. Tex. Jan. 8, 2009) (Jernigan, J.) (emphasis in original). Once again, Highland Capital did not cite this troublesome—and even emphasized— part of the Court's opinion in the Motion to Dismiss because it does not support Highland Capital's requested 12(b)(6) relief.

46.     The Second Amended Complaint plainly pleads for sanctions under section 105(a): "given Highland Capital's and Highland Funding's blatant and willful violation of the automatic stay (as well as the TRO), the Plaintiffs seek attorneys' fees, punitive damages, and sanctions, as the Court finds appropriate, pursuant to section 105(a) of the Bankruptcy Code."

Second Amended Complaint ¶ 288. This is a recognizable claim that was sufficiently pleaded in the Second Amended Complaint.

**H.** **Acis clearly alleges viable claims for equitable relief, and the requests for disgorgement and the establishment of a constructive trust are appropriate.**

47.     Highland Capital's contention that Acis's requests for disgorgement and a constructive trust should be denied just assumes that the many frivolous and unfounded arguments asserted throughout the Motion to Dismiss have merit. For purposes of meeting the pleading standards to survive a Rule 12(b)(6) motion, as set out above, the Second Amended Complaint more than sufficiently alleges facts to plead breach of fiduciary duty. Further, Highland Capital reiterates its argument that it cannot be liable for civil conspiracy in connection with the massive fraudulent transfer scheme because it was not a "direct transferee"; however, to the extent Highland Capital extracted any benefit from the fraud, Acis had made a proper request for the establishment of a constructive trust. Accordingly, based on the facts alleged, Acis's requests for disgorgement and imposition of a constructive trust are entirely appropriate.

**I.** **Re-Pleading Standard**

48.     Finally, the Motion to Dismiss glibly makes the demand that Acis's claims be dismissed with prejudice with no supporting law or facts whatsoever. *See* Motion to Dismiss at 31. Highland Capital again fails to cite the existing legal standard (or any legal standard) to support this requested relief. The Fifth Circuit recently decided *Life Partners Creditors Trust v. Cowley*, 926 F.3d 103 (5th Cir. 2019). Among other things, *Cowley* addresses re-pleading after a 12(b)(6) dismissal and notes that a court should "freely give leave [to amend] when justice so requires" and Rule 15(a) "evokes a bias in favor of granting leave to amend." 926 F.3d at 125. *Cowley* further dictates that in order to prevent a party from re-pleading after a Rule 12(b)(6) dismissal, the movant must demonstrate "undue delay, bad faith, or dilatory motive," or convince

the court that permitting to re-plead "would be unduly prejudicial" or would be futile. *Id.* at 127. Highland Capital makes no effort to allege any of these items. Acis also notes that although Acis (and its predecessor) filed two amended complaints, neither of these were to "cure deficiencies" found by this Court. *Id.* at 125. Rather, the amendments were to add or expand claims or address procedural matters.

## V.     PRAYER

The Court should deny the baseless Motion to Dismiss, expressly disallow any additional motions under Bankruptcy Rule 7012 (as required by Rule 12(g)) and direct Highland Capital to file an answer to the Second Amended Complaint within five days after entry of the order denying the Motion to Dismiss (as allowed by Bankruptcy Rule 7012(a)). Acis also requests general relief, including allowing Acis to re-plead any cause of action in the very unlikely event that the Court finds it insufficiently pleaded.[11]

**Dated:  August 12, 2019.**

---

[11] *LaPorte Const. Co., Inc. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1256 (5th Cir. 1986).

Respectfully submitted,

By: */s/Phillip Lamberson*
    Rakhee V. Patel
    State Bar No. 00797213
    Phillip Lamberson
    State Bar No. 00794134
    Jason A. Enright
    State Bar No. 24087475
    Annmarie Chiarello
    State Bar No. 24097496
    **WINSTEAD PC**
    500 Winstead Building
    2728 N. Harwood Street
    Dallas, Texas 75201
    Telephone: (214) 745-5400
    Facsimile: (214) 745-5390
    rpatel@winstead.com
    plamberson@winstead.com
    jenright@winstead.com
    achiarello@winstead.com

    **COUNSEL FOR REORGANIZED
    DEBTORS**

    -and-

    Brian P. Shaw
    State Bar No. 24053473
    **ROGGE DUNN GROUP, PC**
    500 N. Akard Street, Suite 1900
    Dallas, Texas 75201
    Telephone: (214) 888-5000
    Facsimile: (214) 220-3833
    shaw@roggedunngroup.com

    **COUNSEL FOR REORGANIZED
    DEBTORS**

## **Certificate of Service**

I hereby certify that on August 12, 2019, notice of this document will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this adversary proceeding pursuant to the Electronic Filing Procedures in this District.

*/s/  Phillip Lamberson*
One of Counsel